IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          Plaintiff,<br><br>            v.<br><br><br>MICROSOFT CORPORATION,<br><br>                          Defendant. | Civil Action No. 98-1232 (CKK) |
| STATE OF NEW YORK *ex. rel*.<br>Attorney General ELIOT SPITZER, *et al.*,<br><br>                          Plaintiffs,<br><br>            v.<br><br><br>MICROSOFT CORPORATION,<br><br>                          Defendant. | Civil Action No. 98-1233 (CKK) |

**JOINT STATUS REPORT**

Pursuant to this Court's Order filed August 28, 2001, Plaintiffs and Defendant Microsoft hereby file their Joint Status Report.  The Court's Order directed the parties to follow the style of LCvR 16.3 to the extent appropriate.  LCvR 16.3(c)(1)-(3), (6)-(7) and (10)-(11) are inapplicable to the remand proceedings in this case.

A.     Issues Remaining on Remand

Plaintiffs have advised Microsoft that they do not intend to pursue further proceedings on remand regarding their Section 1 tying claim and do not intend to pursue on remand the restructuring of Microsoft into separate operating system and applications companies that had previously been ordered by the District Court.  The sole remaining issue before the Court is framing an order that effectively will remedy the violations upheld by the Court of Appeals, consistent with its decision, *see United States v. Microsoft Corp.*, 253 F.3d 34, 103, 107 (D.C. Cir.), *reh'g denied*, *petition for cert. filed*, 70 U.S.L.W. 3107 (U.S. Aug. 7, 2001) (No. 01-236), and the law of antitrust remedies generally.

Plaintiffs have advised Microsoft of their position that, in order to "unfetter" the market from Microsoft's anticompetitive conduct, to deny Microsoft "the fruits" of its violations of the Sherman Act, and to "ensure that there remain no practices likely to result in monopolization in the future," s*ee Microsoft*, 253 F.3d at 103 (quoting *Ford Motor Co. v. United States*, 405 U.S. 562, 577 (1972) and *United States v. United Shoe Mach. Corp.*, 391 U.S. 244, 250 (1968)), they will seek injunctive relief modeled on the conduct-related provisions of the prior Final Judgment, with such additional provisions as Plaintiffs may conclude are necessary to ensure that the relief is effective, given their decision not to seek a structural reorganization of the company.  Plaintiffs believe that, given their view of the scope of Microsoft's violations, such provisions are both appropriate and essential to achieve the proper purposes of an antitrust remedy.

Microsoft has advised Plaintiffs of its position that many of the so-called "conduct" provisions of the vacated prior judgment are improper because Microsoft believes that they are outside the scope of the issues in the case and the evidence presented at trial.  Microsoft objected to those provisions prior to its appeal, and believes they are unwarranted in light of the Court of

Appeals' "drastically altered" liability determinations.  Microsoft notes that the Court of Appeals specifically instructed this Court to "consider which of the decree's conduct restrictions remain viable in light of our modification of the original liability decision."  *Microsoft*, 253 F.3d at 105. Microsoft has also advised Plaintiffs that it believes there is a lack of causal connection between the actions found to be anticompetitive by the Court of Appeals and any actual injury to competition in the relevant market, and thus that only a relatively narrow remedial order is necessary.

B.      Appropriate Measures to Enable Resolution of Such Issues

The parties generally agree that resolution of the issues identified in Section A, *supra*, is likely to necessitate limited additional fact and expert discovery and an evidentiary hearing on the issue of an appropriate remedy.  The parties also agree that each should promptly submit to the Court a proposed final judgment embodying the remedy provisions they believe are appropriate and necessary consistent with the Court of Appeals' decision and the law.

Plaintiffs propose that the parties submit their proposed final judgments 30 calendar days after the Court's entry of a scheduling order or on November 9, whichever is later, following an initial, brief period of discovery by both sides.  Plaintiffs believe that, given such a schedule and given that they have told Microsoft the relief they propose will be modeled on the prior interim conduct provisions with the possible addition of provisions necessary in light of the decision not to seek a restructuring, there is no reason the Court cannot now set a comprehensive schedule for discovery and hearing.  Plaintiffs believe that Microsoft has had ample notice to proceed without further delay, and that the additional discovery they envision will be limited and can be completed in a short period of time.  Plaintiffs do not believe that the issue of an appropriate remedy can be resolved or narrowed through motion practice, nor do they believe that separate,

initial proceedings are appropriate or warranted to decide the scope of remedy prior to setting a schedule, conducting discovery, and proceeding to the "remedies-specific evidentiary hearing" ordered by the Court of Appeals. *See Microsoft*, 253 F.3d at 103.

Microsoft believes that the time needed for discovery—and the procedures needed to pre-pare the case for a remedy hearing—are dependent upon the scope of relief at issue.  Microsoft proposes that the Court first address Microsoft's position as to the appropriate outer bounds for relief—*i.e.*, Microsoft's assertion that many of the vacated conduct provisions are beyond the scope of this case—and thereafter enter a scheduling order to govern further proceedings.  In Microsoft's view, it is premature to fix a schedule for further proceedings when Plaintiffs have not yet comprehensively specified the relief they are seeking.  Microsoft believes that if the Court accepts Microsoft's position as to the scope of relief, minimal additional discovery and a relatively abbreviated evidentiary hearing will be required, but that if the Court does not accept Microsoft's position, several months of intensive discovery will be required—and possibly more, depending on what provisions Plaintiffs seek in addition to the vacated conduct provisions.

*See* Sections D, F and G, *infra*, for each party's proposals on these issues, and Sections J and K, *infra*, for the parties' arguments in support of their respective proposals.

Plaintiffs and Microsoft have been able to agree on the following general provisions:

1.      The terms and conditions contained in the Stipulation and Protective Order entered by the Court on May 27, 1998 shall remain in effect and continue to apply to all discovery and further proceedings in this case.

2.      Service on Microsoft of any pleading or other submission filed with the Court shall be pursuant to Paragraph 5 of this Court's September 6, 2001 Order Establishing Procedures for Electronic Filing.  Service on Microsoft of any

pleading or other submission not filed with the Court, or responses thereto, shall be sufficient if delivered by hand, facsimile or overnight courier to (a) John L. Warden, Sullivan & Cromwell, 125 Broad Street, 31st Floor, New York, NY 10004-2498, (b) Bradley P. Smith, Sullivan & Cromwell, 1701 Pennsylvania Avenue, N.W., 7th Floor, Washington, D.C. 20006-5805, and (c) William H. Neukom, Executive Vice President – Law and Corporate Affairs, Microsoft Corporation, Building 8, One Microsoft Way, Redmond, WA 98052-6399.

3.      Service on Plaintiffs of any pleading or other submission filed with the Court shall be pursuant to Paragraph 5 of this Court's September 6, 2001 Order Establishing Procedures for Electronic Filing.  Service on Plaintiffs of any pleading or other submission not filed with the Court, or responses thereto, shall be sufficient if delivered by hand, facsimile or overnight courier to (a) Philip S. Beck, Esq., Bartlit Beck Herman Palenchar & Scott, Courthouse Place, Suite 300, 54 West Hubbard Street, Chicago, IL 60610, (b) Renata B. Hesse, Esq., U.S. Department of Justice, Antitrust Division, 601 D Street, NW, Suite 1200, Washington, D.C. 20530, (c) Kevin J. O'Connor, Esq., Office of the Attorney General of the State of Wisconsin, Post Office Box 7857, 123 West Washington Avenue, Madison, WI  53703-7857, (d) Jay L. Himes, Esq., Assistant Attorney General, Office of the Attorney General of the State of New York, 120 Broadway, New York, NY 10271, and (e) Blake Harrop, Esq., Office of the Attorney General of the State of Illinois, 100 West Randolph St., 12th Floor, Chicago, IL 60601.

4.      Because there may be witnesses with knowledge of relevant matters residing throughout the United States, the parties request that the Court find that there is

good cause to give all parties to this action permission pursuant to 15 U.S.C. § 23 to issue subpoenas to compel witnesses living outside this District to appear to testify at the remedy hearing in this matter.

C.     The Nature of Additional Evidentiary Hearings

The parties agree that the remedies-specific evidentiary hearing will include both fact and expert testimony, as well as introduction of documentary evidence.  The parties also generally agree that some limits should be placed on the number of witnesses each side may present. Plaintiffs believe that there should be a specific amount of time allocated to each side and that, consistent with procedures in the case-in-chief portion of the liability trial, the parties should file the direct examinations of their witnesses in the form of written declarations.  Microsoft believes that such time limits are not appropriate and that the parties should present the direct testimony of their witnesses live in Court, unless the parties otherwise agree with regard to particular witnesses.

D.     Proposed Schedule

Plaintiffs and Microsoft also have conferred about a pre-hearing schedule, but have been unable to agree on a joint proposal.  Each side's views are set forth below:

***Plaintiffs' Proposals Concerning Schedule for Remedy Proceedings***

Because of Plaintiffs' view that the overarching purpose of the remedy hearing is to enable the Court to determine the scope of the relief in the context of Microsoft's adjudicated violations and the relevant evidence and facts, and their view that there is no basis for attempting, at the very outset of  these proceedings, artificially to compartmentalize the Court of Appeals decision in an effort to constrain the relief needed to restore competition, Plaintiffs

believe the Court should set now a single, comprehensive schedule to provide for discovery, pre-hearing procedures, and a prompt hearing date.

1.      The parties should submit proposed final judgments, incorporating the remedial provisions they propose the Court enter, not later than 30 calendar days after entry of the Court's scheduling and discovery order or November 9, 2001, whichever is later.

2.      The parties should file their Pre-Hearing Statements not later than 10 calendar days prior to the scheduled date of the remedy hearing, including the most complete, updated lists of exhibits then available.

3.      Subject to the Court's calendar, the final Pre-hearing Conference should be held 5 calendar days prior to the scheduled date of the remedy hearing.

4.      Subject to the Court's calendar, the hearing to determine the appropriate remedy in this case should commence on February 4, 2002.  Each side should have a total of 40 hours of testimony during that hearing in which to present the redirect testimony of its own witnesses (and the direct testimony of any hostile witnesses) and its other evidence and to cross-examine opposing witnesses, the total time to be divided between affirmative presentation and cross-examination as each side chooses.  Each side should also have an additional 2 hours in which to present an opening statement and 2 hours in which to present a closing argument.

5.      Plaintiffs as a group and Microsoft should each be limited to 10 witnesses in the remedy hearing, although the Court will consider increasing that number for good cause shown.

6.      The parties should file lists of the witnesses they intend to call to testify in the remedy hearing not later than 32 calendar days prior to the scheduled date of the remedy hearing. The parties may supplement their witness lists only with leave of the Court and upon a showing of good cause.

7.     The parties should exchange and file their current lists of exhibits not later than 20 calendar days prior to the scheduled date of the remedy hearing.  Such lists may be supplemented in good faith and with adequate advance notice to the opposing side as discovery is completed and in the course of trial.

8.     The parties should file the direct examination of their witnesses, with the exception of hostile witnesses, in the form of written declarations.  The written declaration of each witness should be filed not later than 2 calendar days before that witness' scheduled testimony.

9.     The Court may, by subsequent order and on a schedule it will determine, require post-hearing briefs or proposed findings of fact and conclusions of law.

### *Microsoft's Proposals Concerning Schedule for Remedy Proceedings*

Microsoft believes that it is premature to attempt to establish a schedule for discovery and other procedures leading up to a remedy hearing until the Court has determined what types of relief can be considered in light of the Court of Appeals' decision.  In Microsoft's view, the more extensive and onerous the relief at issue, the more extensive the procedures that will be necessary to insure Microsoft's right to be heard on that relief.  Microsoft is providing two alternative suggestions as to scheduling in this Section and Sections F and G below, one that assumes that relief is limited to what Microsoft views as necessary to remedy the types of actions the Court of Appeals found to be anticompetitive ("First Alternative Schedule") and another that assumes that all of the vacated conduct provisions remain in issue ("Second Alternative Schedule").  If Plaintiffs are permitted to seek unspecified relief that extends beyond the vacated conduct provisions, Microsoft's position with regard to this Section and Sections F and G below is that it cannot take a position on scheduling or discovery procedures until it knows what relief is being sought.

*First Alternative Schedule*

1.      The remedy hearing should be scheduled after the Court resolves the dispute between the parties as to the proper scope of relief.  If Microsoft prevails on its view that relief should be limited to remedying the types of actions the Court of Appeals found to be anticompetitive, the remedy hearing should begin no sooner than 3 months after resolution of the dispute.

2.      Plaintiffs should be required to submit their proposed final judgment, incorporating all of the remedial provisions they propose the Court enter, not later than 10 calendar days after the Court resolves the dispute between the parties regarding the proper scope of relief. Microsoft should submit its proposed final judgment not later than 5 calendar days after Plaintiffs submit their proposal.

3.      Plaintiffs should file a Pre-Hearing Statement not later than 14 calendar days prior to the scheduled date of the remedy hearing.  Microsoft should file its Pre-Hearing Statement not later than 7 calendar days prior to the scheduled date of the remedy hearing.  Such Pre-Hearing Statements should include the most complete draft lists of exhibits then available.

4.      The parties should exchange and file their final lists of exhibits 5 calendar days prior to the scheduled date of the remedy hearing.  Microsoft asks that the Court permit such lists to be supplemented in good faith and with adequate advance notice to the opposing side in the course of trial.

5.      Plaintiffs as a group and Microsoft should each be limited to 7 witnesses in the remedy hearing, subject to increase for good cause shown.  All direct testimony of such witnesses should be presented live in the courtroom unless the parties stipulate to some other procedure with regard to particular witnesses.

6.      Plaintiffs should file a list of the witnesses they intend to call to testify in the remedy hearing, together with a brief description of the testimony of each such witness, not later than 45 calendar days prior to the scheduled date of the remedy hearing.  Microsoft should file a list of the witnesses it intends to call to testify in the remedy hearing, together with a brief description of the testimony of each such witness, not later than 30 calendar days prior to the scheduled date of the remedy hearing.

7.      At the remedy hearing, each side should have the opportunity to present an opening statement and a closing argument.  Those statements and arguments should not exceed 2 hours each in length.

***Second Alternative Schedule***

1.      The remedy hearing should be scheduled after the Court resolves the dispute between the parties as to the proper scope of relief.  If Plaintiffs prevail on their view that relief extends to all matters addressed by the previously ordered conduct provisions, the remedy hearing should begin no sooner than 6 months after resolution of the dispute.

2.      Plaintiffs should submit their proposed final judgment, incorporating all of the remedial provisions they propose the Court enter, not later than 15 calendar days after the Court resolves the dispute between the parties regarding the proper scope of relief.  Microsoft should submit its proposed final judgment not later than 10 calendar days after Plaintiffs submit their proposal.

3.      Plaintiffs should file a Pre-Hearing Statement not later than 14 calendar days prior to the scheduled date of the remedy hearing.  Microsoft should file its Pre-Hearing Statement not later than 7 calendar days prior to the scheduled date of the remedy hearing.  Such Pre-Hearing Statements should include the most complete draft lists of exhibits then available.

4.     The parties should exchange and file their final lists of exhibits 5 calendar days prior to the scheduled date of the remedy hearing.  Microsoft asks that the Court permit such lists to be supplemented in good faith and with adequate advance notice to the opposing side in the course of the remedy hearing.

5.     Plaintiffs as a group and Microsoft should each be limited to 20 witnesses in the remedy hearing, subject to increase for good cause shown.  All direct testimony of such witnesses should be presented live in the courtroom unless the parties stipulate to some other procedure with regard to particular witnesses.

6.     Plaintiffs should file a list of the witnesses they intend to call to testify in the remedy hearing, together with a brief description of the testimony of each such witness, not later than 90 calendar days prior to the scheduled date of the remedy hearing.  Microsoft should file a list of the witnesses it intends to call to testify in the remedy hearing, together with a brief description of the testimony of each such witness, not later than 75 calendar days prior to the scheduled date of the remedy hearing.

7.     At the remedy hearing, each side should have the opportunity to present an opening statement and a closing argument.  Those statements and arguments should not exceed 4 hours each in length.

E.     <u>Settlement and Alternative Dispute Resolution (LCvR 16.3(c)(4)-(5))</u>

The parties engaged in over four months of intensive mediation before Chief Judge Posner of the United States Court of Appeals for the Seventh Circuit prior to issuance of the Conclusions of Law, but were unable to reach agreement.  The parties believe that further alternative dispute resolution procedures would be unproductive at this time.  They will continue

to seek settlement of this matter through private discussions, which are ongoing and should continue simultaneously with proceedings addressed to remedy.

F.   Discovery (LCvR 16.3(c)(8))

The parties agree that each side should be permitted to conduct additional document and deposition discovery, including discovery from the parties, experts and third parties, in preparation for an evidentiary hearing on relief.  Plaintiffs further believe that additional discovery is appropriate and necessary to prepare for submission of the parties' new proposed final judgments 30 calendar days after entry of the scheduling order (or on November 9, whichever is later). Microsoft believes that Plaintiffs can formulate their requested relief now based upon the extensive record in this case and the Court of Appeals' decision.  Microsoft further believes that the extent of discovery is dependent on the scope of relief at issue.   Although they have conferred about these issues, the parties have been unable to agree on the timing and scope of discovery.  Accordingly, each side's proposal regarding discovery is set forth below:

***Plaintiffs' Proposed Schedule for Non-expert Discovery***

1.   The parties may commence discovery at any time after entry of the Court's scheduling and discovery order.

2.   All discovery in these proceedings should be completed not later than 10 calendar days prior to the scheduled date of the remedy hearing.

3.   Except as provided in Paragraph 8 below, the parties should serve their requests for the production of documents not later than 5 calendar days after the parties exchange their proposed final judgments pursuant to Paragraph D(1).

4.      Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, each party should respond, including objections, to any document requests within 10 calendar days of service of any such requests.

5.      The parties should serve their interrogatories not later than 5 calendar days after the parties exchange their proposed final judgments pursuant to Paragraph D(1).  Pursuant to Local Civil Rule 26.2(b), the limits on number of interrogatories contained in Federal Rules of Civil Procedure, Rule 33(a) shall not apply, but counsel for the parties shall exercise their good judgment in not serving unreasonably large numbers of interrogatories on an adverse party.

6.      Pursuant to Rule 33(b)(3) of the Federal Rules of Civil Procedure, each party should respond, including objections, to any interrogatories within 10 calendar days of service of any such interrogatories.

7.      Pursuant to Rules 30(a)-(b) of the Federal Rules of Civil Procedure, each party may take depositions upon oral examination on 7 calendar days' notice.  Pursuant to Rule 26(b)(2) of the Federal Rules of Civil Procedure, the limits of Fed.R.Civ.P. 30(a)(2) should not apply; however, except as provided in Paragraph F(8), the number of fact witness depositions taken by each side should not exceed 30.

8.      The parties may take the deposition of and serve a subpoena duces tecum on any person listed on a party's witness list who has not previously been deposed in these remand proceedings, and on that person's employer, for materials relating to the witness's expected testimony, and may serve a request for the production of documents on other parties for documents relating to that person. Any subpoena issued to such person(s) or any document request pursuant to this paragraph should be issued not later than 1 calendar day after that person

is first listed as a witness.  Any deposition taken pursuant to this paragraph should not count towards the limit on depositions set forth in Paragraph F(7), *supra*.

9.      All third party subpoenas (other than those directed to persons identified as witnesses in the remedy hearing in this case, or their employers if related to the witness's expected testimony) should be served not later than 5 calendar days after the parties exchange their proposed final judgments pursuant to Paragraph D(1), *supra*.

10.     In the context of the expedited remedy proceedings in this matter, third parties should comply with subpoenas within 15 calendar days, subject to the legitimate objections of such third parties.  Plaintiffs further request that the Court request that other district courts from which such subpoenas are issued require prompt compliance therewith.  Should third parties fail to comply with a subpoena on or before the date specified for compliance, the party seeking such discovery should begin proceedings to enforce compliance within 7 calendar days of the date specified for compliance.

### *Microsoft's Proposed Schedule for Non-expert Discovery*

For the reasons discussed in Section D, *supra*, Microsoft is providing the Court with two alternative proposals for non-expert discovery.

### *First Alternative Schedule*

1.      All non-expert discovery should be completed not later than 20 calendar days prior to the scheduled date of the remedy hearing.

2.      The parties should commence discovery at any time after the Court resolves the dispute between the parties regarding the proper scope of relief.  All discovery conducted by Plaintiffs should occur on a coordinated basis.  All discovery requests to Microsoft or any third party should be made on behalf of the Plaintiffs as a group.

- 14 -

3.      The parties should serve all interrogatories and requests for the production of documents not later than 14 calendar days following entry of the Court's order on the scope of relief.  Pursuant to Local Civil Rule 26.2(b), the limits on number of interrogatories contained in Rule 33(a) of the Federal Rules of Civil Procedure should not apply, but no party should serve more than 15 interrogatories (including subparts) on an adverse party.  Responses to interrogatories should be served no more than 21 calendar days following service of such interrogatories.

4.      Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, each party should serve objections to any document request within 7 calendar days of service of such request and should provide responsive documents within 21 calendar days of service of such request.  The parties should endeavor in good faith to keep all document requests as narrow as possible to avoid unnecessary burden on the responding party.  Microsoft asks that the Court consider extending the time for responding to any document request that is not so narrowly drawn.

5.      Pursuant to Rules 30(a)-(b) of the Federal Rules of Civil Procedure, each party may take depositions upon oral examination on 10 calendar days' notice.  All depositions should be concluded in one day (8 hours of testimony).  The parties should endeavor in good faith to schedule depositions at the convenience of witnesses.  Pursuant to Rule 26(b)(2) of the Federal Rules of Civil Procedure, the limits of Fed. R. Civ. P. 30(a)(2) should not apply; however, with the exception of witnesses who are testifying at the remedy hearing and have not previously been deposed, the number of depositions taken by each side should not exceed 20 absent a showing of good cause.

6.      All third-party subpoenas (other than those directed to persons identified as witnesses in the remedy hearing, or their employers if related to the witness' expected testimony)

should be served not later than 15 calendar days after Microsoft has submitted its proposal for relief to the Court.

7.      In the context of this proceeding, Microsoft believes that 7 calendar days is a reasonable time for third parties to object to subpoenas and requests, and that 21 calendar days is a reasonable period for third parties to comply with such subpoenas and requests.  Microsoft asks that the Court request other district courts from which such subpoenas are issued to require prompt compliance therewith, subject to the legitimate objections of such third parties.  Should third parties fail to comply with a subpoena on or before the date specified for compliance, the party seeking such discovery should begin proceedings to enforce compliance within 7 calendar days.

8.      The parties may take the deposition of and serve a subpoena duces tecum on any person listed on a party's witness list who has not previously been deposed, and on that person's employer for materials relating to the witness's expected testimony.  Any subpoena issued to such person(s) pursuant to this paragraph should be issued not later than 3 business days after that person is first listed as a witness and must be complied with forthwith.

***Second Alternative Schedule***

1.      All non-expert discovery should be completed not later than 30 calendar days prior to the scheduled date of the remedy hearing.

2.      The parties may commence discovery at any time after the Court resolves the dispute between the parties regarding the proper scope of relief.  All discovery conducted by Plaintiffs should occur on a coordinated basis.  All discovery requests to Microsoft or any third party should be made on behalf of the Plaintiffs as a group.

3.      The parties should serve all interrogatories and requests for the production of documents not later than 21 calendar days following entry of the Court's order on the scope of relief.  Pursuant to Local Civil Rule 26.2(b), the limits on number of interrogatories contained in Rule 33(a) of the Federal Rules of Civil Procedure should not apply, but no party should serve more than 25 interrogatories (including subparts) on an adverse party.  Responses to interrogatories should be served no more than 21 calendar days following service of such interrogatories.

4.      Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, each party should serve objections to any document request within 7 calendar days of service of such request and shall provide responsive documents within 21 calendar days of service of such request.  The parties should endeavor in good faith to keep all document requests as narrow as possible to avoid unnecessary burden on the responding party.  Microsoft asks that the Court consider extending the time for responding to any document request that is not so narrowly drawn.

5.      Pursuant to Rules 30(a)-(b) of the Federal Rules of Civil Procedure, each party may take depositions upon oral examination on 10 calendar days' notice.  All depositions should be concluded in one day (8 hours of testimony).  The parties should endeavor in good faith to schedule depositions at the convenience of witnesses.  Pursuant to Rule 26(b)(2) of the Federal Rules of Civil Procedure, the limits of Fed. R. Civ. P. 30(a)(2) should not apply; however, with the exception of witnesses who are testifying at the remedy hearing and have not previously been deposed, the number of depositions taken by each side should not exceed 40 absent a showing of good cause.

6.      All third-party subpoenas (other than those directed to persons identified as witnesses in the remedy hearing in this case, or their employers if related to the witness' expected

testimony) should be served not later than 20 calendar days after Microsoft has submitted its proposal for relief to the Court.

7.      In the context of this proceeding, Microsoft believes that 7 calendar days is a reasonable time for third parties to object to subpoenas and requests, and that 21 calendar days is a reasonable period for third parties to comply with such subpoenas and requests.  Microsoft asks that the Court request other district courts from which such subpoenas are issued to require prompt compliance therewith, subject to the legitimate objections of such third parties.  Should third parties fail to comply with a subpoena on or before the date specified for compliance, the party seeking such discovery should begin proceedings to enforce compliance within 7 calendar days.

8.      The parties may take the deposition of and serve a subpoena duces tecum on any person listed on a party's witness list who has not previously been deposed, and on that person's employer for materials relating to the witness's expected testimony.  Any subpoena issued to such person(s) pursuant to this paragraph should be issued not later than 5 business days after that person is first listed as a witness and must be complied with forthwith.

G.      <u>Expert Witnesses (LCvR 16.3(c)(9))</u>

The parties agree that they should exchange expert reports prior to the remedy hearing and that each side should be permitted to depose the experts that the other side anticipates testifying at that hearing shortly thereafter.  The parties have conferred and have been unable to agree on the timing of this exchange of expert reports and the subsequent depositions of experts.  The parties' separate proposals are set forth below:

### *Plaintiffs' Proposed Schedule for Expert Discovery*

1.      Not later than 25 calendar days prior to the scheduled date of the remedy hearing, the parties should identify the expert witnesses they intend to call to testify in these proceedings and, separately with respect to each such witness, should produce the reports and other material required under Rule 26(a)(2)(A)-(B).

2.      Expert witnesses identified pursuant to the preceding paragraph may be deposed beginning on or after 2 calendar days following production of the materials required by the preceding paragraph, *provided that,* without leave of court, (a) no such deposition may last more than one day (8 hours of testimony), and (b) no such deposition shall occur later than 10 calendar days prior to the scheduled date of the remedy hearing.

### *Microsoft's Proposed Schedule for Expert Discovery*

For the reasons discussed in Section D, *supra*, Microsoft is providing the Court with two alternative proposals for expert discovery.

### First Alternative Schedule

1.      Not later than 30 calendar days prior to the scheduled date of the remedy hearing, Plaintiffs should identify the expert witnesses they intend to call to testify at that hearing.  Not later than 15 calendar days prior to the scheduled date of the remedy hearing, Microsoft should identify the expert witnesses it intends to call to testify at that hearing.  Separately with respect to each such expert witness, the parties should produce the reports and other material required under Rule 26(a)(2)(A)-(B) of the Federal Rules of Civil Procedure.

2.      Expert witnesses identified pursuant to the preceding paragraph may be deposed beginning 3 calendar days following production of the materials required by the preceding paragraph, *provided that,* without leave of court, (a) no such deposition may last more than one

day (8 hours of testimony), and (b) no such deposition shall occur later than 5 calendar days prior to the scheduled date of the remedy hearing.

***Second Alternative Schedule***

1. Not later than 45 calendar days prior to the scheduled date of the remedy hearing, Plaintiffs should identify the expert witnesses they intend to call to testify at that hearing.  Not later than 25 calendar days prior to the scheduled date of the remedy hearing, Microsoft should identify the expert witnesses it intends to call to testify at that hearing.  Separately with respect to each such expert witness, the parties should produce the reports and other material required under Rule 26(a)(2)(A)-(B) of the Federal Rules of Civil Procedure.

2. Expert witnesses identified pursuant to the preceding paragraph may be deposed beginning 5 calendar days following production of the materials required by the preceding paragraph, *provided that,* without leave of court, (a) no such deposition may last more than one day (8 hours of testimony), and (b) no such deposition shall occur later than 10 calendar days prior to the scheduled date of the remedy hearing.

 H. <u>Conference (LCvR 16.3(c)(12))</u>

The parties propose that, subject to the Court's calendar, the final Pre-Hearing Conference occur 5 calendar days prior to the scheduled date of the remedy hearing.

 I. <u>Date for the Remedy Hearing (LCvR 16.3(c)(13))</u>

The parties propose that, subject to the Court's calendar, the Court set a firm date for commencement of the remedy hearing.

Plaintiffs believe that the public interest would best be served by commencing a remedy hearing promptly and by the expeditious imposition of relief that remedies the harm caused by

Microsoft's violations and restores competitive conditions.  Accordingly, Plaintiffs propose that, subject to the Court's calendar, the hearing commence on or about February 4, 2002.

Microsoft believes that the date for commencement of the remedy hearing is dependent upon the Court's rulings as to the scope of relief, and that the more extensive the relief in issue, the more extensive the pre-hearing procedures that will be required before a remedy hearing can occur.

J.    Plaintiffs' Arguments in Support of Their Proposed Schedule and Procedures

1.    Plaintiffs Have Proposed A Reasonable And Fair Pre-Hearing
Schedule That Effectuates The Directions Of The Court Of Appeals

Plaintiffs' proposal permits the parties efficiently to conduct all necessary discovery, exchange proposed final judgments, and proceed quickly to the "remedies-specific evidentiary hearing" ordered by the Court of Appeals.  *United States v. Microsoft Corp.*, 253 F.3d 34, 103 (D.C. Cir. 2001) (*Microsoft*).  With the goal of achieving the expeditious imposition of relief that will effectively remedy Microsoft's illegal conduct, Plaintiffs have already taken steps to narrow and focus the issues remaining on remand.  As Plaintiffs informed Microsoft on September 6, 2001, they will not pursue either the Section 1 tying claim or a structural reorganization of Microsoft on remand.  The procedures Plaintiffs now propose, which are based largely on procedures used throughout the case, would carry out the Court of Appeals' mandate in a manner that is both fair to all parties and designed to advance the critical public interest in promptly determining and imposing appropriate relief from Microsoft's violations.

Microsoft, on the other hand, proposes a needlessly lengthy and convoluted process that would first require the Court to consider, in the abstract, the proper scope of remedy for Microsoft's violations, before even beginning to engage in the "'full exploration of facts [that] is

usually necessary in order (for the District Court) properly to draw (an antitrust) decree' so as to 'prevent future violations and eradicate existing evils.'"  *Microsoft*, 253 F.3d at 101 (quoting *United States v. Ward Baking Co.*, 376 U.S. 327, 330-31 (1964) (quoting *Associated Press v. United States*, 326 U.S. 1, 22 (1945))).  Microsoft has it exactly backwards.  As the Court of Appeals stated (and Microsoft itself argued previously), the Court must conduct an evidentiary hearing to resolve disputed factual issues before it can determine the proper scope of the remedy it should impose.  The Court cannot determine the scope in the abstract.  Microsoft's proposal would simply invite unnecessary delay.

Further, Microsoft cannot credibly assert that it is wholly unable even to begin to take the discovery necessary to proceed with a remedies-specific hearing.  Plaintiffs have informed Microsoft that the conduct-related remedies they will seek on remand will be modeled on the interim conduct provisions of the District Court's prior Final Judgment and may include additional restrictions on Microsoft's conduct that may be necessary given that there will not be a structural reorganization of the company.  Microsoft has been aware of the interim conduct provisions of the District Court's prior order for over a year.  Moreover, to the extent that Plaintiffs seek additional restrictions on Microsoft's conduct which may be necessary to carry out the goals of remedy articulated by the Court of Appeals, Microsoft will be fully informed of those additional restrictions soon after entry of a scheduling order, under Plaintiffs' proposed schedule.

> a.   *Plaintiffs' Proposals Concerning The Pre-Hearing Schedule Are Realistic, Fair, and Based On Prior Practice In This Case*

The need for further discovery in these remand proceedings is limited.  There already is an extensive evidentiary record detailing examples of the middleware threats to Microsoft's

monopoly, the nature and extent of the many exclusionary acts Microsoft took to crush those threats, and the industry context and impact of Microsoft's unlawful acts.  The liability trial lasted 78 days, and included the testimony of 26 live witnesses, 79 deposition witnesses, and the introduction of over 2700 exhibits.  *Microsoft*, 253 F.3d at 47.  That trial resulted in detailed and extensive Findings of Fact which the Court of Appeals upheld.  Thus, many of the facts relevant to fashioning a remedy for Microsoft's violations of Section 2 are already established.  Further discovery can be focused primarily on updating information relating to Microsoft's on-going conduct, especially with respect to Windows XP (the latest version of its operating system); on the way the market has evolved since the District Court's Final Judgment was entered; on what additional conduct restrictions may be necessary given that there will not be a breakup of Microsoft; and on evidence related to the efficacy of both Plaintiffs' and Microsoft's ultimate proposed final judgments.  Such discovery can and should be completed quickly and efficiently.

The schedule proposed by Plaintiffs is modeled substantially on the schedule previously entered by the District Court to govern the liability proceedings, which the Court of Appeals found "hardly problematic" and "noteworthy" in expediting the liability trial.  *See Microsoft*, 253 F.3d at 48, 100-01.  Moreover, the Court of Appeals found that Microsoft's objections to the trial procedures were "easily disposed of."  *Id*. at 100.  In the liability phase, barely five months passed between the time of the filing of Plaintiffs' Complaints and the commencement of the liability trial, even though the issues to be considered and developed were numerous and highly complex.  This period for discovery did not prejudice any party and, indeed, the Court of Appeals rejected Microsoft's claim that the expedited scheme "inhibited" its ability to conduct discovery.  *Id*. at 100.  Plaintiffs' proposed schedule here, in a remand proceeding with significantly fewer issues, is only slightly shorter.  Defendant's assertion that significantly more

time is needed to prepare for a remedy hearing than was taken to prepare for the entire trial on the merits is simply untenable.

Moreover, Defendant's position is inconsistent with its statements during the initial remedy proceedings, during which it proposed approximately a four month period for discovery (assuming that a breakup of Microsoft was not part of the proposed remedy and that all of the conduct provisions in the prior Final Judgment were included). *See* Defendant Microsoft Corp.'s Position as to Future Proceedings on the Issue of Remedy, at 5, 9 & Ex. B (filed May 10, 2000). Microsoft's prior position contemplated beginning discovery after entry of a scheduling order on approximately May 24, 2000, with a remedy hearing date of October 2, 2000. Plaintiffs' current proposal contains almost exactly the same amount of time – entry of a scheduling order on approximately September 28, 2001, with a remedy hearing date of February 4, 2002. Consistent with Defendant's prior request, and the steps Plaintiffs have taken substantially to narrow the issues remaining on remand, no more than four months should be required to complete the necessary discovery and pre-hearing procedures.

Plaintiffs' proposal provides that the parties should respond to document requests (*see* Paragraph F(4), *supra*) and interrogatories (*see* Paragraph F(6), *supra*) within 10 calendar days. A ten-day response period applied to numerous rounds of document requests and interrogatories throughout discovery in the liability phase (*see* Pretrial Order No. 1, entered June 12, 1998, Paragraphs 1 and 2), and will be necessary to allow the parties quickly to prepare for a prompt hearing on remand. Plaintiffs also propose that the parties simultaneously exchange witness lists (*see* Paragraph D(6) and G(1), *supra*). Simultaneous exchange occurred in the liability proceedings for fact witnesses (*see* Pretrial Order No. 2, Paragraph 6) and expert witnesses were identified by Microsoft a mere two days after Plaintiffs listed their experts (*id.* at Paragraph 2)).

In contrast, Microsoft's current proposals, which call for significant delay between disclosure of Plaintiffs' witnesses and disclosure of Microsoft's, are unnecessary and would seriously prejudice Plaintiffs' ability to prepare for the hearing (*e.g.*, Microsoft's proposal in First Alternative Schedule Paragraphs D(6) and F(1) would give Microsoft 25 days to depose Plaintiffs' witnesses, but Plaintiffs only 10 days to depose Microsoft's; Microsoft's proposals for staggered expert witness disclosures similarly would give Plaintiffs only seven days, immediately before the hearing, to depose Microsoft's experts, while Microsoft would have 22 days to depose Plaintiffs' experts.  *See* First Alternative Schedule Paragraphs G(1) and (2), *supra*).

Plaintiffs' proposed schedule anticipates that, following a brief period for initial discovery to enable the parties to finalize their remedy proposals, they would submit those proposals to the Court early in the overall process, 30 calendar days from entry of a scheduling order or on November 9, 2001, whichever is later (*see* Paragraph D(1), *supra*), allowing ample time for further discovery to analyze and evaluate them.  This schedule, combined with the considerable notice Microsoft already has as to the nature of the relief Plaintiffs will be seeking, makes baseless Microsoft's extreme assertion that, if Plaintiffs contemplate any remedy provisions beyond those in the prior Final Judgment, Microsoft cannot even take the first step of proposing a pre-hearing schedule until it has seen the final, precise details of those provisions.

> b.    *Plaintiffs' Proposals Concerning The Nature Of The Remedy Proceedings Are Reasonable, Efficient, And Based On Prior Practice In This Case*

Plaintiffs' proposal that the direct testimony of witnesses at the hearing be submitted in the form of written declarations adopts the practice that the District Court previously ordered and the parties successfully followed in the primary portion of the liability phase of this case.  *See,*

*e.g.,* Pretrial Order No. 2, ¶ 11 (entered August 6, 1998).  The Court of Appeals rejected

Microsoft's argument that requiring the submission of written direct testimony was improper.

*See Microsoft*, 253 F.3d at 100.  The use of written directs previously was, and would be again

on remand, an efficient way to streamline the presentation of evidence and to expedite the

hearing while still giving all parties the ability to fully present their cases.

Similarly, Plaintiffs' proposed limit on the length of the remedy hearing, while not a

procedure used in the liability case, would, particularly when combined with the use of written

direct testimony, ensure that the hearing proceeded promptly and efficiently while still providing

the parties ample opportunity to present their evidence and to cross examine opposing witnesses.

Plaintiffs' proposal is consistent with the duration of remedy hearings approved by the Supreme

Court.  *See Ford Motor Co. v. United States,* 405 U.S. 562, 571 (1972) (nine day remedy hearing

resulting in divestiture order); *see also Microsoft,* 253 F.3d at 102.)

> 2.    Because Both The Legal Standard Applicable To These
>        Proceedings And The Liability Determination Of The
>        Court Of Appeals Are Clear, There Is No Justification For
>        <u>The Unspecified "Narrowing" Proceedings Urged By Microsoft</u>

The legal standard applicable to these proceedings – and, indeed, the goals and available

tools for relief in an antitrust case – are well settled.  As the Court of Appeals itself noted, the

District Court's remedy decree should "unfetter" the operating system market from Microsoft's

anticompetitive conduct, deny Microsoft "the fruits" of its violations of Section 2, and "ensure

that there remain no practices likely to result in monopolization in the future."  *Microsoft*, 253

F.3d at 103 (quoting *Ford Motor Co.*, 405 U.S. at 577 and *United States v. United Shoe Mach.*

*Corp.*, 391 U.S. 244, 250 (1968)).  Plaintiffs propose sensible procedures to effectuate the Court

of Appeals' mandate.

This Court necessarily has "large discretion" to craft an appropriate remedy (*Int'l Salt Co. v. United States*, 332 U.S. 392, 401 (1947); *see also Ford Motor Co.*, 405 U.S. at 573) and is "empowered to fashion appropriate restraints on the [defendant's] future activities both to avoid a recurrence of the violation and to eliminate its consequences."  *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 697 (1978).  Thus this Court is not limited to imposing, as Microsoft urges, a "simple proscription against the precise conduct [the violator] previously pursued."  *Id.* at 698.  Instead, the Court "has broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future unless enjoined, may fairly be anticipated from the defendant's conduct in the past." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 132 (1969) (quoting *NLRB v. Express Publ'g Co.*, 312 U.S. 426, 435 (1941)).  Relief may "range broadly through practices connected with acts actually found to be illegal" and "[a]cts entirely proper when viewed alone may be prohibited."  *United States v. United States Gypsum Co.*, 340 U.S. 76, 89 (1950); *see also United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 727 (1944) ("Of course, a mere prohibition of the precise scheme would be ineffectual to prevent restraints.").

Similarly, there can be no reasonable dispute concerning the liability determination made by the District Court and affirmed by the Court of Appeals.  First the District Court, *United States v. Microsoft Corp.*, 87 F. Supp. 2d 30 (D.D.C. 2000) (*Conclusions of Law*), and then the Court of Appeals, *Microsoft*, 253 F.3d 34, found that Microsoft had violated Section 2 of the Sherman Act by engaging in a variety of exclusionary acts intended to protect its PC operating system monopoly.  In particular, Microsoft's illegal conduct restricted the effective distribution and use of middleware software that posed a nascent threat to its monopoly because middleware provided a platform for third-party software development.  *See Conclusions of Law*, 87 F. Supp.

2d at 35-51; *Microsoft*, 253 F.3d at 50-79.  Because both the applicable remedial legal standard and the liability determination of the Court of Appeals are clear, this case should move swiftly toward the imposition of an appropriate remedy.

Equally important, it has now been well over a year since the District Court issued its liability determination and final judgment, and three months since the Court of Appeals issued its decision affirming in large part the District Court's Section 2 liability determinations.  Yet, to date no relief from Microsoft's illegal conduct has been imposed.  Indeed, under the various alternative schedules proposed by Microsoft, it appears likely that these proceedings could last well into 2002, or substantially later.  This delay advantages only Microsoft because, while it waits for these proceedings to conclude, it continues to have available to it all of the tools condemned by both Courts to continue its illegal maintenance of its monopoly.  The harm to competition in the computer industry caused by Microsoft's illegal maintenance of its monopoly only increases with time.  As the Court of Appeals noted, it has been over six years since Microsoft first began its extensive illegal campaign against the middleware threat, and "six years seems like an eternity in the computer industry."  *Microsoft*, 253 F.3d at 49.  Accordingly, prompt imposition of a remedy is essential to prevent further harm to competition and consumers.

Microsoft's proposal to defer establishing a pre-hearing schedule for discovery and other procedures until after this Court has embarked on unspecified "narrowing" proceedings to consider "what types of relief can be considered" finds no support in the case law, and certainly not in the Court of Appeals' decision in this case.  Nothing in the applicable precedent or the Court of Appeals' decision suggests that it would be necessary, much less reasonable, for this Court to deviate from well-settled remedy law principles in determining an appropriate remedy

in this case.  And yet, this is precisely what Microsoft urges the Court to do.  Plaintiffs assert that the parties, the Court and the public would be best served by commencing discovery immediately, with the goal of concluding the remand proceedings as soon as the Court's calendar will allow.

> 3.    Conclusion

For the reasons set forth above, Plaintiffs respectfully request that the Court enter a discovery and scheduling order that adopts the fair, efficient, and proven procedures proposed by Plaintiffs.

> K.    Microsoft's Arguments in Support of its Proposed Schedule and Procedures

> 1.    Introduction

The Court of Appeals vacated the remedy previously entered in this case for four independent reasons.  *United States* v. *Microsoft Corp.*, 253 F.3d 34, 98, 116-17 (D.C. Cir. 2001), *petition for cert. filed*, 70 U.S.L.W. 3107 (U.S. Aug. 7, 2001) (No. 01-236).  One reason was that the scope of Microsoft's liability had been substantially narrowed on appeal.  As the Court of Appeals stated, "Only liability for the § 2 monopoly-maintenance violation has been affirmed— and even that we have revised."  *Id*. at 104.  Because "some—indeed most—of the findings of remediable violations [did] not withstand appellate scrutiny," *id*. at 105, the Court of Appeals instructed this Court to "consider *which* of the decree's conduct restrictions remain viable in light of our modification of the original liability decision," *id*. (emphasis added).  In describing the task on remand, the Court of Appeals stressed that injunctive relief "should be tailored to fit the wrong creating the occasion for the remedy."  *Id*. at 107.  The Court of Appeals also stated that absent a significant causal connection between the conduct found to be anticompetitive and the maintenance of a monopoly, "the antitrust defendant's unlawful behavior should be remedied by

'an injunction against continuation of that conduct.'"  *Id.* at 106 (citation omitted).  The Court of Appeals concluded its remedy discussion as follows: "[W]e have drastically altered the scope of Microsoft's liability, and it is for the District Court in the first instance to determine the propriety of a specific remedy for the limited ground of liability which we have upheld."  *Id.* at 107.

Despite this clear guidance from the Court of Appeals, Plaintiffs have advised Microsoft that they intend to pursue *all* of the vacated conduct provisions—which are every bit as radical as the now-discarded proposal to break up the company—together with such *additional* provisions as Plaintiffs conclude are necessary after 30 days of discovery.  Even before the Court of Appeals "drastically altered the scope of Microsoft's liability," *id.*, many of the vacated conduct provisions were plainly improper because they are punitive and range far beyond the case that was tried—a case that Plaintiffs expressly limited to specific conduct relating to operating systems for Intel-compatible personal computers ("PCs").  As Microsoft previously observed, many of the provisions relate to products, markets and allegations not at issue in the case.  Indeed, the provisions encompass products like Windows CE (an operating system for handheld computers and other non-PC devices) and Windows 2000 Server (an operating system for large corporate network computers called "servers") that were barely mentioned at trial.  *See* MS Summ. Resp. to Pls.' Proposed Final J. at 2 (May 10, 2000).  Now that the Court of Appeals "has drastically altered the District Court's conclusions on liability," 253 F.3d at 105, virtually all of the vacated conduct provisions are unwarranted.

Microsoft believes that the time needed for discovery—and the procedures needed to prepare the case for an evidentiary hearing on relief—are dependent on the outer bounds of the relief under consideration.  If the Court ultimately concludes that most of the vacated conduct provisions are now inappropriate as a matter of law, then the Court should enter the shorter of

Microsoft's two proposed schedules, which provides for minimal additional discovery and a relatively abbreviated evidentiary hearing.  On the other hand, if the Court concludes that such a determination must await the completion of discovery, and Plaintiffs persist in their efforts to expand this case to cover products, markets and allegations never before addressed, then at least six months of additional discovery will be required—and possibly more, depending on what additional provisions Plaintiffs seek in their proposed final judgment.  In short, the procedures to be followed on remand cannot be established until the general contours of the relief at issue are determined, which in turn will determine the scope of discovery.

Microsoft therefore respectfully requests that the Court first address that question— preferably with the assistance of further briefing—and thereafter enter a scheduling order to govern further proceedings.  If the Court elects not to address the scope of relief at the outset, Microsoft requests that the Court adopt the longer of Microsoft's two proposed schedules.  *See* Sections C, D, F and G, *supra*.  Of course, even that schedule may need to be modified after Plaintiffs submit their proposed final judgment setting out the complete array of relief they intend to seek.

2. <u>Argument</u>

"Courts are not authorized in civil proceedings to punish antitrust violators, and relief must not be punitive."  *United States* v. *E.I. du Pont de Nemours & Co.*, 366 U.S. 316, 326 (1961).  Moreover, "[t]he mere existence of an exclusionary act does not itself justify full feasi- ble relief against the monopolist to create maximum competition."  III PHILLIP E. AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW ¶ 650a, at 67 (1996) (quoted in *Microsoft*, 253 F.3d at 106).  Rather, "more extensive equitable relief" is appropriate only if there is "a *significant causal connection* between the conduct and creation or maintenance of the market power."  *Id.*

¶ 653b, at 91-92 (emphasis added).  As the Court of Appeals held, "Absent such causation, the antitrust defendant's unlawful behavior should be remedied by 'an injunction against continuation of that conduct.'"  253 F.3d at 106 (quoting Areeda, *supra* ¶ 650a, at 67).

Plaintiffs have never contended that Microsoft acquired monopoly power in Intel-compatible PC operating systems unlawfully.  *See* GX 2517 at 11.  Nor did they show a "significant causal connection" between the conduct that the Court of Appeals found to be anti-competitive and the continuation of Microsoft's leading position in PC operating systems.  To the contrary, as the Court of Appeals stated, "the District Court expressly did not adopt the position that Microsoft would have lost its position in the OS [operating system] market but for its anticompetitive behavior."  253 F.3d at 107 (citing Finding of Fact ¶ 411).  In fact, for purposes of assessing liability, the Court of Appeals "found a causal connection between Microsoft's exclusionary conduct and its continuing position in the operating systems market *only through inference*."  *Id*. at 106-07 (emphasis added).  Given this tenuous causal connection, the only appropriate remedy here is an injunction against continuation of the types of conduct that the Court of Appeals held to be anticompetitive.

The vacated conduct provisions are not simply an injunction against those types of conduct.  They are *significantly* broader than that.  Moreover, they would wreak havoc not only on Microsoft, but also on the thousands of companies that build products that take advantage of Microsoft's innovations in Windows.  *See* MS Summ. Resp. to Pls.' Proposed Final J. at 23-55.  The Court should not entertain a demand for relief that is plainly improper as a matter of law.  Nor should Plaintiffs be permitted to conduct plenary discovery, with all of the attendant burdens on Microsoft and third parties, in support of a remedy that is legally unsustainable.  In the inter-

ests of judicial economy, at the very outset of these proceedings, this Court should determine the outer bounds of relief under consideration in light of the Court of Appeals' decision.

> a.   *The Vacated Conduct Provisions Relate to Products, Markets and Allegations That Have No Relation to Plaintiffs' Theory of the Case and That Were Not the Subject of Evidence at Trial.*

The focus of the trial was Microsoft's development and distribution of Web browsing software in competition with Netscape.  Plaintiffs' theory was that Netscape's Web browsing software, called Navigator, and Sun's Java technologies were unique in that they had the potential to weaken the applications barrier to entry into the PC operating system market by providing an alternative to Windows as a platform for general purpose applications.  In advancing this theory, Plaintiffs alleged only two product markets—the market for Intel-compatible PC operating systems and the market for Web browsing software.  (The Court of Appeals held that Plaintiffs did not prove the existence of the latter market.  *See* 253 F.3d at 81-82.)  Although the case tried was narrowly focused, the vacated conduct provisions would regulate large portions of Microsoft's business unrelated to PC operating systems or Web browsing software.  Those provisions encompass products and conduct that were not the subject of evidence at trial and that have nothing to do with Plaintiffs' theory of the case.  Microsoft objected to these provisions on this ground even before the Court of Appeals drastically narrowed the scope of Microsoft's liability. *See* MS Summ. Resp. to Pls.' Proposed Final J.  If Plaintiffs wish to raise new allegations and seek relief with respect to other products, they must bring a new case.

To take one example, Section 3.b of the vacated judgment would require Microsoft to share with its competitors all interfaces and protocols that Microsoft employs to enable "any Microsoft software installed on one computer (including but not limited to server Operating

Systems and operating systems for handheld devices) to interoperate with a Windows Operating System (or Middleware distributed with such Operating System) installed on a Personal Computer." Those interfaces and protocols are the fruits of Microsoft's substantial research and development efforts and are protected by intellectual property laws. Plaintiffs presented *no* evidence at trial concerning Microsoft's operating systems for large corporate network servers (Windows NT 4.0 Server and Windows 2000 Server) or handheld computers (Windows CE). Plaintiffs instead took the position that those other operating systems were not part of the relevant product market. Having defined the market to include only a subset of Microsoft's operating systems—a market definition that was affirmed on appeal—Plaintiffs cannot now seek to include other operating systems as part of the remedy in this case.

Plaintiffs also presented *no* evidence at trial concerning the interfaces and protocols that enable server and handheld operating systems to "interoperate" with Microsoft's PC operating systems (Windows 95 and Windows 98). Nor did Plaintiffs claim, much less prove, that Microsoft violated the antitrust laws by disclosing insufficient technical information to enable competing server and handheld operating systems to work with Microsoft's PC operating systems. As Microsoft explained in May 2000, the entire concept of "interoperability" between PCs and network servers or handheld devices is a complex subject that was not addressed at trial. *See* MS Summ. Resp. to Pls.' Proposed Final J. at 34-35.

Section 3.b also would require Microsoft to disclose to computer manufacturers ("OEMs"), independent software vendors ("ISVs") and independent hardware vendors ("IHVs") source code for all Microsoft operating systems, as well as any other Microsoft products such as Office that fit Plaintiffs' over-broad definition of "middleware." Once again, Plaintiffs presented *no* evidence at trial concerning many of these operating systems or products like Office. Nor did

Plaintiffs advance any allegations, much less evidence, that would justify such a sweeping and draconian remedy that would result in the wholesale taking of some of the world's most valuable intellectual property to the detriment of the entire PC industry.

> b.   *Nearly All of the Vacated Conduct Provisions Are Inappropriate Because the Scope of Microsoft's Liability Has Been Drastically Limited.*

The Court of Appeals vacated the prior remedy because, among other reasons, it had substantially modified the underlying bases of liability:

> Of the three antitrust violations originally identified by the District Court, one is no longer viable: attempted monopolization of the browser market in violation of Sherman Act § 2.  One will be remanded for liability proceedings under a different legal standard: unlawful tying in violation of § 1.  Only liability for the § 2 monopoly-maintenance violation has been affirmed—and even that we have revised.

253 F.3d at 103-04.  (Plaintiffs have elected not to retry their tying claim under Section 1 of the Sherman Act.)  The Court of Appeals left it to this Court "in the first instance to determine the propriety of a specific remedy for the *limited ground of liability which we have upheld*."  *Id*. at 107 (emphasis added).

Although the scope of Microsoft's liability was drastically altered, Plaintiffs are unwilling to narrow their request for conduct restrictions.  Nor can Plaintiffs justify such broad relief on the ground that it is necessary to create competition in the relevant market.  As the Court of Appeals stated, there is no finding that there would have been greater competition in the market for Intel-compatible PC operating systems but for Microsoft's conduct.  *See id*.  Given the tenuous causal connection between the conduct held to be anticompetitive and Microsoft's continued position in PC operating systems, Plaintiffs are entitled to no more than an injunction against continuation of the specific types of conduct held to be anticompetitive.  *See id*. at 106.

A brief review of the vacated conduct provisions demonstrates that most of them are improper in view of the Court of Appeals' decision.  For instance, Sections 3.a.i and 3.a.ii are unwarranted because the Court of Appeals did not hold that Microsoft took adverse actions against OEMs for supporting competing products or that licensing Windows to differently-situated OEMs under different contract terms was anticompetitive.  Section 3.b is unwarranted because the Court of Appeals did not hold that the nature and extent of Microsoft's disclosure of information about its operating systems to OEMs, ISVs and IHVs was anticompetitive.  Section 3.c is unwarranted because the Court of Appeals did not hold that Microsoft took any action that interfered with or degraded the performance of any non-Microsoft software running on Windows.  Section 3.h is unwarranted because the Court of Appeals did not hold that Microsoft entered into any agreements with actual or potential platform competitors that prevented them from developing or distributing alternatives to Windows.  And Section 3.i is unwarranted because the Court of Appeals did not hold that providing OEMs with financial incentives to ship the latest version of Windows was anticompetitive.

Two additional examples illustrate the extent to which many of the vacated conduct provisions are improper given the Court of Appeals' decision.  Section 3.a.iii(3) provides that Microsoft shall not restrict OEMs from modifying Windows to display an alternative user interface upon the conclusion of the Windows boot sequence.  Yet the Court of Appeals held that Microsoft's "prohibition on OEMs automatically launching a substitute user interface upon completion of the boot process . . . is not an exclusionary practice that violates § 2 of the Sherman Act."  253 F.3d at 63.  Similarly, Section 3.f, which is entitled "Ban on Contractual Tying," provides that Microsoft shall not condition the licensing of Windows on an OEM's agreement to

license another Microsoft software product.  Yet the Court of Appeals vacated the tying

violation, *see* 253 F.3d at 84-97, and Plaintiffs have decided not to pursue that claim on remand.

> **c.** **If the Court Elects Not To Address the Scope of Relief**
> **at the Outset, It Should Adopt the Longer of Microsoft's**
> **Two Proposed Schedules.**

If the Court elects not to address the general contours of relief now—and thus does not

set limits on the scope of discovery—Microsoft requests that the Court adopt the longer of

Microsoft's two proposed schedules, which culminates in an evidentiary hearing approximately

six months from now.  *See* Sections C, D, F and G, *supra*.  The more extensive the remedy under

consideration, and the more that remedy encompasses products and conduct outside the trial

record, the more time Microsoft will require to defend its interests and show that the proposed

remedy would stymie innovation and harm the PC industry.  Microsoft respectfully submits that

the longer of its two proposed schedules establishes procedures and time periods commensurate

with the breadth and severity of the vacated conduct provisions.  It is important to recognize,

however, that those time periods may need to be adjusted after Plaintiffs disclose what, if any,

relief they will seek in addition to the vacated conduct provisions.

Although they appear at first blush to be less extreme than breakup, the vacated conduct

provisions are similarly radical and would retard rather than promote competition and innovation

in the PC industry.  Those provisions would result in, among other things, wholesale confiscation

of Microsoft's intellectual property and intrusive governmental regulation of Microsoft's product

design.  If the Court is willing to consider those extreme provisions, Microsoft will require ade-

quate time to (i) conduct discovery, (ii) identify expert and fact witnesses, and (iii) prepare for an

evidentiary hearing.  At that hearing, Microsoft will establish not only that there is no justifica-

tion for Plaintiffs' proposed remedy, but also that the remedy would have deleterious effects both

on Microsoft's ability to innovate and on the well-being of the PC industry.  Microsoft also will prove that ambiguities in Plaintiffs' proposed remedy will create intractable problems in the future both for the parties and for this Court.  The challenges Microsoft faces in discovery and at the hearing on relief are exacerbated by the daunting complexity of the technologies at issue.

When Plaintiffs first proposed these extreme conduct provisions in May 2000, Microsoft submitted a proposed schedule that would have culminated in an evidentiary hearing in October 2000.  *See* MS Position as to Future Proceedings on the Issue of Remedy at 9 (May 10, 2000).  At the time, however, Plaintiffs had already stated precisely what relief they were seeking and had already served *both* declarations of their trial witnesses setting out their anticipated testimony *and* copies of their remedy exhibits.  Because Plaintiffs have not yet identified their trial witnesses or exhibits—indeed, they have not even submitted their proposed final judgment— Microsoft requires more time to prepare now than it did in May 2000.  Microsoft's proposed schedule provides for limited document and deposition discovery and reasonably prompt disclosure by the parties (first by Plaintiffs and then by Microsoft) of their witnesses, together with a brief summary of the witnesses' anticipated testimony, followed by limited document and deposition discovery relevant to that testimony.

Because the evidentiary hearing on relief is part of the trial of this matter, Microsoft also proposes that normal trial procedures apply at that hearing.  Those procedures include no strict time limits on the parties' presentation of their affirmative cases and submission of witnesses' direct testimony live in Court in accordance with Rule 43(a) of the Federal Rules of Civil Procedure.

Like Plaintiffs, Microsoft wishes to bring this case to a prompt conclusion, but fundamental principles of due process should not be sacrificed for the sake of dispatch.  There should be no rush to judgment given the importance of the interests at stake.

        3.      <u>Conclusion</u>

The nature and scope of the procedures required at this stage of the case depend upon the kind of remedies this Court is prepared to consider.  Microsoft therefore respectfully requests that the Court address the general contours of permissible relief before entering a scheduling order.  If the Court elects not to address that question now, then the Court should adopt the longer of Microsoft's two proposed schedules, recognizing that this schedule may need to be modified after Plaintiffs have submitted their proposed final judgment.

        Respectfully submitted,

ELIOT SPITZER
*Attorney General of New York*
JAY L. HIMES
*Chief, Antitrust Bureau*
RICHARD L. SCHWARTZ
*Assistant Attorney General*
120 Broadway
New York, New York 10271
(212) 416-6229

JAMES E. DOYLE
*Attorney General of Wisconsin*
KEVIN J. O'CONNOR
*Assistant Attorney General*
Office of Attorney General
State Capitol
Post Office Box 7857, Suite 114 East
Madison, Wisconsin 53707-7857

MARY JEAN MOLTENBREY
*Director of Civil Non-Merger Enforcement*
PHILLIP R. MALONE
RENATA B. HESSE
PAULA L. BLIZZARD
JACQUELINE S. KELLEY
*Trial Attorneys*
U.S. Department of Justice
Antitrust Division
901 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
(202) 514-2413

PHILIP S. BECK
*Special Trial Counsel*

WILLIAM H. NEUKOM

THOMAS W. BURT

DAVID A. HEINER, JR.

Microsoft Corporation

One Microsoft Way

Redmond, Washington 98052

(425) 936-8080

_____

JOHN L. WARDEN

RICHARD J. UROWSKY

STEVEN L. HOLLEY

RICHARD C. PEPPERMAN, II

Sullivan & Cromwell

125 Broad Street

New York, New York 10004

(212) 558-4000

*Counsel for Defendant*
  *Microsoft Corporation*

September 20, 2001