IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Civil Action No. 98-1232 (CKK) |
| | Next Court Deadline:  November 6, 2001 |
| MICROSOFT CORPORATION, | Status Conference |
| Defendant. | |
| STATE OF NEW YORK *ex. rel.* Attorney General ELIOT SPITZER, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 98-1233 (CKK) |
| MICROSOFT CORPORATION, | |
| Defendant. | |

**DEFENDANT MICROSOFT CORPORATION'S SUBMISSION
REGARDING FURTHER PROCEEDINGS IN CIVIL ACTION NO. 98-1233**

This Court's November 2, 2001 Order states that "if a settlement is not reached

with regard to all parties in Civil Action No. 98-1233 by November 6, 2001, the non-settling

parties shall be prepared to proceed with the litigation schedule set forth in the Court's

Scheduling Order dated September 28, 2001."  Microsoft respectfully submits that (i) any

States that refuse to agree to the proposed Final Judgment submitted to the Court on

November 2, 2001 should be required in the first instance to present their objections to that

proposed Final Judgment in the context of the Tunney Act proceeding, and (ii) all further proceedings, including discovery, in Civil Action No. 98-1233 should be stayed pending completion of the Tunney Act proceeding.

1.     The Tunney Act requires the United States to file a competitive impact statement ("CIS") that explains why the proposed Final Judgment should be accepted by the Court.  The proposed Final Judgment and the CIS must then be published in the *Federal Register* and in designated newspapers so that they are made broadly available to the public. At the close of a 60-day public comment period, the United States has 30 days to respond to all comments received, including comments submitted by any States that elect not to settle.

2.     Before entering the proposed Final Judgment, this Court is required to determine "that the entry of such judgment is in the public interest."  15 U.S.C. § 16(e).  In making that determination, the Court may hold a hearing and "authorize full or limited participation . . . by interested persons."  *Id*. § 16(f).  The Court may not reject the decree, however, on the ground that other remedies might be viewed as preferable to remedies the United States found to be satisfactory.  *See United States* v. *Microsoft Corp.*, 56 F.3d 1448, 1461 (D.C. Cir. 1995).

3.     To the extent there are States that refuse to accept the proposed Final Judgment, they should not be permitted to litigate the issue of relief while the Court makes its determination of whether the proposed Final Judgment is in the public interest pursuant to the Tunney Act.

a.     The Attorney General of the United States, the official charged with enforcing the Nation's antitrust laws, has determined that the proposed Final Judgment appropriately redresses the violations at issue.  In bringing an action under Section 16 of the Clayton Act, the non-settling States stand not on the same footing as the Attorney General,

but in the same capacity as other private plaintiffs.  *See New York ex rel. Abrams* v. *Kraft Gen. Foods, Inc.*, 862 F. Supp. 1030, 1033 (S.D.N.Y. 1993) ("Although the State of New York is a governmental actor, it is considered a private party when seeking an injunction pursuant to the Clayton Act."), *aff'd*, 14 F.3d 590 (2d Cir. 1993).  While the non-settling States are also suing under their respective antitrust statutes, they have previously stipulated that those statutes are coterminous with the Sherman Act.  Sound public policy demands that this Court decide whether the proposed Final Judgment is in the public interest before permitting the States' private litigation to proceed.

b.    Unlike the typical consent decree, the proposed Final Judgment follows a determination on the merits by the Court of Appeals and implements a series of remedies consistent with the Court of Appeals' detailed decision.  Indeed, both the Attorney General and the Assistant Attorney General in charge of the Antitrust Division have correctly observed that the provisions of the proposed Final Judgment go beyond the relief required to give effect to the Court of Appeals' decision.

c.    The proposed Final Judgment—again unlike the typical consent decree—was formulated in response to this Court's September 27, 2001 Order directing the parties into around-the-clock settlement negotiations, which emphasized the importance of "resolv[ing] the parties' differences in this time of rapid national change."  The September 27, 2001 Order was based on this Court's belief that a settlement was in the national interest.  As the Court put it, "In light of the recent tragic events affecting our Nation, this Court regards the benefit which will be derived from a quick resolution of these cases as increasingly significant."  The Court should not permit the non-settling States' recalcitrance to delay or

jeopardize the settlement reached by Microsoft and the United States pursuant to this Court's directive.

4.      In these circumstances, any States that elect not to settle should be required to present their objections to the proposed Final Judgment in the congressionally-mandated Tunney Act proceeding, identifying specifically what they claim are deficiencies in the proposed Final Judgment.  After the Court makes its determination as to whether the proposed Final Judgment is in the public interest—informed by all of the submissions before it—there will be time enough to decide what more to do with regard to any remaining issues the non-settling States wish to pursue at that time.  Should further proceedings be necessary after the Tunney Act review, those proceedings will undoubtedly be far narrower than those contemplated by the Court's September 28, 2001 Scheduling Order.

5.      There are serious public policy concerns presented if a group of States is permitted to insist upon a different result from the one found to be appropriate by the federal officials empowered to enforce the Sherman Act in a case of national import.  The Court, however, need not reach that issue yet.  All that is necessary and appropriate now is a ruling that

compliance with the procedures prescribed by Congress is the first order of business, and should proceed with all else held in abeyance pending completion of the Tunney Act proceeding.

Dated:  Washington, D.C.
       November 6, 2001

                                Respectfully submitted,

                               _____

| | |
|---|---|
| William H. Neukom | John L. Warden (Bar No. 222083) |
| Thomas W. Burt | Richard J. Urowsky |
| David A. Heiner, Jr. | Steven L. Holley |
| Diane D'Arcangelo | Michael Lacovara |
| Christopher J. Meyers | Richard C. Pepperman, II |
| MICROSOFT CORPORATION | Ronald J. Colombo |
| One Microsoft Way | SULLIVAN & CROMWELL |
| Redmond, Washington 98052 | 125 Broad Street |
| (425) 936-8080 | New York, New York 10004 |
| | (212) 558-4000 |
| Dan K. Webb | |
| WINSTON & STRAWN | Bradley P. Smith (Bar No. 468060) |
| 35 West Wacker Drive | SULLIVAN & CROMWELL |
| Chicago, Illinois 60601 | 1701 Pennsylvania Avenue, N.W. |
| (312) 558-5600 | Washington, D.C. 20006 |
| | (202) 956-7500 |

                                *Counsel for Defendant*
                                 *Microsoft Corporation*