IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          Plaintiff,<br><br>               v.<br><br>MICROSOFT CORPORATION,<br><br>                          Defendant. | Civil Action No. 98-1232 (CKK)<br><br>Next Court Deadline: February 8, 2002<br>                            Status Conference |

**JOINT STATUS REPORT**

Pursuant to this Court's Order dated January 30, 2002, Plaintiff United States and Defendant Microsoft hereby file their Joint Status Report.

    A.    <u>Status Update</u>

          1.    <u>Background</u>

On November 6, 2001, following five weeks of intensive negotiation and mediation ordered by the Court, Plaintiffs the United States and the Settling States, and Defendant Microsoft Corporation, submitted to the Court a Revised Proposed Final Judgment ("RPFJ") to resolve the charges contained in civil antitrust Complaints filed on May 18, 1998. Pursuant to the requirements of § 16(b) of the Antitrust Procedures and Penalties Act ("Tunney Act"), 15 U.S.C. § 16(b)-(h), the United States filed with the Court its Competitive Impact Statement ("CIS") on November 15, 2001, and published the RPFJ and CIS in the *Federal Register* on November 28, 2001. 66 Fed. Reg. 59452 (2001). The CIS set forth the nature and purpose of the proceeding; a description of the practices and events at issue; a detailed explanation of the

RPFJ; the relief to be obtained and the anticipated effects on competition of such relief; the remedies available to private plaintiffs; a description of the procedures available for modification; a description and evaluation of alternatives actually considered by the United States; and a statement that no "determinative" materials and documents of the type described in Section 2(b) of the Tunney Act, 15 U.S.C. § 16(b), were considered in formulating the RPFJ.

Pursuant to 15 U.S.C. § 16(c) and the Court's Order of November 8, 2001, the United States published in the *Washington Post* (November 16 – 22, 2001), the *San Jose Mercury News* (November 17 – 23, 2001), and the *New York Times* (November 17 – 23, 2001) a notice that summarized the terms and anticipated competitive impact of the RPFJ and indicated where public comments should be directed. Although not required by the Tunney Act or the Court, the United States has also taken additional steps and posted the RPFJ and the CIS on the Department of Justice's Internet website. *See* <http://www.usdoj.gov/atr/cases/ms-settle.htm>. The RPFJ and CIS also have been provided in hard-copy form to individuals who have requested them.

On December 10, 2001, defendant Microsoft filed with the Court its description of "any and all written or oral communications by or on behalf of" Microsoft "with any officer or employee of the United States concerning or relevant to" the RPFJ, as required by 15 U.S.C. § 16(g).

2. Public Comments

On November 28, 2001, the United States published in the *Federal Register,* in addition to the RPFJ and the CIS, a detailed description of the procedures for submitting comments under the Tunney Act. 66 Fed. Reg. 59452 (2001). The United States also posted information on those procedures, along with hyperlinks to the RPFJ, CIS, United States' Complaint, and other case-related documents, on the Department of Justice website.

*See* <http://www.usdoj.gov/atr/cases/ms-settle.htm>.  The 60-day public comment period began on November 28, 2001, and ended on January 28, 2002.[1]  During that period, the United States received over 30,000 public comments.[2]  Based on those comments, the United States provides the following summary and categorization:

- Approximately 1,250 comments are unrelated in substance to *United States v. Microsoft* or the RPFJ (though they were sent to the address for public comments and may or may not mention the RPFJ in their "subject" line).

    o A small number of these submissions are simply advertisements or, in at least one case, pornography.  The United States proposes not to publish such submissions or to provide them as part of its filing to the Court.

    o The remainder of these unrelated comments address only the proposed settlement of the private, class-action litigation against Microsoft, and not the RPFJ.

- Roughly 2,800 comments are "form" letters or emails – essentially identical text submitted by different persons.

- Approximately 19,500 comments express an overall view of the RPFJ but do not contain any further discussion of it.  These comments do not, for example, attempt to analyze the

---

[1] Out of an abundance of caution the United States also chose to accept and treat as Tunney Act comments various communications from members of the public commenting on the proposed settlement that were received by the DOJ beginning on November 5, 2001, the first business day following submission of the initial Proposed Final Judgment to the Court, even though the official 60-day comment period had not yet begun.

[2] The large volume of comments in this case reflects in part the widespread use of electronic mail to submit comments (approximately 90 – 95% of the comments were submitted via e-mail, as opposed to approximately 5 – 10% via fax and fewer than 1% via hand delivery) and the fact that various groups, both opposed to, and in favor of, entry of the RPFJ, placed solicitations on their websites or sent mass electronic mailings urging people to submit Tunney Act comments.

substance of the RPFJ, do not address any of its specific provisions, and do not describe any particular strengths or shortcomings of it.

- Approximately 2,900 of the comments can be characterized as containing a degree of detailed substance concerning the RPFJ. These substantive comments range from brief, one- or two-page discussions of some aspect of the RPFJ to 100- or more-page, detailed discussions of numerous of its provisions or alternatives. The essence of many of these substantive comments overlaps with other comments; that is, numerous comments address at least some of the same issues or raise similar arguments.

- Of the above substantive comments, approximately 45 can be characterized as "major" comments based on their length and the detail with which they analyze significant issues relating to the RPFJ. Once again, there is considerable duplication of issues and arguments among these major comments.

- Of the total comments received, roughly 7,500 are in favor or urge entry of the RPFJ, roughly 15,000 are opposed, and roughly 7,000 do not directly express a view in favor or against entry. For example, a significant number of comments contain opinions concerning Microsoft generally, *e.g.*, "I hate Microsoft," or concerning this antitrust case generally, *e.g.*, "This case should never have been brought," but do not state whether they support or oppose entry of the RPFJ.

    3.    Publication of Public Comments

Section 2(b) of the Tunney Act, 15 U.S.C. § 16 (b), calls for publication in the *Federal Register* of the written comments received by the United States relating to a proposal for a consent judgment in an antitrust case. Given the unprecedented, massive volume of comments submitted in this case, actual publication of every comment in the *Federal Register* would be

extraordinarily expensive and cumbersome. Based on the United States' estimates of the final volume of comments and on estimates of publication costs from the *Federal Register*, publication of the comments received likely would cost approximately $4 million.[3] Consequently, the United States proposes an alternate publication procedure – by Internet website and CD-ROM – that would achieve significantly *greater* public access to the comments – the intent of the Tunney Act procedures – than would *Federal Register* publication but without the excessive, unnecessary cost.

When faced with a similar, though far less drastic, situation, the district court considering the proposed modifications of the decree in *United States v. Western Electric* (Civ. No. 82-0192 (D.D.C.)) ("*AT&T*") relieved the United States of the obligation to publish comments in the *Federal Register*.[4] In *AT&T*, the United States received approximately 8,750 pages of comments, publication in the *Federal Register* of which would have cost more than $600,000. In order to spare the government from this expense while ensuring that comments were sufficiently available to interested persons, the court permitted the United States to adopt an alternate procedure. The United States: (1) published the name and address of each person submitting

---

[3] The United States estimates that publication of all the comments received would entail roughly 10,000 pages of the *Federal Register*. The cost of such publication is $465 per *Federal Register* page, resulting in a likely total cost in excess of $4 million. In passing the Tunney Act, Congress did not authorize appropriations for specific instances of compliance. H.Rep. No. 1463, 93 Cong., 2d Sess. (1974), *reprinted in* 1974 U.S. Code Cong & Admin. News 6535, 6536 ("House Antitrust Report"). Accordingly, payment for publication of the comments in the *Federal Register* would, in the absence of some special appropriation or other extraordinary measure, have to come from the budget of the Antitrust Division.

[4] Although *AT&T* involved modification of an existing antitrust decree, pursuant to the parties' consent, the court ordered that the United States comply with the substantive Tunney Act procedures, including the taking of public comments, without ruling on the application of the Tunney Act to the decree modification procedures generally.

comments and the number of pages in each comment in the *Federal Register*; (2) made copies of all of the comments available for review at 27 district courts throughout the country; (3) provided paper copies of any designated comments at cost upon request; and (4) provided microfilm reels of all comments at cost upon request. *See United States v. Western Electric*, 47 Fed. Reg. 21214; *United States v. American Telephone & Tel. Co.*, 552 F. Supp. 131, 147 n. 58 (D.D.C. 1982), *aff'd*, 460 U.S. 1001 (1983). The United States issued a press release announcing the procedures for obtaining copies of comments and included that information in its publication in the *Federal Register*.

The United States proposes a similar alternate procedure to publication of all comments in the *Federal Register* in this Tunney Act proceeding. Given advances in information technology since the time of *AT&T*, such a procedure will result in significantly easier and greater public access to the comments than either the *AT&T* procedure or *Federal Register* publication. The United States asks the Court to permit it to: (1) publish the names of persons and entities submitting comments in the *Federal Register*, along with a unique identifier number that will identify each comment and the number of pages in each comment; (2) post this list of names, numbers, and number of pages, along with the full text of all the comments, on the Department of Justice website, organized in a way that permits the public easily to locate comments by their identifier number; the relatively small group of "major" comments would be further organized by subject matter addressed, and all of the comments would be text searchable; (3) provide, on the Department of Justice website, a means for interested persons to download a compressed version, *e.g.*, a "Zip" file, of the full text of all comments; and (4) provide to the public upon request copies of one or more CD-ROMs containing the full text of all comments, at cost. The United States would also post on its website a copy of its response to the comments,

with hyperlinks from that response to some of the "major" comments. In addition, the United States will issue a press release notifying the public of the availability of comments and the alternate procedures for downloading or otherwise obtaining a copy. And, of course, the United States will submit to the Court the full text of all comments on CD-ROM and, if the Court wishes, in hard-copy form.

This proposed procedure will permit the public to have unprecedented access to the United States' response and all of the many thousands of comments received – far better access than would be achieved by publication in the *Federal Register* – thereby effectuating the public inspection and review purposes and intent of 15 U.S.C. § 16(b) while avoiding a huge, unnecessary expenditure of millions of taxpayer dollars. Indeed, the significance of the Internet as a means of public access to and participation in the Tunney Act process is amply illustrated by the over 27,000 comments submitted to the United States via e-mail. Microsoft has no objection to this proposed procedure.

        4.      <u>Timing</u>

The United States is preparing its response to the public comments on the RPFJ, and expects to file its response with the Court and post it on the Department of Justice website on or before February 27, 2002. The United States will also publish its response to the comments in the *Federal Register* as required by the Tunney Act, 15 U.S.C. § 16(d), as quickly as possible after its submission to the Court.

    B.    <u>Possible Modifications to the RPFJ</u>

As contemplated by the Tunney Act, the United States and Microsoft are considering whether, in response to the public comments, to submit to the Court proposed modifications to the RPFJ. Proposed modifications, if any, will be submitted on or before February 27, 2002.

C. Written Submissions in Support of RPFJ

In addition to its written response to public comments and copies of all the comments themselves, the United States will submit a motion for entry of the RPFJ and a memorandum in support. Microsoft anticipates submitting to the Court on or before February 27, 2002, a brief in support of entry of the RPFJ. In addition, because Microsoft will not have had access to all the public comments nor will it have seen the United States' written response to the comments before it submits its brief, Microsoft may seek leave of the Court to submit a supplemental brief.

The parties also will be prepared to submit further briefing in response to any specific issues the Court identifies following its review of this Joint Status Report, the public comments, the United States' response thereto, Microsoft's brief, or other submissions.

D. Hearing on the RPFJ

Once the Court has received the public comments, the United States' response to the comments and its brief, and Microsoft's brief, it will have a comprehensive and extraordinarily detailed record before it on which to determine whether the RPFJ is in the public interest and should be entered. Given the sweeping volume and scope of these materials, the parties believe that the need for any additional proceedings will be small. Nevertheless, the parties propose that the Court hold a limited hearing, during which it may receive oral argument and have the opportunity to ask questions about, and obtain additional explanations of, any issues the Court identifies as part of its review of the RPFJ.

The Tunney Act does not mandate a hearing or trial on the public interest issue. *United States v. Airline Tariff Publishing Co.*, 836 F. Supp. 9, 11 n.2 (D.D.C. 1993); *United States v. National Broadcasting Company*, 449 F. Supp. 1127 (C.D.Cal. 1978). Indeed, such a trial would largely defeat the purpose of a settlement. Instead, "[t]he Tunney Act expressly allows the court

C. Written Submissions in Support of RPFJ

In addition to its written response to public comments and copies of all the comments themselves, the United States will submit a motion for entry of the RPFJ and a memorandum in support. Microsoft anticipates submitting to the Court on or before February 27, 2002, a brief in support of entry of the RPFJ. In addition, because Microsoft will not have had access to all the public comments nor will it have seen the United States' written response to the comments before it submits its brief, Microsoft may seek leave of the Court to submit a supplemental brief.

The parties also will be prepared to submit further briefing in response to any specific issues the Court identifies following its review of this Joint Status Report, the public comments, the United States' response thereto, Microsoft's brief, or other submissions.

D. Hearing on the RPFJ

Once the Court has received the public comments, the United States' response to the comments and its brief, and Microsoft's brief, it will have a comprehensive and extraordinarily detailed record before it on which to determine whether the RPFJ is in the public interest and should be entered. Given the sweeping volume and scope of these materials, the parties believe that the need for any additional proceedings will be small. Nevertheless, the parties propose that the Court hold a limited hearing, during which it may receive oral argument and have the opportunity to ask questions about, and obtain additional explanations of, any issues the Court identifies as part of its review of the RPFJ.

The Tunney Act does not mandate a hearing or trial on the public interest issue. *United States v. Airline Tariff Publishing Co.*, 836 F. Supp. 9, 11 n.2 (D.D.C. 1993); *United States v. National Broadcasting Company*, 449 F. Supp. 1127 (C.D.Cal. 1978). Indeed, such a trial would largely defeat the purpose of a settlement. Instead, "[t]he Tunney Act expressly allows the court

to make its public interest determination on the basis of the competitive impact statement and response to comments alone." *United States v. Enova Corporation*, 107 F. Supp.2d 10, 17 (D.D.C. 2000). Nevertheless, the court may, in its discretion, invoke additional proceedings when it determines such proceedings may assist in the resolution of issues raised by the comments. *Id.*[5] "Where the public interest can be meaningfully evaluated simply on the basis of briefs and oral argument, this is the approach that should be utilized." House Antitrust Report, *supra*, at 6539. The Court, of course, may also order additional briefing on key issues raised in the comments and the response should the Court conclude that such briefing is needed.

1. Proposed Format of Hearing

An orderly process, designed to inform the Court and to clarify any issues of concern, is the appropriate mechanism by which to supplement the extensive written record that will be before the Court. The parties propose that, in addition to the numerous written submissions, the Court conduct a one-day hearing on the RPFJ in which the parties may provide oral argument concerning their perspectives on the RPFJ and the public interest, answer any questions the Court may raise, and provide any additional information or explanation the Court requires. The

---

[5] While, as a general matter, a court in a Tunney Act proceeding is vested with great discretion concerning the nature of any proceedings to review a proposed consent decree, the legislative history of the Act establishes a few guiding principles. Congress clearly intended that "the trial judge will adduce the necessary information through the least time-consuming means possible," *see* S.Rep. No. 298, 93d Cong. 1st Sess. 6 (1973) ("Senate Antitrust Report"); H.Rep No. 93-1463, 93d Cong. 2d Sess. 8 (1974), U.S. Code Cong. & Admin. News 1974, 6535, 6539, even though the court *may* take other steps as it may deem appropriate. 15 U.S.C. § 16(f). Congress did not intend the Tunney Act to lead to lengthy hearings on the merits and thereby undermine the incentives for the United States and defendants to reach settlements on civil antitrust cases, Senate Antitrust Report, at 3, but instead intended that the consent decree process would remain a viable settlement option, calling it "a substantial antitrust enforcement tool." *See* Senate Antitrust Report, *supra* at 6-7; House Antitrust Report, *supra*, at 6538-39; *United States v. Microsoft Corp.*, 56 F.3d 1448, 1456 (D.C.Cir. 1995).

parties also propose that the Settling States be permitted to participate in this hearing and offer oral argument as well. While the requirements of the Tunney Act apply only to proposals for consent judgments submitted by the United States, as the Court noted in its Order of November 8, 2001, "the States which have chosen to enter into a settlement agreement with Microsoft will play an active role in advocating the entry of the consent judgment proposed in this case." Participation in oral argument at the hearing would thus be appropriate as would, the parties believe, the opportunity for the Settling States to submit their own brief in support of entry of the RPFJ.

Otherwise, participation by third parties generally in Tunney Act proceedings is usually denied both because the potential for delay outweighs the benefit from intervention (*see, e.g.*, *United States v. International Business Machines Corp.,* No. 72-344, 1995 WL 366383 (S.D.N.Y. June 19, 1995)) and because interested third parties are heard through the comments process. *United States v. G. Heilman Brewing Co.*, 563 F. Supp. 642, 652 (D. Del. 1983); *United States v. Carrols Development Corp.*, 454 F. Supp. 1215, 1221 – 22 (N.D.N.Y. 1978). That is particularly true in this case, where a large number of highly interested and motivated third parties have taken full advantage of the opportunity to submit extensive comments which set forth in painstaking detail their views of the RPFJ and whether or not the Court should enter it. As a result, third parties have had a full and effective mechanism to present to the Court any arguments or concerns they believe it should address in its public interest determination.

Consequently, the parties believe that further participation in this Tunney Act proceeding by third parties other than the Settling States is unwarranted and unnecessary. However, should the Court conclude that some additional oral argument by a limited number of third parties would be valuable to the Court in understanding or clarifying the comments or otherwise in

reviewing the RPFJ, the parties believe that such participation should occur in a way that maintains an orderly review process and does not unnecessarily prolong the proceedings or delay consideration of the RPFJ.

The parties propose that such participation, if any, be limited to a small, manageable number of such parties, that it be limited to brief oral argument at the hearing focused on key issues raised in the comments and responses identified by the Court as meriting further discussion, and that the participation be appropriately balanced between third parties that support entry of the RPFJ and third parties that are opposed to such entry.[6] In any event, the parties propose that the greatest portion of the hearing be allocated to the United States, the Settling States and defendant Microsoft and that they be permitted time to respond to arguments made by third parties, if any.

In any event, there is no basis for, and the parties believe that the Court should not conduct, an evidentiary hearing in this case. Where, as here, the Court has sufficient information to determine whether to approve a consent decree, an evidentiary hearing is neither necessary nor appropriate. *United States v. Associated Milk Producers*, 394 F. Supp. 29 (W.D. Mo.), *aff'd*, 534 F.2d 113, *cert. denied*, 429 U.S. 940 (1975*); G. Heilman Brewing Co.*, 563 F. Supp. at 642. "Only where it is imperative that the court should resort to calling witnesses for the purpose of eliciting additional facts should it do so." House Antitrust Report, *supra*, at 6539.

---

[6] The parties note, however, that they do not believe that there is a clear or easy mechanism to use to determine which of the various commentors should be permitted to provide oral argument. Even if the candidates are limited to those that submitted "major" comments, there still seems to be no readily apparent way to choose a small number of representative or usefully situated entities for further argument.

2. Scheduling of the Hearing

In light of the extensive comments and briefing that the Court will have before it, the parties believe that a hearing of one day in length will be sufficient to address any issues or areas of concern identified by the Court as appropriate for oral argument, even if a limited number of third parties are included. The United States believes that there is a substantial public interest in prompt resolution of the Tunney Act issues and entry of the RPFJ. Accordingly, the parties request that the Court conduct any Tunney Act hearing as soon as possible following submission of the public comments, the United States' response, and additional written materials, which will be filed by February 27, 2002. Specifically, the parties respectfully request that the Court hold the hearing, its calendar permitting, during the week of March 4, 2002.

Respectfully submitted,

_____

PHILLIP R. MALONE
RENATA B. HESSE
BARBARA J. NELSON
KENNETH W. GAUL
PAULA L. BLIZZARD
DAVID BLAKE-THOMAS
JACQUELINE S. KELLEY
*Trial Attorneys*
U.S. Department of Justice
Antitrust Division
901 Pennsylvania Avenue, N.W.
 Washington, D.C. 20530
(202) 514-2413

PHILIP S. BECK
*Special Trial Counsel*

| | |
|---|---|
| WILLIAM H. NEUKOM<br>THOMAS W. BURT<br>DAVID A. HEINER, JR.<br>Microsoft Corporation<br>One Microsoft Way<br>Redmond, Washington 98052<br>(425) 936-8080 | _____<br>JOHN L. WARDEN<br>RICHARD J. UROWSKY<br>STEVEN L. HOLLEY<br>RICHARD C. PEPPERMAN, II<br>Sullivan & Cromwell<br>125 Broad Street<br>New York, New York 10004<br>(212) 558-4000 |
| DAN K. WEBB<br>BRUCE R. BRAUN<br>Winston & Strawn<br>25 West Wacker Drive<br>Chicago, IL 60601-9703<br>(312) 558-5600 | CHARLES F. RULE<br>Fried, Frank, Harris, Shriver & Jacobson<br>1001 Pennsylvania Avenue, N.W.<br>Washington, DC 20004-2505<br>(202) 639-7000<br><br>*Counsel for Defendant*<br>  *Microsoft Corporation* |