IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>  Defendant. | Civil Action No. 98-1232 (CKK)<br><br>Next Court Deadline:<br>  February 15, 2002<br>  Status Conference |

**MEMORANDUM OF PLAINTIFF UNITED STATES IN RESPONSE TO THE CALIFORNIA PLAINTIFFS' MOTION FOR INTERVENTION, OR IN THE ALTERNATIVE, FOR LEAVE TO FILE A BRIEF AMICUS CURIAE IN THE TUNNEY ACT SETTLEMENT PROCEEDINGS CURRENTLY PENDING IN THIS COURT**

The United States opposes the motion of the California Plaintiffs for intervention, as the motion is without merit. Recognizing that it is "solely within the discretion of the [C]ourt to determine the fact, extent, and manner of participation" by amici, Order, Sept. 21, 2001, at 1, the United States suggests that the California Plaintiffs' alternative request for leave to file a brief amicus curiae should be denied because, in light of their submissions to the Court, the brief is unlikely to be helpful to the Court.

### INTRODUCTION

Movants claim a right to intervene in this case on the ground that entry of the Revised Proposed Final Judgment ("RPFJ") would interfere with their ability to "assert" the previously entered Findings of Fact ("Findings") and Conclusions of Law ("Conclusions") against Microsoft in a class action in a California state court. Motion at 1. They raise this claim even though the judge in that action has already "declared his intention to instruct the jury that Microsoft has

violated the antitrust laws based on the district court's affirmed Findings and Conclusions." The California Plaintiffs' Complaint in Intervention at ¶ 5 ("Comp."). Movants can point to no provision of the RPFJ or the Stipulation, however, that purports to limit their right to rely on the Findings and Conclusions in the state court action. Moreover, even if the RPFJ did contain such language, it would not be controlling in the state court action, as Movants themselves argue. Memorandum of Points and Authorities in Support of the California Plaintiffs' Motion to Intervene at 17 ("Mem.").[1] The preclusive effect of the Findings and Conclusions in the state court litigation is a matter to be determined by the California state court; it provides no basis for intervention in this case.

Movants also assert a more generalized interest in seeing that this Court does not flout the mandate of the court of appeals. Comp. at ¶ 6. A generalized interest in seeing that this Court does the right thing, however, is not a proper basis for intervention. And, in any event, Movants' contentions that the Tunney Act is inapplicable and that the mandate of the court of appeals precludes this Court from considering the RPFJ under procedures of the sort contemplated by the Tunney Act are meritless.

---

[1] Movants have numbered the pages of their three documents (Motion, Complaint, and Memorandum) as if the three constituted a single document. We employ those page numbers here.

# DISCUSSION

I. **Movants' Interest In Asserting the Findings and Conclusions Against Microsoft Provides No Basis for Intervention of Right**

The Federal Rules of Civil Procedure provide for intervention in a district court action as a matter of right if the applicant

> claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2).[2] Movants claim that the disposition of this action may as a practical matter impair or impede their ability to protect their interest in asserting the Findings and Conclusions against Microsoft in their California state court action. Motion at 1-2, citing Fed. R. Civ. P. 24(a)(2).[3] Movants' interest in asserting the Findings and Conclusions against Microsoft is not a qualifying interest under Rule 24(a)(2). *United States v. Associated Milk Producers, Inc.*, 534 F.2d 113, 116 n.3 (8th Cir. 1976) ("The cases unanimously hold that a private litigant's desire for [the] *prima facie* effect [of a litigated government judgment] is not an interest entitling a private litigant to intervene in a government antitrust case."). But in any event, these proceedings do not threaten to impair that interest. Arguments as to the effect of the Findings

---

[2]Intervention of right is also available "when a statute of the United States confers an unconditional right to intervene." Fed. R. Civ. P. 24(a)(1). The Tunney Act does not provide a right to intervene. *United States v. AT&T*, 552 F. Supp. 131, 218 (D.D.C. 1982), *aff'd*, 460 U.S. 1001 (1983); *United States v. G. Heileman Brewing Co.*, 563 F. Supp. 642, 648 (D. Del. 1983); *United States v. Microsoft*, 159 F.R.D. 318, 328 (D.D.C.), *rev'd on other grounds*, *United States v. Microsoft*, 56 F.3d 1448 (D.C. Cir. 1995); *United States v. Airline Tariff Publ'g Co.*, 1993-1 Trade Cas. (CCH) ¶ 70,191, at 69,894 (D.D.C. 1993). Movants appear not to rely on Rule 24(a)(1).

[3]The federal rules also provide for permissive intervention. Fed. R. Civ. P. 24(b). Movants, however, neither cite Rule 24(b) nor address the criteria for permissive intervention.

and Conclusions are properly addressed to the California state court.

### A. No Provision of the RPFJ or the Stipulation Limits Movants' Ability to Rely on the Findings of Fact and Conclusions of Law in State Court

According to Movants, "Microsoft and the Department of Justice have entered into a 'Consent Decree' purporting to negate Judge Jackson's affirmed Findings of Fact and Conclusions of Law and void their collateral estoppel effect." Motion at 1.[4] But none of the provisions of the RPFJ (or of the Stipulation) to which Movants point does anything of the sort. The RPFJ has no effect whatsoever on the Findings and Conclusions.

Thus, Movants cite "Stipulation, p. 1" for the proposition that the RPFJ, "once filed . . . will supersede and implicitly vacate the findings of fact and conclusions of law expressly affirmed by the D.C. Circuit Court of Appeals." Mem. at 10. Nothing on the cited page, however, says anything about vacating the Findings and Conclusions.[5]

---

[4] Movants treat collateral estoppel and *prima facie* evidence status under Section 5(a) of the Clayton Act, 15 U.S.C. § 16(a), as if they were the same thing. *See* Motion at 10 (Section 5(a) affords collateral estoppel effect to certain decrees). They are not. *See Southern Pacific Communications Co. v. AT&T*, 740 F.2d 1011, 1020-21 (D.C. Cir. 1984) ("Collateral estoppel, under which a prior judgment operates as an absolute bar to relitigation of the issues estopped, is governed by common law principles [but section 5(a)] accords prior judgments only prima facie effect, thus creating a rebuttable presumption with respect to those issues determined in the prior judgment. . . .[T]he rules for and result of applying collateral estoppel and section 5(a) are different").

Section 5(a) of the Clayton Act applies only to lawsuits brought under the federal antitrust laws. 15 U.S.C. § 16(a); *see* 15 U.S.C. § 12(a) (defining "antitrust laws" as used in the Clayton Act). Movants' antitrust litigation was filed under California state law. Comp. at ¶ 1.

[5] Movants also cite cases that stand for the proposition that a court should not vacate a judgment at the request of parties who settle their dispute subsequent to the judgment. *See* Mem. at 14. In this case, however, the court of appeals vacated the "Final Judgment embodying the remedial order" in this case, over the objection of the United States. *United States v. Microsoft*, 253 F.3d 34, 119 (D.C. Cir. 2001). No party to the case has proposed that this Court now take any additional action to vacate the prior judgment.

Movants next assert that the parties "suggest" that entry of the negotiated decree "will deprive third parties of 'any rights or remedies of any nature whatsoever,'" *id.*, citing RPFJ ¶ VIII, at 22. That paragraph, entitled "Third Party Rights," reads in its entirety: "Nothing in this Final Judgment is intended to confer upon any other persons any rights or remedies of any nature whatsoever hereunder or by reason of this Final Judgment." By its plain language, Paragraph VIII says only that the proposed decree is not intended to *confer* rights on third parties; it says nothing about *depriving* third parties of rights accruing from the Findings and Conclusions.

Movants also point to the RPFJ's recital that it "'does not constitute any admission by any party regarding any issue of fact or law.'" Mem. at 12, quoting RPFJ at 1 (recitals). Movants fail to explain how this language would impair their interest in asserting the Findings and Conclusions against Microsoft. Neither any collateral estoppel effect of the Findings and Conclusions, nor the effect of the decree under section 5(a), turns on whether the judgment is an admission. To be sure, Movants might gain some advantage if the judgment did constitute an admission by Microsoft as to everything in it. But Movants cannot "equat[e] failure to promote an interest with its impairment." *Mass. Sch. of Law v. United States*, 118 F.3d 776, 780 (D.C. Cir. 1997).

Finally, Movants imply that the RPFJ deprives the *United States* (as well as other parties) of the ability to invoke offensive collateral estoppel against Microsoft in the future. Mem. at 17. They identify no language in the RPFJ, however, purporting to impose such a bar, and there is none.

B.  **The Effect of the Findings of Fact and Conclusions of Law on Movants' State Court Claims Will Be Determined By the State Court, Not The Language of the RPFJ**

As Movants expressly note, "[t]o the extent there is authority to refuse a future plaintiff's claim to the offensive use of th[e] findings and conclusions, that authority is reposed in the courts faced with trying later cases against Microsoft." Mem. at 17, citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 320, 331 (1979). There is, therefore, no reason to allow Movants to intervene in this case to litigate that issue. *See AT&T*, 552 F. Supp. at 211 (declining to enter any specific finding with respect to the effect of section 5(a) of the Clayton Act because "the ultimate decision with respect to this issue must rest with the court in which such [subsequent] litigation may be brought").

Nor can intervention in this case be justified on the ground that the language of the RPFJ will determine the outcome of any litigation concerning the effect of the Findings of Fact and Conclusions of Law in Movants' state court litigation. Not only does the RPFJ lack any provision purporting to limit that effect, but — as Movants argue at length (Mem. at 15-17) — there is no reason to believe that a court would treat any such language in a consent decree as determinative.

Thus, as Movants note (*id.* at 16-17), the D.C. Circuit declined to treat as determinative a "nonliability" clause in the *AT&T* consent decree. The *AT&T* decree, unlike the RPFJ, included language expressly addressing the question of estoppel.[6] In *Southern Pacific Communications*

---

[6] The *AT&T* decree provided, "Neither this Modification of Final Judgment nor any of its terms or provisions shall constitute any evidence against, an admission by, or *an estoppel against any party* or BOC." *AT&T*, 552 F. Supp. at 228 (emphasis added); *cf.* 15 U.S.C. § 16(a) (decrees as *prima facie* evidence "*as to all matters respecting which said judgment or decree would be an estoppel as between the parties* thereto") (emphasis added).

*Co. v. AT&T*, 740 F.2d 1011, 1022 (D.C. Cir. 1984), the court of appeals considered the effect of the *AT&T* decree language on the applicability of section 5(a) of the Clayton Act, 15 U.S.C. § 16(a), which gives *prima facie* effect in other federal antitrust cases to final judgments and decrees in government cases that are "to the effect that a defendant has violated" the federal antitrust laws. Despite the language of the decree purporting to preclude estoppel, and therefore section 5(a) effect, *see* note 6 *supra*, the court of appeals emphasized that the question was "whether the judgment, considered as a whole, is 'to the effect that' the defendant has violated the antitrust laws." *Southern Pacific*, 740 F.2d at 1022; *see* Mem. at 16 (quoting same language). In affirming the district court's refusal to give the *AT&T* decree section 5(a) effect, the court looked well beyond its nonliability clause and noted the *AT&T* district court's express denial that it had found a violation of the antitrust laws. *Southern Pacific*, 740 F.2d at 1022; *see AT&T*, 552 F. Supp. at 160-61. While section 5(a) would not in any event benefit Movants because their claims do not arise under the federal antitrust laws,[7] the D.C. Circuit's analysis demonstrates that there is no reason to anticipate that the RPFJ would affect even the rights of federal plaintiffs under that section.

      Nor is there reason to assume that the language of a consent decree -- and particularly one that does not purport to limit the rights of third parties in other cases -- would determine the collateral estoppel effect of the Findings of Fact and Conclusions of Law in Movants' case. In *Southern Pacific*, the D.C. Circuit court expressly acknowledged that "[s]ome courts have given collateral estoppel effect to consent judgments." 740 F.2d at 1021. But the court did not base its denial of collateral estoppel effect in that case solely on the express language of the *AT&T*

---

[7]*See* note 4, *supra*.

decree. Instead, it also emphasized the uncertainty that an antitrust violation could be proved in that case, *id.*, the sort of uncertainty that does not arise in this case because liability has already been determined here. Indeed, the Fifth Circuit has given collateral estoppel effect to findings of fact that had been entered and then withdrawn and set aside when the parties settled and the court dismissed the case with prejudice — and without a consent decree. *Chemetron Corp. v. Bus. Funds, Inc.*, 682 F.2d 1149, 1187-92 (5th Cir. 1982), *vacated on other grounds*, 460 U.S. 1007 (1983).[8] Similarly, this Court's decision concerning entry of the RPFJ would not prevent the California state court from affording collateral estoppel effect to the Findings of Fact and Conclusions of Law, should it find that result otherwise appropriate, and so there is no need for intervention to protect Movants' rights.

## II. Movants' General Interest in the Outcome Provides No Basis for Intervention of Right

Movants' "further interest in seeing the district court carry out the Court of Appeals' mandate," Comp. at ¶ 6, represents nothing more than a disagreement with the United States as to the course of conduct that will best serve the public interest. Such a disagreement is not enough to warrant intervention of right, for Movants have no right to intervene to represent the public interest.

---

[8]*Chemetron* has been criticized, 18 Charles Alan Wright *et al.*, Federal Practice and Procedure § 4443, at 416 n.21 (Supp. 2001), but it has also been cited with approval by several circuits. *St. Paul Fire & Marine Ins. Co. v. F.H.*, 55 F.3d 1420, 1425 (9th Cir. 1995); *Wellons, Inc. v. T.E. Ibberson Co.*, 869 F.2d 1166, 1169 (8th Cir. 1989); *Alexander v. Chicago Park Dist.*, 773 F.2d 850, 855 (7th Cir. 1985); *O'Reilly v. Malon*, 747 F.2d 820, 823 (1st Cir. 1984). We take no view on whether it is, or should be, good law, leaving that question, in so far as it affects Movants, to the California state courts.

### A. Absent Proof of Bad Faith or Malfeasance, the United States Alone Represents the Public Interest in Government Antitrust Cases

The United States represents the public interest in government antitrust cases. *See*, *e.g.*, *United States v. Bechtel Corp.*, 648 F.2d 660, 666 (9th Cir. 1981); *Associated Milk Producers*, 534 F.2d at 117. "A private party generally will not be permitted to intervene in Government antitrust litigation absent some strong showing that the Government is not vigorously and faithfully representing the public interest." *United States v. Hartford-Empire Co.*, 573 F.2d 1, 2 (6th Cir. 1978), quoted with approval in *United States v. LTV Corp.*, 746 F.2d 51, 54 n.7 (D.D.C. 1984); *Associated Milk Producers*, 534 F.2d at 117. Thus, courts allow intervention of right only after a showing of government bad faith or malfeasance in reaching the settlement. *Associated Milk Producers*, 534 F.2d at 117; *Heileman*, 563 F. Supp. at 649; *see also United States v. Blue Chip Stamp Co.*, 272 F. Supp. 432, 438 (C.D. Cal. 1967) (applicant for intervention has the burden of demonstrating "that the Government has not acted properly in the public interest"), *aff'd per curiam sub nom. Thrifty Shoppers Scrip Co. v. United States*, 389 U.S. 580 (1968).

### B. Movants Fail to Show Bad Faith or Malfeasance

Movants make no serious attempt to demonstrate bad faith or malfeasance on the part of the United States. Instead, they offer only their meritless assertions about the effect of the RPFJ on the rights of private litigants and two additional legal arguments as to which they disagree with the United States: (1) Movants contend that the Tunney Act is inapplicable to this case; and (2) they further contend that entry of the RPFJ would conflict with the mandate of the court of appeals. See Mem. at 11-12 & n.2.[9] Movants' arguments not only fail to demonstrate that the

---

[9]Movants also note that two law professors advised the United States by letter of their agreement with these legal positions. Mem. at 12 n.2. To the extent that Movants intend to

United States is guilty of bad faith or malfeasance, but they are wrong.

### 1. The Tunney Act Applies to This Proceeding

By its express terms, the Tunney Act applies to "[a]ny proposal for a consent judgment submitted by the United States for entry in any civil proceeding brought by or on behalf of the United States under the antitrust laws," 15 U.S.C. § 16(b), and the Court is required to make its Tunney Act public interest determination "[b]efore entering any consent judgment proposed by the United States under this section." *Id.* § 16(e). Movants do not, and could not, deny that the RPFJ is a proposal for a consent judgment submitted by the United States for entry in a civil proceeding brought by the United States under the antitrust laws. The plain and unambiguous statutory language ought therefore to end all dispute about whether the Tunney Act applies here.

Movants, however, contend that the Tunney Act does not apply to some proposals for a consent judgment submitted by the United States for entry in a civil proceeding brought by the United States under the antitrust laws.[10] They offer no reason why Congress would conclude that

---

suggest bad faith on the part of the United States because it did not comply with the professors' request to forward their letter and memorandum to the Court, such a contention is untenable. The memorandum is identified as relating to two cases, No. 98-1232 and No. 98-1233. Mem. Ex. 3 at 1. The letter of transmittal informed us that the Court had indicated to the two professors "that she does not wish to receive any filings or other materials with respect to the Microsoft Litigation," Mem. Ex. 1 at 1, so they sought to use the Justice Department as a channel to the Court. The professors asked us to "keep the attached letter and memorandum confidential, sharing it with *no one* except Judge Kotelly." *Id.* at 2 (emphasis added). In our view, it would have been highly improper to convey a confidential legal memorandum to the Court without providing it to the other litigants in the pending matters. We promptly advised the two professors that we thought our filing of their materials would not be appropriate and suggested they could bring their views before the Court by submitting the material as a public comment. Mem. Ex. 4.

[10]Movants nonetheless assert standing in part relying on the Tunney Act. Mot. at 2 (citing 15 U.S.C. § 16(f)(3)).

courts ought to consider some proposals for consent judgments in government antitrust cases without benefit of the Tunney Act's procedures. And they fail to delineate clearly the consent judgments to which the Tunney Act does not apply, in their view. Movants variously state or imply that the Act ceases to apply "after a case has been fully litigated," Comp. at ¶ 9, as this one has not been (because remedy has not been litigated on remand); after the taking of testimony begins, Mem. at 10, 18-19 n.9; after litigation to judgment, *id.* at 11, 18, apparently whether or not that judgment is vacated on appeal; and after litigation through judgment and appeal, *id.* at 18, again apparently without regard to the result on appeal.

Movants offer little by way of justification for their proposal that the Court graft such limitations onto the clear language of the Tunney Act. They cite the statutory language permitting a court to consider, as part of its public interest determination, "the public benefit, if any, to be derived from a determination of the issues at trial," 15 U.S.C. § 16(e)(2), and they argue that this provision establishes that "a 'consent decree' under the statute is one entered without a trial." Mem. at 18. But that language demonstrates only that a consent decree may be proposed prior to trial; it does not establish, or even suggest, that it must always be so. Indeed, in this case, although there has been a trial, the alternative to entry of the RPFJ would likely be further litigation to determine disputed issues as to remedy. Pursuant to the statute, the Court may properly consider "the public benefit, if any" of requiring determination of those issues.[11]

Movants' proffered support from the case law is equally inconclusive. They cite Justice

---

[11] For just this reason, Senator Tunney's response to the question of what would happen if a court refused to enter a consent decree, *see* Mem. at 18 n.9, is entirely consistent with the plain language of the statute and application of the statute here, as is the statement of George D. Reycraft, quoted in the same footnote.

Rehnquist's dissent from the Supreme Court's summary affirmance of the entry of the *AT&T* consent judgment. There had been no judicial finding of antitrust liability in that case, and Justice Rehnquist's language suggests an assumption that cases were settled only in the absence of such findings. Mem. at 18, citing *Maryland v. United States*, 460 U.S. 1001, 1004 (1983) (Rehnquist, J., dissenting). But nowhere did Justice Rehnquist say that the Tunney Act would not apply if a settlement followed a judicial finding of antitrust liability.

Movants also point to what they describe as the "historical understanding of 'consent decree,'" Mem. at 19 n.9, based on one passage from a 1959 House of Representatives subcommittee document and one sentence from a commercial publication, Trade Regulation Reporter, that apparently limits the meaning of "consent decree" to agreed upon judgments entered before trial begins and testimony is taken. But history is to the contrary. Indeed, section 5(a) of the Clayton Act, 15 U.S.C. § 16(a), enacted in 1914 as section 5 of the Clayton Act and codified in the same section of the United States Code as the Tunney Act, provides that the *prima facie* effect the provision gives to certain final judgments in government cases "shall not apply to consent judgments or decrees entered before any testimony has been taken." The phrase "entered before any testimony has been taken" would have been surplusage if Congress in 1914 had shared Movants' proposed "historical understanding" that all consent judgments or decrees are entered before trial.[12]

---

[12]As enacted in 1914, the *prima facie* evidence provision made even clearer congressional understanding that there could be consent judgments or decrees entered after testimony had been taken. It included this additional proviso, rendered superfluous by the passage of time:

> *Provided further*, This section shall not apply to consent judgments or decrees rendered in criminal proceedings or suits in equity, now pending, in which the taking of testimony has been commenced but has not been concluded, provided such judgments or decrees are

Moreover, courts prior to enactment of the Tunney Act routinely used the term "consent decree" to refer to negotiated judgments entered after the taking of testimony — and even after affirmed liability findings. For example, in the well-known antitrust case *United States v. Paramount Pictures, Inc.*, 70 F. Supp. 53 (S.D.N.Y. 1947), *aff'd in part, rev'd in part, and remanded*, 334 U.S. 131 (1948), the court entered findings of fact, conclusions of law, and a decree, after trial. The Supreme Court affirmed as to certain liability findings, reversed as to others, and remanded for further proceedings. Then, "[u]pon remand, certain of the defendants entered into *consent decrees* with the government; as to the others, lengthy hearings and deliberations [were] had." *Fifth and Walnut, Inc. v. Loew's, Inc.*, 176 F.2d 587, 593-93 (2d Cir. 1949) (emphasis added).[13] *See also Homewood Theatre, Inc. v. Loew's, Inc.*, 110 F. Supp. 398, 410 (D. Minn. 1952) (same decrees referred to as "consent decrees"); *De Luxe Theatre Corp. v. Balaban & Katz Corp.*, 95 F. Supp. 983, 985-86 (N.D. Ill. 1951); *Webster Rosewood Corp. v. Schine Chain Theatres, Inc.*, 157 F. Supp. 251, 254-56 (N.D.N.Y. 1957) (another "consent decree" following testimony arising out of *Paramount* case), *aff'd*, 263 F.2d 533 (2d Cir. 1959). The Supreme Court itself, in *Utah Pub. Serv. Comm'n v. El Paso Natural Gas Co.*, 395 U.S. 464, 468 (1969), referred to a decree it had rejected (for failure to comply with its mandate) as a

---

rendered before any further testimony is taken.

Clayton Act, ch. 323, § 5, 38 Stat. 730, 731 (1914). This language clearly contemplates consent judgments or decrees entered after some testimony has been taken, and it specifies how such judgments and decrees are to be treated.

[13]The two consent decrees referred to are *United States v. Paramount Pictures*, 1948-49 Trade Cas. (CCH) ¶ 62,335, at 62,864 (S.D.N.Y. 1948) (RKO Pictures); *United States v. Paramount Pictures, Inc.*, 1948-49 Trade Cas. (CCH) ¶ 62,377, at 63,010 (S.D.N.Y. 1949) (Paramount Pictures).

"consent decree" even though it had been agreed to following a trial on the merits and a Supreme Court determination of liability.[14]

The legislative history of the Tunney Act itself also undermines Movants' "historical understanding." Although it contains numerous indications that Congress had focused its attention primarily on consent decrees entered before trial, as most are, that history also includes references to settlements reached later in the judicial process, and there is no indication that Congress intended to exclude such settlements from Tunney Act coverage. For example, Representative Hutchinson, then the ranking minority member of the House Judiciary Committee and of its Monopolies and Commercial Law subcommittee, inserted into a hearing record an argument against encouraging federal judges to review Department of Justice decisions accepting less than full relief for alleged violations. In the course of that argument, he plainly recognized the possibility that circumstances arising during prosecution of a case might make settlement seem appropriate.[15] And Thomas E. Kauper, then Assistant Attorney General, Antitrust Division,

---

[14]This use of the term "consent decree" to include judgments entered after trial is not confined to the antitrust context. *See, e.g., Friends of the Earth v. Archer Daniels Midland Co.*, 780 F. Supp. 95 (N.D.N.Y. 1992) (declining to approve consent decree proposed after liability finding because a provision conflicted with Clean Water Act); *Hawaii's Thousand Friends v. City and County of Honolulu*, 149 F.R.D. 614 (D. Haw. 1993) (entering consent decree proposed after liability finding; declining to follow *Friends of the Earth* regarding Clean Water Act requirement).

[15]"[S]uppose that during the prosecution of a case against an oil company the government decided to settle for less relief than it could win on the merits because of the adverse impact full relief might have on a recently intervening energy crisis." Consent Decree Bills, Hearings before the Subcomm. on Monopolies and Commercial Law of the House Comm. on the Judiciary, 93rd Cong., 1st Sess. 41 (1973) (statement of Hon. Edward Hutchinson).

Similarly, Miles Kirkpatrick, who had recently stepped down as chairman of the FTC, testified at the same hearings about circumstances under which the government might file a proposed consent decree "with relief significantly different from that originally claimed."

specifically noted in his testimony before the Senate subcommittee considering the legislation that "a consent decree . . . may come after trial, even."[16] Thus, contrary to Movants' contention, the historical record confirms that the unambiguous language of the Tunney Act means what it says: "*[a]ny* proposal for a consent judgment submitted by the United States for entry in *any* civil proceeding brought by or on behalf of the United States under the antitrust law," 15 U.S.C. § 16(b) (emphasis added), is within the scope of that Act.

Movants' vague suggestion that application of the Tunney Act would raise constitutional separation of powers issues, Mem. at 20-21, also lacks merit. Indeed, despite Movants' argument heading, it is not even clear that the point goes to the applicability of the Tunney Act, rather than to the degree of deference the Court should accord to the government's judgments in making its public interest determination. To the extent that Movants contend that the Tunney Act cannot be applied at this stage without raising separation of powers issues because Congress has invested the federal district courts with jurisdiction in cases to enforce the antitrust laws, *see id.*, the argument proves too much, for it leads to the conclusion that the Tunney Act cannot be applied to any filed case. And to the extent that Movants intend to suggest that the Court is obligated at this stage to formulate a remedy as if the parties had not reached agreement on a consent decree, their argument flies in the face of the Supreme Court's express recognition of "the authority of

---

These circumstances included "the post complaint realization by the Antitrust Division that there are certain aspects of its case that do not have the strengths that were initially believed to be present: *that realization could come . . . after the partial trial of the case itself.*" *Id.* at 145 (Statement of Miles W. Kirkpatrick) (emphasis added).

[16]The Antitrust Procedures and Penalties Act: Hearings on S. 782 and S. 1088 Before the Subcomm. on Antitrust and Monopoly of the Senate Committee on the Judiciary, 93d Cong., 1st Sess. 117 (1973) (testimony of Thomas E. Kauper).

the Attorney General to settle suits after, as well as before, they reach here." *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 136 (1967).

### 2. Entry of the RPFJ Would Not Conflict with the Mandate of the Court of Appeals

Movants are, of course, quite correct in their statement, Mem. at 21, that the Court is not free to ignore the mandate of the court of appeals. And, as Movants note, the court of appeals instructed that "[a] party has the right to judicial resolution of disputed facts not just as to the liability phase, but also as to appropriate relief." *Microsoft*, 253 F.3d at 101, quoted in Mem. at 21. The court of appeals, however, added that "[o]nly when the facts are not in dispute, or when the adverse party has waived its right to a hearing, can that significant procedural step [a hearing before entry of an injunction] be eliminated." *Microsoft*, 253 F.3d at 101.

The only parties to this case are Microsoft and the United States. The states are parties to another case. The Court's order of February 1, 2002, deconsolidating the two cases made this point obvious, but it was equally true before that order. *See* Order, Feb. 1, 2002, at 2 ("Consolidation 'does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another'") (citation omitted).

The parties to this case had not reached agreement at the time the court of appeals issued its decision, and so that court reasonably anticipated that this Court would be required to conduct proceedings on remand to resolve issues disputed by the parties. Those parties have now reached agreement on the RPFJ, and so they do not now seek resolution of such issues; the only question now before the Court is whether entry of the RPFJ is in the public interest. It is entirely consistent with the mandate of the court of appeals for this Court to determine that issue,

following the procedural guidance of the Tunney Act. Of course, disputed issues remain, and will be litigated, in the other case. Order, Nov. 8, 2001, at 1.

## CONCLUSION

The Motion for Intervention should be denied. In our view, the Memorandum, considered as a brief amicus curiae, would not be helpful to the Court.

Respectfully submitted,

_____

PHILLIP R. MALONE
RENATA B. HESSE
KENNETH W. GAUL
PAULA L. BLIZZARD
DAVID BLAKE-THOMAS
JACQUELINE S. KELLEY
*Trial Attorneys*
U.S. Department of Justice
Antitrust Division
601 D Street, N.W.
Suite 1200
Washington, D.C. 20530
(202) 514-8276

PHILIP S. BECK
*Special Trial Counsel*