IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>MICROSOFT CORPORATION,<br><br>　　　　　　　Defendant. | Civil Action No. 98-1232 (CKK)<br><br>Next Court Deadline: February 15, 2002<br>　　　　　　　　　　Status Conference |

**UNITED STATES' MOTION FOR LEAVE OF COURT TO ADOPT AN ALTERNATIVE PROCEDURE FOR COMMENT PUBLICATION**

The United States hereby moves this Court for leave to adopt an alternative procedure for publication of comments received in this case pursuant to the Tunney Act, 15 U.S.C. §§ 16(b) - (h).  Publication of the unusual and massive volume of comments received by the United States in the *Federal Register* would be extraordinarily expensive.  The *Federal Register* publication requirements were enacted at a time when the magnitude of public comment of the type experienced in this case could not have been and was not envisioned by Congress.  As Senator Tunney commented prior to enactment of the Tunney Act:

> I certainly doubt there is a record to demonstrate that you could have thousands of comments made by the public during that 60-day period.  I think that it's far more likely that in the typical case, you will have none, but *perhaps you will have 10 to 15 in a highly controversial case.*

*Consent Decree Bills: Hearings on H.R. 9203, H.R. 9947 and S. 782 Before the Subcomm. on Monopolies and Commercial Law of the House Comm. on the Judiciary*, 93rd Cong. 45 (1973) (statement of Senator John Tunney) (emphasis added).

Indeed, the United States received the overwhelming majority of the comments in this case by e-mail, with the next most used method of transmission being facsimile. Neither of these technologies even existed commercially at the time of enactment of the Tunney Act. The proliferation of communication by e-mail and facsimile quite simply transformed the landscape relating to submission of public comments in this case. As opposed to the ten or fifteen comments expected by Senator Tunney, the United States received over 30,000 -- and over 90% of those came via e-mail. Declaration of Jacqueline S. Kelley ("Kelley Decl.") at ¶ 3; Declaration of Renata B. Hesse ("Hesse Decl.") at ¶ 15.

The alternative publication procedures the United States proposes in this Motion, including use of an Internet website and CD-ROMs, will result in the publication of precisely the same content as would otherwise have been published in the *Federal Register* in a manner that will achieve significantly *greater* public access to the comments -- the intent of the Tunney Act procedures -- without the excessive, unnecessary cost.[1] The United States therefore respectfully requests that the Court enter an order outlining the alternative publication procedures and permitting the United States to satisfy its statutory public comment publication obligations through use of those alternative procedures.

A.  **The Purpose of the Tunney Act Was to Provide Public Information About Antitrust Settlements While Avoiding Unnecessary Expense**

Congress' overriding objective in passing the Tunney Act was to open the process of

---

[1] The Tunney Act imposes a number of publication obligations on the United States. This motion is addressed solely to the obligation of the United States to publish the comments received in the *Federal Register*. *See* 15 U.S.C. § 16(b).

UNITED STATES' MOTION FOR LEAVE RE PUBLICATION -- PAGE 2

settling antitrust cases to public scrutiny.[2]  The Tunney Act was enacted to inject "sunlight" into the process of settling antitrust cases, enabling the public to have confidence in the manner in which an antitrust case is resolved.  119 CONG. REC. 24,599 (1973) (statement of Senator John Tunney).  As the remarks of Senator Tunney and comments by numerous witnesses at the hearings show, the secrecy that had been associated with the process leading up to entry of antitrust consent decrees had caused concern.  Accordingly, in the Tunney Act, Congress sought to give the public greater access to information relating to the settlement of antitrust cases because, as noted by antitrust scholar Donald F. Turner, "the public interest is best protected when there is public exposure of the decision making process."  *The Antitrust Procedures and Penalties Act: Hearings on S. 782 Before the Subcomm. on Antitrust and Monopoly of the Senate Comm. on the Judiciary*, 93rd Cong. 421 (1973)("*Senate Hearings*") (statement of Donald Turner, Harvard Law School Professor).

Senator Tunney remarked repeatedly during the hearings on the necessity for greater public information about consent decree procedures, noting in his testimony before the House Committee on the Judiciary, "greater ventilation of the consent decree process -- the process by which over 80% of all antitrust cases are disposed -- is vitally needed. . . ."  119 CONG REC. 24,597 (1973) (statement of Senator John Tunney).  To achieve this "greater ventilation," the Tunney Act adopted a process of public notice, dissemination of information, and the opportunity for public comment.  15 U.S.C. §§ 16(b) - (d).  Thus, the Tunney Act "transformed a procedure which was generally accomplished in a series of private, informal negotiations between antitrust

---

[2]The legislative history is entirely silent on the purpose for publication of the comments themselves in the *Federal Register*, noting only that the provision affords an opportunity for *Federal Register* publication.  S. REP. No. 93-298, at 2 (1973).

UNITED STATES' MOTION FOR LEAVE RE PUBLICATION -- PAGE 3

lawyers and attorneys for the defendant into one that is exposed to the full light of public awareness and judicial scrutiny." 119 CONG. REC. 24,598 (1973) (statement of Senator John Tunney). Senator Tunney called ample public disclosure "the cornerstone of [the] bill." 119 CONG. REC. 24,605 (1973) (statement of Senator John Tunney).

While seeking to increase public access to information about antitrust settlements, however, Congress was also mindful of the cost. Thus, several discussions relating to publication under the Tunney Act focused on how best to achieve the goal of increased public access without imposing an unreasonable cost. Commentators questioned the wisdom of using the *Federal Register* for publication of Tunney Act notices, calling it "an expensive, unneeded procedure in view of the minimal attention which the average citizen devotes to the daily contents of that publication" and asked whether "media distribution constitutes the better means to inform the public of a consent judgment." *Senate Hearings* at 423, 430-431 (statement of The American Bar Association). In response, members of the Senate staff noted that "we have to make an assessment now, considering the fact that some costs are involved, as to whether or not the additional costs that are involved in publication in these newspapers are justified. . . ." *Senate Hearings* at 190 (statement of Meldon Levine, legislative assistant to Senator Tunney).[3]

In the end, Congress compared the cost of publication in various media, and chose publication in the *Federal Register* as the method which it felt balanced increased public access with the most reasonable cost.

---

[3] Similarly, Judge Skelly Wright contrasted publication of Tunney Act notices in newspapers with publication in the *Federal Register*, noting that the likely expense of newspaper notification made publication in the *Federal Register* preferable. *Senate Hearings* at 150 (statement of Judge J. Skelly Wright).

UNITED STATES' MOTION FOR LEAVE RE PUBLICATION -- PAGE 4

B.   **The United States' Proposed Alternate Method of Publication Will Provide Greater Public Access at Significantly Less Cost**

Publication of the 30,000 comments received in this case in the *Federal Register* would be extraordinarily expensive, costing taxpayers approximately $4 million or more, and would take approximately six weeks to accomplish.[4]  Given the unique facts of this case, and the availability of a simple, cost-effective, vastly more accessible, and quicker method of publication, the United States believes that the tremendous expense of publication in the *Federal Register* is unwarranted and unnecessary to satisfy the Tunney Act's "cornerstone" of ample public disclosure.

Advances in information technology unforeseen at the time of adoption of the Tunney Act will result in significantly easier and greater public access to the comments than *Federal Register* publication.[5]  Accordingly, the United States sets forth the following alternate procedures to publication of the comments in the *Federal Register* in this Tunney Act proceeding.  Specifically, the United States proposes to:

- As soon as possible after the Court approves an alternative publication procedure, issue a press release containing a notice that describes the alternative procedure and the

---

[4] Kelley Decl. at ¶¶ 3 - 5.

[5] As noted by the GAO in its *Letter from the United States General Accounting Office* dated June 30, 2000, addressed to the Honorable Henry A. Waxman and Joseph I. Lieberman regarding Federal Rulemaking: Agencies Use of Information Technology to Facilitate Public Participation, the printed version of the *Federal Register* is so voluminous as to be daunting.  Finding a particular subject can be difficult.  Nor, according to the GAO *Letter*, is the on-line *Federal Register* available through GPO Access easier to search, because, although it can be searched by keyword, it contains no fields or section identifiers to facilitate searches. *Letter from the United States General Accounting Office* (June 30, 2000) at p. 4, available at <http://frwebgate.access.gpo.gov/cgi-bin/useftp.cgi?IPaddress=162.140.64.21&filename=gg00135r.pdf&directory=/diskb/wais/data/gao>

UNITED STATES' MOTION FOR LEAVE RE PUBLICATION -- PAGE 5

availability of the public comments and provides a telephone number, mailing address, and Internet website address the public can use to obtain detailed instructions for viewing, downloading, or otherwise obtaining a copy of those comments. Also publish that notice in the *Federal Register*; in the *Washington Post*, *San Jose Mercury News* and the *New York Times* (publication once a week for two weeks); and on the Department of Justice's Antitrust Division website.[6]  Hesse Decl. ¶ 5

- As soon as possible after February 27, 2002, publish in the *Federal Register* a list of the public comments received. The list will be arranged alphabetically by the name of the person or entity that submitted the comment (as such information is contained in the comment) and will indicate the number of pages of the comment and a unique identifier number for that comment. This notice will also include a separate index that indicates which of the following categories best describes each comment:

    - Comments that, although they were sent to the address for comments on the RPFJ or refer to the RPFJ in their subject line, are essentially unrelated to the RPFJ or *to United States v. Microsoft* generally (except for duplicate copies of comments submitted by the same person and a relatively small number of comments clearly unrelated to the RPFJ, the *Microsoft* case in general, or the parties to this action, which will not be listed or published);

    - comments that do not relate to the RPFJ but do relate to the *Microsoft* case in general;

---

[6]The United States notes, however, that we will be unable to publish these notices until the Court approves an alternative procedure.  Hesse Decl. ¶ 5

UNITED STATES' MOTION FOR LEAVE RE PUBLICATION -- PAGE 6

- comments that express an overall view of the RPFJ, but do not contain any further discussion of it. These comments do not, for example, attempt to analyze the substance of the RPFJ, do not address any of its specific provisions, and do not describe any particular strengths or shortcomings of it;

- comments that express an overall view of the RPFJ and offer a limited degree of substantive discussion of it;

- comments that express an overall view of the RPFJ and provide a greater degree of analysis or discussion of it than comments in the previous category; and

- a relatively small number of comments, approximately 45, that are particularly focused or detailed in their discussion or analysis of issues concerning the RPFJ ("detailed comments").

This *Federal Register* publication will include the portions of the previous *Federal Register* notice that provide the public with a telephone number, address, and website address for obtaining detailed instructions for viewing, downloading, or otherwise obtaining a copy of the full text of the comments. Hesse Decl. ¶ 6. Along with the above information, we will include in the *Federal Register* publication the United States' Response to the public comments. Hesse Decl. ¶ 7

- On or before February 27, 2002, post on the Department of Justice's Antitrust Division website the full text of all the comments identified in the *Federal Register* notice described above, with each comment easily accessible by the unique identifier number associated with it in the *Federal Register* and text searchable both individually and as a complete group. This website will include the index that will be published in the *Federal*

*Register* and that identifies the category into which each comment falls. The website also will contain a link that will permit interested members of the public to download a compressed file, such as a "Zip" file, that contains the full text of all the comments. Hesse Decl. ¶ 8, 9

- On or before February 27, 2002, post on the Antitrust Division website the full text of the United States' Response to the public comments, as well as our motion for entry of the RPFJ, our memorandum in support, and any other supporting papers. Also, on or before March 2, 2002, post on the Antitrust Division website a separate version of the United States' Response that contains hyperlinks from each of its various subject areas to the portions of the detailed comments to which it is responding. Hesse Decl. ¶ 10

- To further assure the public's access to the comments, provide, at cost, to anyone who requests it, a CD-ROM or set of CD-ROMs that contain the full text of all the comments identified in the Federal Register notice. The CD-ROM(s) will permit access to the comments using the unique identifier numbers or, separately, using a list of substantive issues raised by the comments, and will be text searchable within each comment or group of comments. Hesse Decl. ¶ 11

- Develop a procedure to distribute, free of charge, a certain number of the CD-ROMs containing all the comments, described above, to libraries in each state and the District of Columbia. The United States is currently studying various options in an attempt to develop a mechanism that will permit us most efficiently to accomplish this distribution as soon after February 27, 2002, as possible. Hesse Decl. ¶ 12

- On or before February 27, 2002, file with the Court the full text of all of the public

UNITED STATES' MOTION FOR LEAVE RE PUBLICATION -- PAGE 8

- comments that have been identified in the Federal Register notice described above. The comments will be submitted to the Court in the form of the CD-ROM(s) described above and will be filed with the Clerk in a form determined through discussions with Court technical personnel. Hesse Decl. ¶ 13

- On or before February 27, 2002, file with the Court the United States' Response to public comments. No later than March 1, 2002, submit to the Court a version of that Response on CD-ROM(s) that contains hyperlinks from each of the Response's various subject areas to the portions of the detailed comments to which it is responding. Hesse Decl. ¶ 14.

During the Status Conference on February 8, 2002, the Court directed the United States to submit to the Court the approximately 45 "detailed" comments that had been described in the parties' Joint Status Report. (*See,* Joint Status Report, filed February 7, 2002, at 4 ("major comments")). The United States expects to provide both paper and electronic copies of those detailed comments to the Court, and to post them on the Antitrust Division website, no later than February 15, 2002.[7] This disclosure will provide both the Court and the public with prompt access to the most extensive and detailed comments well in advance of both the time that publication in the *Federal Register* could occur and the Tunney Act hearing in this case.

The alternative procedures proposed above will permit the public to have unprecedented

---

[7] In order to make these materials available to the Court as quickly as possible, we propose to submit on CD-ROM and post on our website non-text, "PDF" versions of those major comments first, and then replace them with a revised CD-ROM and website containing searchable, "text" versions as soon as we are able to do so. We anticipate that we should be able to submit this text version to the Court and post it to the Antitrust Division website no later than February 18, 2002. Hesse Decl. ¶ 13.

UNITED STATES' MOTION FOR LEAVE RE PUBLICATION -- PAGE 9

access to the thousands of comments received by the United States — far better access than would be achieved by publication in the *Federal Register* — thereby effectuating the public inspection and review purposes of 15 U.S.C. § 16(b) while avoiding a huge, unnecessary expenditure of millions of taxpayer dollars.[8]  Indeed, the significance of the Internet as a means of public access to and participation in the Tunney Act process is amply illustrated by the over-27,000 comments submitted to the United States via e-mail.[9]  As a further illustration of the effectiveness of public access to information regarding the Microsoft case, the website devoted to information on the *United States v. Microsoft* settlement, <www.usdoj.gov/atr/cases/ms-settle.htm>, was typically one of the most frequently requested web pages on the USDOJ/Antitrust site, averaging 3,000 hits per week in the 12 weeks from November 19, 2001,

---

[8] When faced with a similar, though far less drastic, situation, the district court considering the proposed modifications of the decree in *United States v. Western Electric* (Civ. No. 82-0192 (D.D.C.)) and *United States v. American Telephone & Tel. Co.* (Civ. No. 74-1698) ("*AT&T*") relieved the United States of the obligation to publish comments in the *Federal Register*.  *See United States v. American Telephone & Tel. Co.,* 1982-2 Trade Cases ¶ 64,727, 1982 WL 1839 (D.D.C.).  The United States faced publishing some 600 comments amounting to over 8,750 pages.  The cost of publication in the *Federal Register* would have exceeded $600,000.

The court in *AT&T* assumed, without deciding, that the Tunney Act applied to the decree modification at issue, and so ordered the United States to follow the Tunney Act procedures.  *See United States v. American Telephone & Tel. Co.,*1982-1 Trade Cases ¶ 64,476, 1982 WL 1795 (D.D.C.).  In addition, Congress has noted on a number of occasions (without objection to the procedures utilized) that Judge Greene followed Tunney Act procedures.  *See, e.g.,* H.R. REP. NO. 107-83(II) at 4 (2001); H.R. REP. NO. 103-559 (II) at 51 - 52 n.197(1994); H.R. REP. NO. 102-850, at 43 n.242 (1992).

[9]The proposed procedure for publication of comments through electronic means is also consistent with Congressional intent to reduce reliance on paper and increase availability of government records through the Internet, as expressed in the Government Paperwork Reduction Act of 1995 (44 U.S.C. § 3501) and the Government Paperwork Elimination Act of 1998 (44 U.S.C. § 3504).

UNITED STATES' MOTION FOR LEAVE RE PUBLICATION -- PAGE 10

through February 4, 2002.[10]

## CONCLUSION

The proposed alternative procedures for publication of the comments, using a combination of public notice, an Internet website, and CD-ROMs, would effectuate the intent of the Tunney Act to permit ample public access to the public comments while taking advantage of technological advances unknown to the authors of the Tunney Act.  To avoid imposing on the United States the excessive costs associated with publication in the *Federal Register* caused by a volume of comments unforeseen by those same authors, the United States urges that the Court order the proposed alternative publication procedures as set forth herein.

Dated:   February 12, 2002                                           Respectfully submitted,

_____
PHILLIP R. MALONE
RENATA B. HESSE
BARBARA J. NELSON
KENNETH W. GAUL
PAULA L. BLIZZARD
DAVID BLAKE-THOMAS
JACQUELINE S. KELLEY
*Trial Attorneys*
U.S. Department of Justice
Antitrust Division
901 Pennsylvania Avenue, N.W.
 Washington, D.C. 20530
(202) 514-2413

PHILIP S. BECK
*Special Trial Counsel*

---

[10] *See* Hesse Decl. ¶ 15.

UNITED STATES' MOTION FOR LEAVE RE PUBLICATION -- PAGE 11