# APPENDIX A

## COMPARISON OF COURT OF APPEALS' FINDINGS ON LIABILITY TO PROVISIONS OF THE REVISED PROPOSED FINAL JUDGMENT

### I. LIABILITY FINDINGS AFFIRMED BY THE COURT OF APPEALS

*Agreements with Computer Manufacturers ("OEMs")*

1. Microsoft prohibited OEMs from removing any desktop icons, folders, or "Start" menu entries, thereby "thwart[ing] the distribution of a rival browser by preventing OEMs from removing visible means of user access to IE." *United States v. Microsoft Corp.*, 253 F.3d 34, 61, 64 (D.C. Cir. 2001).

    *RPFJ Provisions*:
    - **Section III.H.1** requires Microsoft to "[a]llow end users (via a mechanism readily accessible from the desktop or Start menu such as an Add/Remove icon) and OEMs (via standard preinstallation kits) to enable or remove access to each Microsoft Middleware Product . . . . The mechanism shall offer the end user a separate and unbiased choice with respect to enabling or removing access . . . and altering default invocations . . . with regard to each such Microsoft Middleware Product . . . ."

2. Microsoft prohibited OEMs from "modifying the initial boot sequence . . ., thus prevent[ing] OEMs from using that process to promote the services of IAPs . . . ." 253 F.3d at 61-62, 64.

    *RPFJ Provisions*:
    - **Section III.C.3** prohibits Microsoft from restricting OEMs from "[l]aunching automatically, at the conclusion of the initial boot sequence or subsequent boot sequences, or upon connections to or disconnections from the Internet, any Non-Microsoft Middleware . . . ."

    - **Section III.C.4** prohibits Microsoft from restricting OEMs from "[o]ffering users the option of launching other Operating Systems . . . or a non-Microsoft boot-loader or similar program . . . ."

    - **Section III.C.5** prohibits Microsoft from restricting OEMs from "[p]resenting in the initial boot sequence its own IAP offer . . . ."

3. Microsoft prohibited OEMs from "adding icons or folders different in size or shape from those supplied by Microsoft," thereby preventing OEMs from "promot[ing] rival

browsers, which keeps developers focused upon the APIs in Windows." 253 F.3d at 62, 64.

*RPFJ Provisions*:
- **Section III.C.1** prohibits Microsoft from restricting OEMs from "[i]nstalling, and displaying icons, shortcuts, or menu entries for, any Non-Microsoft Middleware . . . on the desktop or Start menu, or anywhere else in a Windows Operating System Product where a list of icons, shortcuts, or menu entries for applications are generally displayed . . . ."

- **Section III.C.2** prohibits Microsoft from restricting OEMs from "[d]istributing or promoting Non-Microsoft Middleware by installing and displaying on the desktop shortcuts of any size or shape . . . ."

- **Section III.H.3** requires Microsoft to "[e]nsure that a Windows Operating System Product does not (a) automatically alter an OEM's configuration of icons, shortcuts or menu entries . . . pursuant to Section III.C of this Final Judgment without first seeking confirmation from the user and (b) seek such confirmation . . . until 14 days after the initial boot up of a new Personal Computer. . . ."

4. Microsoft prohibited OEMs from "using the 'Active Desktop' feature to promote third-party brands," thereby preventing OEMs from "promot[ing] rival browsers, which keeps developers focused upon the APIs in Windows." 253 F.3d at 62, 64.

*RPFJ Provisions*:
- **Section III.C.1** prohibits Microsoft from restricting OEMs from "[i]nstalling, and displaying icons, shortcuts, or menu entries for, any Non-Microsoft Middleware . . . on the desktop or Start menu, or anywhere else in a Windows Operating System Product where a list of icons, shortcuts, or menu entries for applications are generally displayed . . . ."

- **Section III.C.2** prohibits Microsoft from restricting OEMs from "[d]istributing or promoting Non-Microsoft Middleware by installing and displaying on the desktop shortcuts of any size or shape . . . ."

## Binding of Internet Explorer to Windows

5. Microsoft excluded IE from the "Add/Remove Programs" utility, thereby "reduc[ing] the usage share of rival browsers not by making Microsoft's own browser more attractive to consumers but, rather, by discouraging OEMs from distributing rival products." 253 F.3d at 65, 67.

*RPFJ Provisions*:

- **Section III.H.1** requires Microsoft to "[a]llow end users (via a mechanism readily accessible from the desktop or Start menu such as an Add/Remove icon) and OEMs (via standard preinstallation kits) to enable or remove access to each Microsoft Middleware Product . . . . The mechanism shall offer the end user a separate and unbiased choice with respect to enabling or removing access . . . and altering default invocations . . . with regard to each such Microsoft Middleware Product . . . ."

6. Microsoft "'plac[ed] code specific to Web browsing in the same files as code that provided operating system functions'" (253 F.3d at 65 (quoting *Findings of Fact* ¶ 161)), thus "deter[ring] OEMs from pre-installing rival browsers, thereby reducing the rivals' usage share and, hence, developers' interest in rivals' APIs as an alternative to the API set exposed by Microsoft's operating system." 253 F.3d at 66.

    *RPFJ Provisions*:
    - **Section III.C.1** prohibits Microsoft from restricting OEMs from "[i]nstalling, and displaying icons, shortcuts, or menu entries for, any Non-Microsoft Middleware . . . on the desktop or Start menu, or anywhere else in a Windows Operating System Product where a list of icons, shortcuts, or menu entries for applications are generally displayed . . . ."

    - **Section III.H.1** requires Microsoft to "[a]llow end users (via a mechanism readily accessible from the desktop or Start menu such as an Add/Remove icon) and OEMs (via standard preinstallation kits) to enable or remove access to each Microsoft Middleware Product . . . . The mechanism shall offer the end user a separate and unbiased choice with respect to enabling or removing access . . . and altering default invocations . . . with regard to each such Microsoft Middleware Product . . . ."

*Agreements with Internet Access Providers ("IAPs")*

7. Microsoft "agreed to provide easy access to IAPs' services from the Windows desktop in return for the IAPs' agreement to promote IE exclusively and to keep shipments of internet access software using Navigator under a specific percentage, typically 25%." 253 F.3d at 68. Such agreements ensure "that the 'majority' of all IAP subscribers are offered IE either as the default browser or as the only browser . . . ." *Id.* at 71.

    *RPFJ Provisions*:
    - **Section III.G.1** prohibits Microsoft from entering into any agreement with "any IAP, ICP, ISV, IHV, or OEM that grants Consideration on the condition that such entity distributes, promotes, uses, or supports, exclusively or in a fixed percentage, any Microsoft Platform Software . . . ."

- **Section III.G.2** prohibits Microsoft from entering into any agreement with "any IAP or ICP that grants placement on the desktop or elsewhere in any Windows Operating System Product to that IAP or ICP on the condition that the IAP or ICP refrain from distributing, promoting or using any software that competes with Microsoft Middleware."

*Agreements with Internet Content Providers ("ICPs"), Independent Software Vendors ("ISVs") and Apple*

8. In dozens of "First Wave" agreements, Microsoft "'promised to give preferential support, in the form of early Windows 98 and Windows NT betas, other technical information, and the right to use certain Microsoft seals of approval, to important ISVs that agree to certain conditions. One of these conditions is that the ISVs use Internet Explorer as the default browsing software for any software they develop with a hypertext-based user interface.'" 253 F.3d at 71-72 (quoting *Findings of Fact* ¶ 339). In so doing, Microsoft kept "rival browsers from gaining widespread distribution (and potentially attracting the attention of developers away from the APIs in Windows) . . . ." *Id.* at 72.

   *RPFJ Provisions*:
   - **Section III.F.2** prohibits Microsoft from "condition[ing] the grant of any Consideration on an ISV's refraining from developing, using, distributing, or promoting any software that competes with Microsoft Platform Software or any software that runs on any software that competes with Microsoft Platform Software . . . ."

   - **Section III.G.1** prohibits Microsoft from entering into any agreement with "any IAP, ICP, ISV, IHV, or OEM that grants Consideration on the condition that such entity distributes, promotes, uses, or supports, exclusively or in a fixed percentage, any Microsoft Platform Software . . . ."

9. Microsoft agreed to continue development of Mac Office, a suite of business productivity applications needed by Apple, only when Apple agreed to make Internet Explorer the default browser on Apple's operating system and to refrain from positioning icons for non-Microsoft browsing software on the desktop of new Apple Macintosh computers or Mac OS upgrades. 253 F.3d at 73. "Microsoft's exclusive contract with Apple has a substantial effect in restricting distribution of rival browsers . . ." *Id.* at 73-74.

   *RPFJ Provisions*:
   - **Section III.F.1** prohibits Microsoft from retaliating against any ISV or IHV because of that ISV's or IHV's "developing, using, distributing. promoting or supporting any software that competes with Microsoft Platform Software or any software that runs on any software that competes with Microsoft Platform Software."

- **Section III.F.2** prohibits Microsoft from "condition[ing] the grant of any Consideration on an ISV's refraining from developing, using, distributing, or promoting any software that competes with Microsoft Platform Software or any software that runs on any software that competes with Microsoft Platform Software . . . ."

- **Section III.G.1** prohibits Microsoft from entering into any agreement with "any IAP, ICP, ISV, IHV, or OEM that grants Consideration on the condition that such entity distributes, promotes, uses, or supports, exclusively or in a fixed percentage, any Microsoft Platform Software . . . ."

*Efforts to Exclude Sun's Java*

10. In dozens of "First Wave" agreements with ISVs, Microsoft "conditioned receipt of Windows technical information upon the ISVs' agreement to promote Microsoft's JVM [Java Virtual Machine] exclusively . . . ." 253 F.3d at 75. Such agreements "foreclosed a substantial portion of the field for JVM distribution and . . ., in so doing, they protected Microsoft's monopoly from a middleware threat . . . ." *Id.* at 76.

    *RPFJ Provisions*:
    - **Section III.F.2** prohibits Microsoft from "condition[ing] the grant of any Consideration on an ISV's refraining from developing, using, distributing, or promoting any software that competes with Microsoft Platform Software or any software that runs on any software that competes with Microsoft Platform Software . . . ."

    - **Section III.G.1** prohibits Microsoft from entering into any agreement with "any IAP, ICP, ISV, IHV, or OEM that grants Consideration on the condition that such entity distributes, promotes, uses, or supports, exclusively or in a fixed percentage, any Microsoft Platform Software . . . ."

11. Microsoft "deceived Java developers regarding the Windows-specific nature" of Microsoft's Java software development tools. Thus, "developers who relied upon Microsoft's public commitment to cooperate with Sun and who used Microsoft's tools to develop what Microsoft led them to believe were cross-platform applications ended up producing applications that would run only on the Windows operating system." 253 F.3d at 76.

    *RPFJ Provisions*:
    - **Section III.D** requires Microsoft to disclose to all ISVs "the APIs and related Documentation that are used by Microsoft Middleware to interoperate with a Windows Operating System Product."

12. Microsoft threatened Intel, which was developing a high-performance cross-platform Windows-compatible JVM, that if Intel "did not stop aiding Sun on the multimedia front, then Microsoft would refuse to distribute Intel technologies bundled with Windows." 253 F.3d at 77.

   *RPFJ Provisions*:
   - **Section III.F.1** prohibits Microsoft from retaliating against any ISV because of that ISV's "developing, using, distributing. promoting or supporting any software that competes with Microsoft Platform Software or any software that runs on any software that competes with Microsoft Platform Software."

   - **Section III.F.2** prohibits Microsoft from "condition[ing] the grant of any Consideration on an ISV's refraining from developing, using, distributing, or promoting any software that competes with Microsoft Platform Software or any software that runs on any software that competes with Microsoft Platform Software . . . ."

## II. LIABILITY FINDINGS REJECTED BY THE COURT OF APPEALS

1. Microsoft prohibited OEMs from "causing any user interface other than the Windows desktop to launch automatically." 253 F.3d at 62. The court of appeals found that this restriction had an anticompetitive effect (*id.*), but does *not* violate Section 2 because "a shell that automatically prevents the Windows desktop from ever being seen by the user is a drastic alteration of Microsoft's copyrighted work, and outweighs the marginal anticompetitive effect of prohibiting the OEMs from substituting a different interface automatically upon completion of the initial boot process." *Id.* at 63.

2. Microsoft designed Windows 98 to "override the user's choice of a default browser in certain circumstances." 253 F.3d at 67. The court of appeals found that plaintiffs had failed to rebut Microsoft's proffered technical justification that such overriding was necessary in a "few" circumstances, e.g., invoking the Windows 98 Help system, Windows Update feature, or accessing the Internet through "My Computer" or "Windows Explorer." *Id.*

3. Microsoft offered Internet Explorer free of charge to IAPs and ISVs. The court of appeals held that "the antitrust laws do not condemn even a monopolist for offering its product at an attractive price, and we therefore have no warrant to condemn Microsoft for offering . . . IE . . . free of charge or even at a negative price." 253 F.3d at 68 (giving IE to IAPs); *see also id.* at 75 (giving IE to ISVs).

4. Microsoft offered "IAPs a bounty for each customer the IAP signs up for service using the IE browser." 253 F.3d at 67. The court of appeals held that "the antitrust laws do not

condemn even a monopolist for offering its product at an attractive price, and we therefore have no warrant to condemn Microsoft for offering . . . IE . . . free of charge or even at a negative price." *Id.* at 68.

5. Microsoft developed the IE Access Kit (IEAK), a "software package that allows an IAP to 'create a distinctive identity for its service in as little as a few hours by customizing the [IE] title bar, icon, start and search pages,'" and offered the IEAK to IAPs for free. 253 F.3d at 68 (quoting *Findings of Fact* ¶ 249). The court of appeals held that "the antitrust laws do not condemn even a monopolist for offering its product at an attractive price, and we therefore have no warrant to condemn Microsoft for offering . . . the IEAK . . . free of charge or even at a negative price." *Id.*

6. Microsoft entered into exclusive dealings with ICPs, which develop websites, in exchange for the ICPs' agreement to distribute, promote, and rely on IE rather than Netscape's Navigator browser. 253 F.3d at 71. The court of appeals found that "plaintiffs failed to demonstrate that Microsoft's deals with the ICPs have a substantial effect upon competition . . . ." *Id.*

7. Microsoft developed a JVM that "allows Java applications to run faster on Windows than does Sun's JVM, . . . but a Java application designed to work with Microsoft's JVM does not work with Sun's JVM and vice versa." 253 F.3d at 74. The court of appeals held that "a monopolist does not violate the antitrust laws simply by developing a product that is incompatible with those of its rivals." *Id.* at 75.

8. The court of appeals reversed the district court's finding that Microsoft was liable based on its "general 'course of conduct'" apart from specific acts that violated Section 2. 253 F.3d at 78.