IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>                    Defendant. | Civil Action No. 98-1232 (CKK)<br><br>Next Court Deadline:  None |

**MICROSOFT CORPORATION'S SUPPLEMENTAL MEMORANDUM
CONCERNING SECTION 16(g) OF THE TUNNEY ACT**

In accordance with the Court's request made during the March 6, 2002 Tunney Act hearing, Microsoft Corporation ("Microsoft") hereby submits this supplemental memorandum pertaining to Microsoft's Section 16(g) disclosure.  Specifically, this memorandum supplements Microsoft's December 10, 2001 disclosure, which dealt with the period commencing September 28, 2001, by covering the period commencing from the issuance of the Court of Appeals mandate on August 24, 2001.

In addition, in response to the Court's hearing inquiries regarding the legislative history of the Tunney Act (and contentions raised by *amici* in their post-Tunney Act hearing briefs regarding the legislative history), Microsoft addresses that topic as well.  Finally, Microsoft briefly responds to *amici*'s contention (raised in their post-hearing brief) regarding the timeliness of Microsoft's initial disclosure.

## DISCUSSION

### Microsoft's Supplemental Description Of Communications

At the March 6, 2002 hearing, the Court asked Microsoft counsel whether Microsoft's December 10, 2001 Tunney Act disclosure covered the period commencing with the issuance of the mandate from the Court of Appeals or some later date. (March 6 Hr'g Tr. at 94-95.) When Microsoft counsel confirmed that the disclosure covered communications commencing on September 28, 2001 (rather than the earlier mandate date), the Court requested Microsoft to "consider supplementing [its disclosure] if there's something to say" regarding the earlier period. (*Id.* at 95.) Pursuant to the Court's request, Microsoft respectfully submits – at Appendix A hereto – its Supplemental Description of Written or Oral Communications Concerning the Revised Proposed Final Judgment.

### Statutory Construction Principles, Case Law, Legislative History, and Practice Make Clear That Section 16(g) Applies Only To Executive Branch Communications

At the March 6 hearing, the Court also made inquiries concerning the legislative history of the Tunney Act, and whether that history suggests that communications between a defendant and the legislative branch should be included within the disclosure required by Section 16(g). (March 6 Hr'g Tr. at 87.) The Court noted that this issue had been raised by *amici* in their submissions to the Court. (*Id.*) Indeed, both before, during and after the hearing, this contention was raised by *amicus* American Antitrust Institute, Inc. ("AAI"). Microsoft responded to this point specifically in its February 27, 2002 Tunney Act Memorandum ("Microsoft Mem.") at Section VI (pp. 38-45), as well as during the hearing itself, (March 6 Hr'g Tr. at 87-90), and does not propose to repeat those arguments here. However, in order to make sure that the Court's queries are fully answered, and to respond to the additional arguments made by AAI in its March 11, 2002 post-hearing brief ("AAI Brief"), Microsoft provides the further analysis below.

AAI's argument that Rule 16(g) requires disclosure of any contacts that Microsoft may have had with both members of Congress (and their staffs) and members of the Judiciary (and

their staffs), (AAI Brief at 16-17), simply rehashes the contentions it raised in its previous filings. Yet, as Microsoft observed in its Memorandum, even to state the proposition undermines it. AAI leaves unexplained why Congress would have required an antitrust defendant to "disclose" to the Court any contacts it had with the Court regarding the terms of the consent decree. Moreover, AAI offers no explanation as to why Congress would have required disclosure of contacts between a defendant and its own Members regarding the terms of a consent decree. Certainly, if Congress had intended to mandate "sunshine" regarding such contacts with Members, it would not have done so indirectly or by inference.

Microsoft's understanding of the statute, however, does not rely on this logic alone. Instead, well-accepted principles of statutory construction make clear that the term "officers or employees of the United States" – as used in the Tunney Act itself – is restricted to Executive Branch personnel. As Microsoft explained in its Memorandum, the Tunney Act is replete with references to the "United States" in contexts that make clear that it is referring solely to the Executive Branch. *See* Microsoft Mem. at 42-43 (citing 15 U.S.C. §§ 16(b), 16(c), 16(d)-(f), 16 (h) and 16(i)). Case law is well-established that "identical words used in the different parts of the same act are intended to have the same meaning." *Sullivan* v. *Stroop*, 496 U.S. 478, 484 (1990).[1] AAI ignores this principle, suggesting instead that the term "United States" had previously been more broadly construed by some courts in other contexts. (AAI Brief at 16, n.16 (citing cases).) Yet, the cases relied on by AAI do not apply this basic principle and, in any event, have nothing to do with the Tunney Act, antitrust law, or anything even remotely relevant

---

[1] AAI erroneously suggests that because Congress explicitly referenced "employees of the Department of Justice" in Section 16(g), the reference to "employees of the United States" must include all branches of government. AAI Br. at 16. Of course, that is a *non sequitur*. Microsoft does not contend that employees of the United States is restricted to the Justice Department, but rather the Executive Branch. The reference to the Department of Justice does not justify the sweeping expansion of the term to include all three branches of government as AAI suggests.

to this case.[2]  Other cases – not cited by AAI – construe statutory references to the officers and employees of the "United States" far more narrowly.  *See, e.g., Liberation News Serv.* v. *Eastland*, 426 F.2d 1379, 1384 (2d Cir. 1970) ("officer or employee of the United States" – for purposes of 28 U.S.C. § 1391(e) – applies solely to the Executive Branch); *King* v. *Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992) (same).[3]

AAI's reliance on the legislative history – primarily Senator Tunney's statements as he introduced the bill to the Senate – is of little utility here.  (*See* AAI Brief at 16 (citing 119 Cong. Rec. 3453 (1973)).)  The statute is clear on its face, so there is no occasion to examine legislative history.  *See Caminetti* v. *United States,* 242 U.S. 470, 485 (1917) ("It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain . . . the sole function of the courts is to enforce it according to its terms."); *Zerelli* v. *Evening News Ass'n*, 628 F.2d 217, 220 (D.C. Cir. 1980) ("The starting point in construing any statute is the language of the statute itself, and if that language is clear, the judicial inquiry ends. . . .").  Moreover, even when resort to legislative history is allowed, the

---

[2]  Although AAI characterizes the cases as "pre-dating the Tunney Act," the first case cited is from 1991 (after the Tunney Act was enacted), and it is inapposite.  In *Williams* v. *Brooks,* 945 F.2d 1322 (5th Cir. 1991), the court merely held that for purposes of a federal removal statute (28 U.S.C. § 1442(a)(1)), a congressman is deemed an officer of the United States.  Another case cited by AAI, *Nebraska* v. *Finch*, 339 F. Supp. 528, 530-31 (D. Neb. 1972), dealt with the interpretation of an agreement where there was an issue as to whether certain local elected local officials were officers or employees of the *state* under that contract.  Lastly, *United States* v. *Meyers,* 75 F. Supp. 486 (D.D.C.), *aff'd*, 171 F.2d 800 (D.C. Cir. 1948), concerned application of a District of Columbia perjury statute to sworn testimony before a Senate panel.  None of these cases has any application to proper construction of the Tunney Act provision in question.

[3]  The Constitution, too, clearly delineates between Members of Congress and officers of the United States.  *See Buckley* v. *Valeo*, 424 U.S. 1, 124-26 (1976) (quoting Art. II, § 2, cl. 2, which clearly distinguishes Officers of the United States from Members of Congress, in making clear that no such officer shall be, at the same time, a Member of Congress); *see also Liberation News Serv.*, 426 F.2d at 1382 (noting that a number of Constitutional provisions distinguish between Members of Congress and officers of the United States).

4

views of one Member of Congress, particularly views set forth early in the mark-up process,[4] are of little significance. *See Weinberger* v. *Rossi*, 456 U.S. 25, 35 n.15 (1982) ("The contemporaneous remarks of a sponsor of legislation are certainly not controlling in analyzing legislative history."); *United States* v. *Tabacca*, 924 F.2d 906, 911 (9th Cir. 1991) ("The remarks of a legislator, even those of the sponsoring legislator, will not override the plain meaning of a statute.").[5]

Even so, if the Court finds occasion to consider any legislative history on this question, including Senator Tunney's personal views, the Court should give more prominence to the House Committee Report regarding the Act. *See Mills* v. *United States*, 713 F.2d 1249, 1252 (7th Cir. 1983), *cert. denied*, 464 U.S. 1069 (1984) ("Generally, committee reports represent the most persuasive indicia of Congressional intent (with the exception, of course, of the statute itself).").[6] In particular, the Court should focus on the fact that, when discussing the subsection (g) disclosure obligations, the House noted the exemption applicable to the Department of Justice and then stated: "Conversely, communications by counsel of record alone with *officers or employees of all government agencies* other than the Department of Justice are intended to be

---

[4] The Act originally was introduced at the end of the previous session of Congress, but the session elapsed before hearings could be held. Senator Tunney's statements, first printed at 118 Cong. Rec. 31673 (1972), were entered into the Congressional Record in its entirety at 119 Cong. Rec. 3449 (1973).

[5] It is clear from the Record that Senator Tunney's description of the bill reflects his own personal views regarding its application. *See* 119 Cong. Rec. 3453 (repeated usage of "I believe" language). If of any utility, Senator Tunney's remarks regarding the content of the disclosure are interesting, given AAI's contention that a detailed description of the communication is required. AAI Br. at 14-15. Yet, according to Senator Tunney: "The disclosure intended is a disclosure of the fact of the meeting and the general subject matter. It obviously does not envision an outline of the conversation. *But the essential data, that is, the date, the participants, and the fact that antitrust matters were discussed must be disclosed.*" 119 Cong. Rec. 3453 (emphasis added).

[6] *See also N. Colorado Water Conservancy Dist.* v. *Fed. Energy Regulatory Dist.*, 730 F.2d 1509, 1518-1519 (D.C. Cir. 1984) (noting that statements in Conference Reports, because commended to the entire Congress, have greater weight than the remarks of a single legislator—even if that legislator is the statute's sponsor).

within the disclosure requirements." H.R. Rep. No. 93-1463, at 12 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6535, 6543 (emphasis added). This legislative history, reflecting the House Committee's views and coming much further along in the legislative process than Senator Tunney's comments, makes clear that the House intended for the disclosure requirement to be limited to officers and employees of the Executive Branch agencies.

On this record, therefore, there is no reason to expand the disclosure obligations to include Congressional contacts.[7] Indeed, any such directive would appear to be unprecedented. As Microsoft observed in its Memorandum, it is unaware of any section 16(g) disclosure in other cases that has included legislative or judicial contacts, Microsoft Mem. at 43 n.38, including the disclosure in the *AT&T* case. The Department of Justice did not contend otherwise when the opportunity to do so arose at the hearing. (March 6, 2002 Hr'g Tr. at 96-97.) AAI has not cited any contrary precedent.

**Microsoft Filed Its Disclosure Within The Ten Day Limit As Ordered By This Court**

In its post-hearing brief, AAI also raises a meritless procedural argument concerning Microsoft's initial Section 16(g) disclosure. It is perhaps telling that AAI's brief leads off with and mentions this argument at least four separate times in its brief. AAI argues as follows:

> Microsoft violated the statute by making untimely disclosure of its lobbying contacts. Section 16(g) required Microsoft to file its disclosure "not later than 10 days following the date of the filing" of the proposed consent decree. The proposed consent decree was filed on November 6, 2001. Therefore, Microsoft's disclosure was due by November 16. However, Microsoft did not file its disclosure until December 10, 2001, more than three weeks after the deadline.

(AAI Brief at 14.) AAI relies on this accusation again when it seeks to ascribe a nefarious, conspiratorial agenda to Microsoft's alleged dilatory disclosure. (*Id.* at 21, n.22.) And it relies

---

[7] As Mr. Warden represented at the March 6, 2002 hearing, Microsoft did not discuss the terms of the proposed consent decree with Congress in any event. (March 6, 2002 Hr'g Tr. at 90.)

on this same argument to suggest that Microsoft cannot "cure" its alleged late filing by making the disclosure at a later date. (*Id.* at 22, 23, n.23.) Finally, AAI suggests that the only remedies available to redress Microsoft's late filing are to either reject the consent decree outright or to start the entire Tunney Act process over again. (*Id.* at 25.) Hence, from beginning to end, AAI relies on the argument that Microsoft's alleged failure to comply with the ten day deadline poisoned the entire process.

AAI's contention is wrong at its core. *What AAI ignores is the fact that Microsoft's Rule 16(g) disclosure was made pursuant to and in accordance with this Court's Order dated November 8, 2001*. In that Order, the Court ruled as follows:

> ORDERED That, *pursuant to 15 U.S.C. 16(g), within ten days of the publication of the proposed Final Judgment in the Federal Register*, Microsoft shall file with the Court a description of any and all written or oral communications, by or on behalf of Microsoft, or other person, with any officer or employee of the United States, concerning or relevant to the proposed Final Judgment, except that any such communications made by counsel of record alone with either the Attorney General or the employees of the United States Department of Justice, shall be excluded from this requirement, . . . .

Nov. 8, 2001 Order at 2 (emphasis added). Microsoft complied with this Order precisely. The United States published the proposed Final Judgment in the Federal Register on November 28, 2001, and Microsoft filed its Rule 16(g) disclosure within ten days thereafter on December 10, 2001.[8] On this record, it is plain that Microsoft's filing was timely. AAI's latest grievance, therefore, is a non-issue.

//
//

---

[8] Pursuant to FED. R. CIV. P. 6(a), weekends are excluded from the ten day period.

7

## CONCLUSION

For all the foregoing reasons, Microsoft respectfully requests that the Court accept the appended Supplemental Description and reject any challenges to the sufficiency of Microsoft's Tunney Act Section 16(g) disclosures.

DATED: Washington, D.C.
March 20, 2002

Respectfully submitted,

_____

| | |
|---|---|
| William H. Neukom | John L. Warden (Bar No. 222083) |
| Thomas W. Burt | Richard J. Urowsky |
| David A. Heiner, Jr. | Steven L. Holley |
| Diane D'Arcangelo | Michael Lacovara |
| Christopher J. Meyers (Bar No. 456586) | Richard C. Pepperman, II |
| MICROSOFT CORPORATION | Stephanie G. Wheeler |
| One Microsoft Way | Ronald J. Colombo |
| Redmond, Washington 98052 | SULLIVAN & CROMWELL |
| (425) 936-8080 | 125 Broad Street |
| | New York, New York 10004 |
| Dan K. Webb | (212) 558-3000 |
| Bruce R. Braun | |
| WINSTON & STRAWN | Bradley P. Smith (Bar No. 468060) |
| 35 West Wacker Drive | SULLIVAN & CROMWELL |
| Chicago, Illinois 60601 | 1701 Pennsylvania Avenue, N.W. |
| (312) 558-5600 | Washington, D.C. 20006 |
| | (202) 956-7500 |
| Charles F. Rule (Bar No. 370818) | |
| Douglas W. Baruch (Bar. No. 414354) | *Counsel for Defendant* |
| FRIED, FRANK, HARRIS, SHRIVER & JACOBSON | *Microsoft Corporation* |
| 1001 Pennsylvania Avenue, N.W. | |
| Suite 800 | |
| Washington, D.C. 20004-2505 | |
| (202) 639-7300 | |

# APPENDIX A

**MICROSOFT CORPORATION'S SUPPLEMENTAL DESCRIPTION
OF WRITTEN OR ORAL COMMUNICATIONS CONCERNING THE REVISED
PROPOSED FINAL JUDGMENT**

On September 27, 2001, counsel for Microsoft met with representatives of the United States Department of Justice and the plaintiff States in Washington, D.C. The meeting did not concern the terms of a possible settlement of this action, but was preliminary to such discussions. Joe Belfiore of Microsoft attended this meeting to provide a demonstration of Windows XP and to answer questions about its functionality.