IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
UNITED STATES OF AMERICA,                 )
                                          )
                      Plaintiff,          )
                                          )
           v.                             )          Civil Action No. 98-1232 (CKK)
                                          )
MICROSOFT CORPORATION,                    )          Next Court Deadline:  None
                                          )
                      Defendant.          )
                                          )
_____)


**NOTICE OF MICROSOFT CORPORATION'S COMPLIANCE WITH
MILESTONES OF THE SECOND REVISED PROPOSED FINAL JUDGMENT
PURSUANT TO STIPULATION ENTERED FEBRUARY 7, 2002**

Microsoft Corporation ("Microsoft") submits this Notice to advise the Court of

Microsoft's compliance with various milestones established by the Second Revised Proposed

Final Judgment ("SRPFJ").  By Stipulation entered on November 6, 2001, Microsoft agreed with

the United States and the nine settling Plaintiff states to comply with the SRPFJ as if it were in

full force and effect pending its entry by the Court.  As a result, Microsoft has been obligated to

conform its business practices to most, though not all, of the substantive provisions of the

SRPFJ.[1]

Since the predecessor of the SRPFJ was filed with the Court on November 6, 2001,

Microsoft has devoted substantial effort to complying with the SRPFJ.  Microsoft has already

reached many of the milestones established by the SRPFJ, including making available for

licensing Communications Protocols pursuant to Section III.E of the SRPFJ, as the United States

_____
[1] Milestones measured from the date the SRPFJ was filed with the Court that Microsoft is required to meet are
described below.  Certain other milestones, in particular, establishment of the Technical Committee, are measured
from the date the Court enters the SRPFJ and so are not yet applicable.

indicated in its Notice of Issuance of Microsoft Consent Decree Compliance Advisory, filed on August 5, 2002.[2]

Microsoft provides a publicly-available description of its compliance program on its website at http://www.microsoft.com/legal/settlementprogram/.  The most significant of those compliance efforts are briefly summarized below.

**SRPFJ Compliance Milestones**

Broadly speaking, the compliance milestones can be divided into three categories: (1) Microsoft's obligation to abide by the substantive obligations and prohibitions in the various subsections within Section III of the SRPFJ, except for subsections III.D, III.E, and III.H, (2) Microsoft's obligation to modify Windows 2000 and Windows XP as required by Section III.H of the SRPFJ, and (3) Microsoft's obligation to disclose or make available for licensing technical information (i.e., APIs and related Documentation and Communications Protocols) as required by Sections III. D and III.E of the SRPFJ.

**(1)     Microsoft's General Obligations**

Pursuant to the Stipulation, Microsoft was obligated to begin complying with the substantive provisions of the predecessor of the SRPFJ on December 16, 2001, except with respect to those provisions (e.g., Sections III.D, III.E, and III.H) that specifically provided for events to occur at a later date.  As Bradford L. Smith, now Microsoft's General Counsel, described to the Court during the Tunney Act hearing, Microsoft began providing extensive training for its in-house lawyers and business people to ensure that its employees understand the obligations imposed by the SRPFJ.  Hearing Tr. at 109-15 (Mar. 6, 2002).  Those training efforts described by Mr. Smith continue to this day, as Microsoft seeks to ensure that its business practices comply with the standards set forth in the SRPFJ.

---

[2] Under the Stipulation, where the SRPFJ provides for the timing of Microsoft's obligations to be calculated from the date of submission of the SRPFJ to the Court, the time shall be calculated from November 6, 2001, the date of submission to the Court of the revised proposed Final Judgment.

One of the obligations that became effective on December 16, 2001 was Microsoft's obligation to license Windows Operating System Products to the top 20 computer manufacturers ("OEMs") on uniform terms and conditions pursuant to Section III.B of the SRPFJ.  Although Microsoft's obligation to employ uniform terms and conditions is limited to Microsoft's license agreements with the 20 largest OEMs, Microsoft voluntarily extended those uniform terms and conditions to all OEMs that license Windows on a royalty basis (as opposed to the thousands of small system builders).

Because Microsoft only had a very short time to develop the uniform OEM license terms and conditions that became available on December 16, 2001, Microsoft was unable to solicit feedback from OEMs before it published the first version of the new uniform license agreements.  OEMs did raise certain issues about the new terms and conditions, and based on that feedback, Microsoft in early 2002 made certain modifications to the uniform terms and conditions to accommodate various of their concerns.  As OEMs' preexisting Windows licenses expired after December 16, 2001, they were offered new uniform license agreements that were set to expire on July 31, 2002.

In the course of transitioning OEMs to the uniform licensing agreements, Microsoft informed OEMs that it would be soliciting further feedback from them and would make additional changes to the uniform terms and conditions where appropriate.  On May 1, 2002, Microsoft published a modified version of the uniform license agreements, reflecting changes made in response to additional feedback received from OEMs.  On August 1, OEMs that license Windows on a royalty basis moved to these new uniform agreements, which will run on a unified licensing cycle from August 1 through July 31 of the following calendar year.  Before each new annual licensing cycle, Microsoft intends to continue soliciting feedback from OEMs in developing the next year's uniform license agreements.

**(2)**     **Section III.H**

Pursuant to Section III.H of the SRPFJ, upon the release of Service Pack 1 ("SP1") for Windows XP, Microsoft must design Windows XP Home Edition and Windows XP Professional

as well as Windows 2000 Professional to allow end users and OEMs: (a) to enable or remove access to Microsoft and Non-Microsoft Middleware Products, and (b) to designate a Non-Microsoft Middleware Product as the "default" in certain circumstances.  In June 2002, Microsoft released beta test versions of SP1 for Windows XP and Service Pack 3 ("SP3") for Windows 2000 Professional that implemented these changes.  Those beta test versions of the Windows Operating System Product included a new feature, called "Set Program Access and Defaults," designed to comply with the requirements of Section III.H.  With a few modifications reflecting feedback on the beta test versions, Microsoft on August 1, 2002, released SP3 for Windows 2000 Professional, which is compliant with Section III.H.  In the next few days, Microsoft will release SP1 for Windows XP, which will also be compliant with Section III.H.

In the soon-to-be-released SP1 for Windows XP, consumers may access the Set Program Access and Defaults feature from the Start menu and from the existing Add or Remove Programs utility in Windows XP, which is accessible from the Control Panel.  The feature will allow OEMs and consumers to enable or remove access to specified Windows components designated as Microsoft Middleware Products under the SRPFJ[3] and to Non-Microsoft Middleware Products designed to take advantage of the feature.  The Set Program Access and Defaults feature will also enable OEMs and consumers to set the default programs they want to launch in certain instances where Windows components would otherwise launch.

In SP1 for Windows XP, the Set Program Access and Defaults feature was designed to offer consumers four basic options that they can select at any time.  Consumers will be able to select (i) the OEM's configuration of program access and defaults if the OEM has elected to create such a configuration, (ii) the Microsoft Windows configuration of program access and defaults (which will preserve access to all Non-Microsoft programs installed on the machine), (iii) a configuration that removes access to all Microsoft Middleware Products and assigns Non-

---

[3] These components are Internet Explorer, Windows Media Player, Windows Messenger, Outlook Express and the Microsoft Java VM.

Microsoft Middleware Products as defaults when available, or (iv) a custom configuration that permits consumers to select individual programs from the five identified categories of "middleware," namely, Web browsing software, multimedia playback software, email software, instant messaging software and Java virtual machines.

      (3)      **Sections III.D and III.E**

The SRPFJ requires Microsoft to make available to certain third parties certain technical information about its Windows Operating System Products that those third parties can use in designing software products to interoperate with Windows.  Section III.D of the SRPFJ requires Microsoft to disclose APIs and related Documentation that are used by Microsoft Middleware Products to interoperate with Windows Operating System Products.  Although Microsoft already publishes thousands of APIs that software developers have used to create large numbers of Windows applications, Microsoft identified approximately 290 additional interfaces that were previously internal to Windows that Microsoft must disclose pursuant to Section III.D of the SRPFJ.  Consistent with the terms of the SRPFJ, Microsoft has disclosed those new APIs and the related Documentation describing how they can be used to call upon functionality of Windows Operating System Products on the Microsoft Developer Network web site.[4]

Section III.E requires that, within nine months of submission of the SPRFJ to the Court, Microsoft must make available for licensing any Communications Protocols implemented in certain Windows desktop operating systems that are used to interoperate or communicate natively with Windows server operating systems.  On August 6, 2002, Microsoft began making 113 such previously proprietary Communications Protocols available for licensing.  Microsoft has posted information on its Web site explaining the licensing program for Microsoft's Communications Protocols and has established a process through which third parties can obtain licenses.  Such information may be found at http://www.microsoft.com/legal/protocols/.

---

[4] Section III.D of the SRFJ requires Microsoft to disclose the APIs and related Documentation "[s]tarting at the earlier of the release of Service Pack 1 of Windows XP" or November 6, 2002.

The Communications Protocols that Microsoft has now made available for licensing are intellectual property that represent a substantial portion of the value of Windows server operating systems.  Microsoft has designed the licensing program to allow licensees to develop server software products that use the Communications Protocols to interoperate or communicate with covered Windows desktop operating systems in order to perform various server tasks.  Those tasks mirror how Microsoft's server operating systems interoperate or communicate with Windows desktop operating systems.  By categorizing the Communications Protocols by task and licensing them for use in given tasks (e.g., file serving, print serving, streaming media), Microsoft has simplified the process so that potential licensees can easily obtain all of the covered Communications Protocols used to interoperate with covered Windows desktop operating systems in the specified scenarios.

Section III.J.1 of the SRPFJ allows Microsoft to withhold either APIs or portions of Communications Protocols, the disclosure of which would compromise a variety of software security systems (such as digital rights management).  Pursuant to that provision of the SRPFJ, Microsoft is withholding only a very small number of APIs and only one Communications Protocol.

\*          \*          \*

Microsoft takes seriously its obligations under the SRPFJ and more generally under the

U.S. antitrust laws, and is committed to satisfy those obligations.

Dated:  Washington, D.C.
        August 28, 2002

_____

| | |
|---|---|
| Bradford L. Smith | John L. Warden (Bar No. 222083) |
| Thomas W. Burt | Richard J. Urowsky |
| David A. Heiner, Jr. | Steven L. Holley |
| Diane D'Arcangelo | Michael Lacovara |
| Christopher J. Meyers (Bar No. 456586) | Richard C. Pepperman, II |
| MICROSOFT CORPORATION | Stephanie G. Wheeler |
| One Microsoft Way | Ronald J. Colombo |
| Redmond, Washington 98052 | SULLIVAN & CROMWELL |
| (425) 936-8080 | 125 Broad Street |
| | New York, New York 10004 |
| Dan K. Webb | (212) 558-4000 |
| Bruce R. Braun | |
| WINSTON & STRAWN | |
| Chicago, Illinois 60601 | Bradley P. Smith (Bar No. 468060) |
| (312) 558-5600 | SULLIVAN & CROMWELL |
| | 1701 Pennsylvania Avenue, N.W. |
| | Washington, D.C. 20006 |
| Charles F. Rule (Bar No. 370818) | (202) 956-7500 |
| FRIED, FRANK, HARRIS, SHRIVER | |
|   & JACOBSON | |
| 1001 Pennsylvania Avenue, N.W. | *Counsel for Defendant* |
| Suite 800 | *  Microsoft Corporation* |
| Washington, D.C. 20004 | |
| (202) 639-7300 | |