IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

MICROSOFT CORPORATION,

Defendant.

Civil Action No. 98-1232 (CKK)

Next Court Deadline: None

## MEMORANDUM OF THE UNITED STATES IN OPPOSITION TO THE JOINT MOTION OF *AMICI CURIAE* CCIA AND SIIA FOR LEAVE TO INTERVENE FOR PURPOSES OF APPEAL

The United States opposes the Motion of the Computer & Communication Industry Association ("CCIA") and the Software & Information Industry Association ("SIIA") (collectively, the "Joint Movants") for leave to intervene for the purpose of appealing this Court's November 12, 2002, determination that the proposed final judgment in this case — consented to by the United States, Microsoft and nine Plaintiff states in the companion case of *New York v. Microsoft*, No. 98-1233 — is in the public interest.

As this Court's prior denial of CCIA's motions to intervene, Memorandum Opinion and Order (Feb. 28, 2002) ("CCIA Order"), and denials of several similar motions[1] make clear, the Joint Movants fall far short of the minimum requirements for intervention to appeal the substance of the Court's public interest determination pursuant to the applicable rule, Rule 24 of the Federal

---

[1] Memorandum Opinion (Feb. 28, 2002) (California Plaintiffs); Memorandum Opinion (Feb. 28, 2002) (ProComp); Memorandum Opinion and Order (Feb. 28, 2002) (SBC).

Rules of Civil Procedure.  *See* CCIA Order at 3-4 ("'the Tunney Act looks entirely to [Rule] 24 to supply the legal standard for intervention'") (quoting *Mass. School of Law at Andover, Inc. v. United States*, 118 F.3d 776, 780 n.2 (D.C. Cir. 1997) ("*MSL*")).  The Joint Movants largely ignore those requirements, therefore, and focus on matters which may properly inform a court's decision to grant or withhold permissive intervention to an applicant for intervention who *does* meet the minimum requirements, as well as on matters outside Rule 24 entirely.

In effect, Joint Movants argue that this Court should ignore the requirements of Rule 24 and grant intervention simply because the parties should not be permitted to settle an important antitrust case without appellate review of the district court's public interest determination.  But Congress chose to make appeal of entry of a consent decree depend on intervention pursuant to Rule 24.  And Joint Movants' belief that the Court of Appeals should have the opportunity to review this Court's November 12, 2002, judgment, no matter how sincere, does not form the basis for Rule 24 intervention.  The Joint Movants fail to satisfy the minimum requirements of Rule 24 — disposition of this action will not impair their ability to protect any "interest relating to the property or transaction which is the subject of the action," Fed. R. Civ. P. 24(a)(2), and their claim, if any, lacks a "question of law or fact in common," Fed. R. Civ. P. 24(b)(2), with those at issue here.  That failure dictates that their Motion be denied.

## ARGUMENT

### I.   Only Those Satisfying The Requirements of Rule 24 May Appeal From The Entry Of A Consent Decree Pursuant To The Tunney Act

#### A.   The Tunney Act Provides No Means for Appeal of Entry of a Decree Apart From Rule 24

Congress did not design the Tunney Act to provide for routine appeals from the entry of consent judgments.  The Tunney Act comes into play only when the parties to a government

UNITED STATES' RESPONSE TO CCIA AND SIIA MOTION TO INTERVENE  - PAGE 2

antitrust case have reached a settlement.  15 U.S.C. § 16(b) (Tunney Act applies to "[a]ny proposal for a consent judgment submitted by the United States for entry in any civil proceeding brought by or on behalf of the United States under the antitrust laws").  Having settled their differences, the parties have agreed to end the suit, and therefore will not appeal the Court's entry of the settlement agreement as a final judgment.  Indeed, as the Joint Movants observe, "[n]one of the existing parties is . . . *permitted* . . . to appeal the approval of their settlement."  Memorandum of Points and Authorities in Support of Joint Motion by *Amici Curiae* CCIA and SIIA for Leave to Intervene for Purposes of Appeal at 7 (emphasis added) ("Mem.").[2]

Nor would Congress have anticipated appeals by non-parties.  "The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled." *Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (per curiam).  The Court of Appeals said more than 50 years ago that it had long been settled that "one who is not a party to a record and judgment is not entitled to appeal therefrom."  *United States v. Seigel*, 168 F.2d 143, 144 (D.C. Cir. 1948).  As the Court of Appeals has specifically found, "[n]othing in the language of the [Tunney] Act indicates that Congress intended to change the general rule."  *United States v. LTV Corp.*, 746 F.2d 51, 54 (D.C. Cir. 1984).  Thus, the Court of Appeals strictly applied the rule in dismissing the purported appeal of a non-party who had participated actively in the *LTV* Tunney Act proceeding.

Congress provided but one means for a non-party to become a party to a Tunney Act

---

[2]*Cf. Moore v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 47, 47-48 (1971) (per curiam) ("We are . . . confronted with the anomaly that both litigants desire precisely the same result . . . .  There is, therefore, no case or controversy within the meaning of Art. III of the Constitution.").  Because the United States would not be permitted to appeal this Court's entry, at our request, of the final judgment, the Joint Movants' thoughts about our disposition (Mem. at 7) or desire  (*id.* at 19) to appeal lend color, but not substance, to their argument.

UNITED STATES' RESPONSE TO CCIA AND SIIA MOTION TO INTERVENE  - PAGE 3

proceeding and thus acquire the ability to appeal entry of the decree.  That unique means is Rule
24 of the Federal Rules of Civil Procedure.  *See* 15 U.S.C. § 16(f)(3) ("intervention as a party
pursuant to the Federal Rules of Civil Procedure"); *see also* Mem. at 4 (conceding that "Tunney
Act commenters who wish to appeal entry of a government antitrust settlement must first be
granted intervenor status in the district court").  To the extent permitted by Article III of the
Constitution, Congress could have provided for other means of appeal by interested persons, but
it did not do so.

There is, moreover, no indication that Congress expected courts to apply a specialized
standard to Rule 24 determinations in Tunney Act proceedings.  In authorizing various forms of
participation under the Tunney Act, Congress did not intend to expand upon what the law
otherwise authorizes.  H.R. Rep. No. 93-1463, at 9 (1974), *reprinted in* 1974 U.S.C.C.A.N.
6535, 6539 (15 U.S.C. § 16(f) not "intended to authorize techniques not otherwise authorized by
law").  In particular, the statutory provision was "not intended to broaden the existing right of
intervention." 119 Cong. Rec. 24,599 (July 18, 1973) (Remarks of Sen. Tunney).  Accordingly,
the Joint Movants must meet the requirements of Rule 24 as a prerequisite to intervention for
purposes of appeal.

### B.    Judicial Precedent Does Not Support the Departure From the Statutory Plan Advocated by Joint Movants

Judicial practice is not to the contrary, despite Joint Movants' bald contentions that the
"consistent practice of this Court in major Tunney Act cases has been to liberally authorize
commenters who opposed the government's antitrust settlements to intervene for purposes of
appeal" (Mem. at 7) and that "[m]any district courts have denied requests for general intervention
as a Tunney Act party while later granting requests by the same parties to intervene for purposes

of appeal" (*id.* at 5 n.7).  Joint Movants support the first contention, about this Court, by citation

to only two cases from this district, while offering no citations to other district courts' Tunney

Act cases at all in support of the second, which references the supposed practice of "[m]any

district courts."

      In one of the two cases the Joint Movants cite for their purported "consistent practice," the

*AT&T* proceeding,[3] Judge Greene, without opposition by the United States, "authorized 108

states, state regulatory commissions, and private parties . . . to intervene for purposes of

appealing" entry of the decree.  *United States v. AT&T*, 714 F.2d 178, 179 (D.C. Cir. 1983).

That decision, however, establishes no general principle in favor of authorizing intervention for

purposes of appeal in important cases, without regard to Rule 24.  In granting intervention, Judge

Greene did not analyze how or whether the applicants satisfied the requirements of Rule 24.  *See*

*United States v. AT&T*, 552 F. Supp. 131, 219 (D.D.C. 1982) ("*AT&T*"), *aff'd mem. sub. nom.*

*Maryland v. United States*, 460 U.S. 1001 (1983).  But it is clear that many of these applicants

had substantial claims to intervene pursuant to Rule 24.  Various state actors claimed the decree

improperly preempted state regulation of the telephone industry,  *Maryland v. United States*, 460

U.S. 1001, 1002 (1983) (Rehnquist, J., dissenting); *see also AT&T*, 552 F. Supp. at 153-60

("Conflict Between the Proposed Decree and State Regulation"), which may provide a basis for

intervention as of right pursuant to Rule 24(a)(2).  Others objected to the elimination of

---

[3]The *AT&T* proceeding was not, technically, a Tunney Act proceeding.  Judge Greene followed Tunney Act procedures without deciding that the Tunney Act applied to the modification of a consent decree in one case and the dismissal of a different case.  *United States v. AT&T*, 552 F. Supp. 131, 144-45 (D.D.C. 1982), *aff'd mem. sub. nom. Maryland v. United States*, 460 U.S. 1001 (1983).

requirements previously applicable to AT&T entities.[4]  These, too, conceivably fall within Rule

24(a)(2), because the elimination of existing requirements may "affirmatively set [their] interests

back."  *MSL*, 118 F.3d at 780.  As for the rest, once Judge Greene authorized a number of

applicants to intervene for purposes of appeal, the significance of permitting others to do so was

substantially reduced.  *Cf. Diamond v. Charles*, 476 U.S. 54, 68 (1986) ("an intervenor's right to

continue a suit in the absence of the party on whose side intervention was permitted is contingent

upon a showing by the intervenor that he fulfills the requirements of Art. III") (quoted in *United*

*States v. W. Elec. Co.*, 900 F.2d 283, 310 (D.C. Cir. 1990)).

      Joint Movants' only other authority, the Thompson/West merger case, is no more helpful

to their contention, for the appeal there did not challenge the substance of the consent decree.  In

that case, Hyperlaw, Inc. sought to intervene for purposes of appeal, but only to challenge two

procedural determinations, one involving determinative documents, and the other involving notice

and comment for a modified proposed final judgment.[5]  Despite using broad language, Judge

Friedman did not clearly authorize any broader appeal.  *See United States v. The Thompson*

*Corp.*, No. 96-1415, 1997 WL 90992, at *4-*5 (D.D.C. Feb. 27, 1997).  And on appeal, the

---

    [4]*Maryland*, 460 U.S. at 1002 (Rehnquist, J., dissenting) (noting challenge to patent
licensing requirements); *see also AT&T*, 552 F. Supp. at 170 ("Some of the opponents of the
proposed decree argue that several of the restrictions contained in the 1956 decree should not be
eliminated").

    [5]Amicus Hyperlaw's First Amended Memorandum in Support of Its Motion To Intervene,
*United States v. The Thompson Corp.*, 949 F. Supp. 907 (D.D.C. 1996), http://www.hyperlaw.
com/hldjint5.htm (last visited Dec. 30, 2002) ("HyperLaw believes that the Court's failure to
require revised notice and disclosure of documents, as required by the Tunney Act, impairs the
public's rights under the Act"); Hyperlaw's Response to Plaintiffs' Amicus Curiae Opposition
Brief to Motion to Intervene, *United States v. The Thompson Corp.*, 949 F. Supp. 907 (D.D.C.
1996), http://www.hyperlaw.com/hldjint6.htm (last visited Dec. 30, 2002) ("HyperLaw has
sought intervention because it believes that in this matter the Department of Justice . . . has failed
to comply with the statutory requirements of the Tunney Act").

UNITED STATES' RESPONSE TO CCIA AND SIIA MOTION TO INTERVENE  - PAGE 6

Court of Appeals addressed only those two procedural determinations.  *See Hyperlaw, Inc. v. United States,* 159 F.3d 636, 1998 WL 388807, at *1 (D.C. Cir. 1998) (unpublished table decision).[6]

*MSL*, the Court of Appeals' most recent — and most substantial — treatment of Tunney Act intervention, which Joint Movants properly did not cite as supporting their central contention, actually undermines it in two ways.  First, the district court denied intervention for purposes of appeal, *MSL*, 118 F.3d at 778, in a departure from the supposed "consistent practice."  Second, the Court of Appeals, on appeal from the district court's denial of the applicant's motion to intervene for purposes of appeal, affirmed this denial, "except with regard to the question of whether the Tunney Act requires the government to make evidentiary material available to the public."  *Id.* at 785.   The Court of Appeals distinguished between the intervenor's attempt to appeal to challenge the district court's determination of the public interest and its appeal of a procedural issue because the first did not satisfy the requirements of Rule 24, while the second did.  Rule 24 controls, and it is to that rule we now turn.

## II.    Joint Movants Do Not Satisfy Rule 24(b)(2)'s Minimum Requirement for Permissive Intervention

In seeking to intervene for purposes of appeal, Joint Movants first claim to meet the requirements for permissive intervention pursuant to Rule 24(b)(2) of the Federal Rules of Civil

---

[6]This Court has in this matter cited that unpublished appellate decision as precedent on both of the procedural issues decided.  Memorandum Opinion at 18, 27 n.17 (July 1, 2002).  It is perhaps significant that the appeals resulting from the grants of intervention for purposes of appeal cited in support of the alleged "consistent practice of district courts in substantial government antitrust settlements" (Mem. at 5) collectively produced but a single published opinion — Justice Rehnquist's *dissenting* opinion in *Maryland*, 460 U.S. at 1001.

UNITED STATES' RESPONSE TO CCIA AND SIIA MOTION TO INTERVENE  - PAGE 7

Procedure.[7]  That rule grants a court discretion to permit intervention "when an applicant's claim

or defense and the main action have a question of law or fact in common."   If that test is met,

"[i]n exercising its discretion the court shall consider whether the intervention will unduly delay or

prejudice the adjudication of the rights of the original parties."  Fed. R. Civ. P. 24(b).  Joint

Movants, however, fail to satisfy the fundamental requirement of Rule 24(b)(2), so there is no

need to consider possible undue delay or prejudice to the rights of the original parties.

As this Court has noted, Rule 24(b)(2)'s requirement "that the would-be intervenor

advance a 'claim or defense' sharing common questions with the claims of the original parties,

advances the 'apparent goal of disposing of related controversies together.'"   Memorandum

Opinion and Order at 3 (Feb. 28, 2002) ("SBC Order") (quoting *EEOC v. National Children's

Ctr., Inc.,* 146 F.3d 1042, 1045 (D.C. Cir. 1998)); *see also* 7C Charles Alan Wright et al., Federal

Practice and Procedure § 1901, at 230 (2d ed. 1986) (citing, in discussing Rule 24, the "public

interest in the efficient resolution of controversies").  Without that commonality of claims, there is

no saving from adding parties.  *See MSL*, 118 F.3d at 782 (stating that "litigative economy,

reduced risks of inconsistency, and increased information" are the "hoped-for advantages" of

intervention).

Joint Movants have no claim that shares common questions with the claims of the original

_____

[7]Joint Movants do not expressly eschew reliance on Rule 24(b)(1), which permits
intervention "when a statute of the United States confers a conditional right to intervene," but this
Court gave short shrift to CCIA's earlier reliance on it.  CCIA Order at 3 ("in basing its motion
exclusively on Rule 24(b)(1), CCIA ignores this Circuit's precedent which declined to conclude
that the Tunney Act confers a 'conditional right to intervene'") (citing *MSL*, 118 F. 3d. at 780
n.2).

UNITED STATES' RESPONSE TO CCIA AND SIIA MOTION TO INTERVENE  - PAGE 8

parties.[8]  The closest they come to asserting such a claim is the vague statement that they "include

entities with actual and potential legal claims against Microsoft —  arising out of facts

substantially the same as those litigated in this case."  Mem. at 10.  Even assuming those

unspecified facts are the same as the facts litigated in this case, there is no economy to be had by

bringing those unspecified "actual and potential legal claims" into this matter.  This is now a

Tunney Act proceeding.  The only issues that the Joint Movants could appeal involve whether this

Court properly applied the Tunney Act and acted within its permissible discretion when it

determined the proposed decree was in the public interest and entered it.  Whatever the

commonality of the facts out of which this matter and the "actual and potential legal claims" of

Joint Movants' member entities arose, "the search for overlap is a forward-looking exercise,"

*MSL*, 118 F.3d at 782, and those "actual and potential legal claims" surely present no issues of

Tunney Act compliance.

We recognize, of course, that this is an argument the Court of Appeals rejected in *MSL*.

*See id.*  But the *MSL* Court's *reason* for rejecting the argument has no bearing here.  The Court

reasoned that if appeal were permitted, and the decree were rejected, there would be "at least

some prospect of trial on the merits, and the overlap of legal and factual issues in the two

plaintiffs' substantive antitrust claims might produce efficiency gains that in turn might warrant

intervention."  *Id.*  But that cannot happen here, for in contrast to *MSL*, this is not a case "without

---

[8]Perhaps for this reason, Joint Movants do not comply — as CCIA did not comply in its
two prior attempts to intervene here (SIIA is a first time intervention applicant) — with the
requirement of Rule 24(c) of the Federal Rules of Civil Procedure that applicants accompany their
motion with "a pleading setting forth the claim or defense for which intervention is sought."  Such
a pleading obviously facilitates determining whether an applicant satisfies Rule 24(b)(2).  *Cf.
Diamond*, 476 U.S. at 76-77 (O'Connor, J., concurring) (discussing relationship between pleading
requirement of Rule 24(c) and "claim or defense" in Rule 24(b)(2)).

UNITED STATES' RESPONSE TO CCIA AND SIIA MOTION TO INTERVENE  - PAGE 9

findings of illegal conduct."  *Id.*  In this matter, the trial on the merits of the United States'

antitrust claims began more than four years ago, the facts were found more than three years ago,

*United States v. Microsoft Corp.*, 84 F. Supp. 2d 9 (D.D.C. 1999), and judgment was first

entered two and a half years ago, *United States v. Microsoft Corp.*, 97 F. Supp. 2d 59 (D.D.C.

2000).  The Court of Appeals affirmed the district court's liability findings on one count, reversed

the findings on one count, and vacated and remanded another.  *United States v. Microsoft Corp.*,

253 F.3d 34 (D.C. Cir. 2001).[9]  Before the parties reached a settlement, the United States "opted

not to pursue the tying claim on remand."  Memorandum Opinion at 3 n.2 (July 1, 2002).  There

will be no retrial in this Court — and thus no savings from allowing intervention — whatever the

Court of Appeals does here.[10]

 Joint Movants also note that they have "a direct business interest in the clarity,

enforceability and effectiveness of the decree."  Mem. at 11.  We have no doubt that their member

entities have such interests.  But business interests in the antitrust remedies imposed in this case

do not amount to "question[s] of law or fact in common" with those in this Tunney Act

---

[9]The findings of fact and conclusions of law in this case are already being given effect in
other cases (thus providing the economy and efficiency not to be had by permitting intervention
here).  *See, e.g.*, Memorandum Opinion at 5 n.2 (Feb. 28, 2002) (California Plaintiffs) (quoting
would-be intervenors to the effect that a California state court has indicated an "intention to
instruct the jury that Microsoft has violated the antitrust laws based on the district court's
affirmed Findings and Conclusions"); *In re Microsoft Corp. Antitrust Litigation*, No. MDL 1332,
2002 WL 31487658, at *1 (D. Md. Nov. 4, 2002) (giving collateral estoppel effect to 395
findings of fact from this case, subject to later determination that some were not necessary to the
judgment).

[10]In theory there could be a remand followed by a trial limited to issues of remedy.  But
Joint Movants' members' "actual or potential legal claims" would have to be tried before they
could present remedy issues of either fact or law.  Even then, remedial issues in a case brought by
the United States and remedial issues in litigation between private parties may be quite distinct,
*see California v. American Stores*, 495 U.S. 271, 295-96 (1990), even if intervenors bringing
private claims do not seek damages.

UNITED STATES' RESPONSE TO CCIA AND SIIA MOTION TO INTERVENE  - PAGE 10

proceeding.[11]

Accordingly, whether or not permissive intervention here would unduly delay or prejudice the original parties (Mem. at 11-12) and whether or not they can point to "specific defects" (*id.* at 13) in the decree this Court entered, Joint Movants fail to satisfy the minimum requirement for permissive intervention under Rule 24(b)(2), common questions of law or fact.

### III.   Joint Movants Do Not Satisfy Rule 24(a)(2)'s Requirements for Intervention As Of Right

Joint Movants alternatively seek intervention as of right pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure.  Mem. at 14.[12]  That rule provides that an applicant will be permitted to intervene, on timely application, if

> [a] the applicant claims an interest relating to the property or transaction which is the subject of the action and [b] the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, [c] unless the applicant's interest is adequately represented by existing parties.

Joint Movants' Motion fails to establish their entitlement to intervene to appeal this Court's public

---

[11]Joint Movants suggest they satisfy the requirement of Rule 24(b)(2) because, although Rule 24(b)(2) intervenors need not have a "'direct personal pecuniary interest in the subject matter of the litigation,'" they do have direct personal pecuniary interests in this case.  Mem. at 11 n.13 (quoting *Diamond*, 476 U.S. at [7]7 (O'Connor, J., concurring)).  Joint Movants miss Justice O'Connor's point.  She explains that "[t]he words 'claim or defense' manifestly refer to the kinds of claims or defenses that can be raised in courts of law as part of an actual or impending law suit," and the interest asserted must therefore be one "sufficient to support a legal claim or defense" founded upon it.  *Diamond*, 476 U.S. at 76-77.  Accordingly, for permissive intervention, Joint Movants require an "interest that would permit [them] to sue or be sued by . . . anyone . . . in an action sharing common questions of law or fact with those at issue in this litigation."  *Id.* at 77.  Joint Movants do not and cannot explain how their "direct business interest" would support a suit raising the questions at issue in this Tunney Act proceeding.

[12]Joint Movants appear to eschew claiming intervention as of right pursuant to Rule 24(a)(1).  *See* Mem. at 15 (stating that "in this joint motion, no 'absolute right' to intervene in Tunney Act cases is claimed").

UNITED STATES' RESPONSE TO CCIA AND SIIA MOTION TO INTERVENE  - PAGE 11

interest determination.

The interest to which the rule refers must be a "'legally protectable one,'" *Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998) (quoting *Southern Christian Leadership Conference v. Kelly*, 747 F.2d 777, 779 (D.C. Cir. 1984)).  As this Court has explained (Memorandum Opinion at 4 (Feb. 28, 2002) ("California Plaintiffs Order")):

> In this regard, "potential intervenors must establish 'prudential' as well as constitutional standing." *In re Vitamins Antitrust Class Actions,* 215 F.3d 26, 29 (D.D.C. 2000).  Standing, a component of Article III's limitations on the justiciability of a claim, inquires as to whether the plaintiff has "'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin,* 422 U.S. 490, 498-99 (1975) (quoting *Baker v. Carr,* 369 U.S. 186, 204 (1975)).

The interest on which Joint Movants rely is an "interest in ensuring that the remedy in this case restores effective competition to the PC ecosystem." Mem. at 16.  The interest in "effective competition [in] the PC ecosystem" is, of course, widely shared.  Joint Movants refer to "[d]ozens of . . . companies," *id.*, but surely that interest is shared more widely — by all or virtually all firms in that "ecosystem" as well as by computer users generally.  That interest resembles "[a]n individual or entity's interest in seeing that the law is adhered to[, which] is too general an interest to confer standing," or an "interest in ensuring that this Court acts properly in response to the Court of Appeals' mandate on remand[, which] is just such a general interest."  California Plaintiffs Order at 4.[13]  The asserted interest does not qualify for purposes of Rule 24(a)(2).[14]

---

[13]Nor is the asserted interest within the zone of interests protected by the Tunney Act.  *See Mova*, 140 F.3d at 1074-75 (noting that prudential standing depends on whether the applicant is within the zone of interests protected by the statute).  The Tunney Act's purpose is to "provide that district courts make an independent determination as to whether or not the entry of a proposed consent judgment is in the public interest as expressed by the antitrust laws," S. Rep. No. 93-298, at 4 (1973), while "preserv[ing] the consent decree as a viable settlement option," and not to "force the government to go to trial for the benefit of potential private plaintiffs," *id.* at

In any event, "disposition of the action" without Joint Movants' intervention will not "as a practical matter impair or impede [their] ability to protect that interest."   In this respect, their situation is indistinguishable from that of the applicant in *MSL*.  There, the Court of Appeals "assume[d] arguendo that the more zealously the Department had pursued its antitrust claims, the greater the resulting *advance* in the [applicant]'s interest in being free of anticompetitive behavior," but it refused to "equat[e] failure to promote an interest with its impairment."  *MSL*, 118 F.3d at 780.  Joint Movants attempt to avoid this principle, for which they cite this Court's Memorandum Opinion at 4 (Feb. 28, 2002) ("ProComp Order") (page reference corrected) (quoting *MSL*) (*see* Mem. at 17 & n.21), by asserting that the

> ability of Microsoft to engage in anticompetitive conduct, which we do not believe is adequately restrained by decree, adversely affects our businesses.  That is a serious harm whether or not the decree includes any of the *additional* provisions Joint Movants believe are warranted.

*Id.* at 17.

The attempt fails.  Joint Movants allege not that the entry of the decree would impair their interests, but simply that the decree does not offer them as much protection from Microsoft as they would like.  That is, on its face, a complaint that the decree fails "'to secure better remedies for a third party,'" which is "'not a qualifying impairment.'"  ProComp Order at 4 (quoting *MSL*, 118 F.3d at 780).[15]

---

6.

[14]In *MSL*, the applicant asserted an interest "because the ABA's anticompetitive practices have led to denial of accreditation and thus inflicted millions of dollars of injury" on it.  *MSL*, 118 F.3d at 780.  The Court of Appeals found that interest to be "substantial," but did not otherwise address whether it met the requirements of Rule 24(a)(2), affirming the district court's denial of intervention as of right on other grounds.  *Id.*

[15]Joint Movants also fail to show that their asserted interest is not "adequately represented by existing parties."  Fed. R. Civ. P. 24(a)(2).  As the Court of Appeals said, "we do not think

Finally, we note that Joint Movants also devote two sentences of their Rule 24(a) argument to "procedural claims" involving a "lack of supporting documentation released by the government and Microsoft," noting that in *MSL* the Court of Appeals "permitted intervention as of right based precisely on such objections." Mem. at 17.[16] We doubt those two sentences were intended to, or suffice to, raise a claim of intervention as of right limited to appeal of this Court's determinations on those matters. These sentences occur in the Joint Movants' discussion of why intervention is needed to protect their interest (Mem. at 16-18), and there is no reference to these procedural issues in their discussion of the "Rule 24(a) interest requirement" (*id.* at 16). *Cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs."). Moreover, Joint Movants' purposes are clear: they seek appellate review not of procedural questions, but rather of "the Court's judgment and 'public interest' determination." Motion at 1. Their interest in obtaining a decree that places more restraints on Microsoft does not entitle them to intervention of right under Rule 24(a)(2).

---

representation is inadequate just because a would-be intervenor is unable to free-ride as far as it might wish — a well-nigh universal complaint." *MSL*, 118 F.3d at 781.

[16]The Court of Appeals appears to have based its treatment of the applicant's claim to various documents on the applicant's "broad view" of a portion of the Tunney Act, 15 U.S.C. § 16(b), which the Court did not say it endorsed. *MSL*, 118 F.3d at 781. Under that view, "once the proposed consent decree was filed [the applicant] acquired a legal entitlement to access a wide range of documents in the government's files," and failure to provide that access impaired that legal entitlement. *Id.* Joint Movants articulate no similar legal theory here.

UNITED STATES' RESPONSE TO CCIA AND SIIA MOTION TO INTERVENE  - PAGE 14

**CONCLUSION**

The Court should deny the Joint Motion.


Dated:  January 6, 2003

<div style="margin-left:50%">

Respectfully submitted,


_____

PHILLIP R. MALONE
RENATA B. HESSE
DAVID SEIDMAN
PAULA L. BLIZZARD
PATRICIA A. BRINK
JOAN V. FARRAGHER
JEFFREY D. NEGRETTE
BARBARA J. NELSON
JEFFREY J. VANHOOREWEGHE
Trial Attorneys
U.S. Department of Justice
Antitrust Division
600 E Street, N.W.
Suite 9500
Washington, D.C. 20530
202/514-8276

</div>

UNITED STATES' RESPONSE TO CCIA AND SIIA MOTION TO INTERVENE  - PAGE 15

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of January, 2003, I caused one copy of the foregoing

Response of the United States to the Joint Motion of *Amici Curiae* CCIA and SIIA for Leave to

Intervene for Purposes of Appeal to be served by facsimile upon:

Robert H. Bork
1150 17th Street, N.W.
Washington, D.C. 20036
Facsimile: (202) 862-5899

Kenneth W. Starr
Kirkland & Ellis
655 15th Street, N.W., Suite 1200
Washington, D.C. 20036
Facsimile: (202) 879-5200

Glenn B. Manishin
Kelley Drye & Warren LLP
8000 Towers Crescent Drive, Suite 1200
Vienna, VA 22182
Facsimile: (703) 918-2450

Stephanie A. Joyce
Kelley Drye & Warren LLP
1200 19th Street, N.W., Suite 500
Washington, D.C. 20036
Facsimile: (202) 955-9792

Edward J. Black, President
Jason Mahler
Computer & Communications Industry Assn.
666 11th Street, N.W.
Washington, D.C. 20001
Facsimile: (202) 783-0534

Ken Wasch, President
Software & Information Industry Assn.
1090 Vermont Avenue N.W., 6th Floor
Washington, D. C. 20005
Facsimile: (202) 289-7097

*Counsel for Joint Movants*

_____
Beth Brunalli

UNITED STATES' RESPONSE TO CCIA AND SIIA MOTION TO INTERVENE  - PAGE 16