IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

                    Plaintiff,

          v.

MICROSOFT CORPORATION,

                    Defendant.

Civil Action No. 98-1232 (CKK)

Next Court Deadline: Status Conference
April 22, 2003

## JOINT STATUS REPORT ON COORDINATING
## ENFORCEMENT OF THE FINAL JUDGMENTS

The United States of America, Plaintiff in *United States v. Microsoft*, CA No. 98-1232

(CKK), and Plaintiffs in *New York, et. al. v. Microsoft*, CA No. 98-1233 (CKK), the States of

New York, Ohio, Illinois, Kentucky, Louisiana, Maryland, Michigan, North Carolina, and

Wisconsin (the "New York Group"), and the States of California, Connecticut, Florida, Iowa,

Kansas, Massachusetts, Minnesota, Utah, West Virginia, and the District of Columbia (the

"California Group") (collectively, "Plaintiffs"),[1] together with Defendant Microsoft Corporation

("Microsoft"), hereby file a Joint Status Report on Coordinating Enforcement of the Final

Judgments in *United States v. Microsoft*, CA No. 98-1232 (CKK), and *New York, et. al. v.

Microsoft*, CA No. 98-1233 (CKK).

---

[1]For purposes of this Joint Status Report, the California Group does not contain the States of
Massachusetts and West Virginia.

## I.       Introduction

On November 1, 2002 and November 12, 2002, the Court entered separate Final Judgments in the above matters.  The Final Judgments entered for the United States and the New York Group differ from the Final Judgment entered for the California Group, particularly with regard to compliance and enforcement mechanisms.  Plaintiffs and Microsoft share the goal of maximizing the effectiveness and efficiency of Plaintiffs' compliance and enforcement activities in connection with the Final Judgments in order to minimize the burden on Plaintiffs, Microsoft, the Court, and non-parties.  Coordinating enforcement activities among the United States, the New York Group, and the California Group, where possible, will assist in achieving this goal. To date, Plaintiffs and Microsoft have taken the following steps in this coordination.

## II.      Information Sharing Agreement Between Plaintiffs

Plaintiffs have agreed to participate in an Information Sharing Agreement (the "Agreement").  The Agreement provides a general framework whereby information relating to Plaintiffs' (the "participating groups") compliance and enforcement activities in connection with the Final Judgments can be shared among the participating groups.  By establishing an efficient means by which to share information, the Agreement is intended to limit, where possible, the burden on non-parties, to avoid redundant investigations by the participating groups, and to provide for more useful status reports to the Court.  A copy of the Agreement is attached as Exhibit A.

To minimize the burden on Microsoft and non-parties who produce information to a participating group and to expedite the review of this information, the Agreement establishes that each participating group may share with other participating groups information it receives from

Microsoft and non-parties.  This information may be shared only after the participating group who receives the information obtains an appropriate consent from Microsoft or the non-party. This consent, discussed further below, addresses the confidentiality obligations each participating group must follow in sharing the information.

The Agreement recognizes that the participating groups' compliance and enforcement activities are generally nonpublic, involving materials and information that are subject to statutes, rules, and policies governing when and how they may be disclosed.  Thus, the Agreement broadly defines "Confidential Information" to include all information obtained by any participating group in the course of its compliance and enforcement activities, including, but not limited to, all information disclosed by a non-party, Microsoft, or another participating group. The Agreement requires that each participating group protect the Confidential Information from improper disclosure, specifically establishing certain procedures a participating group must follow after it receives Confidential Information from another participating group.

To assist in the participating groups' compliance and enforcement activities, the Agreement further allows for certain information generated by a participating group to be shared with other participating groups, such as oral analyses of non-party complaints, communications made by a participating group to Microsoft or a non-party, or recommendations concerning potential violations of the Final Judgments received from the Technical Committee by the United States or the New York Group or from the Microsoft Compliance Officer by the California Group.  The Agreement does not, however, require that such information be disclosed if doing so would interfere with the enforcement of any Final Judgment.  Furthermore, as this information is generated by another participating group, the Agreement explicitly prohibits a participating group

who receives this information from using such information in any type of enforcement action against any party.

In addition to establishing means by which information may be shared among the participating groups, the Agreement sets requirements and provides recommendations for coordinating compliance and enforcement activities.  This includes identifying contact points for each participating group's respective enforcement teams, convening regular conference calls to discuss ongoing enforcement efforts, and conducting joint interviews with the witness' consent.  The Agreement seeks to ensure as much coordination as possible in enforcement actions by requiring that each participating group provide the other participating groups with notice of its intention to take an enforcement action prior to taking such an action.  The Agreement explicitly clarifies that the participating groups are not required to coordinate in working with consultants and experts, nor will the California Group have access to the Technical Committee (absent the consent of the United States and the New York Group).

## III.    Exchange of Information Received From Microsoft Among Plaintiffs

The Final Judgments entered in the United States' case and on behalf of the New York Group preclude the disclosure of information received from Microsoft to the California Group.  Similarly, the Final Judgment entered for the California Group does not permit it to disclose Microsoft information that it obtains to the United States and the New York Group.  Microsoft has agreed to permit such exchanges of information by executing limited waivers of the applicable confidentiality provisions of the Final Judgments and the applicable state or federal statutes.  Copies of these waiver letters are attached as Exhibit B.

4

**IV.     Exchange of Information Received from Non-Parties Among Plaintiffs**

Before a participating group may share information it receives from a non-party with another participating group, it must obtain the non-party's consent through a limited waiver of confidentiality.  Non-parties will be asked to waive the confidentiality provisions under the applicable confidentiality provisions of the Final Judgments and the applicable state or federal statutes solely for the purpose of allowing information to be shared among the participating groups in their compliance and enforcement activities.  The non-party is under no obligation to provide this consent or waiver.  The sharing of information among the Plaintiffs is not, of course, intended to reduce, as to persons other than the Plaintiffs, the confidentiality protections applicable to materials received from non-parties.  An example of a non-party waiver is Exhibit 1 of the Coordination Agreement, which is attached hereto as Exhibit A.

**V.      Orders Relating to Confidentiality of Information Submitted to Plaintiffs**

Plaintiffs have taken and will take all the necessary precautions to ensure that any information received regarding Microsoft's compliance with the Final Judgments will be given the highest degree of confidentiality protection available under the Final Judgments, relevant statutes, and enforcement agency rules and policies.

Plaintiffs have also prepared a proposed order -- referred to as "Implementation Order No. 1" or "I.O.No.1" -- which is designed to facilitate judgment enforcement, and enforcement coordination among the Plaintiffs themselves, in various respects.  A copy of proposed I.O.No.1 is attached as Exhibit C.

By way of summary, I.O.No.1 will, among other things, ensure that documents and other information provided to Plaintiffs from non-parties will be afforded a level of confidentiality at

least equal to that provided under the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 *et seq.*, and the Antitrust Civil Process Act (the "ACPA"), 15 U.S.C. §§ 1311 *et seq.*  This confidentiality protection is appropriate because public disclosure of materials provided by non-parties might be detrimental to their legitimate commercial interests and to Plaintiffs' enforcement activity generally.  I.O.No.1 is also necessary so that the confidentiality of materials, as well as the anonymity of non-party complainants, can be maintained regardless of whether a complainant contacts the Antitrust Division or state antitrust officials whose local statutes or regulations might otherwise be construed to afford a lesser (or simply different) level of protection from disclosure than does FOIA or the ACPA.  In addition, to facilitate investigation activity, I.O.No.1 will afford the New York Group and the California Group a form of compulsory process analogous to that available under the ACPA in connection with their enforcement and compliance activities under the Final Judgments.

**VI.     Proposed Schedule and Format for Subsequent
         Status Reports Submitted to the Court**

The Court has requested that the Parties submit periodic status reports on compliance and enforcement activities.  Since the Revised Proposed Final Judgment was stipulated to on November 6, 2001, Plaintiff United States and the New York Group have assembled their respective teams of attorneys and economists to monitor compliance with the proposed Final Judgments and the Final Judgments that were entered on November 12, 2002.  These teams have reviewed and analyzed industry complaints and conferred with the complainants and Microsoft, when necessary, to discuss the substance of these complaints.  In addition, these teams actively monitor Microsoft's continued compliance with the Final Judgments and communicate regularly

with Microsoft regarding these issues.  The Technical Committee established under the Final Judgments entered for the United States and the New York Group is setting up operations and has begun to assist the United States and the New York Group in their enforcement activities.

Since entry of the California Group's Final Judgment on November 1, 2002, the California Group has also assembled its team of attorneys and economists to enforce compliance. The California Group is also currently reviewing and analyzing industry complaints and discussing coordination with Plaintiff United States and the New York Group.

Since entry of the United States and the New York Group Final Judgment on November 12, 2002, and the California Group Final Judgment on November 1, 2002, Microsoft has: (1) established an Antitrust Compliance Committee of the Board of Directors; (2) appointed a Compliance Officer under the California Group Final Judgment (the Compliance Officer for the United States and New York Group Final Judgment was appointed prior to entry of the November 12, 2002 decree); (3) distributed the required informational materials to officers and directors and received the appropriate certifications from these persons; (4) provided the required annual antitrust training for officers; (5) participated in the establishment of the Technical Committee; and (6) established a website for third party complaints.   In addition, Microsoft has established a standing committee of senior executives and in-house lawyers to manage the company's compliance efforts.

The Microsoft legal department has implemented an extensive training program intended to ensure that Microsoft employees are aware of the company's obligations under the Final Judgments.  Twenty one small group compliance training sessions were conducted for Microsoft's approximately 400 worldwide in-house legal employees, who are continually

engaged in training various business and sales groups across the company and around the world. As of today, Microsoft has conducted approximately 200 training sessions, covering approximately 10,000 employees worldwide.  On a going forward basis, Microsoft is developing plans for sustained training, annual reviews (concerning the decree and antitrust generally) with key product groups, and online training tools.  Microsoft has also developed various procedures to ensure accountability for complying with the Final Judgments.

The parties understand that the Court asked for suggestions on the format of subsequent status reports.  Plaintiffs and Microsoft have given consideration to this matter, particularly concerning the frequency and the level of detail for the reports.  While the reports should provide the Court with information regarding the status of enforcement and compliance efforts, the reports must not disclose publicly either Microsoft or non-party confidential information.  In addition, Plaintiffs should not disclose matters that might be subject to governmental deliberations or other privileges, or, perhaps equally important, prematurely disclose specific enforcement efforts prior to any recommendations or decisions being made within the appropriate enforcement agency.  For these reasons, Plaintiffs and Microsoft suggest that compliance status reports be made to the Court once every six months, and that they contain (1) a general description of Microsoft's compliance efforts, (2) a general description by each Plaintiff or Plaintiff group of its efforts to monitor Microsoft's compliance with the Final Judgments, and (3) a general description of the type of complaints received by Microsoft, Plaintiffs, and any enforcement bodies such as the Technical Committee in the prior six months.  Plaintiffs and Microsoft believe that periodic conferences with the Court are also appropriate and, if the Court agrees, urge the Court to schedule such conferences.

April 17, 2003

Respectfully submitted,

FOR THE STATES OF NEW YORK,
OHIO, ILLINOIS, KENTUCKY,
LOUISIANA, MARYLAND, MICHIGAN,
NORTH CAROLINA, AND WISCONSIN

FOR THE UNITED STATES
DEPARTMENT OF JUSTICE-S
ANTITRUST DIVISION

_____

JAY L. HIMES
*Chief, Antitrust Bureau*
*Assistant Attorney General, State of New York*
120 Broadway
New York, New York 10271
212/416-8282

_____

PHILLIP R. MALONE
RENATA B. HESSE
PAULA L. BLIZZARD
PATRICIA A. BRINK
JOAN V. FARRAGHER
AARON D. HOAG
JEFFREY D. NEGRETTE
BARBARA J. NELSON
JEFFREY J. VANHOOREWEGHE
*Trial Attorneys*
*U.S. Department of Justice*
*Antitrust Division*
600 E Street, N.W.
Suite 9500
Washington, D.C. 20530
202/514-8276

FOR THE STATES OF CALIFORNIA,
CONNECTICUT, IOWA, KANSAS,
FLORIDA, MINNESOTA, UTAH,
AND THE DISTRICT OF COLUMBIA

_____

Kathleen Foote
*Acting Senior Assistant Attorney General*
*Office of the Attorney General of California*
455 Golden Gate Avenue
Suite 11000
San Francisco, California   94102-3664
415/703-5555

FOR DEFENDANT
MICROSOFT CORPORATION


_____

CHARLES F. RULE
Fried, Frank, Harris, Shriver & Jacobson
1001 Pennsylvania Avenue, NW
Suite 800
Washington, DC 20004
(202) 639-7300