IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

                    Plaintiff,

        v.

MICROSOFT CORPORATION,

                    Defendant.

Civil Action No. 98-1232 (CKK)

Next Court Deadline:  October 24, 2003
Status Conference

**INTERIM JOINT STATUS REPORT ON MICROSOFT'S COMPLIANCE
WITH THE FINAL JUDGMENTS**

The United States of America, Plaintiff in *United States v. Microsoft*, CA No. 98-1232

(CKK), and Plaintiffs in *New York, et. al. v. Microsoft*, CA No. 98-1233 (CKK), the States of

New York, Ohio, Illinois, Kentucky, Louisiana, Maryland, Michigan, North Carolina, and

Wisconsin (the "New York Group"), and the States of California, Connecticut, Florida, Iowa,

Kansas, Massachusetts, Minnesota, Utah, and the District of Columbia (the "California Group")

(collectively, "Plaintiffs"),[1] together with Defendant Microsoft, hereby file an Interim Joint Status

---

[1] As explained in the July 3, 2003 Joint Status Report, the Commonwealth of Massachusetts and the State of West Virginia are not part of the California Group for the purpose of this Joint Status Report on Microsoft's Compliance with the Final Judgments.  On or about June 20, 2003, West Virginia dismissed with prejudice its appeal of the States' Final Judgment.  In addition, West Virginia has reached a negotiated settlement with Microsoft in the case entitled *State of West Virginia v. Microsoft Corporation*, West Virginia Circuit Court of Boone County, Civil Action No. 01-C-197 (and related consumer class actions), which has been preliminarily approved by that court.  This settlement includes a provision whereby West Virginia will release Microsoft from antitrust liability for conduct prior to December 31, 2002.  As a result, West Virginia has advised the California Group that it will not be participating in enforcement of the States' Final Judgment.  Massachusetts is still prosecuting its appeal of the States' Final Judgment.

Report on Microsoft's Compliance with the Final Judgments, pursuant to this Court's Minute Order of July 24, 2003.

## I.   INTRODUCTION

At the July 24, 2003, Status Conference, the Court directed Plaintiffs to submit an interim status report three months subsequent to the conference, describing Plaintiffs' enforcement efforts and Microsoft's efforts to comply with Sections III.E, III.B and III.H of the Final Judgment. These issues are addressed in Section II of this Report.  The Court further directed Plaintiffs to update the Court concerning any complaints received after the filing of the previous Joint Status Report.  Section III of this Report describes the status of complaints received since July 3, 2003. Plaintiffs authored these Sections.  Section IV of this Report, authored by Microsoft, discusses Microsoft's efforts to comply with the Final Judgments.  Neither Plaintiffs nor Microsoft necessarily adopts the views expressed by the other.

## II.   UPDATE ON PLAINTIFFS' EFFORTS RELATING TO SECTIONS III.E, III.B AND III.H OF THE FINAL JUDGMENTS

Plaintiffs continue to monitor Microsoft's efforts to comply with the Final Judgments. Since the July 24, 2003, Status Conference, Plaintiffs have directed their efforts primarily toward Final Judgments Section III.E requiring licensing of Microsoft Communications Protocols; Section III.B governing contractual relationships between Microsoft and OEMs; and Section III.H relating to end user access to and defaults for middleware products.[2]

---

[2] In addition to the enforcement efforts directed to specific decree provisions, Plaintiffs and Microsoft have for some time been engaged in discussions concerning Microsoft's retention of documents which may be relevant to Plaintiff's compliance monitoring and enforcement activities.  Most recently, we have sought additional information from the company so as to better inform Plaintiffs' evaluation of the need for any further agreements in this area. The discussions with Microsoft are on-going.

A.      **Section III.E.**

As this Court is aware, a large part of Plaintiffs' efforts have been directed to ensuring

Microsoft's compliance with Section III.E of the Final Judgments, under which Microsoft is

required to make available for license certain communications protocols ("CPs") used by

Windows.  Pursuant to the November 6, 2001 Stipulation, Microsoft announced the availability

of these licenses on August 6, 2002, under what it calls the Microsoft Communications Protocols

Program ("MCPP").  Following Microsoft's announcement, Plaintiffs' undertook an extensive

review and investigation of the initial terms and royalty structure proposed by Microsoft to

determine whether the MCPP satisfied Section III.E's direction that the CP license terms be

reasonable and non-discriminatory.  This investigation included contacting a large number of

industry participants, engaging specialized consultants, and conducting extensive research.

In the months leading up to the July 3, 2003 Joint Status Report,  Plaintiffs and Microsoft

held numerous discussions that resulted in Microsoft making extensive changes in the MCPP

license terms and royalty rates and structure.  In the July 3, 2003 Joint Status Report and during

the July 24, 2003 Status Conference, Plaintiffs described the significant changes Microsoft had

made to the MCPP license terms and the royalty rates and structure.  Although Plaintiffs

expressed in the Joint Status Report continuing concern with Microsoft's compliance with

Section III.E's requirement to provide licenses on reasonable and non-discriminatory terms,

during the Status Conference itself, Plaintiffs informed the Court that Microsoft intended to

begin to offer the improved license terms, and that Plaintiffs hoped to see progress in terms of

additional licensees.  The Court agreed, noting that it "was very, very concerned" about how

Section III.e. had been working and wanted to observe the impact of Microsoft's revised license

3

in the marketplace.  Tr., 7/24/03, at 17.  The Court directed the Plaintiffs to report back on these issues at the Court's next Status Conference.

Since the July 24, 2003 Status Conference, Plaintiffs have continued to investigate Microsoft's efforts to obtain MCPP licensees.  Plaintiffs and Microsoft have established regular bi-weekly reports and conference calls to monitor Microsoft's communications to, and negotiations with, prospective licensees.  Plaintiffs have made suggestions for improving Microsoft's efforts to sign up licensees, and many of these suggestions have been implemented by Microsoft.  In addition, Plaintiffs have continued to review the license terms made available to licensees, as well as the licenses and related documents for the companies that have signed licenses.  Plaintiffs have reviewed documents provided by Microsoft and certain licensees to investigate the negotiations leading up to agreements between Microsoft and these licensees.  Furthermore, the Technical Committee, established under the Final Judgments for the Department of Justice and the New York Group, has been reviewing the Technical Documentation provided by Microsoft to licensees.

At the time of the July 24, 2003 Status Conference, four companies had signed MCPP license agreements.  Since then, four additional licensees have entered into the agreements.  Of the eight current licensees, at least three had previously held licenses from Microsoft or had subcontracts or other arrangements that provided them with the right to incorporate certain CPs into the same types of products they apparently will create under the MCPP.  We understand that the SCO license, which was signed the day prior to the filing of this report, covers the general purpose CPs.  The other licensees intend to use limited sets of CPs for specialized products such

as file and print servers.  Thus, Microsoft's progress in obtaining additional licensees, particularly

ones that will further the intended remedial effect of III.E., has been limited.

Plaintiffs are evaluating the progress Microsoft has made in obtaining additional MCPP

licensees.  As part of this process, Plaintiffs are continuing to work with Microsoft.  They have

engaged Microsoft in discussions and intend shortly to try to engage those companies that have

chosen not to take MCPP licenses in similar discussions.  In so doing, Plaintiffs seek to obtain

the information necessary to determine whether the lack of licensees is due to some aspect of the

license program that could be improved.  Plaintiffs remain committed to ensuring that each

provision of the Final Judgments has its intended remedial effect.

While Plaintiffs do not request that the Court take any specific action regarding

Section III.E at this time, Plaintiffs recognize that further steps may need to be taken in order to

effectuate the goals of the remedy approved by this Court.  This is particularly true, given that

Section III.E was intended to be "the most forward-looking provision in the Court's remedy"

with the objective of  "unfettering the market and restoring competition."  *New York v. Microsoft*,

224 F. Supp. 2d 76, 226 (D.D.C. 2002).  To that end, Plaintiffs will continue to evaluate

Microsoft's CP licensing  program.

Finally, in late September 2003, Microsoft began to make available a "Reference

Agreement," under which industry members may obtain the CP Technical Documentation.

These licenses will not, however, allow the licensee to use the technical documentation to

implement any of the CPs in a product.  To date, Plaintiffs are not aware of any company that has

entered into a Reference Agreement.  In all events, because the license embodied in the

Reference Agreement is limited, Plaintiffs do not consider industry response to the Reference

Agreement to be a useful metric for evaluating the success of the MCPP Program.

       **B.**      **Sections III.B and III.H.**

      During the July 24, 2003 Status Conference, the United States also informed the Court

that it had reviewed complaints relating to Microsoft's effort to comply with Sections III.B and

III.H of the Final Judgments, and that it was still in the process of evaluating those complaints.

The complaints relating to Section III.B are still being investigated. Plaintiffs have recently

received information from Microsoft, and are finalizing our investigation.

      In terms of Section III.H, Plaintiffs are engaged in a dialog with Microsoft concerning  a

feature within Windows XP called "Shop for Music Online," which allows a user to go online to

purchase compact discs from retailers. Plaintiffs are concerned that the feature invokes

Microsoft's Internet Explorer, rather than the user's chosen default browser, in a manner that

may be inconsistent with Section III.H.2(b). Plaintiffs and Microsoft have conferred extensively

on this issue, and the Technical Committee has also been engaged on the issue. If Plaintiffs and

Microsoft are unable to resolve this issue, the parties may seek assistance from the Court.

**III.     COMPLAINTS REGARDING MICROSOFT'S COMPLIANCE WITH THE
          FINAL JUDGMENTS**

      In the Joint Status Report filed on July 3, 2003, the United States described the process it

undertakes to respond to communications regarding Microsoft's compliance with the Final

Judgment. Since that time, the United States has received nineteen communications by letter,

email, or telephone, referring to the Final Judgment. Of these, seventeen were categorized as

non-substantive, meaning that they refer to or involve the Final Judgment, but do not raise an

issue of Microsoft's compliance with, or the United States' enforcement of, the Final Judgment. For these non-substantive complaints, a simple response acknowledging receipt has been sent.

Substantive complaints are those that raise an issue with Microsoft's compliance with, or the United States' enforcement of, the Final Judgment.  There were two substantive complaints which will require additional investigation, and that investigation has commenced.

In addition, the United States has continued to investigate certain complaints received but not resolved prior to the July 3, 2003 Joint Status Report.  Of these, a few (including the matter relating to "Shop for Music Online") remain open pending discussions with Microsoft.  The others have been resolved.

The July 3, 2003 Status Report described the process followed by the Technical Committee in handling third-party complaints.  Since that Report, the Technical Committee has received two complaints, neither of which raised substantive issues.

The New York Group does not believe that it has received any substantive complaints relating to the Final Judgments that were not also directed to the United States, or received through the States' website, established by the California Group.  The New York Group has conferred with the United States and the California Group regarding the investigation of such complaints.

As previewed in the July 3, 2003 Joint Status Report, on September 11, 2003, the California Group officially launched a consumer information and complaint website at http://www.microsoft-antitrust.gov.  (For an example of press coverage, see http://www.bayarea.com/mld/mercurynews/6747962.htm.)  The site also contains links to

relevant sites, including Microsoft, the various states enforcing the Final Judgments, the Department of Justice, the Technical Committee, and the Court.

To date the site has received approximately 93 complaints or comments. All complaints and comments are initially reviewed by an attorney, paralegal, or economist responsible for enforcing the California Group's Final Judgment, with the goal to provide an initial response to the complaining party (if not submitted anonymously) within 10 days of receipt.

Under the terms of the website, only complaints related to enforcement of the California Group or New York Group Final Judgments (i.e., substantive complaints) are shared with other plaintiffs. However, complaints outside the scope of the Final Judgments are also reviewed and may be independently investigated by the State of California (the state maintaining the website) and shared with other jurisdictions.

There have been approximately 16 substantive complaints received to date at the California Group website which may require additional investigation. This number includes some complaints which are identical (i.e., that were submitted both as a complaint and as a comment) or that have been previously provided to the California Group. The non-substantive complaints (approximately 77) consist of complaints or comments that are descriptive of the website, the Final Judgments, or Microsoft in general without raising legitimate issues with Microsoft's compliance with the Final Judgments. These include observations that the site is run on Microsoft software, grammatical/typographical corrections, suggestions for improvements to the site, statements in favor of or against Microsoft, and statements in favor of or against the site.

Complaints which are receiving additional review include several complaints related to the difficulty of end users to purchase desktop computers (particularly laptops) from large

8

OEM's without Windows pre-installed.  Another set of complaints alleged an inability to disable Windows Messenger from launching instead of alternative non-Microsoft Middleware.  The California Group plaintiffs expects to take these questions up with Microsoft in the near future and report to the Court on developments in the next Status Report.

The California Group's goal is to conduct a preliminary investigation on substantive complaints within two weeks of receipt, followed by further investigation (if necessary) including contacting the complainant and Microsoft, within another three to four weeks thereafter.  Where complaints are submitted anonymously or the complaints are more complex, this goal may not be attainable.

## IV.   UPDATE ON MICROSOFT'S EFFORTS TO COMPLY WITH THE FINAL JUDGMENTS

### A.   Section III.E. (Licensing of Communications Protocols)

In the past three months, Microsoft has taken a number of significant steps to revise substantially the Microsoft Communications Protocol Program ("MCPP") in response to feedback and suggestions by Plaintiffs and potential licensees, many of these steps exceeding the requirements of Section III.E.  For example, Microsoft substantially re-wrote the license terms to make them simpler and easier to understand, substantially simplified and reduced royalties while at the same time expanding the scope of the license beyond that required by the Final Judgments, cut in half the required royalty prepayments, and improved a number of logistical aspects of the MCPP to make it easier for licensees to comply with their license obligations.  In addition, to address a concern raised by the United States and the Court about the time it took to work through and implement program changes suggested by the Plaintiffs, a licensee may now at any

9

time extend the term of its license for an additional five years.  This revision thus makes available up to ten years of license rights to develop products using Microsoft's protocol technology, which is twice the term of the Final Judgments themselves.  Licensees also have an unlimited time to distribute those products in the marketplace.

The revised licensing terms were posted on Microsoft's MCPP Web site on August 1, 2003.[3]  In addition, around that time, Microsoft publicly announced in press statements and on the MCPP Web site that it will negotiate terms granting even broader usage rights than required by Section III.E and contained in the standard license agreement.  Microsoft has encouraged developers to discuss their technical requirements with Microsoft's protocol licensing team in order to reach mutually satisfactory licensing terms that facilitate the offering of new and innovative implementations of Microsoft's communications protocols.

Microsoft has also created a new licensing alternative under the MCPP, offering firms a Reference Agreement that gives them access to any of the communications protocols and related technical documentation, but without the ability to implement the protocols in a product. Royalties for the Reference Agreement are lower than those for a standard MCPP license, and are charged as a flat fee.  The Reference Agreement was created in response to feedback from firms that decided not to take a development license under the MCPP and is another example of Microsoft going beyond the requirements of the Final Judgments.

Microsoft has also launched a broad "evangelization" campaign in an effort to generate interest in the licensing of its communications protocols.  On September 9, Microsoft ran full-

---

[3] The revised terms, along with additional information about the MCPP, are available at <http://members.microsoft.com/consent/Info/default.aspx>.

page advertisements in both the *Wall Street Journal* and the *San Jose Mercury News* announcing that it had made it easier than ever to license Microsoft communications protocols and directing readers to the MCPP Web site.  (Copies of those advertisements are attached at Attachment A to this Report.)[4]  It has run similar banner advertisements on nineteen leading technology-focused Internet Web sites, including a number of Web sites targeting developers for non-Microsoft platforms such as Java and Linux.  Examples of the sites include JavaWorld, LinuxInsider, LinuxWorld, and others.  These on-line ads were designed to generate more than 28 million impressions over the course of the campaign.  Microsoft also implemented an extensive direct marketing campaign, including direct mail and newsletters to the software developer community, and individually contacted a number of potentially interested persons.

Microsoft contacted each of more than 100 entities that had previously been approached about the original MCPP to describe the benefits of the revised MCPP and communicate its willingness to negotiate flexible terms.  It has also pursued hundreds of leads generated as a

---

[4]  The advertisements feature an eye-catching photograph of a key next to which runs the headline: "Now we've made it easier than ever to license Microsoft Communications Protocols."  At the bottom of the page is the following statement:

> **Just go to www.microsoft.com/protocols to see for yourself.**  We've revamped our communications protocol licensing program.  By simplifying our royalty structure, lowering the up-front cost, and publishing the program terms and pricing on our website for all to see, we've created a better licensing experience.  The information is clearer and simpler to understand — you can even review standard license agreements and summaries of each protocol.  Which means now it's easier than ever for developers to achieve optimal Windows interoperability.  We'll even help you through the licensing process, step-by-step.  So get started today by emailing us at protocol@micrsosoft.com or calling 1-800-MICROSOFT: ad code: "MCCP" and see how easy it can be to license Microsoft® Windows® client-server protocols.

Microsoft also contacted more than 20 journalists following the launch of the ad campaign to encourage further press coverage of Microsoft's efforts.

result of its on-line ad campaign, and Microsoft representatives have conducted outreach meetings with potential licensees at trade shows and through other opportunities.

As a result of these efforts, as of the date of this filing, four additional firms — Cisco Systems, TANDBERG Television Ltd., Laplink Software Inc. and The SCO Group, Inc. — have executed licenses under the MCPP since the July 24 Status Conference, bringing to at least eight the total number of licensees since the program's inception in August 2002.  Cisco is a Fortune 100 company that is considered one of the leading providers of networking solutions in the world.  TANDBERG is recognized as an innovator in digital broadcasting, and develops solutions for the delivery of audio, video and data over networks.  Laplink is a global leader in the development of file transfer and synchronization technology.  SCO is a general purpose server operating system vendor that has a worldwide presence with representation in 82 countries.  Microsoft is currently engaged in discussions with nearly 40 potential licensees.  Sun Microsystems has executed an Evaluation Agreement and spent six person-days reviewing in detail technical documentation relating to Microsoft's communications protocols.  (The Evaluation Agreement allows interested persons to visit Microsoft's campus and review the actual technical documentation associated with the selected communications protocols before signing a license.)

Although not required by the Final Judgments, Microsoft has expended substantial resources in an aggressive campaign to generate interest in the MCPP and identify potential licensees.  Not only has Microsoft actively engaged in negotiations with every entity that expressed interest in the MCPP, but it has also proactively sought to interest a large number of

industry participants in licenses and has gone far beyond the requirements of Section III.E in addressing issues important to individual companies considering such licenses.

The fact that at least eight companies have taken licenses under the MCPP attests to the reasonableness of the terms offered.  Based on feedback in negotiations, Microsoft believes that none of the firms that have declined to license Microsoft's communication protocols have done so because of unreasonable or discriminatory terms.  To the extent they have communicated their reasons for declining to license, it appears that these firms have concluded that they have no business or technical need for a license, are pursuing the use of non-Microsoft protocols, or are developing alternative solutions of their own.  Section III.E of the Final Judgments thus appears to be working as it was intended.

Microsoft has worked diligently since the July 24, 2003 Status Conference to effectuate Section III.E of the Final Judgments.  As discussed in more detail below, these efforts reflect real progress.

First, the eight companies that to date have licensed Microsoft's communications protocols represent a doubling of the number of licensees since the previous Joint Status Conference.  The most recent licensee, SCO, is a vendor of general purpose servers and clearly competes with Microsoft.  Moreover, the specialized servers developed and sold by the other licensees -- such as file and print and media-streaming servers -- compete with Microsoft's general purpose server operating systems, which can be used to perform similarly specialized file and print and media-streaming functions.[5]

---

[5] The Plaintiffs have also questioned the MCPP's progress by noting that three of the eight current licensees (NetApp, Starbak and Cisco) previously held licenses from Microsoft or had other relationships that provided them with rights to earlier communications protocol technology.  To the contrary, this fact actually reinforces the obvious

(continued...)

Second, the goal of the Court's remedy was to provide a new opportunity for developers, *i.e.,* to ensure that any developer that wished to do so could develop products that would interoperate with Windows using Microsoft's protocol technology built into Windows.  As the Court described, Section III.E , "ensures that ISVs will have full access to, and be able to use, the protocols that are necessary for software located on a server computer to interoperate with, and fully take advantage of, the functionality provided by any Windows Operating System Product.'" *United States v. Microsoft*, 231 F. Supp. 2d 144, 190 (D.D.C. 2002) (quoting the Competitive Impact Statement prepared by the United States).[6]  That goal has been achieved.  Microsoft has identified all of the relevant protocols, created more than 5,000 pages of technical documentation describing them, and made available licenses granting licensees the necessary intellectual property rights to implement Microsoft's protocol technology in their own products.

The Final Judgments, of course, bind only Microsoft and thus do not compel third parties to take protocol licenses nor obligate Microsoft to obtain any specified number of licensees.  The focus, rather (as described above), is on creating an opportunity for developers to use the relevant

---

[5](...continued)
success of the Microsoft's licensing program, insofar as companies with a demonstrated interest in using Microsoft's communications protocols have access to the newest, improved technology at lower royalty rates and with more extensive documentation than was previously available.  Thus, NetApp had a license that expired two to three years ago for access to technical information on certain older file protocols that did not cover current versions of the technology and was not fully documented.  Similarly, Starbak and Cisco licensed prior versions of media protocols at significantly higher royalties than are available today under the MCPP.  As a result, each of these companies benefit greatly from the current MCPP and serve as a positive measure of the MCPP's progress and success.

[6] As the Court explained, the purpose of requiring Microsoft to license its communications protocols on reasonable and nondiscriminatory terms was to "ensure that rival middleware can interoperate with servers running Microsoft's server operating system software," *United States v. Microsoft*, 231 F.Supp.2d 144, at 189 (D.D.C. 2002), and "advance the ability of non-Microsoft server operating systems to interoperate, or communicate, with [Windows]." *New York v. Microsoft*, 224 F.Supp.2d 76, 172 (D.D.C. 2002) (footnote omitted).

technology if they wish to do so.  The licenses that Microsoft has made available effectuate those goals.

In considering the significance of the number of third parties that have opted, to date, to take licenses, it is important to bear in mind that developers have never needed to license Microsoft's communications protocols in order to interoperate with Windows clients.  Third parties can (and routinely do) build products that interoperate with Windows using their own protocol technology or using industry-standard protocols that are built into Windows (as to which no license from Microsoft is needed).  The Final Judgments successfully ensure that, in addition to these alternatives, industry participants also have the option of licensing Microsoft communications protocols on reasonable and non-discriminatory terms.  The fact that a larger number of third parties have not licensed Microsoft's communications protocols accordingly does not evidence either non-compliance by Microsoft or a failure of the Final Judgments to achieve their purpose.

**B.      Sections III.B. and III.H.**

Microsoft is continuing to work with the Plaintiffs to resolve any questions regarding its compliance with these sections of the Final Judgments.  It is unaware of any specific issues related to Section III.B., but will continue to provide information requested by the Plaintiffs.  Microsoft takes its obligations under the Final Judgments very seriously and is wholly committed to fulfilling those obligations.

**C.      Complaints and Inquiries Received by Microsoft**

Microsoft has received eleven inquiries and complaints since the July 3, 2003 Joint Status Report was filed with the Court.  All of these inquiries and complaints were received through the

Web site Microsoft established as described in the last Joint Status Report.  As with prior inquiries and complaints received, virtually all of these matters were entirely unrelated to any of Microsoft's compliance obligations under the Final Judgments.

Only one submission related to Microsoft's obligations under the Final Judgments.  It raised a general question about the affordability of the royalties under the MCPP for smaller developers.  As to this single submission, Microsoft had already restructured the royalties under the MCPP as a result of feedback it received from the Plaintiffs and third-parties, thus addressing the question raised by this one individual.  In addition, as discussed with the Plaintiffs, Microsoft recently undertook even further steps to make it easier for smaller companies to obtain licenses under the MCPP.  Of the remaining submissions, four related to class action litigation, four related to product use issues, one related to an ISV's development of an application for Tablet PC, and one raised a general issue about the manner in which Microsoft develops its servers, Web sites and tools.

After completing its compliance review of these submissions and closing these matters, Microsoft forwarded each of them (and any response provided by Microsoft) to the Plaintiffs and TC for further review.  None of these submissions required any further action by Microsoft.

Microsoft will continue to review promptly each complaint and inquiry received and, upon closing its compliance review, forward these submissions to the Plaintiffs and TC on a monthly basis.

October 17, 2003

Respectfully submitted,

FOR THE STATES OF NEW YORK, OHIO, ILLINOIS, KENTUCKY, LOUISIANA, MARYLAND, MICHIGAN NORTH CAROLINA, AND WISCONSIN

FOR THE UNITED STATES DEPARTMENT OF JUSTICE'S ANTITRUST DIVISION

_____

ELIOT SPITZER
*Attorney General of New York*
JAY L. HIMES
*Chief, Antitrust Bureau*
RICHARD L. SCHWARTZ
HOWARD WETTAN
*Assistant Attorneys General*
120 Broadway
New York, New York  10271
212/ 416-8282

_____

PHILLIP R. MALONE
RENATA B. HESSE
PAULA L. BLIZZARD
PATRICIA A. BRINK
JOAN V. FARRAGHER
AARON D. HOAG
JEFFREY D. NEGRETTE
BARBARA J. NELSON
JEFFREY J. VANHOOREWEGHE
*Trial Attorneys*
U.S. Department of Justice
Antitrust Division
600 E Street, N.W.
Suite 9500
Washington, D.C.  20530
202/514-8276

FOR THE STATES OF CALIFORNIA,
CONNECTICUT, IOWA, KANSAS,
FLORIDA, MINNESOTA, UTAH,
AND THE DISTRICT OF COLUMBIA

_____

KATHLEEN FOOTE
*Senior Assistant Attorney General*
Office of the Attorney General of California
455 Golden Gate Avenue
Suite 11000
San Francisco, California  94102-3664
415/703-5555

FOR DEFENDANT MICROSOFT
CORPORATION

_____

BRADFORD L. SMITH             CHARLES F. RULE
MARY SNAPP                    Fried, Frank, Harris, Shriver & Jacobson
DAVID A. HEINER, JR.          1001 Pennsylvania Avenue, N.W.
Microsoft Corporation         Washington, D.C.  20004
One Microsoft Way             202/639-7300
Redmond, Washington  98052
425/936-8080                  STEVE L. HOLLEY
                              RICHARD C. PEPPERMAN II
                              Sullivan & Cromwell
                              125 Broad Street
                              New York, New York  10004
                              212/558-4000

                              *Counsel for Defendant*
                              *Microsoft Corporation*

18