IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Civil Action No. 98-1232 (CKK) |
| v. | Next Court Deadline:<br>July 19, 2004 Status Conference |
| MICROSOFT CORPORATION, | |
| Defendant. | |

**JOINT STATUS REPORT ON MICROSOFT'S
COMPLIANCE WITH THE FINAL JUDGMENTS**

The United States of America, Plaintiff in *United States v. Microsoft*, CA No. 98-1232 (CKK), and the Plaintiffs in *New York, et. al. v. Microsoft*, CA No. 98-1233 (CKK), the States of New York, Ohio, Illinois, Kentucky, Louisiana, Maryland, Michigan, North Carolina, and Wisconsin (the "New York Group"), and the States of California, Connecticut, Florida, Iowa, Kansas, Minnesota, Utah, and the District of Columbia (the "California Group") (collectively "Plaintiffs"), together with Defendant Microsoft, hereby file a Joint Status Report on Microsoft's Compliance with the Final Judgments, pursuant to this Court's Order of May 14, 2003.[1]

---

[1] As first explained in the July 3, 2003 Joint Status Report, the Commonwealth of Massachusetts and the State of West Virginia are not part of the California Group for the purpose of this Joint Status Report on Microsoft's Compliance with the Final Judgments. On or about June 20, 2003, West Virginia dismissed with prejudice its appeal of the States' Final Judgment. In addition, West Virginia reached a negotiated settlement with Microsoft in the case entitled *State of West Virginia v. Microsoft Corporation*, West Virginia Circuit Court of Boone County, Civil Action No. 01-C-197 (and related consumer class actions), which was approved by that court on February 17, 2004. The time to appeal this settlement ended June 17, 2004. This settlement includes a provision whereby West Virginia will release Microsoft from antitrust liability for conduct prior to December 31, 2002. As a result, West Virginia has advised

I.      **<u>Introduction</u>**

At the April 21, 2004 Status Conference, the Court directed the Plaintiffs to file a Status Report on July 9, 2004, updating the Court on activities relating to Microsoft's compliance with the Final Judgments entered in *New York, et. al. v. Microsoft*, CA No. 98-1233 (CKK), and in *United States v. Microsoft*, CA No. 98-1232 (CKK). Plaintiffs filed previous reports on April 17, 2003, July 3, 2003, October 17, 2003, January 16, 2004, and April 14, 2004, to inform the Court as to the Plaintiffs' efforts to enforce the Final Judgments and Microsoft's efforts to comply with the Final Judgments.

The April 14, 2004 Status Report served as an interim report, containing information on only certain Final Judgment sections. The current report is the third of the six-month reports requested by the Court and will contain information the Court has requested in each six-month report. Order at 1-3 (May 14, 2003). Section II of this report discusses Plaintiffs' efforts to enforce the Final Judgments; this section was authored by Plaintiffs.[2] Section III discusses Microsoft's efforts to comply with the Final Judgments; this section was authored by Microsoft. Neither Plaintiffs nor Microsoft necessarily adopts the views expressed by the other.

---

the California Group that it will not be participating in enforcement of the States' Final Judgment. As the Court is aware, on June 30, 2004, the Court of Appeals issued its decision upholding this Court's Tunney Act and remedy rulings, thus rejecting the arguments made on appeal by the Commonwealth of Massachusetts. Although the appellate court's mandate has not issued, nor has the period within which to seek Supreme Court review run, the Plaintiffs are discussing with Massachusetts its joining the joint enforcement effort.

[2] This report outlines Plaintiffs' enforcement efforts relating to Sections III A, B, E, and H. Although Plaintiffs continue to monitor Microsoft's efforts to comply with Sections III C, D, F, and G, Plaintiffs do not have any issues relating to those Sections to report to the Court at this time.

## II. UPDATE ON PLAINTIFFS' EFFORTS TO ENFORCE THE FINAL JUDGMENTS

### A. Section III.E (Communications Protocol Licensing)

Plaintiffs' efforts on Section III.E in the past six months have been focused on ensuring that Microsoft has offered the communications protocol licenses on reasonable and nondiscriminatory terms, provided sufficient technical information to allow licensees to implement the protocols, and addressed the delay arising from the amount of time spent addressing numerous issues regarding Microsoft's implementation of the Microsoft Communications Protocol Program ("MCPP").

#### 1. Update on Licensees

Since the previous Status Report, Microsoft has signed MCPP licenses with three additional companies listed in Section III below. In addition, in the previous Status Report, Plaintiffs reported on the MCPP Agreement between Sun Microsystems and Microsoft. At the time that agreement was entered into on April 1, 2004, Plaintiffs were informed that Sun's MCPP license would be completed in the near future. To date, the amendments necessary to finalize Sun's MCPP license have not been drafted and it is Plaintiffs' understanding that there has been little movement toward completing the license. Microsoft has reported to Plaintiffs that Sun has not yet paid the pre-paid royalties necessary to begin its participation in the program.

Plaintiffs remain interested in the status of the Sun agreements for two primary reasons. First, as the Court noted, Sun is a "major addition" to the group of licensees, particularly because it entered into a general server license, which only one other licensee, SCO Group, has signed. Second, Plaintiffs will review the Sun MCPP Agreement to ensure that the MCPP licenses are

3

being offered on a non-discriminatory basis, as required by the Final Judgments. Plaintiffs will continue to monitor any developments with respect to Sun.

We also understand, from a recent report by Microsoft, that Microsoft has received MCPP royalty payments from certain licensees. This means that products implementing the communications protocols offered under the program are available in the marketplace. Microsoft has agreed to provide further information to the Plaintiffs regarding this matter.

    2. <u>Revisions to License Terms</u>

As reported at the April 21, 2004 Status Conference, at Plaintiffs' request, Microsoft has made a number of improvements to the MCPP. Microsoft greatly simplified the license terms and made available approximately 20 protocols using a click-through royalty-free license on MSDN. These 20 protocols had previously been offered for license only with payment of a royalty. In addition, Microsoft simplified the royalty structure for certain tasks. Microsoft also responded to Plaintiffs' significant concerns about the scope of use by permitting the use of the licensed protocols for many communications between the licensees' products and software on other servers and clients.

Prior to the last Status Conference, Plaintiffs expressed concerns about the effect on licensees of the amount of time spent since the August 6, 2002 start of the licensing program to address issues arising from the manner in which Microsoft implemented the MCPP. At the Status Conference, Microsoft responded to Plaintiffs' concerns about delayed implementation by outlining for Plaintiffs and the Court a series of measures designed to extend the availability of the MCPP. Since the Status Conference, Microsoft has revised the standard MCPP license to reflect these changes. The changes include: (1) a two-year extension for the availability of the MCPP

(the MCPP will be offered until the later of November 2009 or the commercial release of the successor to Windows Server 2003); (2) a commitment that, by August 2007 or the last major beta of the successor to Windows Server 2003, Microsoft will make available the license terms and preliminary technical documentation for Plaintiffs' review; (3) a commitment that binding arbitration will be available to the licensees if they choose MCPP licenses signed after the expiration of the Final Judgments; and (4) a commitment that licensees will have the right to use the licensed protocols to develop products in perpetuity.  In addition, Microsoft agreed to make available specialized product support to MCPP licensees.   Plaintiffs believe that Microsoft's plans present a potentially workable solution to the delayed implementation of the licensing program.

Plaintiffs have reviewed Microsoft's implementation of these plans.  With the exception of the specialized support for MCPP licensees, which Microsoft submitted for Plaintiffs' review on June 22, 2004, Plaintiffs are satisfied that Microsoft has implemented the commitments made during the last Status Conference.  Plaintiffs are currently working with Microsoft to ensure the availability of specialized support.

### 3. Technical Documentation

As previously discussed, Plaintiffs have raised concerns about the completeness and sufficiency of the documentation provided to MCPP licensees.  Since the last Status Report, Plaintiffs, with the technical assistance of the Technical Committee ("TC"), have worked with Microsoft both to develop a standard for completeness to which the documentation will be held, and to monitor Microsoft's progress in improving the documentation to meet that standard.  The California Group has also retained a specialist in communications protocols and the standards

related to technical documentation. This expert is also working to ensure that Microsoft is meeting the requirements of Section III.E, coordinating with the TC as appropriate. The TC hired a staff person to assist in this effort and has established regular means to communicate with Microsoft. Specifically, Microsoft will: (1) provide to the TC, on a daily basis, the revised documentation; (2) prepare and provide, at least weekly, a log of revisions to the targeted schedule for the revised documentation; and (3) participate in a weekly meeting with the TC or their staff person to discuss any issues arising in the documentation process. The TC will request any additional information necessary to track Microsoft's progress. Microsoft has said that the project will be completed in the Fall, and Plaintiffs will continue to monitor their efforts.

**B.** **Sections III.A and III.B (OEM Relations and Windows Licensing Terms)**

As detailed in previous Status Reports, Plaintiffs have received complaints regarding the non-assertion of patents provision included in the uniform OEM license. Shortly before the filing of the last Status Report on April 14, 2004, Microsoft announced that it was removing the non-assertion provision from future OEM licenses. The non-assertion provisions contained in past OEM licenses survive to a certain extent, preventing OEMs from asserting patents regarding features and functionality already present in Windows XP if those specific features and functionality are incorporated into subsequent Windows operating system products (even though the license for these products does not contain the non-assertion provision). Microsoft recently informed Plaintiffs that the non-assertion provision will not apply to any new features and functionality introduced in Service Pack 2 for Windows XP.

As of the April 2004 Status Report and Status Conference, Plaintiffs were considering the complaints concerning the non-assertion provision. Plaintiffs have recently received an additional

complaint relating to the survival of the non-assertion provision. Plaintiffs have not reached a conclusion on whether the non-assertion provision violated the Final Judgments' requirement that Microsoft license Windows to the 20 largest OEMs "pursuant to uniform license agreements with uniform terms and conditions." Plaintiffs are satisfied, in any event, that Microsoft's prospective removal of the non-assertion provision adequately resolves any concerns relating to the non-assertion provision's consistency with the Final Judgments.

As part of their routine enforcement efforts, Plaintiffs have also reviewed the feedback submitted to Microsoft by OEMs regarding the latest version of the uniform OEM license agreements, including the Marketing Developing Agreement. Plaintiffs will report to the Court any compliance issues arising from this review.

### C. Section III.H (Competing Middleware and Defaults)

Plaintiffs, with the assistance of the TC, have begun discussions with Microsoft concerning the successor operating system to Windows XP, currently code-named Longhorn. Plaintiffs are particularly interested in any changes Longhorn may include that implicate Section III.H of the Final Judgments. Plaintiffs have received and reviewed material requested from Microsoft relating to the development of Longhorn. While Longhorn is not scheduled for release for some time, Plaintiffs believe that early attention to these issues will enable Plaintiffs and Microsoft to address any potential concerns in a timely manner, before the final structure of the product is locked into place. Plaintiffs will continue to follow developments in the design of Longhorn as they relate to the Final Judgments and will report to the Court any issues arising from this monitoring activity.

### D. Complaints Regarding Microsoft's Compliance with the Final Judgments

Since the prior six-month Status Report, filed on January 16, 2004, 53 complaints have been received by the United States. Of these complaints, 50 were non-substantive and did not raise any issues of Microsoft's compliance with, or the United States' enforcement of, the Final Judgments. Each of the non-substantive complaints received a simple response acknowledging their receipt. Three of the complaints received were substantive and required further investigation. Two have been investigated and resolved, and investigation has commenced on the third complaint. Of the substantive complaints received prior to the January 16, 2004 Joint Status Report, a small number remain open pending further discussions with Microsoft or the complainant.

The New York Group does not believe that it has received any substantive complaints relating to the Final Judgments that were not also directed to the United States, or received through the States' website, established by the California Group. The New York Group has conferred with the United States and the California Group regarding the investigation of such complaints.

The California Group has received 20 complaints since January 16, 2004. Two recently received complaints are thought to be substantive and warrant further investigation. The first substantive complaint relates to Microsoft's compliance with Section III.H of the Final Judgments, the second implicates the interoperability of third-party software.

### E. Activities of the TC

The TC has worked closely with the United States and the New York Group on a wide range of enforcement activities. As discussed above, the TC has been instrumental in ensuring

that Microsoft's review and revision of the MCPP technical documentation is complete. The TC has also assisted the Plaintiffs in addressing various technical issues raised by current or prospective MCPP licensees. Microsoft and the TC have also engaged in a series of meetings to discuss the design and operation of Windows Server systems components as they relate to communication protocols.

The TC, along with its software testers, has tested different versions of Windows, including the upcoming Service Pack 2 for Windows XP, for compliance with the Final Judgments. This work includes running hundreds of test cases to check the behavior of Windows in relation to third party middleware. These activities are on-going and, in time, will be performed on Microsoft's next operating system. The TC is also engaged in a dialogue with Microsoft developers on the design of the Set Program Access and Default feature for Longhorn.

The TC has assisted Plaintiffs in their review of complaints, including meeting with representatives of several major companies to discuss the technical issues involved in complaints. In addition, the TC continues to directly receive third-party complaints and resolve these complaints in accordance with the procedures set forth in the July 3, 2003 Joint Status Report. The TC continues to attend various industry seminars and conferences to keep the Plaintiffs informed of advances in the software industry.

The TC has hired additional staff members in the past six months, bringing the number of staff to six, two of whom perform administrative functions. It also submitted to the United States and the New York group its third six-month report.

F. **Document Retention**

The Plaintiffs have finalized an agreement with Microsoft requiring retention of Microsoft documents relating to the Final Judgments. The agreement specifies the types of documents to be retained and includes a list of executives who will be required to retain documents. The documents will have to be retained for the duration of the Final Judgments.

### III. UPDATE ON MICROSOFT'S COMPLIANCE WITH THE FINAL JUDGMENTS

Microsoft continues to make full compliance with its obligations under the Final Judgments an important priority throughout the company, and devotes substantial resources to its compliance work. This report focuses on Microsoft's compliance work relating to Sections III.A, B, and E, sections addressed by the Plaintiffs. This report also briefly summarizes the activities of the compliance officers under the Final Judgments, as well as the complaints and inquiries received by Microsoft since the January 16 Status Report.

#### A. Section III.E (Licensing of Communications Protocols)

1. MCPP Status Update

Microsoft is pleased to report that 3 additional firms have executed MCPP licenses since the last Status Report, bringing the total number of licensees to 17. The new licensees are beTRUSTed, a premier global provider of security, identity, and trust solutions; Satyam Computer Services Limited, a global consulting and IT services company; and SecureAll Systems, Inc., a networking and security solutions company. As reported at the last Status Hearing, Sun executed an MCPP agreement with Microsoft on April 1. Sun requested various modifications to that agreement, to which Microsoft has agreed. Microsoft expects Sun to sign the amended agreement during the week of July 12. Microsoft is also in continuing discussions with several more prospective licensees and will keep the Plaintiffs and the Court updated of any new developments.

2. Revisions to Licensing Terms

The Plaintiffs have recounted in the preceding section a number of revisions to the MCPP reported on in prior status hearings and implemented by Microsoft. The company – as evidenced by these revisions – has worked closely with the Plaintiffs to address any concerns relating to the MCPP as they arise, and looks forward to a continuation of this constructive relationship going forward.

3. Technical Documentation

Microsoft has been working with the Plaintiffs and the TC over the last three months to enhance the usability of the technical documentation that Microsoft previously made available as part of the MCPP. Microsoft has created a detailed set of specifications for these enhancements and has devoted a substantial team of employees to implementing them in the technical documentation. We expect to have the project completed on schedule this Fall. Microsoft is also working on a program to offer MCPP licensees the opportunity to purchase enhanced support options, including the assignment of a dedicated Technical Account Manager to address questions about the licensed client-server protocols. Microsoft has provided materials related to this program to the Plaintiffs for their review, and the program itself is expected to roll out later this month.

B. **Sections III.A and III.B (OEM Relations and Uniform Licensing Terms)**

Microsoft has posted the uniform OEM licensing documents for Windows desktop operating system products covering 2004-05 for OEM feedback, and has provided both the agreements and OEM feedback to the Plaintiffs for their review. The terms and conditions of these agreements are uniform for all OEMs and are largely consistent with the 2003-04 terms.

11

The primary change is the elimination of the non-assertion of patents provision (Section 8(d)) from the uniform OEM Business Terms Document.

### C. Compliance Officers

Since the Initial Status Report was filed on July 3, 2003, the compliance officers have continued to ensure that newly-appointed Microsoft officers and directors receive copies of the Final Judgments and related materials (ongoing), that Microsoft officers and directors receive annual briefings on the meaning and requirements of the Final Judgments (completed for the most recent year in June 2004), that Microsoft officers and directors complete the required certifications (completed in December 2003), and that required compliance-related records are maintained (ongoing). In addition, the compliance officers are actively engaged in Microsoft's ongoing training programs and monitor matters pertaining to the Final Judgments.

### D. Complaints and Inquiries Received by Microsoft

Microsoft has received 23 complaints or inquiries since the January 16 Status Report. None was related to Microsoft's compliance obligations under the Final Judgments, and Microsoft considers all but one to be non-substantive. The one substantive complaint related to the disclosure of APIs for Windows 98, which is not a "Covered Product" under the Final Judgments.[3] Microsoft responded to the complainant that Windows 98 is not a Covered Product and, thus, not subject to the API disclosure requirements of the Final Judgments. Microsoft has completed its compliance review for each of the 23 complaints or inquiries it has received since the January 16 Status Report, and has forwarded them (along with any Microsoft response) to the

---

[3] The API disclosure requirements of Section III.D apply to Windows Operating System Products, which are defined to include "Windows 2000 Professional, Windows XP Home, Windows XP Professional, and successors to the foregoing." Final Judgments § VI.U.

Plaintiffs and the TC for further review. None of these complaints or inquiries required any further action by Microsoft.

July 9, 2004

Respectfully submitted,

| FOR THE STATES OF NEW YORK, OHIO, ILLINOIS, KENTUCKY, LOUISIANA, MARYLAND, MICHIGAN NORTH CAROLINA, AND WISCONSIN | FOR THE UNITED STATES DEPARTMENT OF JUSTICE'S ANTITRUST DIVISION |
|---|---|
| ELIOT SPITZER<br>*Attorney General of New York*<br>JAY L. HIMES<br>*Chief, Antitrust Bureau*<br>RICHARD L. SCHWARTZ<br>HOWARD WETTAN<br>*Assistant Attorneys General*<br>120 Broadway<br>New York, New York 10271<br>212/416-6229 | PHILLIP R. MALONE<br>RENATA B. HESSE<br>PAULA L. BLIZZARD<br>PATRICIA A. BRINK<br>JOAN V. FARRAGHER<br>AARON D. HOAG<br>JEFFREY D. NEGRETTE<br>BARBARA J. NELSON<br>JEFFREY J. VANHOOREWEGHE<br>*Trial Attorneys*<br>U.S. Department of Justice<br>Antitrust Division<br>600 E Street, N.W.<br>Suite 9500<br>Washington, D.C. 20530<br>202/514-8276 |

FOR THE STATES OF CALIFORNIA,
CONNECTICUT, IOWA, KANSAS,
FLORIDA, MINNESOTA, UTAH,
AND THE DISTRICT OF COLUMBIA

_____

KATHLEEN FOOTE
*Senior Assistant Attorney General*
Office of the Attorney General of California
455 Golden Gate Avenue
Suite 11000
San Francisco, California 94102-3664
415/703-5555

FOR DEFENDANT MICROSOFT
CORPORATION

_____

BRADFORD L. SMITH
MARY SNAPP
DAVID A. HEINER, JR.
Microsoft Corporation
One Microsoft Way
Redmond, Washington 98052
425/936-8080

CHARLES F. RULE
 Fried, Frank, Harris, Shriver & Jacobson LLP
1001 Pennsylvania, Avenue, N.W.
Washington, DC 20004
202/639-7300

STEVE L. HOLLEY
RICHARD C. PEPPERMAN II
Sullivan & Cromwell
125 Broad Street
New York, New York 10004
212/558-4000

*Counsel for Defendant
Microsoft Corporation*