IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

           Plaintiff,

v.

MICROSOFT CORPORATION,

           Defendant.

Civil Action No. 98-1232 (CKK)

Next Court Deadline:
    October 19, 2004 Status Conference

## JOINT STATUS REPORT ON MICROSOFT'S COMPLIANCE WITH THE FINAL JUDGMENTS

The United States of America, Plaintiff in *United States v. Microsoft*, CA No. 98-1232 (CKK), and the Plaintiffs in *New York, et. al. v. Microsoft*, CA No. 98-1233 (CKK), the States of New York, Ohio, Illinois, Kentucky, Louisiana, Maryland, Michigan, North Carolina, and Wisconsin (the "New York Group"), and the States of California, Connecticut, Florida, Iowa, Kansas, Minnesota, Utah, and the District of Columbia (the "California Group") (collectively "Plaintiffs"), together with Defendant Microsoft, hereby file a Joint Status Report on Microsoft's Compliance with the Final Judgments, pursuant to this Court's Order of May 14, 2003.[1]

---

[1] Massachusetts has recently decided to participate in the Plaintiffs' joint enforcement efforts as part of the California Group; Massachusetts did not participate in the enforcement activities discussed in this report and therefore will file a separate statement at this time, though it anticipates joining in future reports. Massachusetts did not appeal the June 30, 2004 decision by the Court of Appeals upholding this Court's Tunney Act and remedy rulings. *See* Section IV of this Report for further information. As first explained in the July 3, 2003 Joint Status Report, the State of West Virginia is not part of the California Group for the purpose of this Joint Status Report on Microsoft's Compliance with the Final Judgments. For further details, refer to Footnote 1 of prior Status Reports.

I.      **INTRODUCTION**

At the July 19, 2004 Status Conference, the Court directed the Plaintiffs to file a Status Report on October 8, 2004, updating the Court on activities relating to Microsoft's compliance with the Final Judgments entered in *New York, et. al. v. Microsoft*, CA No. 98-1233 (CKK), and in *United States v. Microsoft*, CA No. 98-1232 (CKK).[2]

The last Status Report, filed July 9, 2004, served as a six-month report, containing certain relevant information requested by the Court. Order at 1-3 (May 14, 2003). The current Report is an interim report relating only to current enforcement activities, most notably Plaintiffs' enforcement efforts and Microsoft's efforts to comply with Sections III.E, III.A, III.B, III.G, III.H, and III.F of the Final Judgments. Section II of this Report discusses Plaintiffs' efforts to enforce these sections of the Final Judgments; this section was authored by Plaintiffs. Section III discusses Microsoft's efforts to comply with the Final Judgments; this section was authored by Microsoft. Neither Plaintiffs nor Microsoft necessarily adopts the views expressed by the other. Section IV discusses the addition of Massachusetts to the California Group and related administrative matters.

II.     **UPDATE ON PLAINTIFFS' EFFORTS RELATING TO SECTIONS III.E, III.A, III.B, III.G, III.H, and III.F OF THE FINAL JUDGMENTS**

    A.      **Section III.E (Communications Protocol Licensing)**

Plaintiffs continue to monitor Microsoft's efforts to comply with Section III.E. Since the prior status report, the majority of the work of the Plaintiffs and the Technical Committee ("TC") has been to ensure that Microsoft has provided sufficient technical information to allow licensees to implement the protocols licensed in the Microsoft Communications Protocol Program

---

[2] Plaintiffs filed previous reports on April 17, 2003, July 3, 2003, October 17, 2003, January 16, 2004, April 14, 2004, and July 9, 2004 to inform the Court as to the Plaintiffs' efforts to enforce the Final Judgments and Microsoft's efforts to comply with the Final Judgments.

("MCPP"). In previous status reports, Plaintiffs raised concerns about the completeness, accuracy, and sufficiency of the documentation provided to MCPP licensees. Over the summer, Microsoft undertook a substantial effort to improve the technical documentation. Plaintiffs, with the assistance of the TC and Microsoft's cooperation, have worked diligently to monitor Microsoft's progress in improving the documentation. The California Group has retained an expert, Craig Hunt, to assist in this process and he has worked closely with the TC on this issue. The TC and their representatives have met weekly with the Microsoft staff involved in the technical documentation, reviewed the revised documentation, and offered suggestions for further improving the documentation.

At the last status conference in July, Microsoft said that the current documentation revision project would be completed in the Fall. It now appears that this project will not be completed until the end of the year. Moreover, given Plaintiffs' concern about the extent of the improvements to date, Microsoft has agreed to undertake more work on the documentation even after Microsoft completes the current revisions.

Plaintiffs have described to Microsoft three general areas of concern surrounding the current state of the documentation. First, Microsoft proposes to offer the revised technical documentation to licensees in a file format that is a rights-protected derivative of HTML. Plaintiffs are concerned that this format significantly limits the practical usability of the documentation. For example, a licensee cannot annotate the documentation or use bookmarks to facilitate collaboration with other authorized users of the documentation and the licensee. This format also does not support sophisticated search techniques that would make the documentation easier to navigate and use. Finally, the documentation in its current form can only be used with Microsoft's own Internet Explorer browser. Microsoft has agreed to meet with the TC to discuss

this matter and has promised to provide a report within 60 days on additional measures that it would be willing to take to improve the usability of the documentation.

Second, and most significantly, Plaintiffs continue to be concerned about the technical completeness and accuracy of the documentation. Microsoft has committed to undertake several additional projects in an effort to improve the completeness and accuracy of the documentation and to assist licensees. These projects approach the problem from both a technical and an editorial vantage point, using software tools and expanded editorial review of the documentation to ensure its quality.

Plaintiffs and the TC are working with Microsoft to refine and clarify the details of all these proposals. Of utmost importance to Plaintiffs and Microsoft is that the activities over the next 60 days result in a process that all parties are comfortable will produce documentation that is complete, accurate, and ultimately usable. Plaintiffs will report on the progress made on this subject at the upcoming status conference.

Third, Plaintiffs expressed to Microsoft their concern that the current method of distributing the technical documentation to the licensees is unduly complicated and error-prone, and has resulted in delays in licensees receiving updated documentation. At Plaintiffs' request, Microsoft has agreed to distribute the technical documentation to licensees on CD to eliminate this problem. Microsoft will provide the new version of the documentation and regular updates to the documentation to licensees on CD, as well as via the current on-line method.

Finally, as previously reported, Microsoft has completed the development of a specialized support program for MCPP licenses and begun to offer that support to licensees. Plaintiffs, with the assistance of the TC, will continue to monitor Microsoft's implementation of the MCPP support program.

### B. Sections III.A, III.B, and III.G
### (OEM Relations and Windows Licensing Terms)

As detailed in prior Status Reports, Plaintiffs have received complaints regarding the non-assertion of patents provision included in the uniform OEM license. In the last Status Report, filed July 9, 2004, Plaintiffs reported that they were satisfied that Microsoft's prospective removal of the non-assertion provision was sufficient to resolve any concerns that the non-assertion provision was inconsistent with the Final Judgments. Since the last Status Report, Plaintiffs have reviewed the additional complaint regarding the non-assertion provision that was submitted just before the July 9 Status Report was filed. Plaintiffs have concluded that this complaint did not raise any issues beyond those already considered in the Plaintiffs' analysis of the non-assertion provision. Plaintiffs have, therefore, concluded their inquiry into the non-assertion provision and do not intend to further pursue the matter.

As part of their regular enforcement efforts, Plaintiffs have also reviewed the feedback submitted to Microsoft by OEMs regarding the latest version of the uniform OEM license agreements, including Microsoft's Market Development Agreement ("MDA"). Plaintiffs have requested additional documents from Microsoft relating to the MDA; Microsoft has produced these documents and Plaintiffs have begun to review them.

In addition, Plaintiffs are concerned that there is some confusion among OEMs relating to the application of certain portions of the MDA to OEM advertisements for computers containing non-Microsoft operating systems. Pursuant to the MDA, Microsoft provides marketing funds — in the form of discounts on the price the OEM pays for each copy of Windows — to OEMs whose print advertisements and websites promote Microsoft's operating systems in a manner specified by Microsoft. One promotional requirement under the MDA is that OEMs place a Microsoft-

determined "tagline" on print advertisements and company websites for those computers shipped by the OEM with a Windows operating system. An example of such a tagline is: "[OEM] recommends Windows XP Professional." There are a number of variants on this tagline for different advertisements, but they all take the general form of "[OEM] recommends Windows XP. . . ." Plaintiffs requested that Microsoft issue a clarification addressing some OEM confusion about the application of this tagline requirement to print advertisements and websites for computers sold with non-Microsoft operating systems. Microsoft has agreed to issue such a clarification so as to eliminate any doubt as to the meaning of these requirements; this clarification will encompass two key points: (1) OEM print advertisements and websites for computers that are sold without any Windows operating system do not need to include the tagline for the OEM to comply fully with the tagline requirement; and (2) OEM advertisements for computers sold with a choice of Windows or a non-Microsoft operating system may include language recommending non-Microsoft operating systems in addition to the Windows XP tagline and still comply with the tagline requirement.

### C. Section III.H (Competing Middleware and Defaults)

As reported in the previous Status Report, Plaintiffs have begun discussions with Microsoft concerning the successor operating system to Windows XP, currently code-named Longhorn. Plaintiffs have prepared a list of topics that relate to the Final Judgments that Plaintiffs wish to track as Microsoft progresses in its development of Longhorn. Plaintiffs have supplied this list to Microsoft and requested regular briefings on these topics from Microsoft to enable early detection and resolution of any potential areas of concern. Plaintiffs anticipate that these discussions will continue throughout the Longhorn development and testing cycle and will report to the Court on any resulting compliance issues as necessary.

### D. Section III.F (ISV Promotion of Competing Software)

Plaintiffs have learned that Microsoft's contracts for the .NET Framework, a component of the Windows operating system used to build and run Windows-based applications, require prior consent from Microsoft before licensees may publish benchmark testing results for the .NET Framework. Benchmark tests can be used to compare the performance of the .NET Framework to the performance of competing products. A number of companies offer products based on Java technologies that compete against the .NET Framework. For software developers and distributors, the ability to use such metrics to promote competing non-Microsoft products would be quite useful in the marketplace. Plaintiffs informed Microsoft that they are concerned about this restriction on publication of benchmark test results without Microsoft's consent since Section III.F.2 of the Final Judgments prohibits Microsoft from conditioning the grant of "Consideration" to any software company based on its agreement not to promote software that competes with Microsoft operating system software or Microsoft middleware. Earlier this week, Microsoft expressed a willingness

to modify the provision so as to require prior *notice* to Microsoft of various details relating to the testing, but not Microsoft's prior consent before publishing benchmarking results. Plaintiffs are reviewing Microsoft's response and will make every effort to bring this matter to a conclusion prior to the October 19 status conference before the Court.

### E. Activities of the TC

As noted above, since the last report the TC has actively engaged Microsoft with respect to Microsoft's revision of the technical documentation available to licensees under the MCPP. There have been regular weekly meetings with Microsoft at which the TC or a member of its staff has discussed the progress of the revision process, presented questions or concerns based on their own review of the documentation, and made suggestions. The TC further has presented Microsoft with written analyses, prepared both directly and with the assistance of consultants, regarding the technical documentation. This effort, which includes work by TC-retained consultants to investigate the completeness and accuracy of the technical documentation, is on-going, and expected to continue as the revision process proceeds.

The TC is currently subjecting Windows XP Service Pack 2 ("SP2") to the same battery of tests that it previously used to evaluate the compliance of Windows XP Service Pack 1 with the Final Judgment. Microsoft publicly released SP2 in August in large part to respond to security concerns associated with Windows. In addition, the TC is investigating Microsoft's compliance with its obligations under Sections III.C and III.H with respect to OEM and user choices regarding middleware. Finally, together with Plaintiffs, the TC intends to institute a regular dialog with Microsoft regarding aspects of Longhorn, the company's next operating system, which Microsoft has announced it plans to introduce in 2006.

The TC has assisted the United States and the New York Group in their review of complaints and continues to directly receive third-party complaints and resolve these complaints in accordance with the procedures set forth in the July 3, 2003 Joint Status Report. The TC continues to attend various industry seminars and conferences to keep Plaintiffs informed of advances in the software industry.

The TC has also prepared its budget for the forthcoming fiscal year, which begins December 1. The United States and the New York Group have reviewed the budget and requested that Microsoft provide the requisite funds.

**III.     UPDATE ON MICROSOFT'S COMPLIANCE WITH THE FINAL JUDGMENTS**

Microsoft continues to make full compliance with its obligations under the Final Judgments an important priority throughout the company, and devotes substantial resources to its compliance work. This interim report focuses on Microsoft's compliance work relating to Section III.E and comments on the benchmarking matter referenced in Plaintiffs' section of this report.

**A.     Section III.E (Communications Protocol Licensing)**

**1.     MCPP Status Update**

Microsoft is pleased to report that two additional firms have executed MCPP licenses since the last Status Report, bringing the total number of licensees to 19. The new licensees are Realm Systems, Inc. and Blue Coat Systems, Inc. Realm Systems develops personal and secure mobile computing solutions that permit users to take their desktop and user-specific data wherever they go. Blue Coat Systems builds proxy appliances that provide enterprises with visibility and control of their company's Web communications to address business risks such as viruses and resource abuse related to file sharing or video streaming. Microsoft is in continuing discussions

9

with several more prospective licensees and will continue to update the Plaintiffs and the Court on any new developments.

Microsoft is pleased to report that five licensees—Cisco, EMC, NetApp, Starbak, and Tandberg—are shipping products that implement MCPP protocols.

2. Technical Documentation

As reported in Plaintiffs' section of this report, Microsoft has been working closely with the Technical Committee in order to incorporate Technical Committee feedback concerning MCPP documentation. Since the last report to the Court, Microsoft has implemented changes called for in a 40-page specification for technical document improvements that was created in consultation with the Technical Committee. More than 40 Microsoft developers, engineers, and technical writers have contributed to this project. After consultation with the TC, Microsoft distributed a "beta" release of the improved documentation to approximately 100 individual users at licensee companies. Microsoft, with the concurrence of the Technical Committee, has decided to extend the beta to November 15, and may extend the beta period until December. This beta testing will ensure that licensee feedback and user experiences can be analyzed prior to final release in the MCPP.

The beta version of the enhanced documentation includes a variety of new features, including: (a) a searchable index; (b) text search capability; (c) an "ever present" table of contents to aid navigation among topics; (d) a programmer's guide to the documentation, and (e) more technical content, such as enhanced error codes and return values to aid testing, and more diagrams.

Microsoft is committed to continuing to work with the Technical Committee and the Plaintiffs to address other concerns they have identified with respect to the MCPP documentation.

Microsoft has undertaken very substantial efforts to reformat all of its MCPP protocol documentation in a format known as "MHT" with Microsoft digital rights management. Microsoft believes this format is a significant improvement over the current Microsoft eBook viewer, and offers the best available combination of navigational and usability features, familiar viewer interface, ability to handle very large document files, and security of the documentation. (MHT is a proposed public standard, and thus support for viewing content in the MHT format can be implemented in any Web browser or other software product. In addition, support for Microsoft digital rights management can be implemented using a free software development kit that Microsoft has made available for this purpose.) Although Microsoft believes MHT with digital rights management is a good choice for document format, the company will carefully assess licensee feedback from the beta testing process and work closely with the Technical Committee to explore possible ways to enable extra features within this format, or in alternative formats if such formats offer more features than .MHT with sufficient security.

As noted by Plaintiffs, Microsoft has agreed to undertake a number of projects aimed at ensuring that MCPP documentation is complete and accurate. Among other things, Microsoft will explore the development of new software tools that will help to assess completeness and accuracy.

Finally, in response to a request from Plaintiffs, Microsoft has agreed to offer licensees the option of receiving MCPP documentation and updates in CD/DVD format, as an alternative to the secure Web download method currently used.

### B. Section III.F (Promotion of Competing Software)

Microsoft is working with the Plaintiffs to address their stated concerns regarding the benchmarking provision in Microsoft's licenses for its .NET Framework software. Microsoft does not object to benchmarking of non-Microsoft software against the .NET Framework. Microsoft's

objective in its discussions with Plaintiffs is to ensure that the developer community is provided with benchmarking results that are accurate. The company has proposed a revision to the benchmarking provision of the .NET Framework licensee that states explicitly that benchmarking is permitted, provided the licensee provides testing details to Microsoft so that it can attempt to replicate the results before they are published.

**IV.     ADDITION OF MASSACHUSETTS TO THE CALIFORNIA GROUP
         AND REQUEST FOR ENTRY OF AMENDED IMPLEMENTATION ORDER**

Because of the pendency of its appeal of the Final Judgment, the Commonwealth of Massachusetts, while enforcing the judgment obtained by the California Group in this case, has not been party to the Information Sharing Agreement among the Department of Justice, the New York Group, and the California Group. Implementation Order No. 1 entered by the Court on April 23, 2003 does not include the Commonwealth of Massachusetts among the California Group.

Since all appeals have ended, Plaintiffs seek to include Massachusetts in the California Group as a full cooperative partner for information sharing pursuant to the Information Sharing Agreement and the Implementation Order of the Court. As a result the parties have attached a Proposed Amended Implementation Order No. 1 (Exhibit A), which the Plaintiffs ask the Court to enter, and an Amended Information Sharing Agreement (Exhibit B), which reflects the addition of Massachusetts. Furthermore, Plaintiffs anticipate receiving from Microsoft a waiver of confidentiality applicable to Massachusetts identical in other respects to Exhibit B to the Status Report filed April 17, 2003.

October 8, 2004

                                                   Respectfully submitted,

| | |
|---|---|
| FOR THE STATES OF NEW YORK, OHIO, ILLINOIS, KENTUCKY, LOUISIANA, MARYLAND, MICHIGAN NORTH CAROLINA, AND WISCONSIN | FOR THE UNITED STATES DEPARTMENT OF JUSTICE'S ANTITRUST DIVISION |
| _____ | _____ |
| ELIOT SPITZER<br>*Attorney General of New York*<br>JAY L. HIMES<br>*Chief, Antitrust Bureau*<br>RICHARD L. SCHWARTZ<br>HOWARD WETTAN<br>*Assistant Attorneys General*<br>120 Broadway<br>New York, New York 10271<br>212/416-6229 | RENATA B. HESSE<br>PAULA L. BLIZZARD<br>PATRICIA A. BRINK<br>JOAN V. FARRAGHER<br>AARON D. HOAG<br>BARBARA J. NELSON<br>JEFFREY J. VANHOOREWEGHE<br>*Trial Attorneys*<br>U.S. Department of Justice<br>Antitrust Division<br>600 E Street, N.W.<br>Suite 9500<br>Washington, D.C. 20530<br>202/514-8276 |
| FOR THE STATES OF CALIFORNIA, CONNECTICUT, IOWA, KANSAS, FLORIDA, MINNESOTA, UTAH, AND THE DISTRICT OF COLUMBIA | |
| _____ | |
| KATHLEEN FOOTE<br>*Senior Assistant Attorney General*<br>Office of the Attorney General of California<br>455 Golden Gate Avenue<br>Suite 11000<br>San Francisco, California 94102-3664<br>415/703-5555 | |

FOR DEFENDANT MICROSOFT CORPORATION

| | |
|---|---|
| BRADFORD L. SMITH<br>MARY SNAPP<br>DAVID A. HEINER, JR.<br>Microsoft Corporation<br>One Microsoft Way<br>Redmond, Washington 98052<br>425/936-8080 | CHARLES F. RULE<br>Fried, Frank, Harris, Shriver & Jacobson LLP<br>1001 Pennsylvania, Avenue, N.W.<br>Washington, DC 20004<br>202/639-7300<br><br>STEVE L. HOLLEY<br>RICHARD C. PEPPERMAN II<br>Sullivan & Cromwell<br>125 Broad Street<br>New York, New York 10004<br>212/558-4000<br><br>*Counsel for Defendant*<br>*Microsoft Corporation* |