IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

UNITED STATES OF AMERICA,

                Plaintiff,

      v.

MICROSOFT CORPORATION,

                Defendant.

Civil Action No. 98-1232 (CKK)

Next Court Deadline:
      February 1, 2005 Status Conference

---

**JOINT STATUS REPORT ON MICROSOFT'S
COMPLIANCE WITH THE FINAL JUDGMENTS**

The United States of America, Plaintiff in *United States v. Microsoft*, CA No. 98-1232

(CKK), and the Plaintiffs in *New York, et. al. v. Microsoft*, CA No. 98-1233 (CKK), the States of

New York, Ohio, Illinois, Kentucky, Louisiana, Maryland, Michigan, North Carolina, and

Wisconsin (the "New York Group"), and the States of California, Connecticut, Florida, Iowa,

Kansas, Massachusetts, Minnesota, Utah, and the District of Columbia (the "California Group")

(collectively "Plaintiffs"), together with Defendant Microsoft, hereby file a Joint Status Report on

Microsoft's Compliance with the Final Judgments, pursuant to this Court's Order of May 14,

2003.[1]

---

[1] As anticipated in the Joint Status Report filed October 8, 2004, Massachusetts is now
participating in the Plaintiffs' joint enforcement efforts as part of the California Group.  For further details,
refer to Footnote 1 of prior Status Reports.

## I.     INTRODUCTION

The Court's November 11, 2004 order directed the Plaintiffs to file this Status Report

updating the Court on activities relating to Microsoft's compliance with the Final Judgments

entered in *New York, et. al. v. Microsoft*, CA No. 98-1233 (CKK), and in *United States v.*

*Microsoft*, CA No. 98-1232 (CKK).[2]

The prior October 8, 2004 Status Report served as an interim report, containing

information on certain sections of the Final Judgments.  The current report is the fourth of the six-

month reports requested by the Court and contains information that the Court has requested in each

six-month report.  Order at 1-3 (May 14, 2003).   Section II of this report discusses Plaintiffs'

efforts to enforce the Final Judgments; this section was authored by Plaintiffs.[3]  Section III

discusses Microsoft's efforts to comply with the Final Judgments; this section was authored by

Microsoft.  Neither Plaintiffs nor Microsoft necessarily adopt the views expressed by the other.

## II.    UPDATE ON PLAINTIFFS' EFFORTS RELATING TO SECTIONS III.E, III.A, III.B, III.G, III.H, and III.F OF THE FINAL JUDGMENTS

### A.     Section III.E (Communications Protocol Licensing)

Plaintiffs continue to focus on Microsoft's efforts to comply with Section III.E.  In

particular, the Plaintiffs and the Technical Committee ("TC") have been working with Microsoft to

improve the quality and usability of the technical documentation supplied to licensees in the

---

[2] Plaintiffs filed previous reports on April 17, 2003, July 3, 2003, October 17, 2003, January 16, 2004, April 14, 2004, July 9, 2004, and October 8, 2004 to inform the Court as to the Plaintiffs' efforts to enforce the Final Judgments and Microsoft's efforts to comply with the Final Judgments.

[3] This report outlines Plaintiffs' enforcement efforts relating to Sections III.A, B, E, F, G, and H. Although Plaintiffs continue to monitor Microsoft's efforts to comply with Sections III.C and D,  Plaintiffs do not have any matters relating to those Sections to report to the Court at this time.

Microsoft Communications Protocol Program ("MCPP").  The TC and the California Group's

technical consultant, Craig Hunt, have played an integral role in the Plaintiffs' on-going review of

the technical documentation.

In previous Status Reports, Plaintiffs have raised concerns about the completeness and

accuracy of the technical documentation.  Throughout 2004, Microsoft spent significant time and

resources working on the technical documentation, culminating in the release of a new version of

the documentation in early December.  Plaintiffs believed that the revised documentation

represented a significant improvement over the original documentation.  Plaintiffs nevertheless

remained concerned that further work on the documentation was needed to provide confidence that

licensees would be able to implement the relevant protocols.

Plaintiffs and Microsoft have therefore agreed on a comprehensive plan to ensure the

completeness and accuracy of the technical documentation and to accomplish further work on the

documentation.  This plan entails two distinct projects which — when taken together and

completed, in conjunction with other elements already in place — should ensure that the resulting

documentation is complete, accurate, and ultimately usable.

First, the TC, in collaboration with the California Group's technical consultant, will

oversee a one-year project to create prototype implementations of each task covered by the MCPP.

The process of creating these prototypes should flesh out any remaining areas of the technical

documentation that warrant improvement or correction.  Microsoft will work closely with the TC

and the California Group's technical consultant to define the scope of this project; Microsoft will

also answer questions arising from this work and ensure that any necessary changes to the

technical documentation are made on a continuing basis.  This project has the great benefit of

covering a broad portion of the documentation.  The goal of this project is not to create reference

implementations or commercial-quality software. The resulting prototype implementations have

no independent value and will only be completed to the extent necessary to conclude that the

relevant portion of the documentation is complete and accurate; consequently, the prototypes are

not intended for use by MCPP licensees and will not be distributed. By the end of the project,

with Microsoft's cooperation, the Plaintiffs expect the technical documentation will be reasonably

complete and accurate and thus adequate for licensees to implement the protocols covered by the

MCPP.

Second, while the TC undertakes the work described in the previous paragraph, Microsoft

will develop and release to licensees a series of protocol parsers by extending Microsoft's

existing Network Monitor (or "NetMON") parsers[4] to cover all of the protocols available in the

MCPP (excluding a small number of protocols that the TC and Microsoft agree in the future are not

amenable to such treatment). These tools will be useful to licensees in their development efforts.

Moreover, the process of creating these tools should identify any errors remaining in the technical

documentation. Microsoft will build the parsers from the documentation, then compare each

parser against actual network packets captured in a test environment; any errors identified in this

comparison will be corrected in the parser and the documentation, and the process will be

repeated until the parser appears accurate. The parser and documentation will then be

systematically tested against the packets generated by the Windows test lab during its regular final

release testing of various Windows products. Plaintiffs believe that completing this project should

---

[4] The NetMON network tool is used by developers to capture network traffic for display and analysis. Parsers format the network traffic captured by NetMON to simplify analysis and create a more understandable display. NetMON parsers already exist for a wide range of protocols.

result in a high level of confidence that the technical documentation accurately describes the protocols covered by the MCPP on a bit-by-bit basis.

The TC's prototype implementation project and Microsoft's parser development project are designed to capture different types of potential issues with the technical documentation.  The two projects will therefore proceed on parallel tracks.  Plaintiffs and Microsoft believe that the two projects, combined, provide a realistic mechanism to ensure the overall completeness and accuracy of the documentation.  Given the substantial scope of these projects, we propose to complete them in approximately one year.  Licensees, however, should realize benefits from the projects well before their completion.  As issues with the documentation are discovered during the projects, Microsoft will make the appropriate changes to the documentation and release updated versions of the documentation to MCPP licensees on a regular basis.  Accordingly, the documentation available to licensees will improve in quality and accuracy throughout the course of the project work.  Plaintiffs believe that this plan will provide an expeditious and effective way to improve the technical documentation.

As detailed in the last Status Report, the Plaintiffs and the TC have also expressed concern that the rights-protected HTML format ("RMH") used by Microsoft in the current version of the technical documentation suffers from limited usability.  Plaintiffs noted that this format does not support annotations or bookmarks that would facilitate collaboration within a particular licensee.  Plaintiffs were also concerned with the limited search capabilities of the format and the fact that licensees were required to use Microsoft's Internet Explorer browser to review the documentation.  After reviewing work performed by the TC on this issue, Plaintiffs recommended to Microsoft that it offer the technical documentation in a format other than RMH.  Microsoft has informed Plaintiffs that, with some additional software, this appears feasible and has committed to

making the documentation available to licensees in the Adobe Portable Document Format ("PDF")

by the end of the second quarter.

**B.      Sections III.A, III.B, and III.G**
**(OEM Relations and Windows Licensing Terms)**

As previously reported, Plaintiffs requested and have received documents relating to

Microsoft's Market Development Agreement ("MDA"), which provides discounts on the price of

Windows to OEMs for achieving certain technical and marketing milestones.  Plaintiffs have now

completed their review of these documents and have not discovered any issues that require further

investigation.

Since our prior Status Report, Microsoft has issued a clarification addressing some OEM

confusion regarding the application of the MDA's "tagline" requirement to print advertisements

and websites for computers sold with non-Microsoft operating systems.  In response to one OEM's

question, Plaintiffs confirmed that, pursuant to the MDA and this clarification letter,

advertisements that mention only a non-Windows operating system (e.g. Linux) are not audited for

compliance with the MDA; Microsoft represented that this was consistent with past practice.

Over the next several months, Microsoft will release the next version of its uniform OEM

licensing agreements relating to Windows.  Plaintiffs will review the beta versions of these

agreements as they are released to OEMs; as in past licensing cycles, Plaintiffs will also review

feedback on the beta agreements submitted by OEMs to Microsoft.  Plaintiffs will apprise the

Court of any compliance issues that arise from their ongoing monitoring of Microsoft's

relationships with OEMs.

C.      Section III.H (Competing Middleware and Defaults)

As reported in previous Status Reports, Plaintiffs have begun discussions with Microsoft concerning the successor operating system to Windows XP, currently code-named Longhorn. Plaintiffs have prepared a list of topics that relate to the Final Judgments that Plaintiffs wish to track as Microsoft progresses in its development of Longhorn, enabling early detection and resolution of any potential areas of concern.  Plaintiffs have supplied this list to Microsoft and Microsoft has agreed to brief Plaintiffs regularly on these topics.  The first of these briefings is scheduled for mid-February.  Plaintiffs anticipate that these discussions will continue throughout the Longhorn development and testing cycle, and we will report to the Court on any resulting compliance issues as necessary.

The TC has conducted a thorough analysis of Windows XP and Service Pack 2 with respect to its treatment of competing middleware and defaults.  This work has identified several circumstances in which further information from Microsoft is needed to determine whether Windows satisfactorily honors user middleware choices.  Microsoft responded very recently to this TC information request and the Plaintiffs are currently reviewing that response.

D.      Section III.F (ISV Promotion of Competing Software)

As reported in the previous Status Report, Plaintiffs were concerned that Microsoft's contracts for the .NET Framework, a component of the Windows operating system used to build and run Windows-based applications, require prior consent from Microsoft before licensees may publish benchmark testing results for the .NET Framework.  After an exchange with the Plaintiffs, Microsoft had agreed to modify the provision.  Plaintiffs are continuing to discuss the matter with Microsoft and at this time do not have any issues to report to the Court.

### E.     Activities of the TC

Throughout the past quarter, the TC has reviewed and analyzed the technical documentation available to MCPP licensees to assure its usability, completeness and accuracy.  TC members and TC staff regularly met and communicated via e-mail with Microsoft personnel, thereby establishing an on-going dialog on these subjects.  TC members also communicated with MCPP licensees to learn about their experiences and concerns.

To review the accuracy and completeness of the technical documentation, the TC and its staff pursued three parallel projects by creating:  (1) a prototype implementation of the authentication services task; (2) a protocol decoder for the terminal services packets; and (3) a protocol test suite for the media streaming services task.  Questions arising out of this extensive work were presented to Microsoft at various meetings, including a lengthy meeting with Microsoft software engineers to discuss specific issues that the TC had identified.  This on-going exchange, together with additional communications with Microsoft, led to the project plan described above. As part of this process, the TC also evaluated and advised the Plaintiffs regarding Microsoft's NetMON parser project, also discussed above.

In addition, the TC reviewed both the beta and release versions of the technical documentation as they were made available by Microsoft.  The TC expressed various questions about usability to Microsoft prior to the version released to MCPP licensees around year's end.  It also made suggestions to Microsoft to detail and enhance the corrective assistance request ("CAR") process.  Among other things, the TC has discussed with Microsoft ways to make sure that remedial action taken by Microsoft in response to licensee CARs is, in fact, incorporated into the technical documentation, and thus available to licensees as the documentation goes through its regular update cycle.

8

Throughout these MCPP projects, the TC worked closely with the technical consultant engaged by the California Group.

Besides this MCPP-related activity, the TC pursued projects designed to assure Microsoft's compliance with Sections III.C and III.H of the Final Judgments, which are intended to offer OEMs and users the opportunity to select competing middleware in lieu of that offered by Microsoft. The TC completed the extensive testing of Windows XP Service Pack 2 referred to in our prior Status Report; the TC also developed a registry tool to understand the operating system's behavior. As noted above, the TC's work on middleware has identified a number of areas where additional information is required.

TC efforts to evaluate Windows' compliance with Sections III.C and III.H are continuing. This activity includes analysis of a feature in Windows XP – set program access and defaults ("SPAD") – that Microsoft added pursuant to the Final Judgments, and SPAD's relationship to Longhorn, the company's next operating system. The process of engaging Microsoft regarding this and other aspects of Longhorn is expected to begin in earnest in the forthcoming quarter.

In addition, the TC continues to directly receive third-party complaints and resolve these complaints in accordance with the procedures set forth in the July 3, 2003 Joint Status Report. Since the previous six-month Status Report, the TC has received five new complaints, four of which were related to Microsoft's compliance with the Final Judgment. The TC also facilitated a change in the MCPP technical documentation based on a complaint submitted by one of the licensees.

Year 2 of the TC's operations closed on November 30, 2004, at which time Microsoft provided the funds requested by the TC for Year 3. The comprehensive technical documentation improvement project that the TC proposes to undertake will require additional Microsoft funding,

which Microsoft has committed to providing.  The TC is revising its budget accordingly.  The TC

intends to hire up to twenty additional engineers to work on this project, significantly increasing

the overall size of the TC's staff.  Finally, the TC issued its fourth six-month status report to the

United States and the New York Group.

F.      **Complaints Regarding Microsoft's Compliance with the Final Judgments**

Since the prior full Status Report, filed on July 9, 2004, twenty-three complaints have been

received by the United States.  All twenty-three complaints were non-substantive and did not raise

any issues of Microsoft's compliance with, or the United States' enforcement of, the Final

Judgment.  Each of the non-substantive complaints received a simple response acknowledging

their receipt.  Of the substantive complaints received prior to the July 9, 2004 Joint Status Report,

a small number of complaints remain open pending further discussions with Microsoft.   The New

York and California Groups do not believe that they have received any additional substantive

complaints since the prior full Status Report; the California Group did receive two non-substantive

complaints in this time period.

G.      **Proposed Removal of Non-Major Tunney Act Comments from the Antitrust Division's Website**

As required under the Tunney Act, on November 28, 2001, the United States published in

the *Federal Register* a Revised Proposed Final Judgment, a Competitive Impact Statement, and

detailed procedures for the submission of public comments regarding the United States' proposed

settlement with Microsoft.[5]  The 60-day public comment period lasted from November 28, 2001

through January 28, 2002.  During that period, the United States received 32,392 comments from

the public.  Of these comments, the United States categorized 47 of these comments as "major."

_____

[5] 66 Fed. Reg. 59452 (Nov. 28, 2001).

The United States provided the "major" comments to the Court on February 14, 2002, and

subsequently published these comments on the Antitrust Division website.

On March 1, 2002, the United States made the full text of the public comments available for

downloading and viewing on the Antitrust Division's website by implementing the procedure

detailed in the *United States' Motion for Leave of Court to Adopt an Alternative Procedure for*

*Comment Publication* (filed Feb. 12, 2002).  On May 3, 2002, the full text of the public comments

was also published in the *Federal Register*.[6]

Since November 21, 2004, the United States has received inquiries from six citizens

requesting that some portion of the comments that they had submitted during the Tunney Act

comment period be removed from the Antitrust Division's website.  Generally, these citizens have

requested that their personal information be removed from the Internet due to privacy concerns.

None of these requests were related to the "major" comments.

Given that citizens have started to request removal of their comments and that the full text

of the public comments will continue to be available to the public through the Federal Register and

upon request from the United States, the United States believes it would be appropriate to remove

these non-major comments from the Antitrust Division's website.  The comments will still be

widely available to the public and this will permit the United States to respond to what appear to

be reasonable privacy concerns.

Therefore, subject to the Court's concurrence, the United States plans to remove all of the

public comments not categorized as "major" from the Antitrust Division's website.  The "major"

comments and instructions for obtaining the full text of all public comments on CD-ROM will

---

[6] 67 Fed. Reg. 23653, Books 2-12 (May 3, 2002).

continue to be available on the Antitrust Division's website at

http://www.usdoj.gov/atr/cases/ms-comment.htm.  In addition, all public comments are now

available and will continue to be available on the Federal Register's website at

http://www.gpoaccess.gov/fr/index.html.

## III.    UPDATE ON MICROSOFT'S COMPLIANCE WITH THE FINAL JUDGMENTS

Microsoft continues to make full compliance with its obligations under the Final Judgments

an important priority throughout the company, and devotes substantial resources to its compliance

work.  While issues inevitably will arise, Microsoft has worked diligently and cooperatively to

respond to and resolve all inquiries from Plaintiffs.  Microsoft believes that Plaintiffs' section of

this report adequately reflects this cooperation and the continued diligence of Microsoft to comply

fully with the Final Judgments and to go even further in a spirit of accommodation.

This report focuses on Microsoft's compliance work relating to Sections III.E and III.F.

This report also briefly summarizes the activities of the compliance officers under the Final

Judgments, as well as the complaints and inquiries received by Microsoft since the July 9, 2004

Status Report.

### A.    Section III.E (Communications Protocol Licensing)

#### 1.    MCPP Status Update

Microsoft is pleased to report that two additional firms have executed MCPP licenses

since the last Interim Status Report, bringing the total number of licensees to 21.  The new

licensees are: Unisys Corporation and vBrick Systems Inc.  In addition, two companies have taken

advantage of the royalty-free protocol license offered on MSDN, Orbital Data Corporation and

Atlas Development Corporation.

Unisys Corporation is the fourth general purpose server licensee under MCPP and is a well-known worldwide information technology services and solutions company.  vBrick Systems Inc. is a provider of streaming video and video on demand solutions.  Orbital Data Corporation is a developer of appliances that provide customers with predictable application performance over wide-area networks.  Atlas Development Corporation is a provider of high-performance software applications for the healthcare industry.

Microsoft is in ongoing discussions with several more prospective licensees and will continue to update Plaintiffs and the Court on any new developments.   Microsoft is also pleased to report that, to date, six licensees—Cisco, EMC, NetApp, Starbak, Verisign, and Tandberg—are shipping products that implement MCPP protocols.

    2.  Technical Documentation

Microsoft continues to work closely with the Technical Committee and Plaintiffs to incorporate the Technical Committee's feedback regarding the technical documentation.  To date, Microsoft has implemented changes to the documentation as outlined in a 40-page specification for technical document improvements created in consultation with the Technical Committee. Following the release of a beta version to approximately 100 individual users at licensee companies, Microsoft released a revised version of the technical documentation in a phased shipment that started on November 30, 2004 and was completed on December 7, 2004. As reported in Plaintiffs' section of this report, Microsoft has also agreed to a comprehensive process designed to assist Plaintiffs in further verifying the completeness and accuracy of the documentation.  While Microsoft is already confident that it has met its obligations under Section III.E, it has nevertheless agreed to Plaintiffs' proposal to validate the completeness and accuracy

of the technical documentation and to reinforce its deep commitment to full compliance with the

Final Judgments.

Plaintiffs and the Technical Committee have also requested that Microsoft change the

format of the technical documentation from RMH to PDF.  (PDF is a proprietary format of Adobe

Systems Inc., a competitor of Microsoft.)  While Plaintiffs have indicated that they would accept

any format that incorporated certain features that they identified, only PDF was deemed by

Plaintiffs to have the requisite complement of features and, with the addition of third party

software, by Microsoft to meet its concerns about security. Thus, Microsoft has agreed to

Plaintiffs' request and intends to begin offering the MCPP technical documents supported in PDF

by the end of the second quarter.

### B.      Section III.F

Microsoft received feedback from Plaintiffs regarding the contractual provision governing

benchmarking of the .NET Framework.  Although Microsoft does not believe the current clause

raises any issues under the Final Judgments, Microsoft nonetheless agreed to alter the terms of this

clause to address  Plaintiffs' concerns.  Microsoft is currently awaiting additional feedback from

Plaintiffs and will continue working with Plaintiffs to attempt to resolve any additional reasonable

concerns in a cooperative and expeditious manner.

### C.      Compliance Officers

Since the Initial Status Report was filed on July 3, 2003, the compliance officers have

continued to ensure that newly-appointed Microsoft officers and directors receive copies of the

Final Judgments and related materials (ongoing), that Microsoft officers and directors receive

annual briefings on the meaning and requirements of the Final Judgments (completed for the most

recent year in June 2004) and complete the required certifications (completed during December

2004 and January 2005), and that required compliance-related records are maintained (ongoing).

In addition, the compliance officers are actively engaged in Microsoft's ongoing training programs

and monitor matters pertaining to the Final Judgments.

### D.      Complaints and Inquiries Received by Microsoft

Microsoft has received 26 complaints or inquiries since the July 9, 2004 Status Report.

None of these complaints were related to Microsoft's compliance obligations under the Final

Judgments, and Microsoft considers all of these complaints to be non-substantive.


January 25, 2005

                                                    Respectfully submitted,


FOR THE STATES OF NEW YORK,               FOR THE UNITED STATES
OHIO, ILLINOIS, KENTUCKY,                 DEPARTMENT OF JUSTICE'S
LOUISIANA, MARYLAND, MICHIGAN             ANTITRUST DIVISION
NORTH CAROLINA, AND WISCONSIN



_____               _____
ELIOT SPITZER                             RENATA B. HESSE
*Attorney General of New York*            PATRICIA A. BRINK
JAY L. HIMES                              PHILIP A. GIORDANO
*Chief, Antitrust Bureau*                 AARON D. HOAG
RICHARD L. SCHWARTZ                       BARBARA J. NELSON
*Assistant Attorney General*             ADAM T. SEVERT
120 Broadway                              JEFFREY J. VANHOOREWEGHE
New York, New York 10271                  *Trial Attorneys*
212/416-6229                              U.S. Department of Justice
                                          Antitrust Division
                                          600 E Street, N.W.
                                          Suite 9500
                                          Washington, D.C. 20530
                                          202/514-8276

FOR THE STATES OF CALIFORNIA,
CONNECTICUT, IOWA, KANSAS,
FLORIDA, MASSACHUSETTS, MINNESOTA,
UTAH, AND THE DISTRICT OF COLUMBIA


_____

KATHLEEN FOOTE
*Senior Assistant Attorney General*
Office of the Attorney General of California
455 Golden Gate Avenue
Suite 11000
San Francisco, California 94102-3664
415/703-5555



          FOR DEFENDANT MICROSOFT
          CORPORATION



          _____

BRADFORD L. SMITH          CHARLES F. RULE
MARY SNAPP          Fried, Frank, Harris, Shriver & Jacobson LLP
DAVID A. HEINER, JR.          1001 Pennsylvania, Avenue, N.W.
Microsoft Corporation          Washington, DC 20004
One Microsoft Way          202/639-7300
Redmond, Washington 98052
425/936-8080          STEVE L. HOLLEY
          RICHARD C. PEPPERMAN II
          Sullivan & Cromwell
          125 Broad Street
          New York, New York 10004
          212/558-4000

          *Counsel for Defendant*
          *Microsoft Corporation*