IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>  v.<br><br>MICROSOFT CORPORATION,<br><br>        Defendant. | Civil Action No. 98-1232 (CKK)<br><br>Next Court Deadline:<br>  June 6, 2005 Status Conference |

## JOINT STATUS REPORT ON MICROSOFT'S COMPLIANCE WITH THE FINAL JUDGMENTS

The United States of America, Plaintiff in *United States v. Microsoft*, CA No. 98-1232 (CKK), and the Plaintiffs in *New York, et. al. v. Microsoft*, CA No. 98-1233 (CKK), the States of New York, Ohio, Illinois, Kentucky, Louisiana, Maryland, Michigan, North Carolina, and Wisconsin (the "New York Group"), and the States of California, Connecticut, Florida, Iowa, Kansas, Massachusetts, Minnesota, Utah, and the District of Columbia (the "California Group") (collectively "Plaintiffs"), together with Defendant Microsoft, hereby file a Joint Status Report on Microsoft's Compliance with the Final Judgments, pursuant to this Court's Order of May 14, 2003.

## I. INTRODUCTION

At the February 9, 2005 Status Conference, the Court directed the Plaintiffs to file a Status Report updating the Court on activities relating to Microsoft's compliance with the Final Judgments entered in New York, et. al. v. Microsoft, CA No. 98-1233 (CKK), and in United States v. Microsoft, CA No. 98-1232 (CKK).[1]

The last Status Report, filed January 25, 2005, served as a six-month report, containing certain relevant information requested by the Court. Order at 1-3 (May 14, 2003). The current Report is an interim report relating only to current enforcement activities. Section II of this Report discusses Plaintiffs' efforts to enforce the Final Judgments; this section was authored by Plaintiffs. Section III discusses Microsoft's efforts to comply with the Final Judgments; this section was authored by Microsoft. Neither Plaintiffs nor Microsoft necessarily adopts the views expressed by the other.

## II. UPDATE ON PLAINTIFFS' EFFORTS TO ENFORCE THE FINAL JUDGMENTS

### A. Section III.E (Communications Protocol Licensing)

Plaintiffs continue to focus on Microsoft's efforts to comply with Section III.E. In particular, the Plaintiffs and the Technical Committee ("TC") have been working with Microsoft to ensure the quality and usability of the technical documentation supplied to licensees in the Microsoft Communications Protocol Program ("MCPP"). The TC and the California Group's

---

[1] Plaintiffs filed previous reports on April 17, 2003, July 3, 2003, October 17, 2003, January 16, 2004, April 14, 2004, July 9, 2004, October 8, 2004, and January 25, 2005 to inform the Court as to the Plaintiffs' efforts to enforce the Final Judgments and Microsoft's efforts to comply with the Final Judgments.

technical consultant, Craig Hunt, have played an integral role in Plaintiffs' on-going review of the technical documentation.

As detailed in the last Status Report, Plaintiffs and Microsoft have agreed on a comprehensive plan to ensure the completeness and accuracy of the technical documentation and to accomplish further work on the documentation. This plan entails two distinct projects which – when both are completed, and in conjunction with other elements already in place – should ensure that the resulting documentation is complete, accurate, and usable.

First, the prototype implementation project is underway and making good progress. The TC has hired most of the engineers necessary to complete this enterprise and anticipates meeting all major milestones. The project has already identified approximately 200 technical issues, most of which are still under investigation; Microsoft is working with the TC to address these issues, in some cases by changing or providing additional language in the relevant portion of the technical documentation.

Second, Microsoft reports that its protocol analyzer project, dubbed "Troika," is also progressing. Microsoft has recently informed Plaintiffs that the "proof of concept" phase of the project is nearly complete. Plaintiffs look forward to the project's further development and will continue to monitor its progress, in conjunction with the TC and Mr. Hunt.

As detailed in the last two Status Reports, Microsoft has committed to making the updated documentation available to licensees in the Adobe Portable Document Format ("PDF") by the end of the second quarter. Microsoft has indicated to Plaintiffs that it is on target for a June 2005 PDF beta release to MCPP licensees.

Finally, the Court has properly expressed an on-going interest in the progress of the MCPP, and whether the program's licensees have introduced products that foster communications between

non-Windows servers and Windows clients. In this regard, Plaintiffs wish to update the Court on information that has come to their attention regarding one MCPP licensee. Specifically, Plaintiffs have learned that an MCPP licensee that has not reported any MCPP development activity to date took the MCPP license in conjunction with an additional non-MCPP license – actively sought by the licensee – permitting the licensee to implement one of the MCPP protocols on the client side, as opposed to the server-side implementation covered by the MCPP license. As a result of this broader relationship, the licensee has effectively not yet incurred any cost for its MCPP license, and will not incur any such cost until and unless it distributes an implementation under the MCPP. It is not clear at this time whether, and, if so, when, the licensee will begin to develop a server-side implementation under the MCPP, in contrast to the client-side implementation in the licensee's current product.[2]

### B. Sections III.A, III.B, and III.G (OEM Relations and Windows Licensing Terms)

Microsoft has released a new version of its uniform OEM licensing agreements relating to Windows. Plaintiffs have reviewed these agreements; as in past licensing cycles, Plaintiffs also reviewed feedback on the beta agreements submitted by OEMs to Microsoft. Plaintiffs do not have any issues relating to these documents to report to the Court.

---

[2]After agreeing to this broader licensing relationship, Microsoft amended the MCPP license to make the same terms and conditions available to other current or future licensees. Plaintiffs, however, are not aware of any other licensee that has availed itself of that option.

C. **Section III.C and III.H (Competing Middleware and Defaults)**

As reported in previous Status Reports, Plaintiffs are holding regular frequent discussions with Microsoft concerning the successor operating system to Windows XP, currently code-named Longhorn. Plaintiffs anticipate that these discussions will continue throughout the Longhorn development and testing cycle and are therefore currently seeking feedback from the industry on this topic. Microsoft has also publicly announced its intention to release Version 7 of Internet Explorer ("IE7"). Plaintiffs, with the assistance of the TC and Mr. Hunt, will evaluate IE7 to assure its compliance with the Final Judgments. Plaintiffs will report to the Court on any resulting compliance issues as necessary.

As described in the previous Status Report, the TC has conducted a thorough analysis of Windows XP and Service Pack 2 with respect to its treatment of competing middleware and defaults. This investigation has uncovered two specific behaviors within Windows which raised possible issues under the Final Judgments. First, when a user disables access to a Microsoft Middleware Product, user-created shortcuts to that application are not removed from the system. Second, when a user selects a default browser other than Internet Explorer, a web address or file within certain parts of the operating system still appears with the Internet Explorer "e" icon, even though the web address or file opens in the default browser when selected.

To address these issues, Microsoft has agreed to make two changes to the operating system. First, disabling access to a Microsoft middleware application will now remove shortcuts to that application from a greater number of locations than previously. Specifically, shortcuts will be removed from the following areas: Start Menu pinned area, Start Menu Most Frequently Used area, Start Menu All Programs, Desktop, and Quick Launch; shortcuts which have been specifically customized or modified by the user will be preserved. Second, an icon for the default

browser (or a generic icon, if necessary) will replace the Internet Explorer icon in the commonly used parts of the operating system when Internet Explorer is not the default web browser. When selected, the web address or file will be opened with the default browser in a new, top-level window, as is currently the case. Plaintiffs believe that these changes will help ensure that Windows respects users' middleware preferences, as required by the Final Judgments.

### D.  Section III.F (ISV Promotion of Competing Software)

As reported in previous Status Reports, Plaintiffs were concerned that Microsoft's contracts for the .NET Framework, a component of the Windows operating system used to build and run Windows-based applications, require prior consent before licensees may publish benchmark testing results for the .NET Framework. Microsoft had previously agreed to remove the prior consent requirement. Plaintiffs can now report that in addition to removing the prior consent requirement, Microsoft has agreed to make additional changes to the provision which resolve any concerns that the provision would inhibit promotion of competing software in violation of the Final Judgments.

### E.  Activities of the TC

#### 1.  III.E MCPP Activity

Since the last Status Report, much of the TC's work has related to the MCPP program adopted by Microsoft in furtherance of its obligations under Section III.E of the Final Judgments. As noted above in Section II.A, earlier this year, Plaintiffs and Microsoft agreed on a plan to ensure the completeness and accuracy of the technical documentation provided to MCPP licensees (the "TD verification project"). Part of this project calls on the TC, in consultation with the California Group's technical consultant, to oversee creation of prototype implementations of each

task covered by the MCPP. The objective is to develop server elements on a non-Microsoft platform that are able to communicate with Windows clients, and to do so using only the technical documentation provided to licensees, information on MSDN, and publicly available material. Another part of the project, called "Troika" as noted above, calls on Microsoft to develop and release to licensees a series of Network Monitor (or "NetMON") protocol parsers and also to use these parsers in conjunction with other proprietary components to compare the information in the documentation against actual client-to-server network traffic. Where discrepancies are encountered, changes in the documentation may need to be made. Implementing the TD verification project has been a focus of TC activity since January.

  The TC prepared a revised budget to fund this increased activity, which was submitted to and funded by Microsoft. The TC also hired 12 additional individuals – consisting of a project manager, a development manager, an on-site IT manager, and nine design engineers – to staff the TD verification project. To accommodate this expanded staff, the TC's offices in Bellevue, WA were also reconstructed. Additional computers and server disk storage were procured and installed in both TC office locations.

  The TC and Microsoft further established more regular processes to meet and communicate regarding the TD verification project. Microsoft has provided a full-time, dedicated "consulting resource" individual – referred to as a Technical Account Manager, or "TAM" – who serves as a technical interface between the two organizations. Weekly meetings are held between the TC Members and staff and Microsoft personnel, during which issues relating to the TD verification project are discussed. As noted above, the TC has submitted to Microsoft approximately 200 technical issues representing apparent errors, omissions or other changes needed to the technical documentation. The parties have resolved or otherwise closed over 60 of these issues, some of

which will result in revisions to the technical documentation, which Microsoft is releasing to licensees on a monthly basis. The other issues presented are currently under review at Microsoft. The TC reports monthly to the Plaintiffs, as well as to Microsoft, on the status of the TD verification plan. This reporting will include monitoring the extent to which issues with the technical documentation presented by the TC to Microsoft are translated into changes in the documentation itself.

The on-going dialog between the TC and Microsoft covers both parts of the TD verification plan. Accordingly, besides the prototype implementation work undertaken by the TC, the TC and its engineers provided input to Microsoft regarding the design of and schedule for the NetMON parser work. This TC monitoring work is continuing.

As similarly detailed in the prior joint status report, Plaintiffs and the TC expressed to Microsoft concern that the rights-protected HTML format ("RMH"), used in the current version of the technical documentation, suffers from limited usability. After further discussion, Microsoft has undertaken to develop a PDF-based version of the technical documentation, which includes an additional layer of security protection. Again, the TC and its engineers provided input to Microsoft to assist in developing this alternative format, and are monitoring this project. Currently, TC engineers are participating in beta testing of the new format.

### 2. III.C and III.H Middleware Activity

The TC continued its projects to assure Microsoft's compliance with Sections III.C and III.H of the Final Judgments, which are intended to offer OEMs and users the opportunity to select competing middleware in lieu of that offered by Microsoft. The TC's detailed testing work identified several issues regarding the behavior of Set Program Access and Defaults ("SPA&D"), a feature that Microsoft added to Windows pursuant to the Final Judgments. As noted above in

Section II.C, the TC identified the incomplete behavior of SPA&D in removing access and icons from Internet Explorer objects where the user chooses a different default browser.  The TC discussed this matter with Microsoft, which has agreed to make the changes requested by the TC.  A schedule for testing and eventual release of these changes is being established.  The TC further identified aspects of Windows Media Player ("WMP") behavior where users open links to online music providers, and discussion of this matter is on-going.  Another facet of the TC's III.C and III.H work consisted of studying non-confidential information available to ISVs who seek to replace access to Microsoft middleware with alternate middleware products, not only in the specific functions covered by SPA&D, but in related areas that users may consider "defaults," such as "Autoplay" and "Open with."  As a result of this study, the TC discussed with Microsoft a series of ways in which the MSDN information provided to ISVs could be improved.  The TC further outlined a proposed new MSDN article, which ties together the many individual articles that bear on replacing Microsoft middleware.  Microsoft has informed Plaintiffs that it agrees that such an article could be helpful and that it will therefore work towards posting one on MSDN.

       The TC and its staff are continuing to meet periodically with Microsoft regarding the middleware and default issues arising from the TC's extensive, and continuing, study of these subjects.

       In addition, Microsoft has publicly announced that it intends to release the first beta version of its Longhorn operating system later this year, as well as Internet Explorer 7.  The TC is tracking features of the Longhorn system (and IE7) through meetings with Microsoft, as well as by installing and reviewing "builds" of the operating system, and by reviewing Microsoft documents and items available publicly in the trade press.  The TC will also put IE7 through its regular test regime to assure its compliance with the Final Judgments.

3. Other Matters

The TC continues to receive third-party complaints and to resolve them in accordance with the procedures set forth in the July 3, 2003 Joint Status Report. Since the last Joint Status Report, the TC has received one additional complaint, which the complainant resolved through direct contact with Microsoft.

Upon the Court's entry of its May 5, 2005 Orders reappointing the TC Members to second terms, the parties executed an appropriate amendment to the Technical Committee Service Agreement. Finally, the TC issued its fifth sixth-month status report to the United States and the New York Group.

### F. Proposed Removal of Non-Major Tunney Act Comments from the Antitrust Division's Website

In the last Status Report, the United States described a plan to remove from the Antitrust Division's website the non-major comments submitted during the Tunney Act proceedings in this case. The United States now reports that these non-major comments have been removed. Notwithstanding this removal from the Division's website, all public comments remain available on the Federal Register's website at http://www.gpoaccess.gov/fr/index.html.

### III. UPDATE ON MICROSOFT'S COMPLIANCE WITH THE FINAL JUDGMENTS

Microsoft continues to make full compliance with its obligations under the Final Judgments an important priority throughout the company, and devotes substantial resources to its compliance work. While issues inevitably will arise, Microsoft has worked diligently and cooperatively to respond to and resolve all inquiries from Plaintiffs. Microsoft believes that Plaintiffs' section of this report adequately reflects this cooperation and the continued commitment of Microsoft to comply fully with the Final Judgments and to go even further in a spirit of accommodation.

This report focuses on Microsoft's compliance work relating to Sections III.E and III.F. This report also briefly summarizes the activities of the compliance officers under the Final Judgments, as well as the complaints and inquiries received by Microsoft since the January 25, 2005 Status Report.

#### A. Section III.E (Communications Protocol Licensing)

##### 1. MCPP Status Update

Two additional firms have executed MCPP licenses since the last Status Report, bringing the total number of licensees to 23. The new licensees are: Symantec Corporation and Wadin Digital Technology Co., Ltd. Symantec Corporation is a well-known worldwide supplier of information security products. Wadin Digital Technology Corporation is a provider of streaming video and video on demand solutions.

In addition to the 23 licensees referenced above, there remain two companies that have taken advantage of the royalty-free protocol license offered on MSDN, Orbital Data Corporation and Atlas Development Corporation.

Microsoft is in ongoing discussions with several more prospective licensees and will continue to update Plaintiffs and the Court on any new developments. In addition, to date, nine licensees have begun shipping products that implement MCPP protocols.

        2.        Technical Documentation

Microsoft continues to work closely with the Technical Committee and Plaintiffs to incorporate the Technical Committee's feedback regarding the technical documentation. As reported in Plaintiffs' section of this report, Microsoft has also agreed to a comprehensive process designed to assist Plaintiffs in further verifying the completeness and accuracy of the documentation. While Microsoft is confident that it has met its obligations under Section III.E, it has nevertheless agreed to Plaintiffs' proposal to validate the completeness and accuracy of the technical documentation and to reinforce its deep commitment to full compliance with the Final Judgments. This process is ongoing and significant progress has been made.

As discussed in Plaintiffs' section to this report and in the previous Status Report, Plaintiffs and the Technical Committee have also requested that Microsoft make the technical documentation available in PDF. Microsoft has agreed to Plaintiffs' request and remains on target to begin offering the MCPP technical documents supported in PDF by June 2005.

        **B.**        **Section III.F**

Microsoft received feedback from Plaintiffs regarding the contractual provision governing benchmarking of the .NET Framework. Although Microsoft does not believe the clause as previously written raised any issues under the Final Judgments, Microsoft nonetheless agreed to alter the terms of this clause to satisfy fully Plaintiffs' concerns.

**C.     Compliance Officers**

Since the Initial Status Report was filed on July 3, 2003, the compliance officers have continued to ensure that newly-appointed Microsoft officers and directors receive copies of the Final Judgments and related materials (ongoing), that Microsoft officers and directors receive annual briefings on the meaning and requirements of the Final Judgments (completed for the most recent year in June 2004) and complete the required certifications (completed during December 2004 and January 2005), and that required compliance-related records are maintained (ongoing). In addition, the compliance officers are actively engaged in Microsoft's ongoing training programs and monitor matters pertaining to the Final Judgments.

**D.     Complaints and Inquiries Received by Microsoft**

Microsoft has received 13 complaints or inquiries since the January 25, 2005 Status Report. As with prior inquiries and complaints received, virtually all of these matters were entirely unrelated to any of Microsoft's compliance obligations under the Final Judgments. Only one submission related to Microsoft's obligations under the Final Judgments. Microsoft is working with Plaintiffs and with the Technical Committee to respond to and resolve this concern in a timely fashion.

June 1, 2005

                                                  Respectfully submitted,

| FOR THE STATES OF NEW YORK, OHIO, ILLINOIS, KENTUCKY, LOUISIANA, MARYLAND, MICHIGAN NORTH CAROLINA, AND WISCONSIN | FOR THE UNITED STATES DEPARTMENT OF JUSTICE'S ANTITRUST DIVISION |
|---|---|
| ELIOT SPITZER<br>*Attorney General of New York*<br>JAY L. HIMES<br>*Chief, Antitrust Bureau*<br>*Assistant Attorney General*<br>120 Broadway<br>New York, New York 10271<br>212/416-6229 | RENATA B. HESSE<br>PATRICIA A. BRINK<br>PHILIP A. GIORDANO<br>AARON D. HOAG<br>ADAM T. SEVERT<br>*Trial Attorneys*<br>U.S. Department of Justice<br>Antitrust Division<br>600 E Street, N.W.<br>Suite 9500<br>Washington, D.C. 20530<br>202/514-8276 |

FOR THE STATES OF CALIFORNIA,
CONNECTICUT, IOWA, KANSAS,
FLORIDA, MASSACHUSETTS, MINNESOTA,
UTAH, AND THE DISTRICT OF COLUMBIA

_____

KATHLEEN FOOTE
*Senior Assistant Attorney General*
Office of the Attorney General of California
455 Golden Gate Avenue
Suite 11000
San Francisco, California 94102-3664
415/703-5555

|  |  |
|---|---|
|  | FOR DEFENDANT MICROSOFT CORPORATION |
| BRADFORD L. SMITH<br>MARY SNAPP<br>DAVID A. HEINER, JR.<br>Microsoft Corporation<br>One Microsoft Way<br>Redmond, Washington 98052<br>425/936-8080 | _____<br>CHARLES F. RULE<br>Fried, Frank, Harris, Shriver & Jacobson LLP<br>1001 Pennsylvania, Avenue, N.W.<br>Washington, DC 20004<br>202/639-7300<br><br>STEVE L. HOLLEY<br>RICHARD C. PEPPERMAN II<br>Sullivan & Cromwell<br>125 Broad Street<br>New York, New York 10004<br>212/558-4000<br><br>*Counsel for Defendant*<br>*Microsoft Corporation* |