IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                     Plaintiff,<br><br>      v.<br><br>MICROSOFT CORPORATION,<br><br>                     Defendant. | Civil Action No. 98-1232 (CKK)<br><br>Next Court Deadline:<br>      February 14, 2006 Status Conference |

**JOINT STATUS REPORT ON MICROSOFT'S
COMPLIANCE WITH THE FINAL JUDGMENTS**

The United States of America, Plaintiff in *United States v. Microsoft*, CA No. 98-1232

(CKK), and the Plaintiffs in *New York, et. al. v. Microsoft*, CA No. 98-1233 (CKK), the States of

New York, Ohio, Illinois, Kentucky, Louisiana, Maryland, Michigan, North Carolina, and

Wisconsin (the "New York Group"), and the States of California, Connecticut, Florida, Iowa,

Kansas, Massachusetts, Minnesota, Utah, and the District of Columbia (the "California Group")

(collectively "Plaintiffs"), together with Defendant Microsoft, hereby file a Joint Status Report

on Microsoft's Compliance with the Final Judgments, pursuant to this Court's Order of May 14,

2003.

I.      INTRODUCTION

At the November 30, 2005 Supplemental Status Conference, the Court directed the

Plaintiffs to file a Status Report updating the Court on activities relating to Microsoft's

compliance with the Final Judgments entered in *New York, et. al. v. Microsoft*, CA No. 98-1233

(CKK), and in *United States v. Microsoft*, CA No. 98-1232 (CKK).[1]

The last Status Report, filed October 19, 2005, served as a six-month report, containing

certain relevant information requested by the Court. Order at 1-3 (May 14, 2003). This Report is

an interim report relating only to recent enforcement activities.  Section II of this Report

discusses Plaintiffs' efforts to enforce the Final Judgments;[2] this section was authored by

Plaintiffs.  Section III discusses Microsoft's efforts to comply with the Final Judgments; this

section was authored by Microsoft.[3]  Neither Plaintiffs nor Microsoft necessarily adopts the

views expressed by the other.

---

[1] Plaintiffs filed previous reports on April 17, 2003, July 3, 2003, October 17, 2003, January 16, 2004, April 14, 2004, July 9, 2004, October 8, 2004, January 25, 2005, June 1, 2005, and October 19, 2005 to inform the Court as to the Plaintiffs' efforts to enforce the Final Judgments and Microsoft's efforts to comply with the Final Judgments.  Plaintiffs also filed a Supplemental Joint Status Report on November 18, 2005.

[2] This report outlines Plaintiffs' enforcement efforts relating to Sections III.C, E, and H. Although Plaintiffs continue to monitor Microsoft's efforts to comply with Sections III.A, B, D, and G, Plaintiffs do not have any matters relating to those Sections to report to the Court at this time.

[3]At the November 30, 2005 supplemental status conference, the Court approved the parties' proposal that Microsoft file monthly reports detailing its progress with the parser project and in supporting the Technical Committee's prototype implementation and validation projects. Microsoft filed the first monthly report on January 17, 2006.  The second report would be due on February 15, 2006, the day after the status conference.  For the Court's convenience, Microsoft has included, in its section of this JSR, the information that would have been included in its February monthly report.  Microsoft will resume filing regular monthly reports on March 15, 2006.

**II.     UPDATE ON PLAINTIFFS' EFFORTS TO ENFORCE THE FINAL
         JUDGMENTS**

      **A.     Section III.E (Communications Protocol Licensing)**

Plaintiffs' work concerning Section III.E and the Microsoft Communications Protocol

Program ("MCPP") continues to focus on efforts to improve the technical documentation

provided to licensees.  First, Plaintiffs are engaged in discussions with Microsoft concerning its

publicly-announced proposal to offer a reference license to its Windows server source code to

MCPP licensees at no additional cost.  Second, as detailed in the November 30, 2005

Supplemental Joint Status Report, the Technical Committee ("TC"), working with Craig Hunt,

the California Group's technical expert, has continued its pursuit of two projects designed to

ensure that the technical documentation is complete, accurate, and usable:  the prototype

implementation project and the validation project.  We discuss these two subjects in turn.

      1.     *Microsoft's Plan to License Source Code as Part of the MCPP*

As the Court may be aware from recent press reports, within the past two weeks

Microsoft has expressed to both Plaintiffs and enforcement officials in the European Union a

willingness to license its Windows server source code at no additional cost to licensees of each

jurisdiction's respective protocol licensing program.  This proposal from Microsoft resulted, in

part, from efforts to address Plaintiffs' concerns — expressed in Plaintiffs' January 23, 2006

filing — about Microsoft's ability to translate the TC's work on the technical documentation into

improved documentation for MCPP licensees in a timely fashion.

The general contours of Microsoft's plan include an optional royalty-free addendum to

each MCPP license that will permit the licensee to reference and use (and in limited cases,

directly copy) Microsoft's Windows server source code in connection with a licensee's

implementation work under the MCPP.  As part of this program, Microsoft will provide online

and in-person training to licensees to assist them in using the source code.  Microsoft has recently

provided Plaintiffs with a draft of its proposed source code license.  Although Plaintiffs have not

concluded their evaluation of the proposed terms, Plaintiffs believe that Microsoft's draft could

make it possible for licensees to use the source code without undue fear of additional intellectual

property liability.

In Plaintiffs' view, Microsoft's agreement to license its source code is a constructive

proposal that addresses many of Plaintiffs' concerns with the technical documentation.

Plaintiffs' initial assessment is that the source code will, in combination with the technical

documentation and technical support provided by Microsoft, assist MCPP licensees in

implementing the MCPP protocols by answering questions that licensees may have based on

review of the relevant technical documentation.  At the same time, however, Plaintiffs will need

to continue their efforts to ensure that the technical documentation is complete, accurate, and

usable, as the source code will not, by itself, readily supply every answer to every issue that

licensees may face in implementing MCPP protocols.  The parties' objective is to ensure that

Microsoft's agreement to license source code, together with the TC's work, provides MCPP

licensees with a package of technical documentation, other information, and technical support

that will assist licensees in utilizing the MCPP protocols.

Plaintiffs, in consultation with the TC and Mr. Hunt, have considered the extent to which

the availability of source code to licensees will allow the TC to modify its ongoing technical

documentation improvement projects and have decided upon a general framework for

streamlining the TC's implementation and validation work.  With the knowledge that the source

code will be available to licensees immediately to supplement the current technical

documentation, Plaintiffs are prepared to revise the procedures prescribed under the current

Service Level Guidelines ("SLGs").  Specifically, the TC will allow its engineers to access the

Microsoft server source code — as an MCPP licensee will now be able to do — and any other

public sources of information available to licensees, in an effort to resolve quickly as many

technical documentation issues as possible without consulting Microsoft.  Currently, TC

engineers only refer to the documentation or external sources of information specifically

referenced in the documentation.  The revised approach will more closely mirror the real world

situation of licensees and enable the TC to resolve issues more quickly with less consultation

with Microsoft.

The TC will differentiate between two types of issues: (1) those that cannot be readily

solved by reference to the source code or public information, thereby making Microsoft's input

necessary to resolve the matter; and (2) those issues that can be readily resolved by reference to

the source code or public information.  Where the TC is able to discover the answer by accessing

the source code (or public sources of information), the TC will report the issue to Microsoft,

setting forth the question and the apparent answer.  Microsoft will then be responsible for

reviewing the TC's answer and, once Microsoft confirms the solution,  including it in a revision

of the technical documentation.  This will enable Microsoft to make improvements to the

documentation with less work.  In performing this review, Microsoft agrees to use its best efforts

to resolve the issues and make changes, where appropriate, to the technical documentation.

If the TC, after reviewing the source code and public information sources, is not able to resolve the issue, it will submit the issue to Microsoft much as it does today.  New timing guidelines will apply in those cases where the TC's work requires a prompt response from Microsoft — presumably, a subset of the current "high priority" technical documentation issues, where source code review does not provide a solution after a reasonable amount of time and investigation.  In those cases, Microsoft will have 60 days to completely resolve the issue to the TC's satisfaction.  This structure will minimize the cases where the TC's work is impeded by outstanding requests for information while allowing Microsoft sufficient time to engage in any necessary dialogue with the TC and to consult with the required technical resources to find the answer and to make the required improvements to the technical documentation.

If, as we anticipate, there are a limited number of high priority issues that the TC cannot resolve independently, then the bulk of the technical documentation issues submitted by the TC will be subject to Microsoft's "best efforts" obligation, rather than to the 60-day time requirement or the SLGs currently in effect.  However, Microsoft will report to the Court each month on the number of outstanding technical documentation issues and the number of issues that have been resolved.  In this way, the Court will continue to have the information it needs to assess the progress of Microsoft's and the TC's work.  Microsoft will also continue to respond to technical support requests from MCPP licensees and update the technical documentation as appropriate so that other licensees do not have to struggle with the same questions.

In addition, the TC will review the technical documentation issues that have already been submitted to Microsoft and identify a subset of those issues that require prompt attention from Microsoft for the TC's implementation project to proceed efficiently.  Again, this will essentially

6

be a subset of the current "high priority" issues, excluding those issues that appear amenable to

solution by reviewing the source code.  Microsoft will have 60 days from the time it receives this

list of the limited number of outstanding issues identified by the TC to resolve these issues to the

TC's satisfaction.  For the remaining pending technical documentation issues, Microsoft will

exercise its best efforts to respond to the issues, as described above.

Plaintiffs and Microsoft anticipate that modification of the timing deadlines will improve

the overall efficiency of both the TC's and Microsoft's work.  For example, the TC's engineers

will no longer have to track each issue that is submitted to Microsoft for timeliness, or engage in

repeated dialogue over the issue.  Instead the TC will simply submit issues to Microsoft for

resolution, and be available to answer any questions that Microsoft may have.

The TC will also be able to modify the scope of its validation project.   The TC will focus

on collecting test data from the next test pass in India — currently scheduled for March — and

will selectively expand the data collection to a limited number of sites in Redmond during that

same time frame.  The TC will not try to gather data from the more extensive "service pack"

testing that Microsoft plans to run in April in India and elsewhere.  This will reduce the scope

and duration of the validation project while still ensuring that it achieves its key purpose:

reviewing network traffic against the technical documentation to ensure that the documentation is

complete, accurate, and usable.  As the validation project itself generates technical

documentation issues, the approach set forth above for issues reported under the implementation

project will apply.

2.      *Status of Current Projects*

In the period leading up to this report, the TC has continued its work on both the

prototype implementation and validation projects.  As set forth above, these projects will be

streamlined on a going-forward basis to better focus the TC's and Microsoft's work on

identifying and resolving issues in the technical documentation that access to source code will

not readily resolve.  We nevertheless report here the status of the TC's projects in their

preexisting form so as to provide the Court with complete information concerning the work on

the technical documentation.  As described in Microsoft's January 17, 2006 report and Plaintiffs'

January 23, 2006 response, the TC's prototype implementation project has continued to generate

technical documentation issues that the TC reports to Microsoft.   To date, the TC has submitted

over 1000 issues to Microsoft.  As of February 1, there were more than 700 issues that have not

yet been closed.  Approximately two-thirds of these issues are classified as medium priority, with

the remaining issues fairly evenly divided between high priority and low priority issues.  In

roughly 110 of these cases, Microsoft and the TC have agreed on the required change to the

technical documentation, and those changes need only to be published in the documentation

released to licensees on a monthly basis.  The remaining issues are at various stages — being

researched by Microsoft, awaiting further consideration by either the TC or Microsoft, or being

discussed between the two for resolution.  After an issue is closed in a manner that requires

change to the technical documentation, the TC tracks the issue to make sure that the change

appears in a monthly revision of the technical documentation.  To date, over 200 issues have

been resolved by Microsoft publishing changes to the technical documentation.  These

improvements in the documentation are already in the hands of licensees.

In their January 23, 2006 filing, Plaintiffs expressed their concerns regarding Microsoft's performance under the SLGs and emphasized the need for Microsoft to significantly expand the resources devoted to responding to issues generated by the TC as quickly as possible. As described above, Microsoft's plan — to make Windows server source code available to licensees to assist their development efforts, and to offer licensees both training and technical support — is responsive to Plaintiffs' concerns. Accordingly, Plaintiffs are willing to modify the SLG approach, as outlined above.

The TC's second project, an off-shoot of Microsoft's former "Troika" project, calls on the TC to compare the information in the technical documentation against actual server-client network traffic collected from Microsoft's test labs. As described in Microsoft's and Plaintiffs' January filings, the TC, with the assistance of Microsoft, installed network devices in Microsoft's India test labs and captured a substantial amount of data — approximately 40 terabytes — during the January test run. During the next test run, currently scheduled for March, the TC will systematically compare network traffic against the technical documentation itself. To accomplish this, the TC is analyzing the recently-captured data to facilitate ongoing project planning and software development. In addition, the validation project is starting to generate issues with the technical documentation that the TC reports to Microsoft.

In Plaintiffs' January 23 response to Microsoft's monthly report, we noted that there was a need to adjust the TC's capture system after information regarding the correct configuration of the Pune test lab came to the TC's attention. As a result of the change, the TC collected less data than it would have if it had known of the configuration in advance. However, the impact, if any, of this loss of data on the TC's project is not clear. The TC has also learned in recent weeks that

Microsoft performs significant testing of components of Windows at various test labs in
Redmond and elsewhere, in addition to the two labs previously identified by Microsoft as the
central test sites.  The TC is gathering information from Microsoft regarding these additional test
labs to identify those from which it may need to collect data during the next test run to ensure
broad coverage of MCPP protocols across its data sets.

**B.      Section III.C and III.H (Competing Middleware and Defaults)**

Plaintiffs, with the assistance of the TC and Mr. Hunt, continue to monitor developments
regarding Windows Vista, Microsoft's successor to the Windows XP operating system, and
Internet Explorer 7, to assure compliance with the Final Judgments.  This includes extensive
testing by the TC of developmental builds of these products.

Plaintiffs have received a complaint regarding the ability of OEM's to customize the first-
boot experience in Vista, and in particular concerning the Welcome Center, a new interface that
presents the user with various setup options and commercial offers (presented by Microsoft and
OEMs) at the end of the initial out-of-the-box experience.   Plaintiffs are also talking with several
industry members who have expressed additional concerns regarding aspects of Windows Vista.
While we have not reached any conclusion as to the merits of these complaints, Plaintiffs
continue to gather information and monitor the situation.  Plaintiffs will report to Microsoft and
the Court if they determine that these issues raise concerns under the Final Judgments.

**III.     UPDATE ON MICROSOFT'S COMPLIANCE WITH THE FINAL JUDGMENTS**

In this section of the report, Microsoft focuses on its compliance work relating to Section

III.E.   Also, as discussed by the Plaintiffs above, this section provides Microsoft's monthly

update on its progress with the parser project and in supporting the TC's prototype

implementation and validation projects.   In addition, this section briefly summarizes the

activities of the compliance officers under the Final Judgments, as well as the complaints and

inquiries received by Microsoft since the June 1, 2005 Status Report.

The most noteworthy recent development is Microsoft's decision to provide MCPP

licensees with access to the source code for Microsoft's protocols.  Source code is the human-

readable form of Microsoft's protocol technology.  By reviewing the source code, licensees will

be able to see precisely how Microsoft's protocols are built and function. This should

substantially assist licensees in writing their own source code to implement these protocols.

Microsoft will also provide licensees with new intellectual property rights – certain trade secrets,

copyrights and patents – to facilitate their referencing of Microsoft's source code.

**A.      Section III.E (Communications Protocols Licensing)**

1.     *MCPP Status Update*

Microsoft is pleased to report that two additional firms have executed MCPP licenses

since the last Status Report, bringing the total number of licensees to 25.  The new licensees are

Hitachi, LTD., which has signed a license for the file server protocols, and ONStor, Inc., which

has signed a general server license with restricted protocols.  Hitachi, one of the world's largest

and most recognized electronics, computer, and information technology systems providers, will

be able to utilize the protocols to create file server appliances.  ONStor, a storage software and

hardware company, will also have access to the protocols to develop file server appliance

products.  Microsoft is in continuing discussions with other prospective licensees and will

continue to update the Plaintiffs and the Court on any new developments.

In addition to these 25 licensees, one additional company, Cisco Systems, Inc., has taken

advantage of the royalty-free protocol license offered on MSDN, bringing the total number of

royalty-free licensees to three.  Moreover, there are 12 licensees shipping products under the

MCPP.

2.      *Technical Documentation*

As indicated in Plaintiffs' section of this report, Microsoft continues to work closely with

the TC and Plaintiffs to improve the technical documentation.  Microsoft always has been

confident that it has been in compliance with its obligation to make Communications Protocols

"available for use" as required by Section III.E; however, as in every case of which Microsoft is

aware, technical documentation tends to improve over time as use and experience reveal ways to

make the documentation clearer and easier to use.  Microsoft thus always has understood that the

thousands of pages of MCPP technical documentation would be made more accurate and

improved over time.  In order to hasten this process, Microsoft has undertaken significant steps to

verify the accuracy and further improve the supporting technical documentation that is offered to

MCPP licensees.  These efforts include the production and release of parsers for licensees and

support of the TC's validation efforts.

Most significantly, as described by the Plaintiffs above, Microsoft recently announced the

additional step of providing MCPP licensees with access to relevant source code at no additional

cost.  As the Plaintiffs have discussed in their section of this report, this step will help to ensure

that, in combination with the technical documentation and the Microsoft technical support

available to licensees,  MCPP licensees will be able fully to utilize the protocols offered under

the MCPP.

As described above in the Plaintiffs' section of this report, Microsoft and the Plaintiffs

have accordingly agreed to revise the SLGs and the process for reporting bugs in light of

Microsoft's announcement that it will provide licensees with a reference license to relevant

source code.  Microsoft will thus update the Court in future monthly reports in accordance with

this revised reporting structure.

The following chart[4] depicts the number of outstanding bugs prior to Microsoft's

announcement that it will provide licensees with a reference license to relevant source code.  As

discussed above, the number of outstanding bugs and the process for reporting and tracking bugs

on a going forward basis will change significantly in light of Microsoft's announcement.  The

following chart does not include bugs where Microsoft and the TC have agreed on the required

change to the technical documentation and those changes need only to be published in the

documentation released to licensees on a monthly basis.

---

[4] The column "Bug fixes awaiting TC action" includes bugs that Microsoft has fixed and
returned to the TC, but are awaiting review by the TC, which is required before the bugs can be
deemed "resolved."

| | Active Bugs on 1/1/06 | New Bugs since 1/1/06 | Bugs resolved since 1/1/06 | Bug fixes awaiting TC action | Total Active Bugs (including bug fixes awaiting TC action) |
|---|---|---|---|---|---|
| Bugs identified by the TC | 420 | 158 | 3 | 162 | 575 |
| Bugs identified by Microsoft | 16 | 77 | 51 | 0 | 42 |
| Total Bugs | 436 | 235 | 54 | 162 | 617 |

Microsoft currently has 17 members of its documentation team that includes document writers, editors, and program managers.  As outlined in Microsoft's January 17, 2006 Supplemental Status Report, Microsoft is also pursuing multiple avenues to add additional employees to the technical documentation team.  In addition, 16 other members of Microsoft's Competitive and Regulatory Affairs Group devote a substantial amount of time and resources to the technical documentation and the MCPP in general.  Moreover, significant attention and involvement in the technical documentation and the MCPP extends through all levels of the Microsoft organization and draws upon the resources of numerous business, technical and legal groups, as well as company management.

(a)      *Parser development efforts*

As discussed in the previous Supplemental Joint Status Reports and above in the Plaintiffs' section of this report, Microsoft is developing and delivering protocol parsers to MCPP licensees on a rolling basis, with additional parsers becoming available each month.  Parsers will be delivered first in pre-release form, with the final version of each parser delivered to licensees approximately two months after delivery of the pre-release version.  Microsoft refers

to a group of parsers released in a particular month as a "cluster."  There are a total of four

clusters on the current delivery schedule.

Microsoft expects to deliver successfully the latest release of the Netmon engine and the

pre-release version of Cluster One parsers by the end of February in accordance with the parser

delivery schedule. Microsoft hand delivered the Cluster One CDs to the TC in Palo Alto on

February 8, 2006.  At the time of delivery, Microsoft provided the TC with a presentation

demonstrating usage and functionality.  In addition, Microsoft is preparing and testing custom

CDs for each licensee, which Microsoft anticipates will be sent to licensees by mid-February.

Also, in order to ensure that the TC and MCPP licensees are able to utilize this tool effectively,

Microsoft has:  (1) produced a short demonstration and training video that will be delivered to

each licensee; (2) developed a custom support plan for each licensee and the TC, which is

designed to ensure that the TC and licensees understand how to utilize the parsers and have the

ability to provide feedback and get questions answered;  (3) involved protocol experts from

within Microsoft's Customer Support Services organization to provide individual technical

support for the TC and licensees and to ensure that the appropriate support infrastructure is in

place; and (4) collaborated with the TC to develop and begin implementing a parser acceptance

and test plan.

During the course of parser development, Microsoft made minor adjustments to the

parsers in response to various technical considerations.  As a result, five parsers that were

originally scheduled to be included in later clusters were added to the first cluster.  Two parsers

that were included in the original cluster have been moved to later clusters and two parsers were

eliminated.[5]  Two additional parsers were also added to the schedule for Cluster One as a result

of a single parser being split into two distinct parsers and one parser being moved up from

Cluster Two.  Ultimately, these minor modifications will not impact the timing for parser

delivery, which will begin to be delivered to licensees in pre-release form by the end of February

2006, in accordance with the original delivery schedule that was submitted to the Court on

November 19, 2005.

Based on its work to date, the Netmon team currently anticipates that the Cluster Two

parsers will also be delivered according to the below schedule.  Minor scheduling changes along

the lines of those reported above for Cluster One remain possible for the remaining clusters and

the Netmon features required to support them.   Microsoft will keep the Plaintiffs and Court

apprised as to Microsoft's progress in delivering these clusters and as to any scheduling

modifications; however, Microsoft does not anticipate that these changes will materially alter the

overall parser delivery schedule.

Taking into account the modifications discussed above, and the potential for future

modifications, the current delivery schedule is as follows:

---

[5] Of the two parsers that were eliminated, one was removed because it was not Ethernet-based and, therefore, could not be captured by Netmon.  The other was removed because the protocol is being removed from the MCPP program as it was never actually implemented in a relevant Windows operating system.  The above schedule takes into account the elimination of these two parsers and has been revised accordingly.

| Release Date | Pre-Released Parsers | Final Parsers |
|---|---|---|
| February 2006 | 22 | - |
| March 2006 | 23 | - |
| April 2006 | 19 | 22 |
| May 2006 | 19 | 23 |
| June 2006 | - | 19 |
| July 2006 | - | 19 |

In its January 17, 2005 Supplemental Report, Microsoft identified a potential concern about finding enough secure facility space in China for the development of the more proprietary parsers.  This potential problem has now been solved and Microsoft now has a sufficient amount of secure space for its team in China.  Microsoft also has started the process of obtaining visas for its Chinese team members in the event that they need to be transferred to the U.S. at a later date.

The parser development and Netmon development teams currently have 37 members combined.

(b)     *Microsoft's Cooperation with the TC's projects*

Microsoft continues to provide support for the TC's validation efforts.  Microsoft remains on schedule to produce the versions of the technical documentation containing changes to the XML markup in accordance with the schedule presented by Microsoft in the November 18, 2005 Supplemental Status Report.  In accordance with this schedule, Microsoft delivered the technical documentation containing changes to the XML markup to the TC on February 1, 2006 and is on schedule to meet the remaining target dates.  Microsoft currently has four individuals working full time on the XML markup.

| Target Date | Microsoft Deliverable | Date Delivered |
|---|---|---|
| **End of January** | 10% of MCPP protocols | **February 1, 2006** |
| **End of February** | 25% of MCPP protocols | N/A |
| **End of March** | 40% of MCPP protocols | N/A |
| **End of April** | 60% of MCPP protocols | N/A |
| **End of May** | 80% of MCPP protocols | N/A |
| **End of June** | 100% of MCPP protocols and 100% of the royalty-free documents | N/A |

Microsoft and the TC also have worked collaboratively and now have agreed on a process for testing the Netmon parsers. Microsoft, with the participation of the TC, has instituted an ongoing training program for parser writers in China and Redmond with regard to technical documentation bug reporting requirements and mechanisms.

### B.      Compliance Officers

Since the Initial Status Report was filed on July 3, 2003, the compliance officers have continued to ensure that newly-appointed Microsoft officers and directors receive copies of the Final Judgments and related materials (ongoing), that Microsoft officers and directors receive annual briefings on the meaning and requirements of the Final Judgments (completed for the most recent year in June 2005) and complete the required certifications (completed February 2006), and that required compliance-related records are maintained (ongoing). In addition, the compliance officers are actively engaged in Microsoft's extensive and ongoing training programs and monitor matters pertaining to the Final Judgments.

### C.      Complaints and Inquiries Received by Microsoft

Microsoft has received six complaints or inquiries since the October 19, 2005 Status

Report.  None of these complaints or inquiries was related to any of Microsoft's compliance

obligations under the Final Judgments.

Dated:  February 8, 2006

Respectfully submitted,


FOR THE STATES OF NEW YORK,                     FOR THE UNITED STATES
OHIO, ILLINOIS, KENTUCKY,                       DEPARTMENT OF JUSTICE'S
LOUISIANA, MARYLAND, MICHIGAN                   ANTITRUST DIVISION
NORTH CAROLINA, AND WISCONSIN


_____                 _____
ELIOT SPITZER                                    RENATA B. HESSE
*Attorney General of New York*                   PATRICIA A. BRINK
JAY L. HIMES                                     PHILIP A. GIORDANO
*Chief, Antitrust Bureau*                        AARON D. HOAG
*Assistant Attorney General*                     ADAM T. SEVERT
120 Broadway                                     *Trial Attorneys*
New York, New York 10271                         U.S. Department of Justice
212/416-6229                                     Antitrust Division
                                                 600 E Street, N.W.
                                                 Suite 9500
                                                 Washington, D.C. 20530
                                                 202/514-8276

FOR THE STATES OF CALIFORNIA,
CONNECTICUT, IOWA, KANSAS,
FLORIDA, MASSACHUSETTS, MINNESOTA,
UTAH, AND THE DISTRICT OF COLUMBIA

_____

KATHLEEN FOOTE
*Senior Assistant Attorney General*
Office of the Attorney General of California
455 Golden Gate Avenue
Suite 11000
San Francisco, California 94102-3664
415/703-5555

FOR DEFENDANT MICROSOFT
CORPORATION

_____

BRADFORD L. SMITH
MARY SNAPP
DAVID A. HEINER, JR.
Microsoft Corporation
One Microsoft Way
Redmond, Washington 98052
425/936-8080

CHARLES F. RULE
Fried, Frank, Harris, Shriver & Jacobson LLP
1001 Pennsylvania, Avenue, N.W.
Washington, DC 20004
202/639-7300

STEVE L. HOLLEY
RICHARD C. PEPPERMAN II
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004
212/558-4000

*Counsel for Defendant*
*Microsoft Corporation*