IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Civil Action No. 98-1232 (CKK) |
| v. | Next Court Deadline:<br>June 26, 2007 Status Conference |
| MICROSOFT CORPORATION, | |
| Defendant. | |

## JOINT STATUS REPORT ON MICROSOFT'S
## COMPLIANCE WITH THE FINAL JUDGMENTS

The United States of America, Plaintiff in *United States v. Microsoft*, CA No. 98-1232 (CKK), and the Plaintiffs in *New York, et. al. v. Microsoft*, CA No. 98-1233 (CKK), the States of New York, Ohio, Illinois, Kentucky, Louisiana, Maryland, Michigan, North Carolina, and Wisconsin (the "New York Group"), and the States of California, Connecticut, Florida, Iowa, Kansas, Massachusetts, Minnesota, Utah, and the District of Columbia (the "California Group") (collectively "Plaintiffs"), together with Defendant Microsoft, hereby file a Joint Status Report on Microsoft's Compliance with the Final Judgments, pursuant to this Court's Order of May 14, 2003.

## I.       INTRODUCTION

At the March 13, 2007, Status Conference, the Court directed the Plaintiffs to file a Status Report updating the Court on activities relating to Microsoft's compliance with the Final Judgments entered in *New York, et. al. v. Microsoft*, CA No. 98-1233 (CKK), and in *United States v. Microsoft*, CA No. 98-1232 (CKK).

The last Status Report, filed March 6, 2007, served as an interim report, containing information on selected activities relating to enforcement of the Final Judgments. The current report is the eighth of the six-month reports requested by the Court and contains information that the Court has requested in each six-month report. Section II of this Report discusses Plaintiffs' efforts to enforce the Final Judgments; this section was authored by Plaintiffs. Section III discusses Microsoft's efforts to comply with the Final Judgments; this section was authored by Microsoft. Neither Plaintiffs nor Microsoft necessarily adopts the views expressed by the other.

## II.      UPDATE ON PLAINTIFFS' EFFORTS TO ENFORCE THE FINAL JUDGMENTS

### A.       Section III.E (Communications Protocol Licensing)

Plaintiffs' work concerning Section III.E and the Microsoft Communications Protocol Program ("MCPP") continues to center on efforts to improve the technical documentation provided to licensees. In particular, Plaintiffs, in conjunction with The Technical Committee ("TC") and Craig Hunt, the California Group's technical expert, are focused on monitoring Microsoft's project to rewrite the technical documentation that has been described in detail in recent status reports.[1] As part of this project, Microsoft has committed to rewriting the technical

---

[1] The TC is working closely with Mr. Hunt on all of these technical documentation issues. References to Microsoft working with the TC in this section should be taken to include

documentation pursuant to an agreed-upon specification, providing additional support to licensees in the form of "plugfests" and interoperability labs, developing a test suite to enable testing of the documentation, and supporting the TC's testing efforts.

Since the prior Joint Status Report, the technical documentation project has proceeded according to schedule and Plaintiffs are encouraged by the quality of the new documents. Microsoft has produced the initial availability versions of Milestone 4 and Milestone Longhorn. The TC has also completed its initial review of the quality of these documents, as well as the Milestone 3 documents, which were submitted shortly before the March 2007 Joint Status Report was filed. The TC's preliminary analysis of these three sets of documents indicates that Microsoft is maintaining the quality levels it achieved with the Milestone 2 documents.

As noted in previous reports, it will not be possible to draw any final conclusions about the quality of the documentation until significant additional testing is completed. It is encouraging, however, that Microsoft has been able to keep up with the flow of new technical documentation issues ("TDIs") being filed by the TC. Two factors appear to account for this encouraging development: (1) the overall improvement in the quality of the documents prepared pursuant to the reset project, compared to the old documents, which leads to TDIs that on average are less complex and easier to resolve; and (2) the improvement in Microsoft's processes for handling these TDIs.

As discussed at the last Status Conference, Microsoft reported in its February 15, 2007 Supplemental Status Report that it was necessary to modify the project schedule by adding a new milestone to the project — Milestone Longhorn — and adding just under two months to the

---

Mr. Hunt as well.

3

overall schedule for the rewrite project.  Microsoft determined that there were a number of

protocols that must be documented in addition to those originally planned, either because they

were added to Longhorn Server after the initial schedule was developed, or because they were

inadvertently overlooked in preparation of the original technical documentation and the schedule

for the rewrite project.  These protocols were discovered during an audit that Microsoft

conducted as part of the rewrite project to ensure that Microsoft was documenting all required

protocols.

At the last Status Conference, Plaintiffs informed the Court of an agreement with

Microsoft to address Plaintiffs' concerns regarding the belated discovery of the additional

protocols and the change to the schedule for the rewrite project.  Plaintiffs reported that the TC,

working in conjunction with Mr. Hunt, would conduct a review of Microsoft's recent MCPP

audit to determine whether all necessary protocols are included in the MCPP.  In conducting this

analysis, the TC will look at both the procedures established by Microsoft and the manner in

which Microsoft implemented those procedures.  If, in the TC's view, additional steps are

necessary to ensure that all required protocols have been included in the MCPP, Microsoft,

Plaintiffs and the TC will discuss the results of this report and its recommendations.  Plaintiffs

and Microsoft also agreed that the TC would be able to testify in Court in any enforcement

proceeding relating to this work, notwithstanding the general prohibition in the Final Judgment

on the TC providing evidence.  If that eventuality materializes, the parties will apply to the Court

for an appropriate order.

Since the prior Status Conference, the TC has retained a consulting firm to review

Microsoft's protocol audit process.  This firm anticipates completing its review in time for

Plaintiffs to report on the results in the next Joint Status Report.  The TC has also retained a second consulting firm to develop programmatic methods for searching the Windows source code to identify communications protocols that should have been considered for inclusion in the MCPP.  If a successful methodology is developed, the firm will then compare the list of protocols discovered by applying this methodology with the list developed by Microsoft during its audit, thus providing an additional check on the comprehensiveness of the overall set of protocols included in the MCPP.  This work will proceed in parallel with the review of Microsoft's audit and is expected to be completed by the end of the year.

Finally, to address Plaintiffs' concerns with the extension of the schedule that Microsoft states the discovery of the additional protocols during its audit necessitated, Plaintiffs and Microsoft agreed to a potential extension of the royalty holiday.  As previously agreed to by Microsoft and Plaintiffs, under the terms of Microsoft's current MCPP license, licensees receive a 100% credit against all royalties owed Microsoft under the MCPP until Plaintiffs, in their sole discretion, determine that the rewritten documentation for the tasks that company has licensed is "substantially complete."  If Plaintiffs determine, in their sole discretion, that the Milestone Longhorn documentation is not substantially complete, the royalty holiday will be extended by 18 months for all MCPP licensees; the 18 months will not commence until the point in time when the documentation is determined by Plaintiffs to be substantially complete.  Similarly, if Plaintiffs determine that the complete set of revised technical documentation is not substantially complete, the royalty holiday will be extended by three years for all licensees.

Before making a determination that the documentation is not substantially complete, Plaintiffs (with the assistance of the TC) will identify all the issues that Microsoft must address

in the documentation.  As long as Microsoft is making satisfactory progress in the view of

Plaintiffs towards achieving documentation that is substantially complete, Plaintiffs will refrain

from issuing any determination that the documentation is not substantially complete.  If

Microsoft is not making acceptable progress, Plaintiffs can issue their report at any time and

trigger the extended royalty holiday.

**B.      Section III.C, III.D and III.H (Competing Middleware and Defaults)**

1.      *General Activities*

Plaintiffs, with the assistance of the TC, continue to monitor developments regarding

Windows Vista, Microsoft's successor to the Windows XP operating system, to assure

compliance with the Final Judgments.  This includes ongoing testing by the TC of the final

versions of Windows Vista, Windows Media Player 11, and Internet Explorer 7 to discover any

remaining middleware-related issues.

As detailed in prior Status Reports, the TC and Microsoft are both working to help ensure

that middleware ISVs achieve "Vista-readiness" by taking full advantage of the default-related

features in Vista.  Recently, the TC has focused its efforts on meeting with a range of third-party

middleware ISVs to demonstrate the tools the TC has developed that can assist the ISVs in

properly registering their products in Vista.  During these meetings, the TC also provides

assistance with any issues that the ISVs are having with the default programs interface in Vista.

Middleware companies have uniformly reported to the TC that these meetings have been

extremely productive.  Indeed, the TC has observed a marked improvement in the manner in

which these firms' products register for the default mechanisms in Vista; some ISVs have even

incorporated source code from the TC's tools into their own products to assist in this regard.

With the impending expiration of the relevant portions of the Final Judgment approaching, the TC has identified a number of remaining middleware-related bugs and requested that Microsoft address these issues before November.  Some of these issues relate to Windows XP and were identified some time ago by the TC; Microsoft had already agreed to fix them, but Microsoft and the TC agreed at the time to prioritize their efforts to ensure the compliance of Windows Vista with the Final Judgments.  Microsoft has now committed to fix these bugs sufficiently in advance of the expiration of the middleware portions of the Final Judgments in November, so that the TC will be able to test the fixes.  Plaintiffs will therefore be able to determine in a timely manner whether there are still any outstanding middleware-related issues that Microsoft needs to address.

The TC has also begun a series of discussions with Microsoft relating to the transition of the TC's testing methods and tools upon expiration of the middleware-related portions of the Final Judgments.  Microsoft has publicly committed that it will continue to apply the middleware-related principles embodied in the Final Judgments to its products even after November.  In Plaintiffs' view, for this commitment to be fully realized, it will be necessary for Microsoft to internalize the methods and tests the TC itself has developed over the past five years to thoroughly test middleware and Windows.  Microsoft and the TC have begun a constructive dialogue designed to achieve this goal.

Finally, as reported in the prior Status Report, Plaintiffs have received reports and testimony of the class action plaintiffs' expert in *Comes v. Microsoft Corp.*, No. CL 82311 (Iowa D. Ct.), containing allegations that Microsoft has failed to disclose certain APIs as required by Section III.D of the Final Judgments.  After examining these materials and meeting with the

7

expert, Plaintiffs and the TC have concluded that, at this time, there is no evidence that

Microsoft has not fully disclosed the APIs required by the Final Judgments.  Plaintiffs have

indicated their  willingness to consider further evidence on this issue should it be provided to

them in the future.

2.     <em>Complaint Regarding Desktop Search</em>

Plaintiffs have previously reported that they were investigating a middleware-related

complaint.  This complaint, filed by Google, relates to the desktop search functionality in

Windows Vista that enables users to search for files located on their computer.  This desktop

search functionality in Vista, referred to as "Instant Search" in Microsoft's promotional

materials, allows users to enter a search query into a text box and receive a list of results from

the user's hard drive that contain the search term, either in the name of the file or program, in the

full text of the file, or in the keywords associated with that file.  The desktop search functionality

relies on an index that is updated whenever files on the computer change.  The use of an index

enables the quick return of search results, as Windows can run the search query against the index

and obtain the results, rather than having to search every file on the computer for the search term

every time the user conducts a search.

Google's complaint contends that desktop search in Windows Vista is a new "Microsoft

Middleware Product" under the Final Judgments.  The complaint contends that Microsoft has

violated the Final Judgment by failing to adhere to the requirements of Section III.C and Section

III.H as it pertains to this new Microsoft Middleware Product.

After completing their investigation of the complaint, Plaintiffs worked together to reach

an agreement by Microsoft with the goal of promoting user and OEM choice for desktop search

8

in Windows Vista.  Plaintiffs are collectively satisfied that this agreement will resolve any issues

the complaint may raise under the Final Judgments, provided that Microsoft implements it as

promised.

The agreement contains three primary features:

*First*, Microsoft will create a mechanism for end users and OEMs to select a default

program to handle desktop search.  ISVs will be able to register their desktop search products for

this default, in the same way that ISVs can register third-party web browsers and media players

as the default in Windows today.

*Second*, the default desktop search program will be launched whenever Windows

launches a new top-level window to provide search results.  This will include an existing

location on the Start menu that a user can select to display additional search results in a new

window.  Windows Vista also includes search boxes located in the upper-right hand corner of

various windows in the operating system, such as all the windows used to explore the files on the

computer — often called "Explorer" windows — and the Control Panel.  In these windows,

when the user enters a query Vista will continue to display the search results using the internal

Vista desktop search functionality.  Microsoft has agreed, however, to add a link that, if clicked,

will launch the default desktop search program and display search results from that program.

*Third*, Microsoft will inform ISVs, OEMs, and end users that the desktop search index in

Vista is designed to run in the background and cede precedence over computing resources to any

other software product, including third-party desktop search products and their respective search

indices.  Microsoft will emphasize that there is no technical reason why OEMs and end users

cannot, if they choose to, install additional desktop search products on their system, even if those

products maintain separate indices from that operated by Windows.  In addition, Microsoft will provide technical information that will enable other desktop search companies also to design their products to optimize their priorities on the computer and minimize any impact on performance.

Microsoft will deliver the required changes in Service Pack 1 of Windows Vista, which Microsoft currently anticipates will be available in beta form by the end of the year.

It was unnecessary for Plaintiffs to reach a joint resolution of the question whether desktop search is a new Microsoft Middleware Product under the Final Judgments.  Specifically, Plaintiffs did not agree on whether desktop search in Vista constitutes "*any* functionality," under Section VI.K.2, "that is *first* licensed, distributed or sold by Microsoft *after* the entry of this Final Judgment" (emphasis added).[2]  While Windows included search functionality in prior versions, in Vista — the first version of Windows launched after entry of the Final Judgment — the search function is improved in several respects.  For example, Vista turns on the index by default, increases the file-types searched, adds search boxes throughout the operating system, and improves the selection, display, and use of results.  The Plaintiffs were not able to agree whether these and other enhancements to existing desktop search functionality merely upgrade existing functionality or instead convert desktop search into functionality first licensed after entry of the Final Judgment.  Nonetheless, Plaintiffs were able to work together to obtain Microsoft's agreement as described above.

---

[2] If this "first licensed" requirement is met, such functionality may be a new Microsoft Middleware Product if three specific criteria set forth in Section VI.K.2.b are satisfied.  All of the Plaintiffs concluded those criteria were likely met in the present case, despite Microsoft's arguments that desktop search fails two of the three requirements.

### C.      Complaints

Since the prior full Status Report, filed on November 21, 2006, 15 third-party complaints have been received by the United States.  Fourteen of the complaints were non-substantive and did not raise any issues regarding Microsoft's compliance with, or the United States' enforcement of, the Final Judgment.  Each of the non-substantive complaints received a simple response acknowledging their receipt.  The one substantive complaint, relating to desktop search, is discussed in detail above.  The New York and California Groups do not believe that they have received any additional substantive complaints since the prior full Status Report.

### D.      California Group's Survey of MCPP Licensees

At the December 5, 2006 and March 13, 2007, Status Conferences, the Court inquired about (a) why no MCPP licensees had yet responded by that date to Microsoft's announcement of its Interoperability Lab, (b) why an apparent standstill in new MCPP licenses had occurred, and (c) why an apparent standstill in licensees shipping products using the MCPP had occurred.

California has sent interrogatories to the MCPP licensees intended to elicit answers to these questions and other information about the MCPP.  A majority of licensees have responded. This interim report summarizes some of the data received by the plaintiffs to date in response to the interrogatories.  The California Group intends to submit a supplemental report in a few months evaluating the intended remedial effect of the Final Judgment, including whether the MCPP has accomplished the goals of Section III.E.

#### 1.      *Interoperability Lab*

One licensee, which is shipping a newly developed MCPP product, has used the Interoperability Lab.  A second licensee, which is also shipping a newly developed MCPP

11

product, professed not to need the Interoperability Lab because the licensee had "self-certified" its products against released Microsoft products.  A third licensee, which is shipping a pre-existing product that now makes use of the MCPP, indicated that it did not need the Interoperability Lab, but nonetheless thought that its addition was beneficial to the overall program.  The remaining licensees indicated that they had not used the Interoperability Lab.

It appears that the Interoperability Lab presents its highest value to a licensee at that stage in product development when the MCPP-using product is ready for evaluation testing.  This creates a "window" of time within which Interoperability Lab usage is most likely and most appropriate.  For this reason, ongoing access of the Interoperability Lab facility to licensees remains a potentially useful ancillary feature of the MCPP.

      2.    *New Licensing Standstill*

Three additional MCPP licenses have been executed in 2007.  All three licenses are for the "Proxy/Firewall" task.[3]  This outcome is likely due, in part, to Microsoft's  evangelism with regard to this particular task.  It is also likely due, in part, to the uniquely attractive "fully paid-up" royalty structure available only for that particular task.  In exchange for a licensee's issuance of a press release announcing support for MCPP Communication Protocols within thirty days of license execution, the per-unit royalty is waived and the $50,000 "prepaid royalty" is applied

---

[3] The full name of the task is "Proxy/Firewall/NAT," where "NAT" is short for "Network Address Translator."  This task is frequently referred to simply as the "Proxy/Firewall" task, as in the main text.  The task's licensed purpose is to examine and reject or forward data packets based on predefined permission settings, a form of network security.

against the royalty due for the Proxy/Firewall/NAT task.[4]  This structure makes the

Proxy/Firewall task the least expensive (to the licensee) royalty-bearing task within the MCPP.

> 3.   *Shipping Product Standstill*

Microsoft has informed the Plaintiffs that 13 (out of 29 total) licensees have shipped

products under the MCPP.  The California Group's survey of current licensees included those

who are not yet shipping products under the MCPP.  The survey elicited three distinct reasons

that licensees have not yet shipped products:

- *Newness to the MCPP*.  Two licensees had only recently executed their licenses, and insufficient time to develop product had elapsed.

- *No Intention To Develop*.  Three licensees indicated that they had executed their licenses only for "research" or "review" purposes, evidencing no particular product-development plan at license inception.  The licensees' plans apparently have not changed since license execution.

- *Business Decision*.  Three licensees indicated that, despite having signed an MCPP license, they have decided that the business need for the MCPP has not been sufficient to justify development of an MCPP product.

The California Group notes that non-shippers whose interrogatory responses have not yet

been received had executed their licenses, on average, three years ago.  Thus, it is more likely

that the latter two explanations apply to them.

---

[4] For complete details, see Microsoft Protocol License Agreement for Development and Product Distribution (Server Software), Exhibit C – Royalties and Reporting, footnote 1, http://download.microsoft.com/download/5/c/5/5c5365fd-7981-4387-bbeb-6a8f453de282/MCPP_DevelopmentDistributionAgreement.pdf (at 17).

4.      *Additional Observations of MCPP Licensees*

The observed pattern of "tasks" – functional groupings of communications protocols for specified purposes[5] — for which licenses have been signed remains concentrated in largely the same set as reported in January 2004.[6]

Table 1. MCPP Licensing, by Task[7]

|  | *January 16, 2004* | *June 19, 2007* |
|---|---|---|
| *General-purpose Task* |  |  |
| General Server | 1 license | 6 licenses |
| *Limited-purpose Tasks* |  |  |
| Certificate Services | 1 license | 3 licenses |
| File Server | 2 licenses | 3 licenses |
| Health Certificate Services | (task did not exist) | 1 license |
| Media Streaming Server | 6 licenses | 9 licenses |
| Proxy/Firewall/NAT | 0 licenses | 7 licenses |
| Terminal Services | 2 licenses | 2 licenses |

---

[5] The set of MCPP tasks consists of the general-purpose "General Server" task plus 16 limited-purpose tasks: (1) authentication services, (2) certificate services, (3) collaboration server, (4) digital rights management server, (5) file server, (6) health certificate services, (7) media streaming server, (8) multiplayer games server, (9) print/fax server, (10) proxy/firewall/NAT server, (11) rights management server, (12) systems management server, (13) terminal server, (14) virtual private network server, (15) web server, and (16) Windows Update services.

[6] In the JSR dated January 16, 2004, plaintiffs reported some observations of development efforts of MCPP licensees, including that "a majority of the licensees appear to be developing a relatively narrow set of products." (JSR, 1/16/2004 at pp. 5 & 7.)

[7] In January 2004, one licensee had indicated the intention to develop products under two tasks, so the total count of task licenses added up to 12, one more than the 11 licensees reported in January 2004. In June 2007, one licensee has indicated three tasks, so the total count of task licenses adds up to 31, two more than the reported 29 licensees.

The General Server task provides the broadest set of Microsoft client-server communications protocols to the licensee under the MCPP.  Of the 6 General Server licensees:

- Three licensees have shipped or are developing MCPP products.

- Two licensees have not accessed the MCPP Technical Documentation, and thus are not developing MCPP products.

- One licensee has announced no longer being in business.

As to the remaining limited-purpose task licenses, it continues to appear to the California Group that the products apparently being developed remain "relatively narrow" in functionality. Licensees shipping MCPP products were asked about the nature of their products.  Since MCPP products' nearly always overlap with at least some of the functionality of Windows servers, it is natural to expect that licensees' products compete with Windows servers.  Indeed, six licensees describe their MCPP products as competitors with limited features built into Windows servers. But nine licensees shipping MCPP products described their products as complements to Windows server operating systems, even when deployed in networks that contain both Windows and non-Windows servers.

## III.    UPDATE ON MICROSOFT'S COMPLIANCE WITH THE FINAL JUDGMENTS

In this section of the report, Microsoft focuses on its compliance work relating to Sections III.E and III.H of the Final Judgments.  In addition, this section briefly summarizes the activities of the compliance officers under the Final Judgments, as well as the inquiries and complaints received by Microsoft since the March 6, 2007 Joint Status Report.

### A.    Section III.E (Communications Protocol Licensing)

#### 1.    *MCPP Status Update*

In total, there are 41 companies licensing Communications Protocols pursuant to Section III.E of the Final Judgments.  Since the previous Joint Status Report, two additional firms have executed royalty-bearing MCPP licenses, increasing the total number of royalty licensees to 29. The new licensees are Aruba Networks, Inc. and Secure Computing, Corp., both of whom signed licenses for the Proxy/Firewall/NAT tasks.  Aruba Networks delivers an enterprise mobility solution that enables secure access to data, voice, and video applications across wireless and wireline enterprise networks.  Secure Computing is a leader in enterprise gateway security solutions and provides Web Gateway, Messaging Gateway, and Network Gateway security, as well as Identity and Access Management.  Microsoft currently is in discussions with several other prospective licensees and is continuing its extensive outreach and "evangelism" efforts to advertise and promote the MCPP.

In addition to these 29 licensees, four additional companies have taken advantage of the royalty-free protocol license offered on MSDN, bring the total number of royalty-free licenses to 12.  Currently, there are a total of 13 licensees shipping products under the MCPP.

Since the last Joint Status Report, Microsoft has continued to promote offers for MCPP

licensees to receive Technical Account Manager support and to obtain access to Windows source code at no additional charge.  To date, nine licensees have signed up with Microsoft to receive free Technical Account Manager support, and five licensees have signed up for Windows source code access.  Microsoft is in contact with several other MCPP licensees who are considering signing up for one or both of these offers.  In addition, twelve licensees have signed the "Longhorn Server Development Agreement," which provides licensees access to information and documentation for the forthcoming Longhorn Server product.

       2.    *Microsoft's Progress in Modifying the Technical Documentation*

As explained in detail in Microsoft's February 15, 2007 Supplemental Status Report and the March 6, 2007 Joint Status Report, Microsoft is proceeding under the following schedule for the Initial Availability release of the revised MCPP documentation:

| Milestone | Initial Availability to Licensees | Number of Documents[8] |
|---|---|---|
| Milestone 1 | Delivered | 31 |
| Milestone 2 | Delivered | 24 |
| Milestone 3 | Delivered | 38 |
| Longhorn Milestone | Delivered | 29 |
| Milestone 4 | Delivered | 34 |
| Milestone 5 | 7/20/2007 | 45 |

---

[8] As explained in previous status reports, the precise number of documents that Microsoft plans to produce in connection with the MCPP documentation is likely to be adjusted as the documentation is being rewritten and the project moves toward completion.  Accordingly, the number of documents to be produced as part of Milestone 5 has been adjusted from 39 to 45.  These adjustments will not affect Microsoft's ability to meet the schedule.  Future minor adjustments remain possible.

17

Since the previous Status Report, Microsoft delivered the Online Build documentation for Milestone 3 on June 1, 2007.  Microsoft is on track to produce the Initial Availability Milestone 5 documents as scheduled, as well as the Online Build documentation for the Longhorn Milestone on July 3, 2007, and Milestone 4 on August 10, 2007.

In addition, Microsoft will also be adding to its documentation schedule one additional protocol that Microsoft is developing for its forthcoming Longhorn Server product.[9]  The Initial Availability release of the documentation for this newly created protocol is scheduled for August 10, 2007 (as part of the Milestone 4 Online Build release).  The Online Build for this new protocol is scheduled for September 28, 2007 (as part of the Milestone 5 Online Build release).

Microsoft also is continuing its ongoing work to provide an XML markup of the technical documentation that the Technical Committee and Mr. Hunt (collectively referred to as the "TC") plan to use in connection with their internal testing efforts. Microsoft has made considerable progress in revising the XML markup over the past two months and has resolved nearly all of the outstanding issues.  Microsoft will continue to modify the XML markup as the TC's testing work moves forward and as new information and changes are requested.

3.   *Current Status of Microsoft's Progress in Resolving Technical Documentation Issues ("TDIs") through May 31, 2007*

As noted in previous Status Reports, Microsoft is working to address the TDIs in the old technical documentation in the course of rewriting the new technical documentation. Accordingly, Microsoft will review the Online Build documentation for each Milestone as it is produced to ensure that all previously existing TDIs relating to that Milestone (including those that were previously closed and those that were not addressed in the old documentation) are

---

[9] The additional protocol, which is still under development, will relate to group policies.

addressed.  Based on this review, Microsoft now has closed all of the TDIs addressed by the

Milestone 1 and Milestone 2 documentation.  With delivery of the online build for Milestone 3,

Microsoft has proposed resolutions for all of the outstanding TDIs that were addressed by the

Milestone 3 documentation.  The TC is in the process of reviewing the proposed resolutions so

that these TDIs can be closed.

The current status of TDIs in the old documentation for the previous month is set forth

below.  Overall, the total number of outstanding old TDIs has continued to drop as Microsoft

anticipated at the beginning of the rewrite project.

| Old Document TDIs | As of 4/30/2007 | Period Ended 5/31/2007 |
|---|---|---|
| **60-Day TDIs Submitted by the TC** | | |
| Submitted this period | | 0 |
| Closed this period | | 46 |
| Outstanding | 117 | 71 |
| **Other TDIs Submitted by the TC** | | |
| Submitted this period | | 0 |
| Closed this period | | 110 |
| Outstanding | 471 | 361 |
| **TC Subtotal Outstanding** | 588 | 432 |
| **TDIs Identified by Microsoft** | | |
| Identified this period | | 0 |
| Closed this period | | 12 |
| Outstanding | 25[10] | 13 |
| **Total Outstanding** | 613 | 445 |

---

[10] Microsoft's previous Supplemental Status Report incorrectly listed 30 outstanding MS TDIs as of April 30.  It should have read 25.  The total outstanding number also should have been reduced by five in the previous report.

Microsoft will continue to update the Court regarding its progress in resolving TDIs from the old documentation.  Moreover, the TC will continue to identify TDIs in the old documentation that has not yet been rewritten.

Given the volume and complexity of the new technical documentation, it is inevitable that additional TDIs will emerge in the newly rewritten documentation, even as TDIs in the old documentation are being resolved.  The TC will identify all TDIs in the new Online Build documentation according to the three priority levels that were described in the March 6, 2007 Joint Status Report.  In addition to TDIs identified by the TC, Microsoft will continue to track and report the number of TDIs that have been self-identified through Microsoft's testing efforts, as well as those submitted by licensees.

The current status of TDIs identified in rewritten documentation through March 31, 2007, is noted in the chart below.[11]

| Rewritten Document TDIs | As of 4/30/2007 | Period Ended 5/31/2007 |
| --- | --- | --- |
| **Priority 1 TDIs Submitted by the TC** | | |
| Submitted this period | | 8 |
| Closed this period | | 10 |
| Outstanding | 30 | 28 |
| **Priority 2 TDIs Submitted by the TC** | | |
| Submitted this period | | 36 |

---

[11] The TDI numbers as of March 31, 2007, reported in this chart differ slightly from the numbers provided in the previous Status Report because the dynamic nature of synchronizing both the TC's and Microsoft's TDI databases occasionally results in categorization and exact TDI closure dates changing after the previous reporting period.

| | | |
|---|---|---|
| Closed this period | | 53 |
| Outstanding | 96 | 79 |
| **Priority 3 TDIs Submitted by the TC** | | |
| Submitted this period | | 11 |
| Closed this period | | 35 |
| Outstanding | 55 | 31 |
| | | |
| TC Submitted | | 55 |
| TC Closed | | 98 |
| **TC Outstanding** | 181 | 138 |
| | | |
| **TDIs Identified by Microsoft** | | |
| Identified this period | | 1 |
| Closed this period | | 123 |
| Microsoft Outstanding | 166 | 44 |
| **TDIs Identified by Licensees** | | |
| Identified this period | | 0 |
| Closed this period | | 0 |
| Licensee Outstanding | 0 | 0 |
| **Total Outstanding** | 347 | 182 |

4. *Technical Documentation Testing*

a. Protocol Test Suite

Microsoft completed its development of a preliminary cluster of test suites by the target date of March 31, 2007.  Microsoft is continuing its work to release additional test suite clusters on a quarterly basis. In selecting the protocols for future releases, Microsoft will prioritize the protocols that correspond to the release of the rewritten technical documentation and emphasize

21

those protocols that are likely to be of greatest value to licensees.  The next cluster of test suites

is on track to be completed by the end of June.  Microsoft also is developing a process that will

allow it to use the information it obtains from each of the early test suite clusters to enhance the

quality and efficiency of future releases.

b.      Interoperability Lab

On August 30, 2006, Microsoft announced to MCPP licensees the availability, at no

charge, of Microsoft's Interoperability Lab in the Microsoft Enterprise Engineering Center for

testing licensee implementations of MCPP protocols.  The Interoperability Lab offers direct

access to Microsoft product development teams and technical support from Microsoft's

engineering staff to address issues that may arise during testing.  Microsoft has conducted a

series of in-person visits to most licensees in order to promote the availability of these services.

During the first week of June, one Proxy/Firewall licensee participated in an interoperability lab,

and two licensees are in the process of scheduling visits (including one File Sharing licensee that

plans to visit the lab during the second half of 2007).  Several licensees toured the

Interoperability Lab and met the staff while attending the File Sharing plug-fest held from April

30, 2007 to May 4, 2007.

c.      Plug-fests

As noted in previous Status Reports, Microsoft hosted its first plug-fest, which was for

licensees of the Media Streaming Protocols, on December 12-14, 2006. The File Server

Protocols plug-fest took place in Redmond, Washington on April 30-May 3, 2007.  Four

licensees (18 people) attended this event.  Seven members of the TC's staff and Craig Hunt also

took part as registered participants and had the opportunity to meet in private with several

licensees as part of scheduled meetings.  Overall feedback on the plug-fest has been very

positive.  The initial Authentication and Certificate Services Protocols plug-fest will be held

during the third quarter of 2007. Additional plug-fest events are being considered, and planning

for these future events will reflect the feedback received from licensees.

5.     *Technical Documentation Team Staffing*

Robert Muglia, the Senior Vice President for Microsoft's Server and Tools Business,

continues to manage the documentation effort along with additional senior product engineering

team managers.

Altogether, approximately 350 Microsoft employees and contingent staff are involved in

work on the MCPP technical documentation.  Given the substantial overlap between the MCPP

and the European Work Group Server Protocol Program, all of these individuals devote their

efforts to work that relates to both programs or that is exclusive to the MCPP.  Of these,

approximately 150 product team engineers and program managers are actively involved in the

creation and review of the technical content of the documentation.  In addition, there are more

than 25 full-time employees and over 40 contingent staff working as technical writers, editors,

and production technicians.  In addition, as the protocol testing effort has started, there are now

approximately 25 full-time employees and approximately 90 contingent staff and vendor staff

working as software test designers, test engineers, and test architects.  Significant attention and

involvement in the technical documentation and the MCPP extend through all levels of the

Microsoft organization and draw upon the resources of numerous product engineering, business,

technical, and legal groups, as well as company management.

B.      **Windows Vista and XP Related Matters**

As reported in its previous supplemental status reports, Microsoft has been working cooperatively to address a number of changes requested by the TC concerning Windows XP, the OEM Preinstallation Kit ("OPK"), and other Microsoft applications, regardless of whether these requests relate to Microsoft's middleware and default obligations under Sections III.C and III.H of the Final Judgments.  Microsoft and the TC have been meeting on a weekly basis to address all outstanding issues in these areas.  As a result, all issues relating to the OPK have been resolved.  Nearly all other outstanding issues have been resolved and the remaining issues will be addressed in the coming weeks.

In addition, Microsoft has agreed to make changes to Windows XP, two Middleware Products, and Windows Live Messenger.  The Windows Live Messenger changes have been delivered in the Windows Live Messenger 8.5 beta and will be included in the public release. Changes for Internet Explorer and Windows Media Player will be made available to users in August 2007 and Microsoft is discussing with the TC the delivery mechanism for those changes. The Windows XP changes will be incorporated into Service Pack 3 for Windows XP.  The changes to the code will be available for review by the TC this summer.  The changes made available to the TC for its review will remain in the final release of Service Pack 3 for Windows XP.

C.      **Compliance Officers**

Since the Initial Status Report was filed on July 3, 2003, the compliance officers have continued to ensure that newly-appointed Microsoft officers and directors receive copies of the Final Judgments and related materials (ongoing), that Microsoft officers and directors receive

annual briefings on the meaning and requirements of the Final Judgments (Microsoft began annual training sessions in May and additional training sessions are proceeding), that annual certifications are completed for the most recent year (completed by December 2006), and that required compliance-related records are maintained (ongoing).  In addition, the compliance officers are actively engaged in Microsoft's extensive and ongoing training programs and committed to monitoring matters pertaining to the Final Judgments.

> D.  **Complaints and Inquiries Received by Microsoft**

As of June 15, Microsoft has received 26 complaints or inquiries since the March 6, 2007 Joint Status Report.  None of these complaints or inquiries was related to any of Microsoft's compliance obligations under the Final Judgments.

> E.  **The "Desktop Search Complaint"**

Late last year, the Plaintiffs told Microsoft that Google had filed a complaint relating to the desktop search capabilities in Windows Vista. (Desktop search makes it easy for users to find and sort files and programs on their computers.) Microsoft has worked cooperatively with the Plaintiffs to answer their questions and has provided detailed documentary and technical information to the Plaintiffs and their technical experts. Microsoft believes that Google's complaint is without merit. Nevertheless, Microsoft worked with the Plaintiffs in a spirit of cooperation to resolve any issues the complaint may raise under the Final Judgments. Microsoft has committed to make the changes described in the Plaintiffs' section of this report in Service Pack 1 for Windows Vista. Microsoft anticipates that beta code will be available by the end of the year.

Dated: June 19, 2007

Respectfully submitted,

FOR THE STATES OF NEW YORK,  
OHIO, ILLINOIS, KENTUCKY,  
LOUISIANA, MARYLAND, MICHIGAN  
NORTH CAROLINA, AND WISCONSIN

FOR THE UNITED STATES  
DEPARTMENT OF JUSTICE'S  
ANTITRUST DIVISION

_____

ANDREW M. CUOMO  
*Attorney General of New York*  
JAY L. HIMES  
*Chief, Antitrust Bureau*  
*Assistant Attorney General*  
120 Broadway  
New York, New York 10271  
212/416-8282

_____

AARON D. HOAG  
JAMES J. TIERNEY  
SCOTT A. SCHEELE  
PHILIP A. GIORDANO  
ADAM T. SEVERT  
*Trial Attorneys*  
U.S. Department of Justice  
Antitrust Division  
600 E Street, N.W.  
Suite 9500  
Washington, D.C. 20530  
202/514-8276

FOR THE STATES OF CALIFORNIA,
CONNECTICUT, IOWA, KANSAS,
FLORIDA, MASSACHUSETTS, MINNESOTA,
UTAH, AND THE DISTRICT OF COLUMBIA

_____

KATHLEEN FOOTE
*Senior Assistant Attorney General*
Office of the Attorney General of California
455 Golden Gate Avenue
Suite 11000
San Francisco, California 94102-3664
415/703-5555

FOR DEFENDANT MICROSOFT
CORPORATION

_____

BRADFORD L. SMITH
MARY SNAPP
DAVID A. HEINER, JR.
Microsoft Corporation
One Microsoft Way
Redmond, Washington 98052
425/936-8080

CHARLES F. RULE
JONATHAN S. KANTER
Cadwalader, Wickersham & Taft LLP
1201 F Street, N.W.
Washington, DC 20004
202/862-2420

STEVE L. HOLLEY
RICHARD C. PEPPERMAN II
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004
212/558-4000

*Counsel for Defendant*
*Microsoft Corporation*

27