IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>　　　　　Defendant. | Civil Action No. 98-1232 (CKK) |

## SECOND MODIFIED FINAL JUDGMENT
(Originally Entered November 12, 2002; Modified September 7, 2006;
Further Modified April 22, 2009)

WHEREAS, plaintiffs United States of America ("United States") and the States of New York, Ohio, Illinois, Kentucky, Louisiana, Maryland, Michigan, North Carolina and Wisconsin and defendant Microsoft Corporation ("Microsoft"), by their respective attorneys, have consented to the entry of this Final Judgment;

AND WHEREAS, this Final Judgment does not constitute any admission by any party regarding any issue of fact or law;

AND WHEREAS, Microsoft agrees to be bound by the provisions of this Final Judgment pending its approval by the Court;

NOW THEREFORE, upon remand from the United States Court of Appeals for the District of Columbia Circuit, and upon the consent of the aforementioned parties, it is hereby ORDERED, ADJUDGED, AND DECREED:

### I.   Jurisdiction

　　This Court has jurisdiction of the subject matter of this action and of the person of Microsoft.

## II. Applicability

This Final Judgment applies to Microsoft and to each of its officers, directors, agents, employees, subsidiaries, successors and assigns; and to all other persons in active concert or participation with any of them who shall have received actual notice of this Final Judgment by personal service or otherwise.

## III. Prohibited Conduct

A.   Microsoft shall not retaliate against an OEM by altering Microsoft's commercial relations with that OEM, or by withholding newly introduced forms of non-monetary Consideration (including but not limited to new versions of existing forms of non-monetary Consideration) from that OEM, because it is known to Microsoft that the OEM is or is contemplating:

> 1. developing, distributing, promoting, using, selling, or licensing any software that competes with Microsoft Platform Software or any product or service that distributes or promotes any Non-Microsoft Middleware;
>
> 2. shipping a Personal Computer that (a) includes both a Windows Operating System Product and a non-Microsoft Operating System, or (b) will boot with more than one Operating System; or
>
> 3. exercising any of the options or alternatives provided for under this Final Judgment.

Nothing in this provision shall prohibit Microsoft from enforcing any provision of any license with any OEM or any intellectual property right that is not inconsistent with this Final Judgment. Microsoft shall not terminate a Covered OEM's license for a Windows Operating System Product without having first given the Covered OEM written notice of the reasons for the proposed termination and not less than thirty days' opportunity to cure. Notwithstanding the foregoing, Microsoft shall have no obligation to provide such a termination notice and opportunity to cure to any Covered OEM that has received two or more such notices during the term of its Windows Operating System Product license.

Nothing in this provision shall prohibit Microsoft from providing Consideration to any OEM with respect to any Microsoft product or service where that Consideration is commensurate with the absolute level or amount of that OEM's development, distribution, promotion, or licensing of that Microsoft product or service.

B.   Microsoft's provision of Windows Operating System Products to Covered OEMs shall be pursuant to uniform license agreements with uniform terms and conditions. Without limiting the foregoing, Microsoft shall charge each Covered OEM the applicable royalty for Windows Operating System Products as set forth on a schedule, to be established by Microsoft and published on a web site accessible to the Plaintiffs and all Covered OEMs, that provides for uniform royalties for Windows Operating System Products, except that:

> 1. the schedule may specify different royalties for different language versions;

2. the schedule may specify reasonable volume discounts based upon the actual volume of licenses of any Windows Operating System Product or any group of such products; and

3. the schedule may include market development allowances, programs, or other discounts in connection with Windows Operating System Products, provided that:

   a. such discounts are offered and available uniformly to all Covered OEMs, except that Microsoft may establish one uniform discount schedule for the ten largest Covered OEMs and a second uniform discount schedule for the eleventh through twentieth largest Covered OEMs, where the size of the OEM is measured by volume of licenses;

   b. such discounts are based on objective, verifiable criteria that shall be applied and enforced on a uniform basis for all Covered OEMs; and

   c. such discounts or their award shall not be based on or impose any criterion or requirement that is otherwise inconsistent with any portion of this Final Judgment.

C. Microsoft shall not restrict by agreement any OEM licensee from exercising any of the following options or alternatives:

1. Installing, and displaying icons, shortcuts, or menu entries for, any Non-Microsoft Middleware or any product or service (including but not limited to IAP products or services) that distributes, uses, promotes, or supports any Non-Microsoft Middleware, on the desktop or Start menu, or anywhere else in a Windows Operating System Product where a list of icons, shortcuts, or menu entries for applications are generally displayed, except that Microsoft may restrict an OEM from displaying icons, shortcuts and menu entries for any product in any list of such icons, shortcuts, or menu entries specified in the Windows documentation as being limited to products that provide particular types of functionality, provided that the restrictions are non-discriminatory with respect to non-Microsoft and Microsoft products.

2. Distributing or promoting Non-Microsoft Middleware by installing and displaying on the desktop shortcuts of any size or shape so long as such shortcuts do not impair the functionality of the user interface.

3. Launching automatically, at the conclusion of the initial boot sequence or subsequent boot sequences, or upon connections to or disconnections from the Internet, any Non-Microsoft Middleware if a Microsoft Middleware Product that provides similar functionality would otherwise be launched automatically at that time, provided that any such Non-Microsoft Middleware displays on the desktop no user interface or a user interface of similar size and shape to the user interface displayed by the corresponding Microsoft Middleware Product.

    4.    Offering users the option of launching other Operating Systems from the Basic Input/Output System or a non-Microsoft boot-loader or similar program that launches prior to the start of the Windows Operating System Product.

    5.    Presenting in the initial boot sequence its own IAP offer provided that the OEM complies with reasonable technical specifications established by Microsoft, including a requirement that the end user be returned to the initial boot sequence upon the conclusion of any such offer.

    6.    Exercising any of the options provided in Section III.H of this Final Judgment.

D.    Starting at the earlier of the release of Service Pack 1 for Windows XP or 12 months after the submission of this Final Judgment to the Court, Microsoft shall disclose to ISVs, IHVs, IAPs, ICPs, and OEMs, for the sole purpose of interoperating with a Windows Operating System Product, via the Microsoft Developer Network ("MSDN") or similar mechanisms, the APIs and related Documentation that are used by Microsoft Middleware to interoperate with a Windows Operating System Product. For purposes of this Section III.D, the term APIs means the interfaces, including any associated callback interfaces, that Microsoft Middleware running on a Windows Operating System Product uses to call upon that Windows Operating System Product in order to obtain any services from that Windows Operating System Product. In the case of a new major version of Microsoft Middleware, the disclosures required by this Section III.D shall occur no later than the last major beta test release of that Microsoft Middleware. In the case of a new version of a Windows Operating System Product, the obligations imposed by this Section III.D shall occur in a Timely Manner.

E.    Starting nine months after the submission of this proposed Final Judgment to the Court, Microsoft shall make available for use by third parties, for the sole purpose of interoperating or communicating with a Windows Operating System Product, on reasonable and non-discriminatory terms (consistent with Section III.I), any Communications Protocol that is, on or after the date this Final Judgment is submitted to the Court, (i) implemented in a Windows Operating System Product installed on a client computer, and (ii) used to interoperate, or communicate, natively (*i.e.*, without the addition of software code to the client operating system product) with a Microsoft server operating system product.

F.    1    (Effective November 12, 2007, this provision shall apply only with respect to matters related to Section III.E of the Final Judgment.) Microsoft shall not retaliate against any ISV or IHV because of that ISV's or IHV's:

    a.    developing, using, distributing, promoting or supporting any software that competes with Microsoft Platform Software or any software that runs on any software that competes with Microsoft Platform Software, or

    b.    exercising any of the options or alternatives provided for under this Final Judgment.

    2.    Microsoft shall not enter into any agreement relating to a Windows Operating System Product that conditions the grant of any Consideration on an ISV's

> refraining from developing, using, distributing, or promoting any software that competes with Microsoft Platform Software or any software that runs on any software that competes with Microsoft Platform Software, except that Microsoft may enter into agreements that place limitations on an ISV's development, use, distribution or promotion of any such software if those limitations are reasonably necessary to and of reasonable scope and duration in relation to a bona fide contractual obligation of the ISV to use, distribute or promote any Microsoft software or to develop software for, or in conjunction with, Microsoft.
>
> 3. Nothing in this section shall prohibit Microsoft from enforcing any provision of any agreement with any ISV or IHV, or any intellectual property right, that is not inconsistent with this Final Judgment.

G. Microsoft shall not enter into any agreement with:

> 1. any IAP, ICP, ISV, IHV or OEM that grants Consideration on the condition that such entity distributes, promotes, uses, or supports, exclusively or in a fixed percentage, any Microsoft Platform Software, except that Microsoft may enter into agreements in which such an entity agrees to distribute, promote, use or support Microsoft Platform Software in a fixed percentage whenever Microsoft in good faith obtains a representation that it is commercially practicable for the entity to provide equal or greater distribution, promotion, use or support for software that competes with Microsoft Platform Software, or
>
> 2. any IAP or ICP that grants placement on the desktop or elsewhere in any Windows Operating System Product to that IAP or ICP on the condition that the IAP or ICP refrain from distributing, promoting or using any software that competes with Microsoft Middleware.

Nothing in this section shall prohibit Microsoft from entering into (a) any bona fide joint venture or (b) any joint development or joint services arrangement with any ISV, IHV, IAP, ICP, or OEM for a new product, technology or service, or any material value-add to an existing product, technology or service, in which both Microsoft and the ISV, IHV, IAP, ICP, or OEM contribute significant developer or other resources, that prohibits such entity from competing with the object of the joint venture or other arrangement for a reasonable period of time.

This Section does not apply to any agreements in which Microsoft licenses intellectual property in from a third party.

H. Starting at the earlier of the release of Service Pack 1 for Windows XP or 12 months after the submission of this Final Judgment to the Court, Microsoft shall:

> 1. Allow end users (via a mechanism readily accessible from the desktop or Start menu such as an Add/Remove icon) and OEMs (via standard preinstallation kits) to enable or remove access to each Microsoft Middleware Product or Non-Microsoft Middleware Product by (a) displaying or removing icons, shortcuts, or menu entries on the desktop or Start menu, or anywhere else in a Windows

Operating System Product where a list of icons, shortcuts, or menu entries for applications are generally displayed, except that Microsoft may restrict the display of icons, shortcuts, or menu entries for any product in any list of such icons, shortcuts, or menu entries specified in the Windows documentation as being limited to products that provide particular types of functionality, provided that the restrictions are non-discriminatory with respect to non-Microsoft and Microsoft products; and (b) enabling or disabling automatic invocations pursuant to Section III.C.3 of this Final Judgment that are used to launch Non-Microsoft Middleware Products or Microsoft Middleware Products. The mechanism shall offer the end user a separate and unbiased choice with respect to enabling or removing access (as described in this subsection III.H.1) and altering default invocations (as described in the following subsection III.H.2) with regard to each such Microsoft Middleware Product or Non-Microsoft Middleware Product and may offer the end-user a separate and unbiased choice of enabling or removing access and altering default configurations as to all Microsoft Middleware Products as a group or all Non-Microsoft Middleware Products as a group.

2. Allow end users (via an unbiased mechanism readily available from the desktop or Start menu), OEMs (via standard OEM preinstallation kits), and Non-Microsoft Middleware Products (via a mechanism which may, at Microsoft's option, require confirmation from the end user in an unbiased manner) to designate a Non-Microsoft Middleware Product to be invoked in place of that Microsoft Middleware Product (or vice versa) in any case where the Windows Operating System Product would otherwise launch the Microsoft Middleware Product in a separate Top-Level Window and display either (i) all of the user interface elements or (ii) the Trademark of the Microsoft Middleware Product.

    Notwithstanding the foregoing Section III.H.2, the Windows Operating System Product may invoke a Microsoft Middleware Product in any instance in which:

    (a) that Microsoft Middleware Product would be invoked solely for use in interoperating with a server maintained by Microsoft (outside the context of general Web browsing), or

    (b) that designated Non-Microsoft Middleware Product fails to implement a reasonable technical requirement (*e.g.*, a requirement to be able to host a particular ActiveX control) that is necessary for valid technical reasons to supply the end user with functionality consistent with a Windows Operating System Product, provided that the technical reasons are described in a reasonably prompt manner to any ISV that requests them.

3. Ensure that a Windows Operating System Product does not (a) automatically alter an OEM's configuration of icons, shortcuts or menu entries installed or displayed by the OEM pursuant to Section III.C of this Final Judgment without first seeking confirmation from the user and (b) seek such confirmation from the end user for an automatic (as opposed to user-initiated) alteration of the OEM's configuration

until 14 days after the initial boot up of a new Personal Computer. Any such automatic alteration and confirmation shall be unbiased with respect to Microsoft Middleware Products and Non-Microsoft Middleware. Microsoft shall not alter the manner in which a Windows Operating System Product automatically alters an OEM's configuration of icons, shortcuts or menu entries other than in a new version of a Windows Operating System Product.

Microsoft's obligations under this Section III.H as to any new Windows Operating System Product shall be determined based on the Microsoft Middleware Products which exist seven months prior to the last beta test version (*i.e.*, the one immediately preceding the first release candidate) of that Windows Operating System Product.

I.   Microsoft shall offer to license to ISVs, IHVs, IAPs, ICPs, and OEMs any intellectual property rights owned or licensable by Microsoft that are required to exercise any of the options or alternatives expressly provided to them under this Final Judgment, provided that

    1.   all terms, including royalties or other payment of monetary consideration, are reasonable and non-discriminatory;

    2.   the scope of any such license (and the intellectual property rights licensed thereunder) need be no broader than is necessary to ensure that an ISV, IHV, IAP, ICP or OEM is able to exercise the options or alternatives expressly provided under this Final Judgment (*e.g.*, an ISV's, IHV's, IAP's, ICP's and OEM's option to promote Non-Microsoft Middleware shall not confer any rights to any Microsoft intellectual property rights infringed by that Non-Microsoft Middleware);

    3.   an ISV's, IHV's, IAP's, ICP's, or OEM's rights may be conditioned on its not assigning, transferring or sublicensing its rights under any license granted under this provision; and

    4.   the terms of any license granted under this section are in all respects consistent with the express terms of this Final Judgment.

Beyond the express terms of any license granted by Microsoft pursuant to this section, this Final Judgment does not, directly or by implication, estoppel or otherwise, confer any rights, licenses, covenants or immunities with regard to any Microsoft intellectual property to anyone.

J.   No provision of this Final Judgment shall:

    1.   Require Microsoft to document, disclose or license to third parties: (a) portions of APIs or Documentation or portions or layers of Communications Protocols the disclosure of which would compromise the security of a particular installation or group of installations of anti-piracy, anti-virus, software licensing, digital rights management, encryption or authentication systems, including without limitation, keys, authorization tokens or enforcement criteria; or (b) any API, interface or other information related to any Microsoft product if lawfully directed not to do so by a governmental agency of competent jurisdiction.

2. Prevent Microsoft from conditioning any license of any API, Documentation or Communications Protocol related to anti-piracy systems, anti-virus technologies, license enforcement mechanisms, authentication/authorization security, or third party intellectual property protection mechanisms of any Microsoft product to any person or entity on the requirement that the licensee: (a) has no history of software counterfeiting or piracy or willful violation of intellectual property rights, (b) has a reasonable business need for the API, Documentation or Communications Protocol for a planned or shipping product, (c) meets reasonable, objective standards established by Microsoft for certifying the authenticity and viability of its business, (d) agrees to submit, at its own expense, any computer program using such APIs, Documentation or Communication Protocols to third-party verification, approved by Microsoft, to test for and ensure verification and compliance with Microsoft specifications for use of the API or interface, which specifications shall be related to proper operation and integrity of the systems and mechanisms identified in this paragraph.

### IV. Compliance and Enforcement Procedures

**A.    Enforcement Authority**

1. The Plaintiffs shall have exclusive responsibility for enforcing this Final Judgment. Without in any way limiting the sovereign enforcement authority of each of the plaintiff States, the plaintiff States shall form a committee to coordinate their enforcement of this Final Judgment. A plaintiff State shall take no action to enforce this Final Judgment without first consulting with the United States and with the plaintiff States' enforcement committee.

2. To determine and enforce compliance with this Final Judgment, duly authorized representatives of the United States and the plaintiff States, on reasonable notice to Microsoft and subject to any lawful privilege, shall be permitted the following:

   a. Access during normal office hours to inspect any and all source code, books, ledgers, accounts, correspondence, memoranda and other documents and records in the possession, custody, or control of Microsoft, which may have counsel present, regarding any matters contained in this Final Judgment.

   b. Subject to the reasonable convenience of Microsoft and without restraint or interference from it, to interview, informally or on the record, officers, employees, or agents of Microsoft, who may have counsel present, regarding any matters contained in this Final Judgment.

   c. Upon written request of the United States or a duly designated representative of a plaintiff State, on reasonable notice given to Microsoft, Microsoft shall submit such written reports under oath as requested regarding any matters contained in this Final Judgment.

        Individual plaintiff States will consult with the plaintiff States' enforcement committee to minimize the duplication and burden of the exercise of the foregoing powers, where practicable.

3. The Plaintiffs shall not disclose any information or documents obtained from Microsoft under this Final Judgment except for the purpose of securing compliance with this Final Judgment, in a legal proceeding to which one or more of the Plaintiffs is a party, or as otherwise required by law; provided that the relevant Plaintiff(s) must provide ten days' advance notice to Microsoft before disclosing in any legal proceeding (other than a grand jury proceeding) to which Microsoft is not a party any information or documents provided by Microsoft pursuant to this Final Judgment which Microsoft has identified in writing as material as to which a claim of protection may be asserted under Rule 26(c)(7) of the Federal Rules of Civil Procedure.

4. The Plaintiffs shall have the authority to seek such orders as are necessary from the Court to enforce this Final Judgment, provided, however, that the Plaintiffs shall afford Microsoft a reasonable opportunity to cure alleged violations of Sections III.C, III.D, III.E and III.H, provided further that any action by Microsoft to cure any such violation shall not be a defense to enforcement with respect to any knowing, willful or systematic violations.

B. **Appointment of a Technical Committee**

1. Within 30 days of entry of this Final Judgment, the parties shall create and recommend to the Court for its appointment a three-person Technical Committee ("TC") to assist in enforcement of and compliance with this Final Judgment.

2. The TC members shall be experts in software design and programming. No TC member shall have a conflict of interest that could prevent him or her from performing his or her duties under this Final Judgment in a fair and unbiased manner. Without limitation to the foregoing, no TC member (absent the agreement of both parties):

    a. shall have been employed in any capacity by Microsoft or any competitor to Microsoft within the past year, nor shall she or he be so employed during his or her term on the TC;

    b. shall have been retained as a consulting or testifying expert by any person in this action or in any other action adverse to or on behalf of Microsoft; or

    c. shall perform any other work for Microsoft or any competitor of Microsoft for two years after the expiration of the term of his or her service on the TC.

3. Within 7 days of entry of this Final Judgment, the Plaintiffs as a group and Microsoft shall each select one member of the TC, and those two members shall

then select the third member. The selection and approval process shall proceed as follows.

    a.    As soon as practicable after submission of this Final Judgment to the Court, the Plaintiffs as a group and Microsoft shall each identify to the other the individual it proposes to select as its designee to the TC. The Plaintiffs and Microsoft shall not object to each other's selection on any ground other than failure to satisfy the requirements of Section IV.B.2 above. Any such objection shall be made within ten business days of the receipt of notification of selection.

    b.    The Plaintiffs shall apply to the Court for appointment of the persons selected by the Plaintiffs and Microsoft pursuant to Section IV.B.3.a above. Any objections to the eligibility of a selected person that the parties have failed to resolve between themselves shall be decided by the Court based solely on the requirements stated in Section IV.B.2 above.

    c.    As soon as practical after their appointment by the Court, the two members of the TC selected by the Plaintiffs and Microsoft (the "Standing Committee Members") shall identify to the Plaintiffs and Microsoft the person that they in turn propose to select as the third member of the TC. The Plaintiffs and Microsoft shall not object to this selection on any grounds other than failure to satisfy the requirements of Section IV.B.2 above. Any such objection shall be made within ten business days of the receipt of notification of the selection and shall be served on the other party as well as on the Standing Committee Members.

    d.    The Plaintiffs shall apply to the Court for appointment of the person selected by the Standing Committee Members. If the Standing Committee Members cannot agree on a third member of the TC, the third member shall be appointed by the Court. Any objection by Microsoft or the Plaintiffs to the eligibility of the person selected by the Standing Committee Members which the parties have failed to resolve among themselves shall also be decided by the Court based on the requirements stated in Section IV.B.2 above.

4.    Each TC member shall serve for an initial term of 30 months. At the end of a TC member's initial 30-month term, the party that originally selected him or her may, in its sole discretion, either request re-appointment by the Court to a second 30-month term or replace the TC member in the same manner as provided for in Section IV.B.3.a above. In the case of the third member of the TC, that member shall be re-appointed or replaced in the manner provided in Section IV.B.3.c above. The Court having by Minute Order dated May 5, 2005 granted Plaintiffs' motion to reappoint each TC member to a second term, and each TC member having since expressed a willingness to serve beyond the 30 month period provided for above, the second term of the TC members will expire on May 12, 2011.

5.  If the United States determines that a member of the TC has failed to act diligently and consistently with the purposes of this Final Judgment, or if a member of the TC resigns, or for any other reason ceases to serve in his or her capacity as a member of the TC, the person or persons that originally selected the TC member shall select a replacement member in the same manner as provided for in Section IV.B.3.

6.  Promptly after appointment of the TC by the Court, the United States shall enter into a Technical Committee services agreement ("TC Services Agreement") with each TC member that grants the rights, powers and authorities necessary to permit the TC to perform its duties under this Final Judgment. Microsoft shall indemnify each TC member and hold him or her harmless against any losses, claims, damages, liabilities or expenses arising out of, or in connection with, the performance of the TC's duties, except to the extent that such liabilities, losses, damages, claims, or expenses result from misfeasance, gross negligence, willful or wanton acts, or bad faith by the TC member. The TC Services Agreements shall include the following.

    a.  The TC members shall serve, without bond or other security, at the cost and expense of Microsoft on such terms and conditions as the Plaintiffs approve, including the payment of reasonable fees and expenses.

    b.  The TC Services Agreement shall provide that each member of the TC shall comply with the limitations provided for in Section IV.B.2 above.

7.  Microsoft shall provide the TC with a permanent office, telephone, and other office support facilities at Microsoft's corporate campus in Redmond, Washington. Microsoft shall also, upon reasonable advance notice from the TC, provide the TC with reasonable access to available office space, telephone, and other office support facilities at any other Microsoft facility identified by the TC.

8.  The TC shall have the following powers and duties:

    a.  The TC shall have the power and authority to monitor Microsoft's compliance with its obligations under this final judgment.

    b.  The TC may, on reasonable notice to Microsoft:

        (i)    interview, either informally or on the record, any Microsoft personnel, who may have counsel present; any such interview to be subject to the reasonable convenience of such personnel and without restraint or interference by Microsoft;
        (ii)   inspect and copy any document in the possession, custody or control of Microsoft personnel;
        (iii)  obtain reasonable access to any systems or equipment to which Microsoft personnel have access;
        (iv)   obtain access to, and inspect, any physical facility, building or other premises to which Microsoft personnel have access; and

(v) require Microsoft personnel to provide compilations of documents, data and other information, and to submit reports to the TC containing such material, in such form as the TC may reasonably direct.

c. The TC shall have access to Microsoft's source code, subject to the terms of Microsoft's standard source code Confidentiality Agreement, as approved by the Plaintiffs and to be agreed to by the TC members pursuant to Section IV.B.9 below, and by any staff or consultants who may have access to the source code. The TC may study, interrogate and interact with the source code in order to perform its functions and duties, including the handling of complaints and other inquiries from non-parties.

d. The TC shall receive complaints from the Compliance Officer, third parties or the Plaintiffs and handle them in the manner specified in Section IV.D below.

e. The TC shall report in writing to the Plaintiffs every six months until expiration of this Final Judgment the actions it has undertaken in performing its duties pursuant to this Final Judgment, including the identification of each business practice reviewed and any recommendations made by the TC.

f. Regardless of when reports are due, when the TC has reason to believe that there may have been a failure by Microsoft to comply with any term of this Final Judgment, the TC shall immediately notify the Plaintiffs in writing setting forth the relevant details.

g. TC members may communicate with non-parties about how their complaints or inquiries might be resolved with Microsoft, so long as the confidentiality of information obtained from Microsoft is maintained.

h. The TC may hire at the cost and expense of Microsoft, with prior notice to Microsoft and subject to approval by the Plaintiffs, such staff or consultants (all of whom must meet the qualifications of Section IV.B.2) as are reasonably necessary for the TC to carry out its duties and responsibilities under this Final Judgment. The compensation of any person retained by the TC shall be based on reasonable and customary terms commensurate with the individual's experience and responsibilities.

i. The TC shall account for all reasonable expenses incurred, including agreed upon fees for the TC members' services, subject to the approval of the Plaintiffs. Microsoft may, on application to the Court, object to the reasonableness of any such fees or other expenses. On any such application: (a) the burden shall be on Microsoft to demonstrate unreasonableness; and (b) the TC member(s) shall be entitled to recover all costs incurred on such application (including reasonable attorneys' fees and

    costs), regardless of the Court's disposition of such application, unless the Court shall expressly find that the TC's opposition to the application was without substantial justification.

9. Each TC member, and any consultants or staff hired by the TC, shall sign a confidentiality agreement prohibiting disclosure of any information obtained in the course of performing his or her duties as a member of the TC or as a person assisting the TC to anyone other than Microsoft, the Plaintiffs, or the Court. All information gathered by the TC in connection with this Final Judgment and any report and recommendations prepared by the TC shall be treated as Highly Confidential under the Protective Order in this case, and shall not be disclosed to any person other than Microsoft and the Plaintiffs except as allowed by the Protective Order entered in the Action or by further order of this Court.

10. No member of the TC shall make any public statements relating to the TC's activities.

C. **Appointment of a Microsoft Internal Compliance Officer**

1. Microsoft shall designate, within 30 days of entry of this Final Judgment, an internal Compliance Officer who shall be an employee of Microsoft with responsibility for administering Microsoft's antitrust compliance program and helping to ensure compliance with this Final Judgment.

2. The Compliance Officer shall supervise the review of Microsoft's activities to ensure that they comply with this Final Judgment. He or she may be assisted by other employees of Microsoft.

3. The Compliance Officer shall be responsible for performing the following activities:

  a. within 30 days after entry of this Final Judgment, distributing a copy of the Final Judgment to all officers and directors of Microsoft;

  b. promptly distributing a copy of this Final Judgment to any person who succeeds to a position described in Section IV.C.3.a above;

  c. ensuring that those persons designated in Section IV.C.3.a above are annually briefed on the meaning and requirements of this Final Judgment and the U.S. antitrust laws and advising them that Microsoft's legal advisors are available to confer with them regarding any question concerning compliance with this Final Judgment or under the U.S. antitrust laws;

  d. obtaining from each person designated in Section IV.C.3.a above an annual written certification that he or she: (i) has read and agrees to abide by the terms of this Final Judgment; and (ii) has been advised and understands that his or her failure to comply with this Final Judgment may result in a finding of contempt of court;

  e. maintaining a record of all persons to whom a copy of this Final Judgment has been distributed and from whom the certification described in Section IV.C.3.d above has been obtained;

  f. establishing and maintaining the website provided for in Section IV.D.3.b below.

  g. receiving complaints from third parties, the TC and the Plaintiffs concerning Microsoft's compliance with this Final Judgment and following the appropriate procedures set forth in Section IV.D below; and

  h. maintaining a record of all complaints received and action taken by Microsoft with respect to each such complaint.

D. **Voluntary Dispute Resolution**

1. Third parties may submit complaints concerning Microsoft's compliance with this Final Judgment to the Plaintiffs, the TC or the Compliance Officer.

2. In order to enhance the ability of the Plaintiffs to enforce compliance with this Final Judgment, and to advance the parties' joint interest and the public interest in prompt resolution of issues and disputes, the parties have agreed that the TC and the Compliance Officer shall have the following additional responsibilities.

3. Submissions to the Compliance Officer.

  a. Third parties, the TC, or the Plaintiffs in their discretion may submit to the Compliance Officer any complaints concerning Microsoft's compliance with this Final Judgment. Without in any way limiting its authority to take any other action to enforce this Final Judgment, the Plaintiffs may submit complaints related to Sections III.C, III.D, III.E and III.H to the Compliance Officer whenever doing so would be consistent with the public interest.

  b. To facilitate the communication of complaints and inquiries by third parties, the Compliance Officer shall place on Microsoft's Internet website, in a manner acceptable to the Plaintiffs, the procedures for submitting complaints. To encourage whenever possible the informal resolution of complaints and inquiries, the website shall provide a mechanism for communicating complaints and inquiries to the Compliance Officer.

  c. Microsoft shall have 30 days after receiving a complaint to attempt to resolve it or reject it, and will then promptly advise the TC of the nature of the complaint and its disposition.

4. Submissions to the TC.

  a. The Compliance Officer, third parties or the Plaintiffs in their discretion may submit to the TC any complaints concerning Microsoft's compliance with this Final Judgment.

b.  The TC shall investigate complaints received and will consult with the Plaintiffs regarding its investigation. At least once during its investigation, and more often when it may help resolve complaints informally, the TC shall meet with the Compliance Officer to allow Microsoft to respond to the substance of the complaint and to determine whether the complaint can be resolved without further proceedings.

c.  If the TC concludes that a complaint is meritorious, it shall advise Microsoft and the Plaintiffs of its conclusion and its proposal for cure.

d.  No work product, findings or recommendations by the TC may be admitted in any enforcement proceeding before the Court for any purpose, and no member of the TC shall testify by deposition, in court or before any other tribunal regarding any matter related to this Final Judgment.

e.  The TC may preserve the anonymity of any third party complainant where it deems it appropriate to do so upon the request of the Plaintiffs or the third party, or in its discretion.

E.  Microsoft shall maintain Robert Muglia, Senior Vice President for Microsoft's Server and Tools Business, as the executive with direct responsibility for managing the project to rewrite the technical documentation for the Microsoft Communications Protocol Program, until otherwise ordered by the Court on a showing of good cause, and shall make Mr. Muglia available to update the Court on the project at Status Conferences or as otherwise ordered.

## V.  Termination

A.  Unless this Court grants an extension, Sections III.A, III.B, III.C, III.D, III.F.2, III.G, and III.H of this Final Judgment will expire on November 12, 2007. Unless this Court grants an extension, Sections I, II, III.E, III.F.1, III.F.3, III.I, III.J, IV, V, VI, VII, and VIII of the Final Judgment (the "Surviving Provisions") will expire on May 12, 2011. Until expiration of the Surviving Provisions, the Plaintiffs shall have the unilateral right to apply to the Court for an extension of the Surviving Provisions of up to eighteen additional months (that is, through November 12, 2012); Microsoft has agreed that it will not oppose any such extension. The existence of a successor version of Windows, so long as it has not been distributed commercially by Microsoft, will not constitute grounds for an extension of the Final Judgment.

B.  In any enforcement proceeding in which the Court has found that Microsoft has engaged in a pattern of willful and systematic violations, the Plaintiffs may apply to the Court for a one-time extension of this Final Judgment of up to two years, together with such other relief as the Court may deem appropriate.

## VI. Definitions

A. "API" means application programming interface, including any interface that Microsoft is obligated to disclose pursuant to III.D.

B. "Communications Protocol" means the set of rules for information exchange to accomplish predefined tasks between a Windows Operating System Product and a server operating system product connected via a network, including, but not limited to, a local area network, a wide area network or the Internet. These rules govern the format, semantics, timing, sequencing, and error control of messages exchanged over a network.

C. "Consideration" means any monetary payment or the provision of preferential licensing terms; technical, marketing, and sales support; enabling programs; product information; information about future plans; developer support; hardware or software certification or approval; or permission to display trademarks, icons or logos.

D. "Covered OEMs" means the 20 OEMs with the highest worldwide volume of licenses of Windows Operating System Products reported to Microsoft in Microsoft's fiscal year preceding the effective date of the Final Judgment. The OEMs that fall within this definition of Covered OEMs shall be recomputed by Microsoft as soon as practicable after the close of each of Microsoft's fiscal years.

E. "Documentation" means all information regarding the identification and means of using APIs that a person of ordinary skill in the art requires to make effective use of those APIs. Such information shall be of the sort and to the level of specificity, precision and detail that Microsoft customarily provides for APIs it documents in the Microsoft Developer Network ("MSDN").

F. "IAP" means an Internet access provider that provides consumers with a connection to the Internet, with or without its own proprietary content.

G. "ICP" means an Internet content provider that provides content to users of the Internet by maintaining Web sites.

H. "IHV" means an independent hardware vendor that develops hardware to be included in or used with a Personal Computer running a Windows Operating System Product.

I. "ISV" means an entity other than Microsoft that is engaged in the development or marketing of software products.

J. "Microsoft Middleware" means software code that

    1. Microsoft distributes separately from a Windows Operating System Product to update that Windows Operating System Product;

    2. is Trademarked or is marketed by Microsoft as a major version of any Microsoft Middleware Product defined in section VI.K.1; and

     3.     provides the same or substantially similar functionality as a Microsoft Middleware Product.

Microsoft Middleware shall include at least the software code that controls most or all of the user interface elements of that Microsoft Middleware.

Software code described as part of, and distributed separately to update, a Microsoft Middleware Product shall not be deemed Microsoft Middleware unless identified as a new major version of that Microsoft Middleware Product. A major version shall be identified by a whole number or by a number with just a single digit to the right of the decimal point.

K.    "Microsoft Middleware Product" means

    1.    the functionality provided by Internet Explorer, Microsoft's Java Virtual Machine, Windows Media Player, Windows Messenger, Outlook Express and their successors in a Windows Operating System Product, and

    2.    for any functionality that is first licensed, distributed or sold by Microsoft after the entry of this Final Judgment and that is part of any Windows Operating System Product

        a.    Internet browsers, email client software, networked audio/video client software, instant messaging software or

        b.    functionality provided by Microsoft software that —

            i.    is, or in the year preceding the commercial release of any new Windows Operating System Product was, distributed separately by Microsoft (or by an entity acquired by Microsoft) from a Windows Operating System Product;

            ii.    is similar to the functionality provided by a Non-Microsoft Middleware Product; and

            iii.    is Trademarked.

Functionality that Microsoft describes or markets as being part of a Microsoft Middleware Product (such as a service pack, upgrade, or bug fix for Internet Explorer), or that is a version of a Microsoft Middleware Product (such as Internet Explorer 5.5), shall be considered to be part of that Microsoft Middleware Product.

L.    "Microsoft Platform Software" means (i) a Windows Operating System Product and/or (ii) a Microsoft Middleware Product.

M.    "Non-Microsoft Middleware" means a non-Microsoft software product running on a Windows Operating System Product that exposes a range of functionality to ISVs through published APIs, and that could, if ported to or made interoperable with, a non-Microsoft Operating System, thereby make it easier for applications that rely in whole or in part on the functionality supplied by that software product to be ported to or run on that non-Microsoft Operating System.

N.  "Non-Microsoft Middleware Product" means a non-Microsoft software product running on a Windows Operating System Product (i) that exposes a range of functionality to ISVs through published APIs, and that could, if ported to or made interoperable with, a non-Microsoft Operating System, thereby make it easier for applications that rely in whole or in part on the functionality supplied by that software product to be ported to or run on that non-Microsoft Operating System, and (ii) of which at least one million copies were distributed in the United States within the previous year.

O.  "OEM" means an original equipment manufacturer of Personal Computers that is a licensee of a Windows Operating System Product.

P.  "Operating System" means the software code that, *inter alia*, (i) controls the allocation and usage of hardware resources (such as the microprocessor and various peripheral devices) of a Personal Computer, (ii) provides a platform for developing applications by exposing functionality to ISVs through APIs, and (iii) supplies a user interface that enables users to access functionality of the operating system and in which they can run applications.

Q.  "Personal Computer" means any computer configured so that its primary purpose is for use by one person at a time, that uses a video display and keyboard (whether or not that video display and keyboard is included) and that contains an Intel x86 compatible (or successor) microprocessor. Servers, television set top boxes, handheld computers, game consoles, telephones, pagers, and personal digital assistants are examples of products that are not Personal Computers within the meaning of this definition.

R.  "Timely Manner" means at the time Microsoft first releases a beta test version of a Windows Operating System Product that is made available via an MSDN subscription offering or of which 150,000 or more beta copies are distributed.

S.  "Top-Level Window" means a window displayed by a Windows Operating System Product that (a) has its own window controls, such as move, resize, close, minimize, and maximize, (b) can contain sub-windows, and (c) contains user interface elements under the control of at least one independent process.

T.  "Trademarked" means distributed in commerce and identified as distributed by a name other than Microsoft® or Windows® that Microsoft has claimed as a trademark or service mark by (i) marking the name with trademark notices, such as ® or ™, in connection with a product distributed in the United States; (ii) filing an application for trademark protection for the name in the United States Patent and Trademark Office; or (iii) asserting the name as a trademark in the United States in a demand letter or lawsuit. Any product distributed under descriptive or generic terms or a name comprised of the Microsoft® or Windows® trademarks together with descriptive or generic terms shall not be Trademarked as that term is used in this Final Judgment. Microsoft hereby disclaims any trademark rights in such descriptive or generic terms apart from the Microsoft® or Windows® trademarks, and hereby abandons any such rights that it may acquire in the future.

U.  "Windows Operating System Product" means the software code (as opposed to source code) distributed commercially by Microsoft for use with Personal Computers as Windows 2000 Professional, Windows XP Home, Windows XP Professional, and successors to the foregoing, including the Personal Computer versions of the products currently code named "Longhorn" and "Blackcomb" and their successors, including upgrades, bug fixes, service packs, etc. Solely for the purpose of clarification, this Final Judgment shall not apply to any Operating System that is first distributed commercially by Microsoft after the expiration of the Final Judgment. The software code that comprises a Windows Operating System Product shall be determined by Microsoft in its sole discretion.

## VII.     Further Elements

Jurisdiction is retained by this Court over this action such that the Court may act *sua sponte* to issue further orders or directions, including but not limited to orders or directions relating to the construction or carrying out of this Final Judgment, the enforcement of compliance therewith, the modification thereof, and the punishment of any violation thereof.

Jurisdiction is retained by this Court over this action and the parties thereto for the purpose of enabling either of the parties thereto to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify or terminate any of its provisions, to enforce compliance, and to punish violations of its provisions.

## VIII.    Third Party Rights

Nothing in this Final Judgment is intended to confer upon any other persons any rights or remedies of any nature whatsoever hereunder or by reason of this Final Judgment.

**SO ORDERED**

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge