IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,

       Plaintiff,

         vs.

MICROSOFT CORPORATION,

       Defendant.
_____

CA No. 98-1232 (CKK)
Washington, DC
April 22, 2009
10:30 a.m.


STATE OF NEW YORK, ET AL,

       Plaintiff,

         vs.

MICROSOFT CORPORATION,

       Defendant.
_____

CA No. 98-1233 (CKK)


TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For Department of Justice:    AARON D. HOAG, ESQUIRE
                         ADAM T. SEVERT, ESQUIRE
                         U.S. Department of Justice
                         600 E Street, NW
                         Suite 9300
                         Washington, DC 20530
                         (202) 307-6153


APPEARANCES continued on following page.

APPEARANCES, continued


For Microsoft:                CHARLES F. RULE, ESQUIRE
                              JONATHAN S. KANTER, ESQUIRE
                              Cadwalader, Wickersham & Taft
                              1201 F Street, NW
                              Washington, DC  20004
                              (202) 862-2420


For Microsoft:                KEVIN KEHOE, ESQUIRE
                              JUDITH JENNISON
                              ERICH ANDERSON
                              CRAIG SHANK
                              ROBERT MUGLIA


For the New York Group:       ELLEN S. COOPER, ESQUIRE
                              Assistant Attorney General
                              Chief, Antitrust Division
                              Office of Attorney General
                              200 St. Paul Place
                              Baltimore, MD  21202
                              (410) 576-6470


                              RICHARD L. SCHWARTZ, ESQUIRE
                              Office of Attorney General
                              State of New York
                              120 Broadway, Suite 2601
                              New York, NY  10271
                              (212) 416-8284


For the California Group:     STEPHEN HOUCK, ESQUIRE
                              Menaker & Herrmann LLP
                              10 E. 40th Street
                              New York, NY  10016


For the California Group:     LAYNE LINDEBAK, ESQUIRE (Iowa)
                              ADAM MILLER, ESQUIRE (Calif)

Court Reporter:                    Lisa M. Hand, RPR
                                   Official Court Reporter
                                   U.S. Courthouse, Room 6505
                                   333 Constitution Avenue, N.W.
                                   Washington, DC  20001
                                   (202) 354-3269

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

1                    P R O C E E D I N G S

2             COURTROOM DEPUTY:  Civil Case No. 98-1232, United

3     States of America versus Microsoft Corporation, et al., and

4     Civil Case 98-1233, State of New York, et al., versus

5     Microsoft Corporation.

6             Counsel, would you please identify yourself for the

7     record.

8             MR. SEVERT:  Good morning, Your Honor.  Adam Severt

9     for the United States.  With me at counsel table is Aaron

10    Hoag.

11            THE COURT:  All right.

12            MS. COOPER:  Good morning, Your Honor.  Ellen

13    Cooper from the State of Maryland for the New York Group, and

14    with me at counsel table is Richard Schwartz from New York.

15            THE COURT:  All right.

16            MR. HOUCK:  Good morning, Your Honor.  Steven Houck

17    for the California group.  Seated next to me at counsel table

18    is Layne Lindebak from the Iowa Attorney General's office, and

19    at the head or the end of the table, whichever it is, is Adam

20    Miller from the California Attorney General's office.

21            THE COURT:  All right.

22            MR. RULE:  Good morning, Your Honor.  Rick Rule

23    from Cadwalader on behalf of Microsoft.  With me today are Bob

24    Muglia, who you know.  Kevin Kehoe and Judy Jennison from

25    Microsoft Legal Department.  Also, we have Craig Shank and

1    Erich Anderson, who is deputy general counsel.  And also,

2    Jonathan Kanter, my partner from Cadwalader.

3            THE COURT:  All right.  So, as has been my practice

4    throughout these over the years, I'll summarize the status of

5    compliance since our last court hearing based on the reports

6    that the parties have filed.  I have some questions, some

7    comments, and then I'll call on counsel.

8            The last hearing, which was an interim compliance

9    status hearing was on January 28th.  The focus, as it has been

10   for the last several hearings, was on the project undertaken

11   under Section III.E, the Communications Protocol Licensing

12   Provision, which is presently set to expire on November 12th

13   of this year.

14           Also extended through November 12th, through my

15   Opinion on January 29th of 2008, are what we call the expiring

16   provisions of the New York and California Final Judgments,

17   with the exception of III.B.  Microsoft, since the last

18   hearing, has filed supplemental status reports.  There's both

19   a Joint Status Report that was filed as well.  It focuses on

20   recent enforcement activities, particularly under III.E and

21   the middleware-related provisions.

22           Again, I'll note that the committee, TC, includes

23   Mr. Hunt, who is the California group's technical expert.  And

24   in addition to the Joint Status Report, the United States, as

25   well as New York and California groups, along with Microsoft,

have filed a joint motion requesting an 18-month extension of their respective Final Judgments.  That would be until May 12th of 2011.

Additionally, the parties have jointly requested two additional, and I would agree, non-substantive modifications to the Final Judgments for clarification purposes.

So, let me start with III.E.  I'm going to only discuss the steps of the reset process which are at issue at this point.  The schedule is moving forward.  Microsoft has now produced the first four milestones in a timely fashion, according to the project plan.  The last one is slated for June 30th.

The TC has now implemented its new strategy for technical documentation review, shifting the engineering resources formally used on the prototype implementation and validation projects to the direct review of the documents. The TC has already begun identifying the TDIs at a higher rate than in the past.  The parties indicate that the higher TDI rate was expected and actually reflects the purpose of the revised documentation review strategy.

In other words, the more resources the TC devotes to reviewing the text -- so the technical documentations -- the more likely that they are going to find some TDIs, and the more pages of technical documentation they will be able to

1    review in any given period.

2            As of March 31st there are a total 1,716

3    outstanding TDIs in the rewritten documentation.  233 were

4    Priority 1, which the TC identified.  328 were self-identified

5    by Microsoft.  Microsoft, again, does note that the total

6    number of TDIs spans the entire range of rewritten MCPP

7    documentation, the newly released Windows 7 documentation, the

8    overview materials system documents.  So, the TDIs should be

9    looked at in the context of the more than 30,000 pages of

10   technical documentation.

11           Moving on to the testing and validation.  The

12   testing of Cluster 9, which was the final cluster of rewritten

13   protocol documentation, that was completed on March 31st.  The

14   newly created technical documentation, including that for

15   Windows 7 will be tested using a similar method.  Microsoft

16   does note that given the unique nature of the system

17   documents, its plan for testing these documents differs from

18   the testing for the underlying technical documents.

19           The interoperability lab plug-fest events have

20   continued during the week of March 30th.  Microsoft hosted a

21   certificate plug-fest that was very well-received by the four

22   attending companies.  Microsoft's planning a file sharing

23   plug-fest for the week of June 1st and the interoperability

24   lab continues.

25               The MCPP status.  There's a total of 52 companies

1   licensing patents for the Communication Protocols under

2   Section III.E, 41 have royalty bearing licenses.  Microsoft is

3   aware of 15 patent licensees shipping products under the MCPP.

4   Microsoft also reports that 28 licensees have signed up to

5   receive the free technical account support, and eight have

6   signed up for the Windows source code access.

7           As of April 16th, in terms of the documents

8   describing the protocols that are available online, that they

9   have been downloaded over 380,000 times.  That's quite a large

10  number.  In terms of any observations or questions that I

11  have, although the TDIs increased, we expect that, we

12  discussed that last time.  I guess the question is:  Are there

13  any surprises in the nature of the TDIs as opposed to the

14  number?

15          Also, I wanted to touch on —— when the Final

16  Judgments were extended back in '06, Microsoft had committed

17  to rebating a hundred percent of all the royalties owed by any

18  licensee under the MCPP until the plaintiffs determined that

19  the technical documentation was substantially complete.  So

20  when June 30th comes, which is the date that —— our hope is

21  that it would be substantially complete, it is expected that

22  it would be.

23          What's going to happen?  Does Microsoft want to

24  lift the rebate?  Have you discussed a process or how to deal

25  with it?

1            Moving to III.H, which is the defaults.  Since

2     the last Joint Status Report, Microsoft made significant

3     modifications to the marketing programs, which had been the

4     source of the complaints at the last hearing from companies

5     that sell products to work with or interoperate with Windows.

6     And my understanding is that plaintiffs, which of course

7     doesn't include the United States, indicate that the

8     modifications haven't alleviated their Final Judgment

9     concerns.

10           The TC has also undertaken a thorough review of

11    Windows 7, working closely with Microsoft.  And Microsoft has

12    been responsive to issues raised by the TC, and the TC is

13    going to continue to do their review.  The TC also requested

14    several changes in the code for its middleware simulator tool,

15    which it had previously transitioned to Microsoft in order to

16    make it compatible with Windows 7.  A beta release of the

17    revised code incorporating the TC's requested changes was

18    provided to the TC on April 7th.

19           Microsoft is incorporating the TC's feedback and

20    indicated that it would provide another version of the

21    simulator code to the TC for review.  I think it would have

22    been last week.  Once the TC has approved the final release,

23    then Microsoft will make the code available through the TC's

24    ISV Readiness Tools page, which is online.

25           In terms of observations and questions, it

1   appears that plaintiffs are satisfied with the changes that

2   Microsoft has made in terms of the marketing program.  So, is

3   that resolved at this point?  Any reactions to the TC's

4   testing on Windows 7 that can be shared?  Has Microsoft

5   provided the TC with the most recent version of the simulator

6   code as it said that it would, and anything else that would be

7   needed to be added?

8            In terms of complaints.  Since the last status

9   report the United States received eight third-party

10  complaints, they viewed them as non-substantive and not really

11  relating to the Final Judgments or the enforcement.  The New

12  York and California groups don't believe they received any

13  additional substantive complaints since the last full status

14  report.  Microsoft has received two complaints or inquiries,

15  none of which they view as being related to their compliance

16  obligations.

17           The compliance officers and the training are

18  continued in terms of newly appointed officers getting copies

19  of the Final Judgments, getting briefings.  They are doing

20  annual certifications and keeping records to show that that's

21  being done.  And then I guess, moving to one of the more major

22  ones, is the extension of the Final Judgments.

23           Plaintiffs and Microsoft have jointly moved for

24  an extension.  In terms of going back on the procedural

25  history of this, on September 7th of '06 I entered Modified

1    Final Judgments, pursuant to the parties' agreement that

2    extended Section III.E and its supporting provisions, mostly

3    which related to the TC for two years, which would have placed

4    it at November 12th of '09.  And provided that plaintiffs had

5    the unilateral right to request an additional extension of the

6    surviving provisions for up to an additional three years,

7    which would have put it through November 12th of 2012.

8            Then on January 29th of '08, I granted in part a

9    motion by a number of the state plaintiffs to extend the other

10   substantive provision, except for III.B.  They were parts of

11   the New York group and the California group Final Judgments,

12   extending those provisions until November 12th of '09.  The

13   United States did not ask for those extensions, so they're not

14   included in it.

15           So, let me —- that puts it procedurally in place.

16   Let me address the current request, the explanation of why the

17   extension is being sought.  Microsoft is on track to produce

18   the final system documents by June of '09.  And plaintiffs

19   anticipate by the end of the year they'll be in a position to

20   determine whether these system documents are substantially

21   complete.  Plaintiffs emphasize that this means only that

22   plaintiffs will be in a position to ascertain whether the

23   documents appear on an initial reading to cover the

24   information required by the templates in a reasonably thorough

25   and comprehensive manner.

1              So, plaintiffs anticipate there will be still

2    thousands of TDIs that need to be identified and resolved.   In

3    addition, the TC and staff will need additional time before

4    they can be satisfied that the documents are of sufficient

5    quality that it's appropriate to permit the Final Judgments to

6    expire.

7              They have emphasized -- and that will get to some

8    of the changes, the non-substantive ones -- that it's not the

9    upcoming release of Windows 7 or any new technical

10   documentation covering Windows 7 that is the basis for the

11   plaintiffs decision to request or negotiate an extension.

12             Plaintiffs in Microsoft, therefore, have agreed

13   to extend the Final Judgments for 18 months, that's May 12th

14   of 2011, and to permit plaintiffs to seek an additional

15   extension up to 18 months -- we're talking strictly Section

16   III.E, and again, its supporting provisions, specifically

17   those that relate to the TC of the Final Judgment.

18             In addition, Microsoft has consented to an

19   18-month extension of the surviving non-III.E provisions,

20   which are the ones that I extended by court order at the

21   request of the New York and California group Final Judgments.

22   They are retaining, unlike the III.E, the right to oppose any

23   future state request to extend it further than that period of

24   time.

25             And as I understand it, why 18 months was chosen

1    as the amount of time.  First, evidently in discussions with

2    the TC, 18 months seemed to be a sufficient time for the TC to

3    conduct the thorough review of the technical documents that

4    are most likely to be used by the companies developing servers

5    that interoperate with the Windows client, and that's very

6    important.

7             And then, second, it's in recognition of the

8    importance of bringing the Final Judgments to a close in a

9    reasonable and definite time period.  Evidently, plaintiffs

10   felt that 18 months was appropriate.  It would allow for a

11   reasonable degree of confidence that additional extensions

12   would not be necessary.  So, as I understand it, the TC has

13   developed a schedule that will allow it to spend sufficient

14   time with the key documents.  For them to be comfortable with

15   their overall quality.

16            The TC's schedule provides for a wind-down period

17   during which the TC will stop looking for new TDIs and will

18   focus on ensuring that the previously identified TDIs are

19   closed by the end of the 18-month period.  As I understand it,

20   the TC's ability to do all of this depends on two critical

21   assumptions.

22            One, that the quality of the entire set of

23   technical documentation is comparable to what has already been

24   reviewed and detailed by the TC.  And that Microsoft is able

25   to handle the increased flow of TDIs from the TC in a timely

 1  manner.  Plaintiffs and the TC will closely monitor the

 2  progress.  Plaintiffs anticipate it will be clear as early as

 3  the next status report as to whether this review program is

 4  going to be on track.

 5          There are two additional requests of

 6  modifications, which I would agree with counsel, do appear to

 7  be non-substantive, and a clarification as the extensions have

 8  occurred.  One is in Section V.A that makes -- the

 9  clarification makes clear that the pending release of a new

10  version of Windows will not provide grounds for plaintiff to

11  exercise their right to seek further extensions of the Final

12  Judgments for an additional 18 months beyond the May 12th,

13  2011.

14          And the other one is really a clarification

15  because Microsoft is always going to be in the process of

16  releasing a new operating system, and there needs to be some

17  period in which the Final Judgment doesn't continue to be --

18  to apply to the next version.

19          However, as I understand it, there is an

20  additional modification, Section VI.U, that -- pursuant to

21  that section a new version of Windows client operating system,

22  if it's distributed commercially only after the expiration of

23  the Final Judgments, it would not be a Windows Operating

24  System product, and therefore, would not be subject to the

25  requirements of the Final Judgment.

 1                  But if there's a reasonable expectation that a

 2      new version of Windows will be distributed commercially prior

 3      to the expiration, then the plaintiffs can consider, after

 4      talking to Microsoft, whether and to what extent the

 5      pre-release review of the new version of Windows would be

 6      necessary and appropriate.  And I think those two extensions

 7      make sense.

 8                  So, let me in terms of -- call on you to -- I've

 9      labeled a couple of things here, and if you want to explicate

10      anything further in terms of the extensions.  I know there was

11      an issue made last time as to whether potentially people were

12      looking at whether or not there should be extensions, and it's

13      always good to see that you've negotiated and worked it out,

14      as opposed to having to do it through briefing, that's always

15      helpful from the Court's perspective.

16                  So, let me start calling on Justice first in

17      terms of the III.E, and then I'll go through the rest.

18                  MR. SEVERT:  Thank you, Your Honor.  I'll start

19      with the initial questions that you asked and then I'll move

20      to the extension.  The first question you had was:  Were there

21      any surprises with the nature of the TDIs we found so far?

22      And I think the answer so far is:  No.

23                  I think Your Honor is correct when you said by the

24      time of the next status conference, the next status report, is

25      when we'll have a good idea of whether Microsoft is able to

1   keep up with the increased flow of TDIs, which has really just

2   started quite recently and Microsoft is still ramping up to

3   try to handle that flow of TDIs.  So, I think we should know

4   relatively soon, in the next few months, we'll have a better

5   understanding of that.

6            The second question you had was related to the

7   lifting of the rebates on the licensing fees.  I want to

8   emphasize that the substantially complete standard is -- which

9   is the trigger for the rebates of the licensing fees, though

10  the documents are scheduled to be delivered on June 30th of

11  this year, it will likely take a few months for the TC to be

12  able to review the documentation to be able to make sure that

13  it is substantially complete.

14           And sort of what that means is that on an initial

15  reading it covers the information it's intended to cover.  It

16  follows the specification in a reasonably thorough and

17  comprehensible manner.  But it is not a sign-off that the

18  documents are done, that there's no more work.  As Your Honor

19  said, there could be thousands of TDIs yet to resolve, some of

20  them could be blocking, there will still be work to be done.

21           But it will be a signal that we are certainly in

22  the right direction.  I think it will be a very good sign that

23  things are on track.  And, again, we expect that by the end of

24  this year.

25           THE COURT:  So, would that mean, assuming that that

1    comes up, is there an expectation then that -- and I'll hear

2    from Microsoft, too, in terms of whether they would be lifting

3    the rebate or not or is it too premature?

4           MR. SEVERT:  Sure.  I'll let Microsoft address the

5    mechanics of how that will actually be lifted, but at that

6    point they will be free to charge a royalty that's in the

7    license now that's currently being rebated.  I know there's a

8    process for doing so, and I'll let Microsoft address the

9    mechanics of how that will actually work.

10          As far as the extension goes, there are a few

11   things that I'd like to emphasize.  First is the circumstances

12   surrounding this extension, I think from our perspective, are

13   markedly different from those surrounding the 2006 extension.

14   At the time of the 2006 extension, if you recall, the

15   plaintiffs believed that a two-year extension was necessary

16   and that at the end of those two years we thought we would

17   reevaluate where we were and see where things stood at the end

18   of those two years.

19          Microsoft was at the time about to begin rewriting

20   the technical documentation, and given the difficulties we had

21   had up to that point, it was hard to have a great deal of

22   confidence in any schedule.  That's why at that time we

23   negotiated the right to request the three additional years

24   without Microsoft's ability to object.  And that's why we did

25   that at that time.

1          I think here things are markedly different.  The

2   rewritten TDs, technical documents, are done.  The SDs are

3   scheduled to be done at the end of June.  And the task

4   Microsoft is now facing I think is far more concrete.  First,

5   as Your Honor noted, they have to maintain the quality of the

6   TDs, the ones -- the SDs that haven't been reviewed yet, and

7   they also have to keep up with the increased flow of TDIs.

8          If they are able to meet those two obligations,

9   it's our expectation that an additional extension will not be

10  necessary.  So, I think there's a greater sense of confidence

11  that this extension could be all that's necessary in this case

12  as opposed to where we were in 2002.  And this time I think we

13  have a couple of milestones coming up this year that should be

14  helpful to give us some indication of where we are.

15         I think as I've outlined, the first is by next

16  conference when we have some sense of whether Microsoft is

17  keeping up with the increased TDI flow, and the second is the

18  substantially complete determination that we hope to make by

19  the end of the year.  So, I think those will be very good

20  milestones for Microsoft, for the plaintiffs, and for Your

21  Honor to see how the project is progressing.

22         And in terms of the actual length itself, the 18

23  months, I think as we've said and as Your Honor outlined it,

24  we think that amount of time will allow the TC sufficient time

25  to thoroughly review all of the SDs and all the TDs that are

19

1    covered in those SDs.  And from our perspective, those we

2    believe are the documents that are most important and are most

3    likely to be used by companies that are developing products to

4    interoperate with the Windows clients.

5             THE COURT:  Okay.

6             MR. SEVERT:  Thank you.

7             THE COURT:  All right.  Ms. Cooper of the New York

8    group.

9             MS. COOPER:  Yes, for the New York group.  Thank

10   you, Your Honor.  I'd first like to answer your question about

11   the simulator.  And through the joint efforts of Microsoft and

12   the TC, the TC simulator tool has been updated for Windows 7

13   compatibility.  The TC did in fact receive the simulator back

14   from Microsoft within the agreed upon timeframe.  And

15   Microsoft has said that it will be available on MS stand soon.

16            The other thing I'd like to address is just -- I'd

17   like to make a few comments about TC resources and scheduling.

18   The TC made certain assumptions about what it would take for

19   the technical documents to reach an acceptable quality by

20   May 2011.  And as has been mentioned, the quality of Microsoft

21   TDs would continue to be the same as they have been recently.

22            Second, that Microsoft's estimate of the total

23   number of pages would come to be seen as reasonably accurate.

24   Third, that approximately 35 TC staff engineers would be

25   working on the TDs.  And, finally, that Microsoft would be

1    able to keep up with the TC.  The TC has already added 15 new

2    engineers to technical -- direct technical documentation

3    review.  Five are new hires and 10 are engineers that formerly

4    worked on validation and prototyping projects.

5              So, because more people are looking directly at the

6    TDs, they are finding more TDIs, and the TC expected this, as

7    we all did.  And so we believe the numbers will continue to

8    rise for a time.  And then as Microsoft closes TDIs, they will

9    begin to fall, so long as Microsoft is able to keep to its

10   promised schedule.

11             So, with the additional 18 months the TC should be

12   able to review all the system documents and all the TDs that

13   are important for the licensees to use, and that will ensure

14   that the documents reach the target quality level.

15             THE COURT:  Okay.  All right.  Mr. Houck.

16             MR. HOUCK:  As Your Honor pointed out, the most

17   important issue before the Court today is the extension.  So,

18   I want to spend a little bit of time going over the reasons

19   why the California group is making the motion it is at the

20   risk of maybe repeating some of what has been said by Mr.

21   Severt and Ms. Cooper.

22             First, I wanted to address Your Honor's question

23   about the marketing programs which were the subject of our

24   concern at the last status conference.  And as Your Honor

25   noted, the Joint Status Report says that there have been

1    significant modifications.  Actually, what happened was that

2    Microsoft completely withdrew the aspects of the program that

3    we were concerned with so that our concerns now are completely

4    resolved and Microsoft replaced those portions of the program

5    with something entirely different.

6            And I did want to note that this was done

7    voluntarily by Microsoft.  We'll never know to what extent, if

8    any, raised a significant problem under the Final Judgment,

9    but the important thing is that it was resolved.  I think it's

10   made a lot of people happy, it has made us happy.  I know it's

11   made some OEMs and some ISVs happy, and I think probably

12   ultimately rebounds to Microsoft's benefit because Microsoft

13   was crosswise -- some important parties of theirs, as well as

14   partners of the OEMs.

15           Turning to the extension, I wanted to address four

16   aspects of that.  One is why the California group believes

17   that III.E should be extended.  Secondly, why it believes that

18   the middleware provisions or the non-III.E portions ought to

19   be extended.  Why it is that we're proposing 18 months.  And,

20   finally, I wanted to talk a little bit about some of the

21   reasons for the modifications and the language of the Final

22   Judgment.  And I noted Your Honor says that they seem to make

23   sense, I hope I won't disabuse you of that opinion by what I

24   say.

25           I'll start off by saying that there are two major

1    factors that we look to in -- that we look to in determining

2    whether we ought to make the motion that we did.  And the

3    first factor, of course, is our assessment of what's required

4    under the Final Judgment.  And the second factor, Your Honor

5    will be reassured to know, is what Your Honor had said in

6    various opinions and on the bench here.

7              And, of course, in the past those two haven't

8    always jived, but we think they are perfectly congruent here.

9    So, I want to go back and actually cite some of the things as

10   Your Honor said, at the risk maybe of boring Your Honor with

11   Your Honor's prose, but I will do that.

12             The reason -- the basic reason for the extension of

13   III.E is that the technical documentation is still incomplete

14   and inaccurate.  There are three more milestones to be

15   delivered, and Your Honor pointed out the last one is due on

16   June 30th.  Also, as Your Honor pointed out, as of the time

17   the Joint Status Report was filed there were 1,716 outstanding

18   TDIs.

19             So, it's pretty clear to us that more testing was

20   warranted before we could certify to the Court that the

21   technical documentation was reasonably complete, accurate and

22   usable.  And we think that's quite consistent with what Your

23   Honor has said in the past.  I want to quote here from Your

24   Honor's decision last January of 531 F.Supp 2d, and I'll have

25   some other quotes from that opinion as well.

23

1          But at Page 183, Your Honor said, quote:  The Court

2  is unaware of any reason that the technical documentation

3  required by Section III.E should not be complete, accurate and

4  usable to licensees long before Section III.E expires. Closed

5  quote.

6          And then a couple status conferences ago on

7  September 25th of last year, Your Honor addressing Microsoft

8  said, quote:  I can tell you one thing, I don't want to have

9  this so you complete the project the day before this expires

10 and we don't have any sense of how it works.  I can tell you

11 that's not going to happen.  So, you just be aware of that.

12 Closed quote.

13          So, we think there's adequate justification here

14 for extending Section III.E.  With respect to the middleware

15 provisions, as Your Honor pointed out, these of course are

16 enforced only by the states and the technical committee.  And

17 sometimes they sort of get lost in the shuffle because of the

18 focus on the TDIs in III.E, but we think they continue to be

19 very important.

20          And there are two main reasons why we believe an

21 extension is warranted.  The first reason is, as Your Honor

22 held in your Opinion of 531 F.Supp 2d, the provisions were

23 intended to work together in a unitary framework, and there

24 were many examples of that in Your Honor's Opinion, and I just

25 wanted to quote a couple, which I think make the point.

 1          One is at Page 164.  Quote:  Because of the delay,

 2   the various provisions of the Final Judgments have never been

 3   given an opportunity to operate together as the Court and the

 4   parties envisioned when the Final Judgments were entered.

 5   Closed quote.

 6          And Page 170, Your Honor said:  Nor can it be

 7   denied that, as a result of the delay in Section III.E's

 8   implementation, the provisions of the Final Judgments have not

 9   had the chance to operate together as a comprehensive remedy.

10   As moving parties repeatedly stress, the Final Judgments were

11   constructed as a unitary framework, with the various

12   provisions intended to complement and reinforce each other.

13   Closed quote.

14          And, of course, the technical documentation is

15   still not complete.  So, that's the first reason.  The second

16   reason is that we believe these provisions have proved their

17   worth and have continuing vitality.  If they hadn't been

18   extended we would not have been able to respond to the

19   concerns that were expressed to us by OEMs and ISVs about the

20   various marketing programs that have now been resolved.

21          And on this aspect as well, I wanted to note that

22   as Your Honor just said today and throughout your Opinion,

23   you've noted that Microsoft has cooperated in various points

24   to resolve things without litigating.  And here, as Your Honor

25   knows, Microsoft had waived its right to oppose an extension

1   of III.E.  They could have opposed an extension of non-III.E

2   provisions, but they did not.  And so I just wanted to note

3   that.  That saved substantial court time and plaintiffs'

4   resources.

5            Why 18 months?  And I wanted to start off here

6   again by quoting Your Honor, and going back to Your Honor's

7   Opinion from last year.  In an ultimate sentence of that

8   Opinion, and I think it's there for a reason, this is what

9   Your Honor said, quote:  The Court certainly anticipates that

10  there will, and must, be finality to its oversight of the

11  Final Judgments.  That's something that we certainly agree

12  with.

13           And, also, relevance I think is -- is a quote at

14  Page 183 of Your Honor's Opinion, where Your Honor said,

15  quote:  This Court thus concludes that the most appropriate

16  approach is to assess the need for continued Court oversight

17  in reasonable incremental periods.  Closed quote.  That is

18  also something that we had in mind when we thought about how

19  long the Final Judgment ought to be extended.

20           Basically, the reason is, as I said last time, we

21  thought long and hard about what was required and we believed

22  that 18 months is a time that is doable and is necessary to do

23  the testing on the documents that haven't been delivered.

24  It's what we need to be in a position to certify that the

25  documents are complete and accurate and usable, and to achieve

1    finality.

2         We thought about doing it maybe in six month

3    installments and that didn't seem to make sense.  We thought

4    we needed more time than that, and it didn't really allow for

5    ordered planning and would require us to come back to the

6    Court.  And as I noted, we could have asked Your Honor for

7    three years without Microsoft being able to oppose that, but

8    we didn't think that was necessary.  So, we think 18 months is

9    a reasonable time.

10        And then I also wanted to talk a little bit about

11   why the changes in the language.  And, essentially, what the

12   language is intended to deal with is a very unlikely

13   contingency, and that is that Windows 8 will somehow get

14   caught up in the Final Judgment.  It's very unlikely because

15   aspirationally Microsoft has three year intervals between

16   major releases of Windows.  Windows 7, of course, has not yet

17   been released.

18        So, probably at the earliest we're talking about

19   Windows 8 commercial release in the third or fourth quarter

20   of 2012, well after May of 2011.  But Microsoft was concerned,

21   since there's code existing somehow, it might get caught up in

22   the Final Judgment.  We didn't read the Final Judgment that

23   way.  So, we agree with Your Honor, these are really

24   non-substantive changes.  And so we agreed to these changes to

25   give Microsoft some comfort and to eliminate any ambiguity.

1        But, by the same token, we wanted to make sure that

2   if for some reason this remote contingency came to pass, that

3   we would have sufficient time to take a look at Windows 8 and

4   make sure it's compliant.  And so Microsoft's portion of the

5   Joint Status Report essentially acknowledges that it is its

6   obligations.  If Windows 8 for some reason, perhaps because

7   there is another extension or that a release date gets pushed

8   up, it's their obligation to make sure it's compliant.

9        Essentially, what would happen is we would sit down

10  and talk with them if it becomes a reasonable likelihood that

11  that eventuality might come to pass, so that the technical

12  committee would have sufficient time to review it.

13       Now, if I were Your Honor on the bench, I might

14  reasonably ask:  Why should I believe this forecast since

15  we've given you so many other forecasts that haven't come

16  true?  And I'm talking about the 18 months now.  And so I

17  wanted to just address that.  We, being the plaintiffs and the

18  technical committee, believe that we have constructed a solid

19  workable plan.  And as Your Honor pointed out, it's based

20  really on two assumptions.

21       One is that the new documents will continue to be

22  of the same quality as the ones we've been seeing, and we have

23  no reason to expect otherwise.  So, we think that's likely.

24  And then, secondly, whether Microsoft has the resources and

25  the commitment to keep up with the additional TDIs that the

 1   technical committee is going to identify.

 2          Microsoft assured us last week when we met with

 3   them in Redmond that they would have those resources and they

 4   make that commitment in the Joint Status Report.  So, while no

 5   predictions are an absolute guarantee, we're fairly confident

 6   about this one.  And we do intend to monitor the situation

 7   very closely.  I think the key thing will be when the TDIs,

 8   instead of going up, start to come down.  So, that's something

 9   that we'll look at very closely.

10          And I can assure Your Honor that the California

11   group and all the other plaintiffs are committed to working

12   with Microsoft to achieve finality in May of 2011.  So, we

13   respectfully request Your Honor to grant our motion.

14          THE COURT:  Okay.  Having quoted extensively from

15   my prior orders and statements in court, I can hardly

16   disagree.

17          MR. HOUCK:  That was my hope, Your Honor.

18          THE COURT:  All right.  Mr. Rule.

19          MR. RULE:  Good morning, Your Honor.  I don't think

20   I or Mr. Muglia will need to spend too much time, but

21   obviously if you have any additional questions we will do

22   that.  With respect to the TDIs, I'm going to let Mr. Muglia

23   address that, largely, but I think it's -- certainly from what

24   I've heard, there are no surprises.  Surprises in terms of the

25   nature of the TDIs, although we are pretty new into this

1   process of the TDIs being provided by the TC.

2           With respect to the -- what we sometimes call the

3   royalty holiday, we -- again, the royalties now apply only to

4   the patent licenses.  We are giving some thought to how we

5   would implement the change once the TDs are deemed

6   substantially complete.  But, obviously, we're going to

7   consult with the licensees, we're going to consult with the

8   plaintiffs and the TC before we make any final decisions

9   there.  Mr. Muglia may have some additional comments on that.

10          With respect to the non-III.E provisions of the

11  decree, I don't think I need to say too much.  With respect to

12  the marketing program, I would just say very briefly that

13  Microsoft instituted those programs in the expectation and

14  hope, as we discussed last time, of improving the consumer

15  experience, it was consumer driven.  Issues came up that were

16  expressed by OEMs and by the plaintiffs.  And we, essentially,

17  in talking to them, decided that it was better to drop that

18  aspect of the program to basically address their concerns.

19          And we view it as essentially a resolved issue.  I

20  should say, though, Your Honor, that we did not view it as an

21  issue under the decree, and I would take some issue with Mr.

22  Houck.  I think that whether or not there had been a decree,

23  we understand that going forward the regulators will be in

24  touch with us, as will our OEMs, the people in the ecosystem.

25  And we're going to respond going forward.

1    As Your Honor knows, we have the Windows

2 principles, we have the interoperation principles.  And those

3 are perhaps certainly due in part to what this Court has done,

4 but they will be ongoing and continue in existence long after

5 the degrees are gone.  And I think that should give folks a

6 lot of comfort.

7    I think that's all I -- I think that addresses the

8 issues that are out there that Your Honor asked about.  If you

9 don't have any other questions, I'll ask Mr. Muglia to come up

10 and address the Court.

11    THE COURT:  I think those were it.  Mr. Muglia.

12    MR. RULE:  Thank you.

13    MR. MUGLIA:  Good morning, Your Honor.  I just have

14 a couple of quick comments today.  First, just a further

15 clarification on the simulator code.  Ms. Cooper described the

16 process we worked with the TC on very accurately.  But the

17 only thing I would add is that it is our plan to release that

18 simulator code publicly later this week.  So we're very much

19 on track to get that done in the very short term.

20    In terms of the TDIs and the questions that have

21 been raised there, I think there's been a lot of good

22 discussion here.  I will emphasize that we are very committed

23 to putting the resources on that are required to keep up with

24 the inflow of the TDIs.  In terms of the technical

25 documentation, the systems documents, we are committed to

1    continuing the work that we've been doing at high quality.

2         I would remind Your Honor that we have now

3    completed all the technical documents for both the original

4    project, the so-called Blue Line Project, as well as Windows

5    7.  And we have completed 12 of the 19 system documents, and

6    we have seven remaining.  And it is our intent to complete

7    those on schedule with high quality.

8         With regard to the TDIs, we have the resources to

9    continue to work closely with the TC to resolve them in a

10   timely manner.  I'll just give you a little bit of incremental

11   data that's happened since the JSR.  I think it's kind of

12   illustrative of the sort of process that we'll be working very

13   closely with the TC on.

14        As Your Honor recalls earlier, the JSR as of

15   March 31st said there were 1,716 TDIs outstanding.  As of

16   Sunday, the 19th of April, we had resolved 567 of them with

17   the technical committee.  So, a total of 1,149 outstanding.

18   So, that gives you an idea of the kind of change that can

19   happen in just a few short weeks.

20        Now, for completeness, I will tell you that on

21   Monday the TC submitted 367 TDIs.  So, we'll continue to work

22   with them.  It just shows that there is a high inflow of new

23   TDIs being reported as the TCs have changed their process, and

24   there is a high outflow of resolve as our engineering teams

25   are working with the TC to resolve those.

1          THE COURT:  Okay.  So, I take it that at least at

2    this point you're relatively confident that this is going to

3    work in terms of being able to keep up with the schedule?

4          MR. MUGLIA:  Yes, I am, Your Honor.  The one thing

5    that is shifted is that Microsoft's testing process for the

6    original Blue Line has been completed as of the end of March.

7    We will be doing testing for Windows 7 documents, but that's

8    an overall smaller number of documents that we need to go

9    through and test.

10          So, the inflow of TDIs that are coming out of our

11    own testing processes is down somewhat.  So, in some senses

12    there's a shift in balance of where the inflow will come from,

13    but our engineering team, I'm very confident, will be able to

14    keep up with it.

15          THE COURT:  All right.  Well, that's good to hear.

16          MR. MUGLIA:  Are there any other questions for me,

17    Your Honor.

18          THE COURT:  No, that's it.  Anything else anybody

19    else wants to talk about?  Let me just make a couple of

20    comments, particularly about the extensions.  In terms of the

21    18 months, I think I would agree that we are in a different

22    and a much better place than we were when the Final Judgments

23    were extended the last time.  And for all of the reasons that

24    have been stated in the reports, past orders and the

25    statements here today, I think that the extension of III.E is

1   certainly in the public interest to ensure that the relief and

2   the judgments are actually effectuated.  That will give enough

3   time to allow this access to the completed documentation to

4   have desired effects and hopefully to meet the goals of the

5   Final Judgment.

6           Also, I'll find that it's in the public interest.

7   As I stated in my order in 2008, as to the non-III.E

8   provisions, except for III.B, that the extension of those

9   provisions will allow the Final Judgment for a commensurate

10  period of time to operate as a comprehensive remedy so that

11  all the remedies will have their full and intended effect.

12  They will be moving forward together, which was a concern that

13  I had back when I issued my Opinion in January of 2008.  And I

14  think having them go forward at the same time, hopefully, will

15  have the full effect.

16          In addition, I would say in terms of the two

17  non-extensive, non-substantive modifications, I would note for

18  the record that Microsoft is not relieved in any way of its

19  obligation with those modifications, they're truly

20  clarifications.  And the two non-extensive, non-substantive

21  modifications are consistent, I think, with the intent as to

22  whether later versions of Windows would be subject to the

23  Final Judgment.

24          The demarcation you've come up with I think makes

25  sense and is reasonable, and clearly Windows was not expected

1    to be subject to Final Judgments in perpetuity.  So I think

2    those -- I'll make those findings at least in terms of the

3    motion, and I will go forward and sign the proposed orders

4    that you have provided us.

5            So, the next thing we need to do is to figure out

6    when we're here next, which I suppose comes up to a little

7    bit -- I don't know whether you want to do something in the

8    summer, I'm around, but -- or whether you want to do something

9    starting in early September.  I mean, part of it depends on

10   where you are and what's a good time.  If you want to talk

11   among yourselves and with Microsoft as to when would be a good

12   time where certain things would be accomplished.

13           MR. RULE:  Your Honor, it seems that July 28th,

14   Tuesday, is the winner.

15           THE COURT:  I'm sorry, the what?

16           MR. RULE:  July 28th.  That doesn't work for you?

17   That's more important than all of us, so...

18           THE COURT:  I should have pointed this out when you

19   were looking.  I'm not going to be sitting from the 22nd

20   through, really, the 29th.  I can do it before that.  If you

21   want to do it like the 20th or 21st.  The 21st would be a

22   Tuesday.  We can do it the 31st, that's a Friday, if you want

23   to do it later that week.

24           MR. RULE:  How about the 15th, Your Honor.  I hate

25   to bring you back in the middle of summer, but that's okay.

```
 1              THE COURT:  No, that's fine.  No.  No.  No.  It is
 2    okay.  I just need to look at -- I have a sentencing at 9:00.
 3    Is that it?  We'll set this at 10:30, so, that's fine.  So,
 4    10:30 on July 15th?
 5              MR. RULE:  It doesn't work.  Does the 4th work,
 6    Your Honor?
 7              THE COURT:  That's a Saturday.  I have emergency
 8    duty, so I actually will be here.
 9              MR. RULE:  If we do the 4th or 5th of August is
10    that going to be a real problem for you?
11              MR. HOUCK:  Let's do it then.
12              THE COURT:  I think August 5th, let me check.  Yes.
13    August 5th at 10:30.  Is that all right?  Does that work?
14              MR. RULE:  Thank you, Your Honor.
15              THE COURT:  So we'll set it for August 5th at
16    10:30.  And I do want to say that I'm very hopeful in terms of
17    the documentation, I think we're finally on the right track.
18    And I also do commend you once again in terms of being able to
19    work this out in terms of the extension of the Final Judgments
20    of feeling that all of the parties are interested in making
21    this work and have the intended effect and goals of the Final
22    Judgments actually accomplished.
23              So, I commend you for that.  And, of course, always
24    the work of the TC and Mr. Hunt, who, without their -- I would
25    have a lot more work to do, I'm sure, if they were not
```

1   actually involved in this process.  So, I thank you all.  Have

2   a good summer until I see you in August.

3                MR. HOUCK:  Thank you.

4                THE COURT:  Oh, if we can have it the week before.

5   Let me just -- we usually set the report -- actually, how

6   about Friday, July 31st, does that work for the report -- the

7   Joint Status Report?

8                MR. RULE:  Yes, Your Honor.

9                THE COURT:  Okay.  All right.  Parties are excused

10  then.  Take care.

11  END OF PROCEEDINGS AT 11:25 A.M.

12

13

14

15                C E R T I F I C A T E

16                I, Lisa M. Hand, RPR, certify that the

17  foregoing is a correct transcript from the record of

18  proceedings in the above-titled matter.

19

20

21                                /s/ Lisa M. Hand

22                     _____

23                                Lisa M. Hand, RPR

24

25