IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>    v.<br><br>MICROSOFT CORPORATION,<br><br>                    Defendant. | Civil Action No. 98-1232 (CKK) |

**JOINT MOTION FOR A SUPPLEMENTAL PROTECTIVE ORDER
AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

The United States of America, Plaintiff in *United States v. Microsoft*, CA No. 98-1232 (CKK), and the States of New York, Ohio, Illinois, Kentucky, Louisiana, Maryland, Michigan, North Carolina, and Wisconsin (the "New York Group"), the settling Plaintiffs in *New York, et al. v. Microsoft*, CA No. 98-1233 (CKK) (collectively "Plaintiffs"), together with Defendant Microsoft, hereby file this Joint Motion for a Supplemental Protective Order to ensure the confidentiality of materials relating to the Technical Committee and to Plaintiffs' enforcement of the Final Judgments.[1]

Two consultants hired by the TC have refused to return materials relating to their work for the TC following the completion of their work and the expiration of the Final Judgments on

---

[1] Since this matter relates to the Technical Committee the California Group of states is not involved.

May 12, 2011.[2]  The United States, the New York Group, and Microsoft therefore request that the Court enter a Supplemental Protective Order to protect the confidentiality of all TC material (including material held by the TC that is Microsoft confidential material) by requiring all members of the TC and all consultants or staff hired by the TC to return all materials relating to the TC to the United States within three business days of the Court's order.  A proposed order is attached as Exhibit A to this Motion.

The Final Judgments provided that all of the work of the Technical Committee was to be treated as Highly Confidential Information under the Protective Order entered May 27, 1998. Final Judgment § IV.B.9 (hereinafter "FJ," and, for the Court's convenience, attached to this Motion as Exhibit C).  The Protective Order itself states that "the protection of Confidential Information [which includes Highly Confidential Information] shall not terminate at the conclusion of these actions." Protective Order § O.1 (hereinafter "PO," attached as Exhibit D). According to the Protective Order, Highly Confidential Information may only be used in connection with the litigation of this case and may not be used "for any other purpose, including in furtherance of that person's business interests, or in any administrative or other judicial proceeding." PO § B.1.[3]  The completion of a consultant's work for the TC therefore eliminates

---

[2] Plaintiffs became aware of the situation on May 11, 2011, hours after the consultants informed the TC management that they were not going to return to the TC all materials relating to their work for the TC.  As required by the Protective Order in the event of an unauthorized disclosure, Plaintiffs informed Microsoft of the situation when the matter could not be resolved prior to expiration of the Final Judgments on May 12, 2011.  Plaintiffs then attempted to secure the return of the materials to cure the breach.  Plaintiffs' attempts were not successful, however, and therefore all parties are filing this motion. A Declaration from counsel for the United States setting forth these facts is attached as Exhibit B.

[3] This provision does acknowledge that the Plaintiffs may have certain additional rights to use the materials, consistent with their role as law enforcement agencies.  Former consultants to the TC are not now, and never were, "Plaintiffs" in this sense, and are therefore not covered by this provision.

any scenario under which that consultant could legitimately make use of the Highly Confidential Information. The former TC consultants' retention of Highly Confidential Information beyond their term of work for the TC is itself an improper use of the materials in violation of the Protective Order. The consultants are using the documents for an unauthorized purpose simply by retaining them, presumably in anticipation of some future use or disclosure of the documents. After all, there would be no reason for them to refuse to return the documents if they did not contemplate using them affirmatively at some later date.

Moreover, Highly Confidential Information may only be disclosed to certain categories of individuals specified in Section D.2 of the Protective Order. Highly Confidential Information could, of course, be disclosed to the TC and its consultants during the pendency of the Final Judgments in connection with their responsibilities in assisting Plaintiffs in the enforcement of the Final Judgments. PO § D.2.g (permitting disclosure to independent consultants or experts retained by the parties). However, as soon as any TC consultant completed his or her work for the TC (either by leaving the TC or upon expiration of the Final Judgments and thus the TC's substantive responsibilities), that consultant is no longer someone to whom Highly Confidential Information can be disclosed. Therefore, an individual no longer working as a TC consultant should not be able to retain copies of Highly Confidential information in contravention of the clear intent of the Protective Order.

The confidentiality of materials relating to the TC's operations was a critical characteristic of the TC and was vital to its ability to perform such a constructive role in assisting Plaintiffs in enforcing the Final Judgments. The Final Judgments establish this confidentiality in numerous ways, in addition to characterizing all TC material as Highly Confidential Information

under the Protective Order.  No "information gathered by the TC" or "reports or recommendations prepared by the TC" may be disclosed to anyone other than the parties to the case unless authorized by the Protective Order or by further order of this Court.  All consultants hired by the TC signed a confidentiality agreement promising to protect the confidentiality of TC materials and acknowledging the applicability of the Protective Order to all TC work, as required by Section IV.B.9 of the Final Judgments.  The Final Judgments further provide that "[n]o member of the TC may make any public statements regarding the TC's activities," FJ § IV.B.10, and that "[n]o work product, findings or recommendations by the TC may be admitted in any enforcement proceeding before the Court for any purpose, and no member of the TC shall testify by deposition, in court or before any other tribunal regarding any matter related to this Final Judgment." FJ § IV.D.4.d.

      The United States explicitly cited all of these provisions in its Competitive Impact Statement and in its Response to Public Comments filed with the Court prior to entry of the Final Judgments.  The United States explained how the TC was expected to operate and rejected arguments that the TC's work product should be admissible in Court or that the TC should be able to testify in Court.  Response of the United States to Public Comments on the Revised Proposed Final Judgment ¶¶ 328 et seq (filed Feb. 27, 2002) (hereinafter RtPC).  The United States explained that "by ensuring that Microsoft's and third parties' communications will not be used directly against Microsoft, the TC will benefit from heightened candor and information disclosure by Microsoft employees and others." RtPC ¶ 385.  This structure was designed to enable the TC to perform its designated function of assisting Plaintiffs in enforcement of the Final Judgments and serving in a "dispute resolution" to complement Plaintiffs' traditional

enforcement options.  RtPC ¶ 386.  In approving the United States' request to enter the Final Judgment, this Court similarly rejected arguments that TC reports or recommendations should be admissible.  *United States v. Microsoft*, 231 F. Supp. 2d 144, 200 (D.D.C. Nov. 1, 2002) (conditionally approving entry of Final Judgment).  In rejecting another argument concerning the composition and operation of the TC, the Court emphasized that the design of the TC and the independence of its members was designed "to foster an environment of cooperative resolution, rather than one of persistent conflict and litigation.  Otherwise, attempts at enforcement have a greater potential to take on the tenor of adversary proceedings, resolved in most instances with great difficulty and delay."  *Id.* at 199.

The parties' experience with the actual operation of the TC during its tenure more than proved the truth of these arguments and conclusions.  The parties do not believe that the TC would ever have been able to serve such an instrumental role in the enforcement of the Final Judgments if all parties had not been able to rely on the confidentiality of the TC process and TC work product.

As a former TC consultant has no authority or right to use the TC material for any purpose, and as Highly Confidential Information may not be disclosed to such an individual, the parties believe that continued possession of TC material by former TC consultants is not only a direct violation of the Protective Order, but is also inconsistent with the terms and purpose of the Protective Order and Final Judgments entered in this case.  Continued possession of this material by individuals who do not answer to any of the parties to this action represents an unacceptable risk of future disclosure of material that was always meant to remain confidential and whose

confidentiality was a central feature of the operation of the TC through the term of the Final Judgments.

Since the expiration of the Final Judgments, the United States and the New York Group have been negotiating with counsel for the former TC consultants in an effort to obtain the return of the documents.  The United States and New York Group have explained that the Final Judgments and Protective Order require return of the documents and have attempted to negotiate the return of the documents.  The TC engineers have taken the position that Court's prior orders do not unambiguously require return of the documents.  In light of their position, The United States, New York Group, and Microsoft jointly request that the Court enter an order requiring return of all TC materials to the United States.  The Court has the authority to enter the requested Supplemental Protective Order in order to enforce and effectuate the original Protective Order and ensure the protection of confidential information post-litigation.

Finally, the parties want to ensure that the former consultants continue to honor their confidentiality obligations in any proceedings relating to this motion.  While the consultants are not parties to this action and have no standing to object to a protective order in this case, the parties anticipate that the consultants may seek to be heard by the Court.  The parties therefore request that the Court reaffirm the requirements of the Protective Order and the Final Judgments by ordering that the consultants may not make any public statements regarding their work for the TC, including in any documents filed with this Court.

Dated: August 18, 2011

                                              Respectfully submitted,

| FOR THE STATES OF NEW YORK, OHIO, ILLINOIS, KENTUCKY, LOUISIANA, MARYLAND, MICHIGAN NORTH CAROLINA, AND WISCONSIN | FOR THE UNITED STATES DEPARTMENT OF JUSTICE'S ANTITRUST DIVISION |
|---|---|
| /s/ <br> ELLEN COOPER <br> *Assistant Attorney General* <br> *Chief, Antitrust Division* <br> Office the Maryland Attorney General <br> 200 Saint Paul Place <br> Baltimore, MD 21202 <br> 410/576-6470 | /s/ <br> AARON D. HOAG <br> JAMES J. TIERNEY <br> SCOTT A. SCHEELE <br> ADAM T. SEVERT <br> *Trial Attorneys* <br> U.S. Department of Justice <br> Antitrust Division <br> 450 Fifth Street, N.W. <br> Suite 7100 <br> Washington, D.C. 20530 <br> 202/307-6153 |
| | FOR DEFENDANT MICROSOFT CORPORATION |
| BRADFORD L. SMITH <br> ERICH D. ANDERSEN <br> DAVID A. HEINER, JR. <br> Microsoft Corporation <br> One Microsoft Way <br> Redmond, Washington 98052 <br> 425/936-8080 | /s/ <br> CHARLES F. RULE <br> JONATHAN S. KANTER <br> Cadwalader, Wickersham & Taft LLP <br> 700 Sixth Street, N.W. <br> Washington, DC 20001 <br> 202/862-2420 <br><br> STEVE L. HOLLEY <br> RICHARD C. PEPPERMAN II <br> Sullivan & Cromwell LLP <br> 125 Broad Street <br> New York, New York 10004 <br> 212/558-4000 <br> *Counsel for Defendant* <br> *Microsoft Corporation* |